FILED
Case 1:08-cv-01492    Document 1    Filed 03/12/2008    Page 1 of 3
08 C 1492
MARCH 12, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE BUCKLO
MAGISTRATE JUDGE VALDEZ

|  |  |  |
|---|---|---|
| ORIX CAPITAL MARKETS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| COMMERCIAL VENTURES, INC., | ) | |
| | ) | |
| Defendant. | ) | **J. N.** |
| | ) | |

## COMPLAINT

**NOW COMES** the Plaintiff, ORIX CAPITAL MARKETS, LLC, by and through its attorneys, Chapman and Cutler LLP, and for its Complaint against defendant COMMERCIAL VENTURES, INC., respectfully states as follows:

### THE PARTIES

1.   Plaintiff ORIX Capital Markets, LLC ("*ORIX*") is a Delaware limited liability company, with its principal place of business located in Dallas, Texas.

2.   Defendant Commercial Ventures, Inc. ("*CVI*") is a Delaware corporation, with a principal place of business located, upon information and belief, in Los Angeles, California.

### JURISDICTION

3.   Jurisdiction is proper pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000.

### VENUE

4.   Venue is proper in this district because the contract which forms the basis of this Complaint expressly states, in relevant part, "any suit, action or other legal proceeding relating to

this Guaranty may be brought only in the Circuit Court of Cook County or Federal District Court for the Northern District of Illinois, Eastern District…."  Further, venue is proper in this district pursuant to §1391(a), in that the contract which forms the basis of this complaint originated in this district.

## FACTS

5.    On or about February 28, 2006, ORIX's predecessor in interest, ORIX Real Estate Capital, Inc. *("OREC"*, and together with ORIX and their respective successors and assigns, hereinafter sometimes referred to individually or collectively, as the context requires, as the *"Lender"*), with an office located in Chicago, Illinois, and The Landings Florida LLC (*"The Landings"*), entered into a Note (the *"Note"*) and a Loan and Security Agreement (the *"Loan Agreement"*) whereby OREC agreed to and did loan $26,500,000 (the *"Loan"*) to The Landings, all related to property commonly known as Bristol Court Apartments, 3655 Westchase Village Lane, Norcross, Georgia 30092 (the *"Property"*).  True and correct copies of the Note and Loan Agreement are attached hereto as Exhibits A and B, respectively.

6.    In connection with the Loan, on February 28, 2006, The Landings also executed a "Deed to Secure Debt, Assignment of Leases and Security Agreement" (*"Security Deed"*) in favor of Lender, which was dutifully recorded with the Clerk of Gwinnett County, Georgia, a true and correct copy of which is attached hereto as Exhibit C.

7.    As one of the conditions of entering into the Note, the Loan Agreement, and the other documents evidencing and securing the Loan (collectively, the *"Loan Documents"*), CVI entered into a "Guaranty (Payment)" (the *"Payment Guaranty"*) in favor of Lender, a true and correct copy of which is attached hereto as Exhibit D.

8.    Pursuant to Sections 1(a) and (b) of the Payment Guaranty, CVI agreed to be personally liable to Lender for the payment and satisfaction of all "Indebtedness, including

Expenses," as defined in the Loan Agreement, and "Obligations" as set forth in the Loan Agreement, with all such Indebtedness, (including Expenses) and Obligations being defined in Section 1 of the Payment Guaranty as "*Guarantor's Liabilities*". "Indebtedness" is further defined in the Loan Agreement as meaning "all obligations of [The Landings] to Lender from time to time for the payment of money, including without limitation, the principal amount of the Loan outstanding from time to time, all Accrued Interest, the Exit Fee, all Charges and all amounts expended by Lender or on its behalf which [The Landings] is obligated to reimburse, including interest, as provided in the Loan Documents." "Expenses" are further defined at page 1 of the Payment Guaranty to mean "all reasonable attorney's fees, court costs and other legal expenses of any kind which Lender or any subsequent holder of the Note may pay or incur in attempting to collect, compromise, or enforce, in any respect, any of Guarantor's Liabilities, whether or not suit is ever filed, and whether or not in connection with any insolvency, bankruptcy, reorganization, arrangement or other similar proceeding involving [The Landings], [CVI] or any other guarantor. If Lender pays any such cost or expense, 'Expenses' shall also include interest at the Default Rate on any such payment from the date such cost or expenses is incurred until repayment to Lender in full."

9. At Section 9 of the Payment Guaranty, entitled "Limitation of Liability," CVI has no liability under the Payment Guaranty until: " . . . (A) an Event of Default under the Loan Agreement has occurred and (B) Lender has commenced the exercise of remedies under one or more of the Loan Documents…." If both of these circumstances occur, CVI's liability under the Payment Guaranty is then limited to ". . . an amount equal to the "Deficiency (if any) plus Expenses". *See* Payment Guaranty, §9(a).

10. "Deficiency" in turn is then defined in the Payment Guaranty as equal to the "positive difference, if any, obtained by subtracting from the Indebtedness either, at Lender's

sole option, …. (ii) the amount received by Lender upon exercise of some or all, at Lender's discretion, of its remedies under the Mortgage and other Loan Documents; provided that in no event shall the Deficiency exceed One Million Five Hundred Thousand Dollars ($1,500,000)…." *See* Payment Guaranty, §9(b).

11.    Under the terms of the Payment Guaranty, CVI's liability was originally capped at a "Deficiency" amount of $1,500,000.00, plus the "Expenses" as defined above. *See id.*, §9.

12.    On or about February 28, 2006, OREC, pursuant to an Assignment and Assumption Agreement, assigned to ORIX, *inter alia,* the Note, the Loan Agreement, the Payment Guaranty, and the other Loan Documents. A true and correct copy of this Assignment and Assumption Agreement is attached hereto as Exhibit E.

13.    In May 2007, for good and valuable consideration, CVI, another guarantor, Richard Nathan *("Nathan")*, The Landings, and OREC entered into a "First Amendment to Loan and Security Agreement and Guaranty (Payment) and Reaffirmation of Guaranties" (the *"First Amendment"*), a true and correct copy of which is attached hereto as Exhibit F. Pursuant to the First Amendment, CVI agreed, *inter alia*, to increase the "Deficiency" limitation under the Payment Guaranty from $1,500,000.00 to $1,700,000.00. *See* First Amendment, §4. The "Deficiency" limitation, however, did not and does not apply to CVI's personal liability under the Payment Guaranty for "Expenses". Thus, CVI's personal liability under the Payment Guaranty for such "Expenses" was and is unlimited.

14.    Thereafter, in October 2007, and among other known "Events of Default" under the Loan Documents, as well as others that may have existed at that time, the Note and Loan Agreement went into payment default, which constituted a further "Event of Default" under the Loan Documents and the Payment Guaranty, and notice thereof was sent to CVI by OREC on October 9, 2007, a true and correct copy of which is attached hereto as Exhibit G. Thereafter, on

November 5, 2007, after the payment default was not cured, OREC sent CVI a notice of acceleration and demand for payment of all indebtedness due under the Loan Documents, a true and correct copy of which is attached hereto as Exhibit H.

15.     On November 5, 2007, ORIX, pursuant to an Assignment and Assumption Agreement *("Assignment")* re-assigned to OREC, *inter alia*, the Note, the Loan Agreement, the Payment Guaranty, and the other Loan Documents.  A true and correct copy of this Assignment is attached hereto as Exhibit I.  Thereafter, on or about November 30, 2007, OREC, pursuant to an Assignment and Assumption Agreement, further re-assigned back to ORIX the Note, Loan Agreement, Payment Guaranty and the other Loan Documents.  A true and correct copy of this Assignment is attached hereto as Exhibit J.  Additionally, the Note was endorsed by OREC to ORIX pursuant to an Allonge dated November 30, 2007, a true and correct copy of which is attached hereto as Exhibit K.  Further, on November 30, 2007, the reassignment of the Loan Agreement, First Amendment, Security Deed, and other Loan Documents to ORIX from OREC was evidenced in a recordable "Transfer and Assignment of Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement and of Assignment of Rents, Leases and Other Income", a true and correct copy of which is attached as Exhibit L, and which was thereafter recorded with the Gwinnett County, Georgia Recorder's office on December 3, 2007.  Thus, ORIX currently is the holder of all of Lender's rights, title and interest in, to and under the Note, the Loan Agreement, the Payment Guaranty, and the other Loan Documents.

16.     Given the Events of Default as outlined above, and the failure of The Landings to pay the accelerated amounts due under the Loan Documents, ORIX exercised certain remedies available to it under a power of sale contained in the Security Deed and, on December 4, 2007, after advertising the Property for sale pursuant to the Loan Documents (including the Security Deed), and applicable Georgia law, ORIX was the successful bidder at sale for the Property, at a

bid of $22,000,000 for the Property, and $500,000 for Personal Property (as defined in the Loan Documents) located on or appurtenant to the Property. This bid was subsequently confirmed by the Superior Court of Gwinnett County, Georgia, in Civil Action No. 07A110109, on February 19, 2008, a true and correct copy of which is attached hereto as Exhibit M. Upon confirmation of the sale of the Property and Personal Property, there remains a Deficiency due and owing Lender from CVI, as defined under the Payment Guaranty, well in excess of $1,700,000.00, plus all of Lender's Expenses as defined therein. Given the $1,700,000 limitation on the Deficiency aspect of the Payment Guaranty, $1,700,000 is currently due on the Deficiency, together with Lender's Expenses, with interest accruing on all such Expenses at the Default Rate of interest.

17.    Pursuant to Section 9(c) of the Payment Guaranty, upon the establishment of the Deficiency and Expenses as set forth in paragraph 16 above, ORIX sent to CVI a demand for payment thereof within ten (10) days, a true and correct copy of which is attached hereto as Exhibit N. Such 10 day period has expired and, to date, no payment has been received by ORIX of any of the Deficiency and/or Expenses.

## COUNT I
### BREACH OF PAYMENT GUARANTY

18.    ORIX hereby restates paragraphs 1-17 of this Complaint as if fully set forth herein.

19.    Pursuant to the express terms of the Payment Guaranty, CVI is liable for $1,700,000 of the Deficiency remaining after the approval of the sale of the Property, as alleged above. *See* Payment Guaranty, §§1, 2, 9.

20.    CVI is also liable for Lender's Expenses, as well as interest calculated thereon at the Default Rate, until full repayment in full to Lender. *See id.*, §§1, 9.

21.    Lender has performed all of its duties and obligations under the Payment Guaranty and other Loan Documents, and has been damaged as a result of the breaches described herein.

**WHEREFORE**, Plaintiff ORIX Real Estate Capital Markets, LLC respectfully requests the following relief:

(A)     This Court enter judgment in favor of ORIX and against Defendant Commercial Ventures, Inc. on the Payment Guaranty in the total amount of $1,700,000 related to the Deficiency aspect of the Payment Guaranty;

(B)     This Court order Defendant Commercial Ventures, Inc. to pay to Lender its Expenses, including attorneys' fees, court costs, and other fees and costs incurred in collecting on the Payment Guaranty, as well as interest thereon at the Default Rate, until repayment in full to Lender; and

(C)     Any other and further relief this Court deems to be just and proper.

ORIX CAPITAL MARKETS, LLC


By _/s/_____ David T.B. Audley_____
                    One of Its Attorneys

David T.B. Audley
Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
(312) 845-3000

- 7 -

08 C 1492

JUDGE BUCKLO
MAGISTRATE JUDGE VALDEZ

# EXHIBIT A



Bristol Court

## NOTE

THIS NOTE (the "Note"), dated February 2⅔, 2006, is made and executed by THE LANDINGS FLORIDA, LLC, a Florida limited liability company ("Borrower") to the order of ORIX Real Estate Capital, Inc., its successors and assigns ("Lender") pursuant to a certain Loan and Security Agreement of even date herewith between Borrower and Lender (the "Loan Agreement"). Capitalized terms used in this Note and not defined in this Note shall have the meanings given to them in the Loan Agreement.

## I
## PAYMENT TERMS

1.1    **The Promise to Pay.** For value received, including without limitation, the Loan made by Lender to Borrower pursuant to the Loan Agreement, Borrower hereby promises to pay to the order of Lender the principal amount of Twenty-six Million Five Hundred Thousand Dollars ($26,500,000), or so much thereof as may be advanced under the Loan Agreement, together with interest accrued on the principal amount from time to time outstanding at the Interest Rate set forth in the Loan Agreement plus the Exit Fee. Payments of interest and principal under this Note shall be in lawful money of the United States of America and shall be due on each Scheduled Payment Date in the amount or amounts provided under the Loan Agreement and the entire principal balance of the Loan, all Accrued Interest, the Exit Fee and all other Indebtedness, shall be due and payable on the Maturity Date.

1.2    **Payment Terms.** Borrower's rights and obligations regarding prepayments, late payments and the timing, place and manner of payments are governed by certain provisions of the Loan Agreement and, without limiting Section 2.10 hereof, all such provisions of the Loan Agreement are hereby incorporated into this Note by this reference.

1.3    **Application of Payment.** All payments shall be applied to the Indebtedness in such order and manner as is provided under the Loan Agreement. Interest on the principal balance of the Loan outstanding from time to time shall accrue from the date of disbursement by Lender and shall be computed on the basis of a three hundred sixty (360) day year and charged for the actual number of days elapsed. Without limiting Section 2.10 hereof, the provisions of the Loan Agreement regarding the determination and calculation of the amount of interest payable by Borrower (including any Legal Limits thereon) are hereby incorporated herein by reference.

## II
## ADDITIONAL COVENANTS

2.1    **Acceleration.** If (a) an Event of Default occurs or (b) the right to enforce the Mortgage shall accrue to the holder thereof, whether or not foreclosure proceedings have been commenced, then, at the election of the holder of this Note and without notice, the unpaid principal sum of this Note, together with accrued interest thereon, Additional Interest, if any, and all other fees and charges payable under the Loan Documents shall at once become immediately due and payable.

2.2 **Default Interest.** Following the occurrence of an Event of Default, the unpaid principal balance of the Loan shall bear interest at the Default Rate.

2.3 **Waivers.** Borrower and any other parties hereafter liable for the debt (including, without restricting the foregoing, any endorsers, sureties and guarantors) represented by this Note, hereby (a) waive presentment and demand for payment, notice of dishonor, protest and notice of protest and/or nonpayment, notice of intention to accelerate and all other notices other than those specifically required by the Loan Documents and (b) agree that the time of payment of that debt or any part thereof may be extended from time to time without modifying or releasing the lien of the Loan Documents or the liability of Borrower or any such other parties, the right of recourse against any such parties being hereby reserved by the holder hereof. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Loan Agreement or the other Loan Documents made by agreement between Lender or any other person or entity shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, or of any other person or entity who may become liable for the payment of all or any part of the Indebtedness under this Note, the Loan Agreement or the other Loan Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Loan Documents. If Borrower is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership, and the term "Borrower," as used herein, shall include any alternate or successor partnership, but any predecessor partnership and their general partners shall not thereby be released from any liability. If Borrower is a limited liability company, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the members comprising the company, and the term "Borrower," as used herein, shall include any alternate or successor company, but any predecessor company shall not thereby be released from any liability. If Borrower is a corporation, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "Borrower" as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. Nothing contained in this grammatical paragraph is intended to or shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such entity which may be set forth in the Loan Agreement, the Mortgage or any other Loan Documents.

2.4 **Collection.** In the event of a default in the payment of any amount due hereunder, the holder hereof may exercise any remedy or remedies, in any combination whatsoever, available by operation of law or under any instrument given as security for this Note and such holder shall be entitled to collect its reasonable costs of collection, including attorneys' fees, which shall be additional Indebtedness. For purposes of the preceding sentence, Lender's attorneys' fees shall be deemed to include compensation to staff counsel, if any, of Lender in addition to the fees of any other attorneys engaged by Lender. Lender may, and Borrower hereby authorizes Lender to, charge any account of Borrower held by Lender and apply any and all balances, credits, deposits, accounts, monies, reserves, certificates of deposit, cash equivalents and other assets of or in the name of Borrower held by Lender to the Indebtedness evidenced

hereby, and Lender may pursue all its rights and remedies against Borrower under the Loan Documents.

2.5    Governing Law. THE TERMS OF THE LOAN EVIDENCED BY THIS NOTE AND THIS NOTE WERE EACH NEGOTIATED IN THE STATE OF ILLINOIS, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.    THEREFORE, THIS NOTE SHALL BE CONSTRUED AND INTERPRETED WITH, AND GOVERNED BY THE INTERNAL LAWS OF THE STATE OF ILLINOIS (WITHOUT GIVING EFFECT TO ILLINOIS CHOICE OF LAW PRINCIPLES); PROVIDED, HOWEVER, THAT THE LAWS OF THE STATE OF GEORGIA SHALL APPLY TO THE CREATION, PERFECTION AND ENFORCEMENT OF ANY LIENS, SECURITY INTERESTS AND ENCUMBRANCES GRANTED OR CREATED BY THE MORTGAGE ON REAL OR PERSONAL PROPERTY LOCATED IN THE STATE OF GEORGIA AND THE MANAGEMENT, OPERATION, DISPOSITION AND REALIZATION OF THE SECURITY PROVIDED THEREBY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE LAWS OF THE STATE OF ILLINOIS SHALL APPLY TO ALL MATTERS RELATING TO THE CHARGING AND COLLECTION OF INTEREST UNDER THIS NOTE AND WITH RESPECT TO OTHER SECURED OBLIGATIONS UNDER THE MORTGAGE, AND TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE.

2.6    Severability. If any term, restriction or covenant of this instrument is deemed illegal or unenforceable, all other terms, restrictions and covenants and the application thereof to all persons and circumstances subject hereto shall remain unaffected to the extent permitted by law; and if any application of any term, restriction or covenant to any person or circumstance is deemed illegal, the application of such term, restriction or covenant to other persons and circumstances shall remain unaffected to the extent permitted by law.

2.7    Notices. All notices, requests, reports, demands or other instruments required or contemplated to be given or furnished under this Note to Borrower or Lender shall be directed to Borrower or Lender as the case may be at their respective address as set forth in the Loan Agreement. Notices shall be delivered in accordance with the methods for the giving of notices that are provided under the Loan Agreement.

2.8    WAIVER OF JURY TRIAL. BORROWER AND LENDER, BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE OR ANY OTHER LOAN DOCUMENTS AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED.    THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY BORROWER AND LENDER, AND BORROWER ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON

BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER AND LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THE LOAN DOCUMENTS AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. BORROWER AND LENDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

2.9   **CONSENT TO JURISDICTION.** BORROWER HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF COOK, STATE OF ILLINOIS AND IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED IN SUCH COURTS. BORROWER EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS. BORROWER HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON BORROWER BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWER, AT THE ADDRESS SET FORTH IN THE LOAN AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.

2.10   **Loan Documents.** The obligations evidenced by this Note are secured by Liens in favor of Lender granted by Borrower. All terms, covenants and conditions contained in the Loan Documents are hereby incorporated herein by reference. In the event of any conflict or inconsistency between the terms of this Note and the terms of the Loan Agreement, the terms of the Loan Agreement shall govern and control.

2.11   **No Modification, Waiver.** No modification, waiver, amendment, discharge or change of this Note shall be valid unless the same is in writing and signed by Borrower and Lender.

2.12   **Joint and Several Obligations.** The obligations evidenced hereby shall be the joint and several obligations of all signatories or makers of this Note.

2.13   **Transfer of Note.** Upon the transfer of this Note, Borrower hereby waiving notice of any such transfer except to the extent expressly provided in the Loan Agreement, Lender may deliver all the collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall from that date forward forever be relieved and fully discharged from

- 4 -

any liability or responsibility in the matter, but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

**[The balance of this page is blank; signature page follows.]**

Bristol Court

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first above written.

**THE LANDINGS FLORIDA, LLC,**
a Florida limited liability company

By:    The Landings Florida Member, LLC,
a Delaware limited liability company,
Its Sole Member and Manager

By:    Spinnaker/Regatta V, LLC,
a Washington limited liability company,
Its Sole Member and Manager

By:    CVI/Spinnaker/Regatta V, Inc.,
a Washington corporation,
Its Manager

By: _____
Name: Richard Nathan
Title:   President and Sole Director

08 C 1492

JUDGE BUCKLO
MAGISTRATE JUDGE VALDEZ

# Exhibit B

Bristol Court

# LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT (this "Agreement")**, which is dated as of February 28, 2006, is by and between Borrower and Lender, as those terms are defined below, who, in consideration of the mutual covenants, conditions and agreements herein contained, agree as follows:

## ARTICLE 1
## DEFINITIONS

1.1 **Parties and Basic Terms.** The terms set forth below, as used in this Agreement, shall have the meanings given them in this Section.

### 1.1.1 Borrower and Guarantor(s).

(a) **"Borrower"** means: The Landings Florida, LLC, a Florida limited liability company.

(b) **"Borrower's Address"** means: c/o Commercial Ventures, Inc., 12100 Wilshire Blvd., Suite 250, Los Angeles, CA 90025, Attn: Richard Nathan and Greg Beach. Facsimile No.: (310) 207-8497.

(c) **"Borrower's Counsel"** means: Shumaker Steckbauer Weinhart, Brian Weinhart.

(d) **"Borrower's Counsel's Address"** means: 333 S. Hope Street, 36th Floor, Los Angeles, CA 90071, Attn: Brian Weinhart, Facsimile No.: (213) 229-2870.

(e) **"Guarantors"** means: Collectively, Commercial Ventures, Inc., a Delaware corporation **("CVI")**, and Richard J. Nathan, individually, each, a **"Guarantor"**.

### 1.1.2 The Lender.

(a) **"Lender"** means: ORIX Real Estate Capital, Inc. and its successors and assigns.

(b) **"Lender's Address"** means: 100 North Riverside Plaza, Suite 1400, Chicago, Illinois 60606. Facsimile No. (312) 669-6464.

(c) **"Lender's Counsel"** means: Gardner Carton & Douglas LLP, Michael E. Mermall, Esq.

(d) **"Lender's Counsel's Address"** means: 191 N. Wacker Drive, Suite 3700, Chicago, Illinois 60606. Facsimile No.: (312) 569-3448.

CH01/ 12462729.7

### 1.1.3    The Property.

(a)    "**Improvements**" include the following:  a 440 unit apartment complex containing a total of approximately 381,496 rentable square feet, commonly known as Bristol Court Apartments, as more defined in Schedule 1.2.

(b)    "**Land**" means:  The approximately 39.434 acre parcel of land having a common address of 3655 Westchase Village Lane, Norcross, Georgia  30092 and being legally described on attached Exhibit A.

(c)    "**Project**" means:  The acquisition, renovation and re-tenanting of the Property.

### 1.1.4    The Loan.

(a)    "**CapEx Holdback**" means:  A holdback from the proceeds of the Loan in the amount of $2,000,000.

(b)    "**CapEx Reserve**" means a reserve account established by and under the control of Lender pursuant to Section 2.6.

(c)    "**Commitment Fee**" means:  $265,000.

(d)    "**Default Rate**" means:  The per annum rate equal to the Interest Rate plus 500 Basis Points.

(e)    "**Exit Fee**" means:  (a) if the Loan becomes due during the Lockout Period by reason of an acceleration of the Maturity Date following an Event of Default, one percent (1%) of the Loan Amount plus the interest thereon which would be payable during the Lockout Period (determined based on the Interest Rate in effect at the time of such Event of Default) less interest actually paid during the Lockout Period, (b) if a portion of the Loan Amount is prepaid after the Lockout Period, one percent (1%) of the amount prepaid and (c) if the Loan is paid in full after the Lockout Period, whether by prepayment or upon maturity, one percent (1%) of the Loan Amount less any portion thereof paid in connection with any previous prepayments.

(f)    "**Fire Damage Reserve**" means a reserve account established by and under the control of Lender pursuant to Section 2.7.

(g)    "**Holdbacks**" means:  Collectively, the Interest Holdback and the CapEx Holdback, each a "**Holdback**".

(h)    "**Initial Disbursement**" means:  Up to $24,100,000, provided that the actual Initial Disbursement will be determined by Lender based upon the Loan Budget and approved closing costs and disbursements.

(i)    "**Interest Holdback**" means:  A holdback from the proceeds of the Loan in the amount of $400,000.

(j) **"Interest Rate"** means: A per annum rate equal to LIBOR plus 350 Basis Points. The Interest Rate shall be adjusted on the first day of each calendar month based upon LIBOR in effect on the second to last Business Day of the preceding month, except that if the last day of such month is a day on which the Wall Street Journal is not published or a day on which LIBOR is not published in the Wall Street Journal, then LIBOR for that month shall be LIBOR as published on the immediately preceding day on which the Wall Street Journal is published, provided that if the Wall Street Journal is no longer available as a source for determination of LIBOR, LIBOR will be determined from another readily available source selected by Lender in its sole discretion. In the event that no LIBOR shall be published, Lender (in its sole discretion) may substitute another rate approximating the LIBOR (which substitute rate may be reasonably adjusted by Lender) to the effect that such substitute rate will provide for an interest rate equivalent to the Interest Rate which would have been effective if the LIBOR were quoted, as determined by Lender (in its sole discretion).

(k) **"Loan Amount"** means: $26,500,000.

(l) **"Loan Budget"** means: The sources and uses of the Loan Amount set forth on <u>Exhibit B</u>.

(m) **"Lockout Period"** means: The period commencing on the Closing Date and ending on the first anniversary of the Closing Date.

(n) **"Maturity Date"** means: February 27, 2009.

(o) **"Retaining Wall Reserve"** means a reserve account established by and under the control of Lender pursuant to <u>Section 2.8</u>.

### 1.1.5   <u>Third Parties</u>.

(a) **"Broker"** means: Charter Capital.

(b) **"Property Manager"** means: GREP Southeast, LLC-Management Series, a Delaware limited liability company, and any successor Property Manager approved by Lender, which approval will not be unreasonably withheld.

(c) **"Property Manager's Address"** means: 4511 North Himes Avenue, Suite 245, Tampa, FL 33614.

(d) **"Management Agreement"** means: That certain Property Management Agreement dated February 28, 2006 between Borrower and Property Manager, and any successor management agreement approved by Lender.

(e) **"Title Company"** means: Chicago Title Insurance Company, 700 S. Flower Street, Suite 800, Los Angeles, CA 90017, Attn: Lizeth Villalobos.

### 1.1.6   <u>Leasing</u>.

(a)    "**Residential Lease**" means any proposed residential Lease that (i) is on a form previously approved by Lender, (ii) demises less than five (5) residential units of the Property to a single individual or entity, (iii) has a term of not greater than one (1) year with no extension rights, (iv) is at no less than market rental rates, as determined by Lender, and (v) does not grant the tenant any purchase option or right of first refusal to purchase all or any portion of the Property or otherwise contain terms that would cause a material impairment of Lender's security.

1.2    **Additional Definitions**.  Schedule 1.2 attached to this Agreement sets forth additional defined terms and such terms are hereby incorporated in this Agreement and expressly made a part of this Agreement by this reference.

# ARTICLE 2
# TERMS OF THE LOAN

2.1    **Agreement to Lend and Borrow**.  Subject to and upon the terms and conditions set forth in this Agreement, Lender agrees to lend to Borrower and Borrower agrees to borrow from Lender, from time to time, such sums as may be requested by Borrower, the total of which shall not exceed the Loan Amount to be used, as provided in this Agreement in conformance with the Loan Budget.

2.2    **Loan Disbursements**.

2.2.1    **Initial Disbursement**.    Upon satisfaction of all applicable conditions set forth in Section 3.1, Lender will make an advance of the Loan in the amount of up to the Initial Disbursement.  The actual amount of the Initial Disbursement shall be determined by Lender based on the Loan Budget. Borrower shall give Lender not less than two (2) Business Days prior written notice of the date Borrower desires to receive the Initial Disbursement.

2.2.2    **Holdbacks**.  The Holdbacks shall be available for disbursement upon satisfaction of the applicable terms and conditions of this Agreement.  Advances from each of the Holdbacks shall not exceed the amount of the applicable Holdback as set forth in Section 1.1 of this Agreement.

(a)    Lender shall make Advances to itself solely for the payment of Accrued Interest from the Interest Holdback in an amount equal to the Monthly Interest Deficiency.

(b)    Lender shall make Advances of the CapEx Holdback solely to pay for Approved CapEx Expenses, and only to the extent there are not sufficient funds in the CapEx Reserve.

2.3    **Payments**.

2.3.1    **Interest and Principal**.

(a)    The principal balance of the Loan shall bear interest at the Interest Rate or, as applicable, the Default Rate.  Interest shall accrue on the principal balance of the Loan, from time to time, based on a 360 day year and charged for the actual number of days outstanding.

Commencing on the first Scheduled Payment Date, and on or before each Scheduled Payment Date thereafter, Borrower shall pay, in arrears, all Accrued Interest.

(b)    Borrower shall pay all Indebtedness, including the entire outstanding principal balance of the Loan, all Accrued Interest and the Exit Fee on the Maturity Date.

(c)    Following the occurrence of an Event of Default, interest shall be computed at, and Borrower shall pay interest on the unpaid principal balance of the Loan at, the Default Rate until such Event of Default has been cured to Lender's satisfaction. All other payments, reimbursements and other amounts due from Borrower to Lender under the Loan Documents not paid when due shall bear interest at the Default Rate from the date when due until the date when received by Lender. Acceptance by Lender and payment by Borrower at the Default Rate is not a permitted alternative to the full and timely payment of all amounts due and payable under the Loan Documents and shall not limit or prejudice Lender's rights and remedies for non-payment.

(d)    At any time after the expiration of the Lockout Period, upon not less than thirty (30) days prior written notice to Lender, Borrower may prepay the Loan in whole or in part, provided that (1) if the principal amount is being prepaid in part, Borrower shall also pay the proportionate amount of the Exit Fee and (2) upon any payment of the entire principal balance of the Loan, all other Indebtedness, including all Accrued Interest and the Exit Fee shall also be paid in full. Such notice shall specify the amount to be prepaid and the date on which such prepayment shall occur. All prepayments (other than mandatory prepayments or a payment of the entire Loan balance) shall be in increments of $25,000.

(e)    Lease termination fees payments shall be paid to Lender and held in the CapEx Reserve.

(f)    Unless otherwise specified in this Agreement, all amounts payable to Lender shall be due and payable within ten (10) days after written request or invoice.

2.3.2    **Application of Payments.** Except as otherwise specifically set forth in this Agreement, all payments shall be applied to the Indebtedness in such order, priority and manner as Lender may elect.

2.3.3    **Place and Manner of Payment.** The payment of all amounts due under this Agreement and the other Loan Documents shall be deemed received only when actually received by Lender in Dallas, Texas and, if Lender so elects, shall be made by ACH from the Blocked Account or other depository account approved. Payments received after 1:00 p.m. in said location shall be deemed received on the next day Lender is open for business. At Lender's option, Lender may accept payments by check or in form other than immediately available funds, but such payments shall be accepted subject to collection and, at Lender's option, shall be deemed received only when collected. Acceptance by Lender of payments in other than immediately available funds or by ACH shall not constitute a waiver by Lender of its rights to insist that any subsequent payment be made in immediately available funds or by ACH. All amounts due from Borrower or any Borrower Party under the Loan Documents shall be payable without setoff, counterclaim or any other deduction whatsoever.

2.3.4 **Late Payment Fee.** If any payment due on any Scheduled Payment Date or any other amount due hereunder (other than the principal amount due on the Maturity Date) is not made within ten (10) days of the Scheduled Payment Date, or, as applicable, ten (10) days (or such earlier time as may be specified herein) after request for payment by Lender, Lender, at its option and in addition to any other remedy available to Lender, may impose a late payment fee, which Borrower covenants to pay upon demand calculated at the rate of five percent (5%) of the amount of such delinquent payment or deposit. Without limiting the foregoing, any late payment fee shall be paid without prejudice to the right of Lender to collect any other amounts provided to be paid upon an Event of Default, including without limitation any other amounts due at the Default Rate, or to declare a default hereunder under any of the other Loan Documents.

## 2.4 **Legal Interest.**

2.4.1 **Savings.** In the event the interest (including without limitation, at the Default Rate) or other payments required to be made under the Loan Documents or otherwise, shall at any time exceed the Legal Limits, all such sums paid by Borrower or any guarantor(s) or indemnitor(s) for the period in question that exceed the Legal Limits, automatically and without further documentation or action by Borrower, any guarantor(s) or indemnitor(s) or Lender, shall be applied to the Indebtedness, in such order and manner as Lender may elect, but only to the extent that it does not violate the Legal Limits, or if the Indebtedness has been repaid in full and Borrower and Guarantors have performed and satisfied all of the other Obligations, then such excess shall be refunded to Borrower. In no event whatsoever shall the amount of interest paid or agreed to be paid to Lender pursuant to this Loan Agreement, the Note or any of the Loan Documents exceed the Legal Limits. Neither Borrower nor any guarantor, endorser or surety nor their heirs, legal representatives, successors or assigns shall have any action against Lender for any damages whatsoever arising out of the payment or collection of any amounts that exceed the Legal Limits, and all such claims and causes of action are hereby indefeasibly waived and released.

2.4.2 **Default Interest.** Borrower acknowledges that the occurrence of any Event of Default will (a) require Lender to incur additional expense in servicing and administering the Loan, and (b) result in loss to Lender of the use of the money due and impede Lender in meeting its other financial and loan commitments. Borrower further acknowledges that the damages caused thereby will be extremely difficult and impractical to ascertain. Accordingly, Borrower agrees that any late payment fee imposed on Borrower under this Agreement represents the reasonable estimate of Lender and Borrower of a fair compensation for the loss that may be sustained by Lender due to the failure of Borrower to make timely payments, and that the accrual of interest at the Default Rate is a reasonable estimate of the damage to Lender in the event of such default, regardless of whether there has been acceleration of the Indebtedness.

## 2.5 **Deposits and Reserves.**

2.5.1 **Tax and Insurance Deposits.** On or before the Closing Date, Borrower shall (a) pay all Impositions and Premiums then due and payable or due and payable within thirty (30) days after the Closing Date and (b) deposit with Lender an amount sufficient,

when added to the Monthly Tax Deposits and Monthly Insurance Deposits to be collected prior to the dates when Impositions and Premiums next become due and payable, to pay such Impositions and Premiums no less than thirty (30) days in advance. On each Scheduled Payment Date, Borrower shall deposit with Lender the Monthly Tax Deposit and the Monthly Insurance Deposit.

2.5.2  **Holding of Deposits, Security Interest.**  All Deposits may be commingled with other funds of Lender, except as specifically provided in this Agreement. Lender shall cause the Deposits to be held by a depository designated by Lender in one or more interest bearing accounts (with such interest being for the benefit of Borrower, provided Lender does not guarantee any specific interest rate or return). A security interest within the meaning of the Code is hereby granted to Lender in and to all Deposits and all of Borrower's right, title and interest therein are hereby assigned to Lender, all as additional security for the Indebtedness and shall not be subject to the direction or control of Borrower. Lender shall not be liable for any failure to apply any Deposit, in the absence of gross negligence or willful misconduct of Lender. Lender shall not be liable for any act or omission taken in good faith or pursuant to the instruction of any party. In the event of an Event of Default, Lender may at its option, without being required to do so, apply any portion of the Deposits, other than unforfeited tenant security deposits, to pay Indebtedness, including Charges, in such order and manner as Lender may elect. To the extent Deposits are used to pay Indebtedness, Borrower shall immediately upon demand by Lender, deposit with Lender an amount equal to the amount so used.

2.5.3  **Use of Deposits.**  Provided no Event of Default then exists, the Monthly Tax Deposits and the Monthly Insurance Deposits will be used for the payment of the Impositions and Premiums next due and payable when they become due. Upon demand by Lender, Borrower shall deliver and pay over to Lender from time to time such additional sums or such additional security as are necessary to make up any deficiency in the amount necessary, as reasonably determined by Lender, to enable Lender to fully pay the Impositions and Premiums as they become due and payable. If the funds so deposited exceed the amount required to pay Impositions and Premiums for any year, the excess shall be applied to subsequent Monthly Tax Deposits, as reasonably determined by Lender. Provided that no Default or Event of Default then exists and all applicable conditions set forth in Section 3.2 have been satisfied, Borrower, at its option, may request (and Lender shall disburse) an Advance from the CapEx Reserve to pay for Approved CapEx Expenses.

2.6  **Blocked Account.**  Borrower will cause all Revenues to be deposited to the Blocked Account and shall give irrevocable notices to tenants and other account debtors of Borrower or the Property to make all payments, if made by wire transfer, directly to the Blocked Account. Borrower will disburse funds from the Blocked Account (by ACH or otherwise) in the following order of priority:

(a)  First, to pay any unpaid Charges;

(b)  next, to pay all Accrued Interest then due and payable except if there are undisbursed amounts in the Interest Holdback, Revenues shall be applied first to the items described in subsections (c) and (d) below and then to Accrued Interest;

(c)     next, to Lender to make the required amount of the (Monthly Tax Deposits and the Monthly Insurance Deposit);

(d)     next, to pay Eligible Expenses; and

(e)     finally, the Revenues remaining after the payments described in (a), (b), (c) and (d) above shall be paid to Lender and deposited into the CapEx Reserve.

The amounts described in clauses (a), (b), (c) and (d) shall be due and payable on each Scheduled Payment Date whether or not Revenues or the Interest Holdback are sufficient therefor.  Notwithstanding anything contained in this Section 2.6 to the contrary, provided that there are Revenues remaining after having made the payments described in clauses (a), (b), (c) and (d) above, and so long as (i) No Default or Event of Default shall have occurred and be continuing, (ii) the Project Yield is at least eight and one-half percent (8.5%), and (iii) Net Operating Income is equal to or greater than the product obtained by multiplying the Debt Service by 1.10, then, prior to any payment into the CapEx Reserve pursuant to clause (e) above, an amount not to exceed one-twelfth (1/12) of the product obtained by multiplying 0.085 by $3,965,000 shall be paid to Borrower not more than once in any thirty (30) day period (the "**Borrower Return**").

2.7     **Fire Damage Reserve**.  On the Closing Date, Borrower shall deposit with Lender an amount equal to $50,000 to be held in the Fire Damage Reserve.  Provided that no Default or Event of Default then exists and all applicable conditions set forth in Sections 3.2 and 5.2.6 have been satisfied, Borrower, at its option, may request (and Lender shall disburse) an Advance from the Fire Damage Reserve to pay for approved Fire Damage Repairs.

2.8     **Retaining Wall Reserve**.  On the Closing Date, Borrower shall deposit with Lender an amount equal to $200,000 to be held in the Retaining Wall Reserve.  Provided that no Default or Event of Default then exists and all applicable conditions set forth in Sections 3.2 and 5.2.6 have been satisfied, Borrower, at its option, may request (and Lender shall disburse) an Advance from the Retaining Wall Reserve to pay for approved Retaining Wall Work.

# ARTICLE 3
## CONDITIONS TO DISBURSEMENTS

3.1     **Conditions to Initial Disbursement**.  Lender's obligation to close the Loan and make the Initial Disbursement is conditioned upon Borrower's and Guarantors' execution, delivery and performance, as applicable, each in form and substance satisfactory to Lender in its sole discretion, of the following:

3.1.1     **Checklist**.  All items set forth on the Closing Checklist, as the same may be amended from time to time.

3.1.2     **Loan Documents**.  Originals of such promissory notes, mortgages, deeds of trust, guaranties, pledges and other Loan Documents as Lender shall require shall have been executed and delivered to Lender.

CH01/ 12462729.7                                    -8-

3.1.3    **Completion of Purchase.**  Evidence that Borrower has completed the acquisition of the Property shall have been delivered to Lender.

3.1.4    **Commitment Fee.**    Borrower  shall  have  paid  Lender  the Commitment Fee.

3.1.5    **Title.**  The Title Policy, in form satisfactory to Lender shall have been issued to Lender.

3.1.6    **Survey.**  Lender shall have received a current Survey.

3.1.7    **Insurance.**  Lender shall have received evidence of compliance with the insurance requirements of the Loan Documents and evidence of the payment of all Premiums then due and payable for the then current policy period.

3.1.8    **Environmental Reports.**  Lender shall have received a copy of the Environmental Site Assessment and any other Environmental Report required by Lender.

3.1.9    **Zoning.**  Lender shall have received a Property Zoning Report prepared by The Planning and Zoning Resource Corporation or a similar research firm approved by Lender, letters or other evidence with respect to the Property from the appropriate Governmental Authority concerning compliance with building codes and zoning laws, if available, and the Title Policy shall have an ALTA 3.1 zoning endorsement, with coverage for parking.

3.1.10    **Engineering Reports.**  Lender shall have received Engineering Reports.

3.1.11    **Lien Search Reports.**  Lender shall have received search reports satisfactory to it with respect to uniform commercial code financing statements, tax liens, judgments, the OFAC lists and criminal backgrounds of all individual Guarantors or controlling owners of Borrower conducted by a search firm or firms acceptable to Lender with respect to the Property and, as applicable, each Borrower Party in such jurisdictions as Lender shall have reasonably requested.

3.1.12    **Authority.**    Borrower  shall  have  delivered  or  caused  to  be delivered to Lender copies, certified by an officer or other authorized Person of the applicable Borrower Party of: (i) all such Organizational Documents related to each Borrower Party, which is an entity in each case together with each amendment thereto and certified (as of a date reasonably near the Closing Date) by the applicable Secretary of State as being a true and correct copy; (ii) a certificate of the Secretary of State of the jurisdiction of each Borrower Party's formation (dated reasonably near the Closing Date), certifying that each Borrower Party is duly formed and in good standing under the laws of the State of the jurisdiction of its respective organization; (iii) a certificate of the Secretary of State of the State in which the Property is located (dated reasonably near the Closing Date), stating that each Borrower Party is duly qualified and in good standing in such State; (iv) a certificate of Borrower signed by a duly authorized officer or other authorized Person (dated as of the Closing Date), certifying (A) as to the truth of the representations and warranties in all material respects contained in the Loan

Documents to which such parties are a party, both before and after giving effect to the making of the Loan by Lender and to the application of the proceeds therefrom and (B) that to Borrower's Knowledge, no material event has occurred and is then continuing, or would result from the making of the Loan by Lender or from the application of the proceeds therefrom, that constitutes or would constitute an Event of Default; (v) a certified copy of the resolutions of each Borrower Party which is an entity approving the Loan, this Agreement, the Note and each of the other Loan Documents to which such Borrower Party is or is to be a party, and of all other documents evidencing other necessary partnership, limited liability company or corporate action and governmental and other third party approvals and consents, if any, with respect to the Loan, this Agreement, the Note and each other Loan Document; and (vi) a notarized certificate of each of Borrower Party which is an entity certifying the names and true signatures of the Persons authorized to sign this Agreement, the Note and each of the other Loan Documents to which such Borrower Party is or is to be a party and the other documents to be delivered hereunder and thereunder.

3.1.13  **Opinions of Counsel.**  Lender shall have received legal opinions from counsel satisfactory to Lender with respect to:  (i) the due organization and existence of each Borrower Party; (ii) the due execution, delivery, authority, and enforceability of the Mortgage, this Agreement, the Note, the Environmental Indemnity, the Guaranty and each of the other Loan Documents to which any Borrower Party is a party; (iii) usury; (iv) knowledge of adverse claims or violations of Organizational Documents or material contracts of Borrower Parties which are entities; (v) local filing requirements with respect to perfection; and (vi) such other matters as Lender may reasonably require.

3.1.14  **No Material Adverse Change.**  Lender shall be satisfied that, as of the Closing Date, there shall have been no change or development, since February 16, 2006, that has or will have a Material Adverse Effect on Borrower or any Guarantor.

3.1.15  **[Reserved]**

3.1.16  **Appraisal.**  Lender shall have received an Appraisal reasonably satisfactory to Lender.

3.1.17  **Financial Statements.**  Each Guarantor shall have provided the required financial statements of each Guarantor for the fiscal year to date ending December 31, 2005, all of which statements shall be accompanied by a certificate of the Guarantor (or an officer or authorized representative of any Guarantor which is an entity) certifying that each such financial statement presents fairly in all material respects the financial condition or operating results, as applicable, of such Guarantor and has been prepared in accordance with sound accrual basis accounting practices, which shall be consistently applied.

3.1.18  **No Injunction.**  No law or regulation shall have been adopted, no order, judgment or decree of any Governmental Authority shall have been issued, and no litigation shall be pending or threatened, which in the good faith judgment of Lender would enjoin, prohibit or restrain, or impose or result in a Material Adverse Effect upon, the making or repayment of the Loan or the consummation of the transactions contemplated hereby.

CH01/ 12462729.7                                    -10-

3.1.19 **Payment of Lender Expenses by the Borrower.** Borrower shall have paid all Charges then due and payable.

3.1.20 **Additional Information.** Lender shall have received such other information and documentation with respect to each Borrower Party and its respective Affiliates, the Property and the transactions contemplated herein as Lender may reasonably request.

3.1.21 **Site Inspections.** Lender shall have performed or caused to be performed on its behalf, on-site due diligence reviews of the Property.

3.1.22 **Borrower's Equity.** Lender shall be satisfied that Borrower's cash equity in the Property is no less than $3,965,000.

3.1.23 **Other Requirements.** Borrower shall have complied with such other closing requirements as Lender shall reasonably impose.

3.2 **Advances.** Advances shall be available upon satisfaction of the following conditions:

3.2.1 **All Advances.** Each Advance shall be subject to satisfaction of each of the following conditions:

(a) Any request for an Advance shall be submitted to Lender on Lender's form of request, not less than ten (10) Business Days prior to the anticipated disbursement date for the Advance, and shall be accompanied by all evidence reasonably required to be approved by Lender as a condition to such Advance, including, with respect to the conditions set forth in clauses (d) and (e) below, a certificate from an officer or authorized representative of Borrower approved by Lender stating that said conditions are then satisfied. No Advance will be made less than sixty (60) days prior to the Maturity Date.

(b) Lender shall not be required to make more than one Advance (which may consist of disbursements of one or more of the Holdbacks) during any calendar month. Each monthly Advance shall be in a minimum amount of $25,000 or, if less, the remaining undisbursed amount of the applicable Holdback.

(c) Lender may, in its reasonable discretion, require an endorsement to the Title Policy, in form and content satisfactory to Lender, insuring, in effect, that such Advance has the same priority as the Initial Disbursement and that there has been no material adverse change in the condition of title to the Property, including the absence of any Lien or exception which is not a Permitted Exception, since the issuance of the Title Policy.

(d) No actions, suits or proceedings shall then be pending nor have any been threatened against or which affect Borrower, any Guarantor or the Property and no event or circumstance shall have occurred which could have a Material Adverse Effect on Borrower or any Guarantor.

(e)   No Default or Event of Default shall have occurred and be continuing and all representations and warranties set forth in this Agreement and in any other Loan Document shall be true and correct.

(f)   All Loan Documents shall be in full force and effect.

(g)   Borrower shall pay Lender a processing fee equal to $300.

### 3.2.2   [Reserved]

### 3.2.3   **Advances for Construction Projects**.  All Advances from the CapEx Holdback or the CapEx Reserve in respect of a Construction Project shall be subject to the satisfaction, as determined by Lender, of each of the following conditions, in addition to the conditions set forth in Section 3.2.1 above:

(a)   All requirements of Section 5.2.1 and 5.2.3 shall have been satisfied.  All Construction Contracts with respect to such Construction Project shall be in full force and effect, and Lender shall have approved any modifications to the Construction Documents, which approval shall not be unreasonably withheld, conditioned or delayed.

(b)   There shall be no substantial unrepaired damage to the Property by fire or other casualty which is not in Lender's reasonable judgment adequately covered by collectible proceeds of insurance which will be made available to Borrower by Lender for such purpose.

(c)   All permits, licenses and approvals, including, without limitation, all environmental approvals, necessary for Completion of such Construction Project in compliance with the Construction Documents shall have been issued in form and substance reasonably satisfactory to Lender.

(d)   All utilities and municipal services, including, without limitation, storm and sanitary sewers, required for such Construction Project shall be available at the Property and Borrower shall have the right to tie into such utilities and municipal services.

(e)   Advances in connection with any Construction Project shall be subject to contractor retainages of ten percent (10%) of the value of work performed, as reasonably determined by Lender.

(f)   The Construction Project, when completed in accordance with applicable Construction Documents, will be in compliance with all Applicable Laws and all consents or approvals required from third parties or any Governmental Authorities have been obtained or will be obtained prior to the time that such approvals are required.

(g)   Lender's consultant, if applicable, shall have issued a report dated within ten (10) days' prior to any requested Advance to the effect that the Construction Project is in substantial compliance with the Approved Plans and other Construction Documents and that the Construction Project is In Balance.

(h)     All materials for such Construction Project shall have been installed at the Property.

(i)     To the extent that additional permits, approvals or licenses for construction have been issued since the last construction disbursement, copies of such additional permits shall have been delivered to Lender.

(j)     Contractors, subcontractors and materialmen have submitted such sworn statements or affidavits and lien waivers as Lender or the Title Company may require.

(k)     Those Construction Contracts designated by Lender (including subcontracts if the general contractor is an Affiliate of Borrower or any Guarantor) shall have been collaterally assigned to Lender on Lender's form and acknowledged by the applicable contractor.

(l)     [Reserved]

(m)     Borrower shall have obtained or caused its contractors to obtain such insurance and/or dual obligee performance bonds and payment bonds as Lender may reasonably require.

(n)     No Deficiency then exists.

3.2.4   **Completion.** Upon Completion of each Construction Project, and as a condition to any final Advance or Advance for the payment of retainage requested with respect to such Construction Project, Borrower shall deliver, or cause to be delivered to Lender, the following, each in form and substance satisfactory to Lender:

(a)     Certificates of Lender's consultant, if any, the Architect and the general contractor that such Construction Project is Complete, except that no such certificates will be required for Exempt Projects.

(b)     If the Construction Project affected or altered any matter that would be reflected on a survey, a current survey of the Property, certified by a registered land surveyor, with a certificate in favor of Lender and the Title Company.

(c)     Temporary or permanent certificate(s) of occupancy, or other evidence acceptable to Lender, together with all other appropriate certificates and other documentation that Lender may require from, and as are customarily issued by, applicable Governmental Authorities, evidencing (i) compliance with all Applicable Laws, except for non-compliance which could not have a Material Adverse Effect, and (ii) that no petitions, actions or proceedings are pending or threatened which could reasonably be expected to materially alter or declare invalid any approvals, consents, permits or certificates for or relating to such Construction Project, or any part thereof.

(d)     [Reserved]

(e)     If required by Lender, current searches of all Uniform Commercial Code financing statements filed with the Secretary of State of Borrower's organization and/or the recorder's office for the county in which the Property is located, against Borrower, as debtor, showing that no unterminated Uniform Commercial Code financing statements are filed or recorded against Borrower.

(f)     Final sworn statements or affidavits and waivers of lien (which may be conditioned upon final payment) from contractors, subcontractors and materialmen as required by Lender or the Title Company.

(g)     Such other items as Lender may reasonably require.

3.2.5   **Payments.**  Lender may, in its sole discretion, make Advances relating to a Construction Project through the Title Company pursuant to a construction loan disbursement escrow agreement or directly to the Contractor, or any subcontractor, material supplier or any vendor of fixtures, equipment, furniture, furnishings and other property. Advances of the Leasing Holdback for reimbursement to tenants for leasehold improvement allowances shall be subject to the provisions of this Section 3.2.

3.2.6   **Waiver and Reallocation.**  Lender may from time to time waive any condition or conditions to any Advances without such waiver or series of waivers constituting a course of dealing or any amendment to this Agreement or a prohibition against subsequent imposition of such condition or conditions or a waiver of any default.  Upon Borrower's request and provided no Deficiency exists, Lender may in its sole discretion, reallocate funds in any Holdback to a different Holdback or to a new holdback or reserve and in connection with any such reallocation the Loan Budget shall be amended accordingly.

3.2.7   **Consultants.**  At Borrower's expense, Lender shall have the right to employ an inspecting architect, engineer or consultant with respect to a Construction Project.

**ARTICLE 4**
**REPRESENTATIONS AND WARRANTIES**

4.1     **Representations and Warranties.**  Borrower represents and warrants that all statements set forth in this Article 4 are true as of the Closing Date and Borrower covenants that, except for those representations and warranties that relate to a specific date, Borrower shall cause the same to remain true until all Indebtedness has been paid and satisfied in full.

4.1.1   **The Property.**

(a)     The use and occupancy of the Property complies with all Applicable Laws and Operating Agreements, except for matters which, both individually and collectively, do not have a Material Adverse Effect.

(b)     Borrower has good, marketable and indefeasible fee simple title to the Land and Improvements and has good and merchantable title to the other Collateral, and such title and interest is free and clear of any lien, claim, restriction, security interest or encumbrance, other than Permitted Exceptions.

CH01/ 12462729.7                                    -14-

(c)    The Property is comprised of a single tax parcel, or group of contiguous tax parcels, which is or are separate and apart from any property not owned by Borrower, for real estate tax purposes.

(d)    The Property has adequate water, gas and electrical supply, storm and sanitary sewerage facilities, other required public utilities, fire and police protection, and means of access between the Property and public streets, and to Borrower's Knowledge all of the foregoing comply with all Applicable Laws.

(e)    No part of the Property has been taken by the power of eminent domain or condemnation nor is any proceeding for such a taking pending, or to Borrower's Knowledge, threatened.

(f)    To Borrower's Knowledge the Property is not located within an area designated as a "flood plain" or "flood hazard area" according to applicable flood plain and flood control surveys, except as shown on the surveys delivered to Lender.

(g)    Except for Construction Projects approved by Lender which are being conducted pursuant to the terms of this Agreement, to Borrower's Knowledge the Property, including all Improvements, and all grading, seeding and landscaping and all other on-site and off-site improvements have been completed in substantial accordance with all Applicable Laws, and have been fully equipped and paid for and is in good condition, order and repair in all respects material to its current and intended uses and to Borrower's Knowledge, there are no material defects or damage thereto.

(h)    To Borrower's Knowledge, as constructed, the Improvements have been inspected and approved by all necessary municipal authorities, and the Property, including the Improvements, is, to Borrower's Knowledge, in compliance with all Applicable Laws and with all requirements of applicable insurance carriers. Borrower has not received written notice from any insurance company or bonding company of any defects or inadequacies in the Property or any part thereof, which would, alone or in the aggregate, adversely affect the insurability of the same or cause the imposition of extraordinary premiums or charges thereon or of any termination or threatened termination of any policy of insurance or bond.

(i)    Except for the agreements listed on Exhibit F, the Property is not subject to any Material Agreement. Borrower has delivered to Lender copies of all agreements listed on Exhibit F.

(j)    To Borrower's Knowledge the Rent Roll is true, complete and correct and the Property is not subject to any Leases or other use or occupancy licenses or agreements other than the Leases described in the Rent Roll and which constitute Permitted Exceptions. To Borrower's Knowledge, except as set forth on the Rent Roll: (i) each Lease is in full force and effect; (ii) each tenant under each of the Leases has accepted possession of and is in occupancy of all of its respective demised premises, has commenced the payment of rent under its Lease, and has no offset right, claim or defense to the enforcement of its Lease; (iii) all rents due and payable under the Leases have been paid and (other than security deposits) no portion of such rents has been paid for any period more than 30 days in advance, and the Rent Roll shows any

unamortized free rent or rent abatements, any unused construction allowances and unperformed Landlord construction obligations; (iv) the rent payable under each Lease is the amount of fixed rent set forth in the Rent Roll, and there is no claim or basis for a claim by the tenant thereunder for an adjustment to the rent; (v) to Borrower's Knowledge, no tenant has made any claim against the landlord under any Lease which remains outstanding, there are no defaults on the part of the landlord under any Lease, and no event has occurred which, with the giving of notice or passage of time, or both, would constitute such a default; (vi) to Borrower's Knowledge, there is no present material default by the tenant under any Lease and no notice of termination has been issued under any Lease; (vii) all security deposits under Leases are as set forth on the Rent Roll; (viii) Borrower is the sole owner of the entire lessor's interest in each Lease; (ix) each Lease is the valid, binding and enforceable obligation of the Borrower and the applicable tenant thereunder; (x) no Person has any possessory interest in, or right to occupy, the Property except under the terms of the Lease; (xi) each Lease is subordinate to the Loan Documents, either pursuant to its terms or pursuant to a subordination, non-disturbance and attornment agreement; (vii) none of the Leases contains any option to purchase or right of first refusal to purchase the Property or any part thereof; (xiii) neither the Leases nor the Revenues (or any portion thereof) have been assigned or pledged except to Lender; (xiv) no other Person has any interest in any of the Leases except the landlord and the tenant thereunder; and (xv) no brokerage commissions remain unpaid or will become due and payable with respect to any Lease, including upon any expansion of the premises or any renewal or extension thereof.

(k)    The Operating Budget represents a full, complete, accurate and good faith estimate of all Revenues, Impositions, operating expenses, capital expenditures and reserves relating to the ownership and operation of the Property for the time periods reflected in said Operating Budget.

(l)    With respect to the Property, the Mortgage, when properly recorded in the appropriate records, together with any Uniform Commercial Code financing statements required to be filed in connection therewith, will create (i) a valid, perfected first priority lien on the Property, subject only to Permitted Exceptions; and (ii) perfected security interests in and to, and perfected collateral assignments of, all personal property of Borrower (including the Leases), all in accordance with the terms thereof, in each case subject only to any applicable Permitted Exceptions.

(m)    The Permitted Exceptions do not and will not materially adversely affect or interfere with: (i) the value, or intended use or operation, of the Property; (ii) the security intended to be provided by the Mortgage; (iii) Borrower's ability to repay the Note; or (iv) Borrower's ability to perform its obligations under any other Loan Document in accordance with the terms of the Loan Documents. Except as indicated in and insured over by the Title Policy, to Borrower's Knowledge there are no claims for payment for work, labor or materials affecting the Property which are or may become a Lien prior to, or of equal priority with, the Liens created by the Loan Documents (other than mechanics or materialmens liens for work or materials performed or supplied the costs for which are not yet past due or which are being contested in a manner permitted by this Agreement. Nothing in this Section 4.1.1 may be relied on by the Title Company issuing any policies covering the Property. No Person other than Borrower owns any interest in any payments due under the Leases that is superior to or of equal priority with Lender's interest therein.

(n)    All transfer taxes, deed stamps, intangible taxes or other amounts in the nature of transfer taxes required to be paid by any Person under Applicable Laws have been paid in full or deposited with the Title Company for payment upon recordation of the deeds effecting such transfer. All mortgage, mortgage recording, stamp, intangible or other similar tax required to be paid by any Person under Applicable Laws in effect in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of any of the Loan Documents, including the Mortgage, and the Liens intended to be created thereby, have been paid or will be deposited with a the Title Company for payment upon recordation of the Mortgage.

(o)    Borrower has delivered to Lender true and complete copies of all agreements and other instruments under which it or any of its Affiliates or any other Person have rights or obligations in respect of Borrower's acquisition or lease of the Property other than with respect to obligations (i) that may be incurred but are chargeable to the seller of the Property and not to Borrower and (ii) for which Borrower has been indemnified by the seller of the Property.

(p)    To Borrower's Knowledge there are no pending or proposed special or other assessments for public improvements or other matters affecting the Property, nor, to Borrower's Knowledge, are there any contemplated improvements to the Property that are likely to result in such special or other assessments.

### 4.1.2    Ownership Structure, Power and Authority.

(a)    All of the information regarding Borrower set forth in Section 1.1.1 of this Agreement is true and correct. Borrower is duly formed, validly existing and in good standing under the laws of the State of its organization and is qualified to do business in the State in which the Property is located. Borrower is a Single Purpose Entity. Borrower has no indebtedness for borrowed money other than the Indebtedness.

(b)    Exhibit C accurately depicts the ownership structure of Borrower. Each Borrower Party has the requisite authority to execute, deliver and carry out the terms and provisions of this Agreement, the Loan Documents and other documents to be executed and delivered by Borrower and each Guarantor, as applicable, pursuant to this Agreement. This Agreement constitutes, and the Loan Documents and other documents to be executed and delivered pursuant to this Agreement, when executed and delivered pursuant hereto, will constitute, the duly authorized obligations of the party or parties, other than Lender, executing the same.

(c)    True and complete copies of the Organizational Documents have been furnished to Lender, and there are no other agreements, oral or written, relating to any Borrower Party as regards the ownership and governance of any Borrower Party. The Organizational Documents were duly executed and delivered, are in full force and effect, and are binding upon and enforceable in accordance with their terms. No breach exists under the Organizational Documents and no act has occurred and no condition exists or after giving effect to this Agreement and the Loan Documents will exist, which, with the giving of notice or the passage of time, or both, would constitute a breach under or violate the Organizational Documents.

(d)    All consents, approvals or authorizations of or declarations, registrations or filings with any Governmental Authority or nongovernmental person or entity, including any creditor, member, partner or shareholder, as applicable of any Borrower Party, required in connection with the execution, delivery and performance of this Agreement or any of the Loan Documents, other than the recordation of the Mortgage and the filing of Financing Statements, have been obtained except for such consents, approvals or authorizations or of declarations or filings with any Governmental Authority or non-governmental person or entity where the failure to so obtain would not have a Material Adverse Effect on any Borrower Party or the prospect of repayment of the Indebtedness.

(e)    No Borrower Party is insolvent and there has been no: (i) assignment made for the benefit of the creditors of any of them; (ii) appointment of a receiver for any of them or for the property of any of them; or (iii) Insolvency Proceeding instituted by or against any of them.

(f)    None of Borrower or any Guarantor is in default under any Material Agreement or any other agreement to which Borrower or such Guarantor is a party, except for any default which could not have a Material Adverse Effect on Borrower or such Guarantor or the prospect of repayment of the Indebtedness or performance of the Obligations. No notice of default has been delivered by Borrower or Guarantor to any other party to a Material Agreement. The execution and delivery of the Loan Documents and the performance by Borrower and each Guarantor of their respective obligations under the Loan Documents: (i) do not violate any Applicable Laws; and (ii) do not conflict with, are not inconsistent with, and will not result, in any breach of any of the terms, covenants, conditions or provisions of, or constitutes a default under, any indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind which creates, represents, evidences or provides for any Lien, upon any of the assets of Borrower or any Guarantor, or any other indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind to which Borrower or any Guarantor, is a party or by which Borrower or any Guarantor, may be bound.

(g)    Except as set forth on Exhibit D attached hereto there are no actions, suits or proceedings pending or, to Borrower's Knowledge, threatened against or affecting Borrower, any Guarantor or the Property before any court or any governmental, administrative, regulatory, adjudicatory or arbitrational body or agency of any kind, including, without limitation, suits, actions or proceedings under the Racketeer Influenced and Corrupt Organizations Act of 1970, as amended, which could have a Material Adverse Effect on Borrower or such Guarantor.

(h)    Borrower is not and will not be an "employee benefit plan" as defined in Section 3(3) of ERISA, which is subject to Title I of ERISA; the assets of Borrower do not and will not constitute "plan assets" of one or more such plans for purposes of Title I of ERISA; Borrower is not and will not be a "governmental plan" within the meaning of Section 3(32) of ERISA; and transactions by or with Borrower are not and will not be subject to state statutes applicable to Borrower regulating investments of fiduciaries with respect to governmental plans.

(i)    None of (i) any Borrower Party; (ii) any person or entity Controlling or Controlled by Borrower or any Guarantor; (iii) any person or entity having a beneficial interest

in Borrower or any Guarantor, to the extent not a publicly held entity; (iv) any person or entity for whom Borrower is acting as agent or nominee in connection with this transaction; (v) any of the foregoing persons' or entities' partners, members, shareholders or other equity owners and none of their respective employees, officers, directors, representatives or agents; or (vi) to Borrower's Knowledge, any tenant of the Project, is an OFAC Prohibited Person.

(j)     Except for agreements approved by Lender, there are no agreements between Borrower and any of its Affiliates or Affiliates of a Guarantor relating to the Property.

(k)     No material adverse change has occurred in the operations or financial condition of Borrower or any Guarantor since the date the last financial statements of Borrower were delivered to Lender.

(l)     All financial data and statements prepared by or on behalf of Borrower and delivered to the Lender prior to the date hereof (i) are true, complete and correct, in all material respects; (ii) accurately represent in all material respects the financial condition or operating results, as applicable, of Borrower or the applicable Guarantor and the Property as of the date of such reports; and (iii) have been prepared in accordance with accounting principles consistently applied which have been approved by Lender.

(m)     Borrower and each Guarantor have filed, or caused to be filed, all material tax returns (federal, state, local and foreign) required to be filed and have paid all amounts of taxes shown thereon to be due (including interest and penalties) and all other taxes (including intangible fees, assessments and other governmental charges or taxes) owing (or necessary to preserve any Liens in favor of the Lender), by Borrower and Guarantor, except for such taxes (i) which are not yet delinquent or (ii) as are being contested in good faith and by proper proceedings, and against which adequate reserves are being maintained.  No extension of time for assessment or payment by a Guarantor of any federal, state or local tax is in effect.

(n)     Neither Borrower nor any Affiliate of Borrower is a "foreign person" within the meaning of Section 1445(f)(3) of the Code.

(o)     Borrower (i) has obtained all Licenses required as of the Closing Date by, and accomplished all filings, notifications, registrations and qualifications with (or obtained exemptions from any of the foregoing from), and (ii) will obtain, during the course of each Construction Project as and when required, all Licenses, and accomplish all filings, notifications, registrations and qualifications with (or obtain exceptions from any of the foregoing from), applicable Governmental Authorities to properly and legally own, develop, construct, manage and operate the Property and to conduct its business. All Licenses are or will be, valid and in full force and effect, and are not, or will not be, subject to any pending or, to Borrower's Knowledge, threatened, administrative or judicial proceeding to revoke, cancel or declare any of such Licenses invalid. Borrower is not in default or violation with respect to any of the Licenses in a manner that could have a Material Adverse Effect, and no event has occurred which constitutes, or, to Borrower's Knowledge, with due notice or lapse of time or both may constitute, a default by Borrower under, or a violation of, any of the Licenses that could have a Material Adverse Effect.

(p)    Borrower (i) has not entered into the Loan or any Loan Document with the actual intent to hinder, delay, or defraud any creditor and (ii) has received reasonably equivalent value in exchange for its obligations under the Loan Documents.    Giving effect to the transactions contemplated by the Loan Documents, the fair saleable value of Borrower's assets exceeds and will, immediately following the execution and delivery of the Loan Documents, exceed Borrower's total liabilities, including subordinated, unliquidated, disputed or contingent liabilities.  The fair saleable value of Borrower's assets is and will, immediately following the execution and delivery of the Loan Documents, be greater than its probable liabilities, including the maximum amount of Borrower's contingent liabilities or its debts as such debts become absolute and matured.  Borrower's assets do not and, immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out Borrower's business as conducted or as proposed to be conducted.  Borrower does not intend to, and does not believe that it will, incur debts and liabilities (including contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of its obligations).

(q)    Borrower has not purchased any portion of the Property with proceeds of any illegal activity.

### 4.1.3    The Loan.

(a)    The interest and other fees and charges to be received by Lender under this Agreement and the Loan Documents constitute lawful interest and are neither usurious nor illegal.

(b)    The Loan Budget represents a full, complete, accurate and good faith estimate of all uses of the Loan proceeds.

(c)    No brokerage fees or commissions are payable by or to any person in connection with this Agreement or the Loan other than the Broker(s), if any.

(d)    No information contained in this Agreement, the other Loan Documents to which it is a party, or any written statement furnished by or, to Borrower's Knowledge, on its behalf pursuant to the terms of this Agreement contains any untrue statement of a material fact or omits to state a fact necessary to make the statements contained herein or therein not materially misleading in light of the circumstances under which they were made.  To Borrower's Knowledge, there is no condition, fact, circumstance or event which has not been disclosed to Lender that would make any such information inaccurate, incomplete or otherwise misleading in any material respect or that otherwise could have a Material Adverse Effect.  To Borrower's Knowledge, Borrower has disclosed to Lender all material facts and has not failed to disclose any material fact that would cause any representation or warranty made herein to be materially misleading.

(e)    No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose which would be inconsistent with such Regulation U or any other Regulations of such Board of Governors, or for any purpose

prohibited by Applicable Laws or by the terms and conditions of this Agreement or the other Loan Documents.

(f)    Each Loan Document constitutes Borrower's legal, valid and binding obligation, enforceable against it in accordance with its terms, subject only to Insolvency Laws and general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).  The Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense by Borrower or any Guarantor, including the defense of usury, nor would the operation of any of the terms of the Loan Documents to which Borrower or any Guarantor is a party, or the exercise of any right thereunder, render the Loan Documents to which Borrower or such Guarantor is a party unenforceable, subject to Insolvency Laws and general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law), and none of Borrower or any Guarantor has asserted any right of rescission, set-off, counterclaim or defense with respect thereto.

### 4.1.4    Environmental Matters.

(a)    To Borrower's Knowledge, except as shown in that certain Phase I Environmental Site Assessment Report dated February 9, 2006 and prepared by LandAmerica Assessment Corporation (the "**Delivered Report**"), the Property complies with all Environmental Laws.

(b)    To Borrower's Knowledge, except as shown in the Delivered Report no spill, release or discharge of any Hazardous Substances has occurred on or about the Property nor is there any threat of a spill, release or discharge.

(c)    Borrower has not used the Property, nor permitted the Property to be used, for the treatment, storage or disposal of any Hazardous Substance, and, to Borrower's Knowledge, no such use of the Property was made by any predecessor in interest or any other individual or entity.

(d)    To Borrower's Knowledge, except as shown in the Delivered Report no equipment on the Property contains polychlorinated biphenyls.

(e)    To Borrower's Knowledge, except as shown in the Delivered Report no underground storage tank is located on the Property.

(f)    To Borrower's Knowledge, except as shown in the Delivered Report no asbestos is located on the Property.

(g)    To Borrower's Knowledge, except as shown in the Delivered Report the Property does not contain any facility subject to reporting under Section 312 of the federal Emergency Planning and Community Right-to-Know Act of 1986 or any federal regulations promulgated thereunder.

(h)    Borrower has truthfully and fully provided to Lender, in writing, any and all information relating to environmental conditions in, on, under or from the Property that is

known to it and that is contained in its files and records, including but not limited to any reports relating to Hazardous Substances.

(i)    To Borrower's Knowledge, there is no Environmental Claim pending or, to Borrower's Knowledge, threatened.

(j)    To Borrower's Knowledge, no Liens are presently recorded with the appropriate land records under or pursuant to any existing Environmental Law with respect to the Land or the Improvements and, to Borrower's Knowledge, no Governmental Authority has commenced taking or is in the process of taking any action to subject the Land and the Improvements to Liens under any existing Environmental Law.

4.2    **Reliance Upon Representations and Warranties**.  All representations and warranties made in this Agreement or in any certificate or other document delivered to Lender by or on behalf of Borrower or any Guarantor or any Authorizing Entity shall be true and correct when made and shall be deemed remade upon each request for an Advance (unless Lender is notified in writing as to any respects in which such representations and warranties are no longer true as of the date of the notice) and shall be deemed to have been relied upon by Lender notwithstanding any investigation heretofore or hereafter made by Lender or on its behalf, and shall survive the making of the Initial Disbursement and each Advance.  Borrower acknowledges that the Initial Disbursement and each Advance is intended to be made by Lender in reliance upon the performance of all of the terms and conditions contained herein and upon the continuing truth and accuracy of the representations, warranties, acknowledgments and agreements herein contained or otherwise made in writing to Lender.  If, due to circumstances beyond the control of all Borrower Parties, any representation or warranty becomes untrue after any date when such representation was made or last deemed remade, and provided that Borrower promptly notifies Lender of the manner in which any representation or warranty is no longer true upon Borrower first learning thereof, such change of circumstances shall not, in and of itself (and without excusing Borrower from any covenants hereunder), constitute an Event of Default, provided further that the continued truth and accuracy of all representations and warranties set forth herein shall be a condition to all Advances.

## ARTICLE 5
## COVENANTS

5.1    **Covenants**.  Borrower shall perform the following covenants, fully and faithfully, at all times until the Indebtedness has been paid in full and all Obligations fully satisfied.

### 5.1.1    **Financial**.

(a)    Within fifteen (15) days after each calendar month, Borrower shall furnish Lender with a copy of (i) Borrower's income statement showing all Revenues, accrued real estate taxes and all items of operating expense, capital expenditures and reserves paid with Revenues, (ii) Borrower's balance sheet, (iii) Borrower's cash flow statement and (iv) the Property rent roll for the preceding month and the calendar year to date showing a comparison of the actual results to the Operating Budget.

CH01/ 12462729.7                    -22-

(b)     Borrower shall prepare and submit to Lender such other financial statements and reports as Lender may reasonably require. All financial statements shall be in a format approved by Lender and certified as true, correct, and complete and not misleading as to Borrower's financial condition by an officer or authorized representative of Borrower approved by Lender. The monthly financial statements shall certify that there are no pending claims against Borrower or, if any such claims exist, the nature and amount of each such claim. Borrower's financial statements shall be prepared in accordance with real estate management financial reporting principals approved by Lender and consistently applied.

(c)     No later than March 1 of each year Borrower shall furnish Lender (i) with a copy of Borrower's annual financial statements for the prior calendar year, including an income statement, cash flow statement and balance sheet which financial statements shall be certified by an officer of Borrower approved by Lender and (ii) a certificate from an officer of Borrower approved by Lender that there are no Defaults.

(d)     No later than November 1 of each year, Borrower or Property Manager shall prepare for Lender's review and approval an annual business plan for the Property including a marketing plan, capital improvements, projected lease rates for available space and a projected operating budget, including anticipated capital expenditures, for the succeeding calendar year. The operating budget, once approved by Lender, shall constitute the Operating Budget for the period covered by said budget.

(e)     No later than March 1 of each year, Borrower shall cause each Guarantor to submit financial statements containing statements of income and expenses for the previous year and assets and liabilities as of the last day of the previous year or, as applicable, as at the date of the statements. Such statements shall be certified as true, correct and complete and not misleading as to such Guarantor's financial condition.

(f)     If Borrower omits to prepare and deliver promptly any report required by the preceding paragraphs, Lender may elect, in addition to exercising any remedy for an Event of Default, to have an independent certified public accountant selected by Lender make an audit of all books and records of Borrower including its bank accounts which in any way pertain to the Property and to prepare the statement or statements which Borrower failed to procure and deliver. Borrower shall pay all expenses of the audit and other services, which expenses shall be due and payable upon demand.

(g)     Borrower shall keep and maintain separate books and records with respect to the Property. Borrower will allow Lender, its representatives or agents, at any time during normal business hours, access to all books and records of Borrower, including Borrower's books of account and all supporting and related vouchers or papers kept by or on behalf of Borrower or its representatives or agents in connection with maintenance, operation or leasing of the Property, such access to include the right to make extracts or copies thereof.

(h)     At all times during the term of the Loan, Borrower hereby acknowledges and agrees that CVI shall be required to maintain (i) a tangible net worth, determined in accordance with sound accrual basis accounting principles consistently applied, of not less than

$60,000,000; and (ii) cash and readily marketable securities in an amount not less than $1,500,000.

5.1.2　**Impositions.**

(a)　　Subject to Section 2.5.3, Borrower shall pay all Impositions before the same become delinquent and upon written request, shall furnish to Lender duplicate receipts for such payment.　Unless Lender has paid such Impositions directly on Borrower's behalf, Borrower shall furnish to Lender evidence that all Impositions are paid at least five (5) Business Days prior to the last date for payment of such Impositions and before imposition of any penalty or accrual of interest.

(b)　　Notwithstanding the foregoing, so long as no Event of Default or monetary Default has occurred and is then continuing, Borrower may in good faith, with reasonable diligence and at Borrower's sole and expense contest the validity or amount of any Impositions, provided that:

(i)　　such contest prevents or suspends the collection of the Contested Taxes and the sale or forfeiture of all or any part of the Property to satisfy the payment of the Contested Taxes; and

(ii)　　Borrower notifies Lender in writing of Borrower's intent to contest before any Contested Taxes have been increased by any interest, penalties or other costs; and

(iii)　　Borrower has deposited with Lender to be held by Lender, together with the sums provided in subsection (c) below, a sum of money which taken with the deposits already held by Lender pursuant to subsection (c) below is sufficient in Lender's reasonable judgment to pay the amount of the Contested Taxes, including interest and penalties, and Borrower shall increase such deposits upon demand by Lender whenever Lender reasonably deems such additional deposit necessary to cover the cost of additional interest and penalties.

(c)　　If Borrower fails to pursue the proceeding for the Contested Taxes with reasonable diligence or if Borrower fails to deliver to Lender the additional deposits required in this subsection (c), Lender may, at Lender's option, apply such additional deposits to the payment of all or any portion of the Contested Taxes, including all penalties and interest.　If the amount of the additional deposits is insufficient to pay the Contested Taxes together with all interest and penalties, Borrower shall upon demand deposit an amount sufficient to make such payment of the Contested Taxes in full.　Provided no Event of Default then exists and Borrower has notified Lender in writing that Borrower has obtained a final disposition of the Contested Taxes, together with an official tax bill for such Contested Taxes, Lender shall use the funds on deposit with Lender, together with the Monthly Tax Deposits relating to such Contested Taxes, to pay the Contested Taxes in full.

5.1.3　**Insurance.**

(a)　　Until the Indebtedness is fully paid and all obligations of Lender under the Loan Documents have been finally terminated, all of the Collateral shall be kept at all times insured against loss and damage by such hazards, casualties and contingencies in such amounts,

CH01/ 12462729.7

-24-

subject to such deductibles, and for such periods as may from time to time be reasonably required by Lender. All insurance shall be written in policies and by insurance companies approved by Lender. All policies of insurance and renewals thereof shall contain standard noncontributory Lender or mortgagee clauses or loss payable clauses in favor of Lender and its successors and assigns or shall name Lender and its successor and assigns as an additional insured and shall provide for at least thirty (30) days' prior written notice of modification (including cancellation) to Lender without cost to Lender as well as a waiver of subrogation endorsement and such other endorsements as Lender shall require. All policies of insurance and renewals thereof shall contain such further endorsements as Lender may require, in form and content acceptable to Lender. Without limiting the generality of the foregoing, all policies of insurance shall be in amounts and have deductibles (if any) approved by Lender and contain clauses or endorsements to the effect that no act or negligence of Borrower, or anyone acting for Borrower or of any tenant under any Lease or other occupant, or failure to comply with the provisions of any policy which might otherwise result in a forfeiture of the insurance or any part thereof, shall in any way effect the validity or enforceability of the insurance insofar as Lender is concerned. Copies of all policies of insurance and original certificates of insurance on ACORD forms acceptable to Lender, together with evidence of fully paid premiums, shall be delivered to Lender as issued at least thirty (30) days before the expiration of old policies and shall be held by Lender until all Obligations have been fully paid and performed and all obligations of Lender under the Loan Documents finally terminated. Upon request by Lender, Borrower, at its sole cost and expense, shall furnish to Lender evidence of the replacement cost of the Property that is satisfactory to Lender. In case of any transfer of title to the Property either resulting from an exercise of remedies under or pursuant to the Mortgage or in lieu of such remedies, complete title to all policies of insurance required by this Agreement and to all prepaid or unearned premiums thereon shall pass to and vest in the grantee or other transferee of the Property. Lender shall not, by reason of accepting, rejecting, approving or obtaining insurance, incur any liability for payment of losses.

(b)     Without in any way limiting the generality of the foregoing, Borrower covenants and agrees to maintain the following insurance coverage: (i) all risk of physical loss or special perils coverage insurance, for an amount equal to not less than one hundred percent (100%) of the full replacement cost of the Improvements and fixtures located on the Property, written on a replacement cost basis and with endorsements covering replacement cost (without depreciation), an agreed amount pertaining to the co-insurance clause, building ordinances/enforcement of law (including demolition and increased cost of construction, which building ordinance coverage endorsement shall be in such amount as Lender may reasonably require), vandalism, malicious mischief, terrorist acts, building collapse, boiler and machinery, sewer back up; (ii) rent loss insurance in an amount equal to not less than gross revenue from the Property for twelve (12) months based upon one hundred percent (100%) occupancy of all Improvements, less any allocable charges and expenses which would not continue during the period of restoration; (iii) commercial general public liability and property damage insurance with a broad form coverage endorsement for an amount as reasonably required from time to time by Lender but not less than an aggregate amount of Five Million Dollars ($5,000,000.00) and an occurrence limit of not less than Three Million Dollars ($3,000,000.00) combined single limit; (iv) flood insurance whenever in the opinion of Lender such protection is necessary and is available; (v) earthquake insurance whenever in the opinion of Lender such protection is necessary and is available; (vi) insurance covering pressure vessels, pressure piping and

machinery, if any, and all major components of any centralized heating or air-conditioning systems located in the Improvements, in an amount satisfactory to Lender, such policies also to insure against physical damage to the Improvements arising out of peril covered thereunder; and (vii) such other insurance that may be required from time to time by Lender. Prior to commencement of any Construction Project, Borrower shall have delivered to Lender a so-called Builder's Risk Completed Value non-reporting form insurance policy for one hundred percent (100%) of the insurable replacement value of the applicable Construction Work. After the Conversion Conditions are satisfied, hazard insurance on the Improvements (other than any portion thereof covered by condominium unit owner's insurance) shall be satisfied through the insurance purchased by the Association. All insurance policies shall be issued by an insurer licensed to do business in the jurisdiction in which the Property is located and which has a rating of at least "A" by Standard & Poor's or A/A- :VIII by A.M. Best as published in Best's Key Rating Guide.

(c)    If at any time a dispute arises with respect to replacement cost, Borrower agrees to provide at Borrower's expense, an insurance appraisal prepared by an insurance appraiser approved by Lender, establishing the full replacement cost in a manner satisfactory to the insurance carrier.

(d)    Borrower shall pay or cause to be paid, in a timely manner, all Premiums. At least thirty (30) days prior to the expiration of any policy of insurance, Borrower shall furnish to Lender renewal insurance policies (or certificate of insurance on Acord 27) as required by this Agreement and the other Loan Documents.

(e)    Borrower shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Lender is included thereon as the loss payee or an additional insured as applicable, under a standard mortgagee clause acceptable to Lender and such separate insurance is acceptable to Lender.

(f)    Unless Borrower provides Lender with evidence of the insurance coverage required by this Agreement, Lender may purchase insurance at Borrower's expense to protect Lender's interest in the Property. This insurance may, but need not, protect Borrower's interests. The coverage Lender purchases may not pay any claim Borrower makes or any claim that is made against Borrower in connection with the Property. Borrower may later request Lender to cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by this Agreement. If Lender purchases insurance required to be provided under this Agreement, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Indebtedness and shall bear interest at the Default Rate. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

5.1.4    Leases.

(a)    Without the prior written consent of Lender, such consent not to be unreasonably withheld, Borrower shall not (i) enter into any Lease, (ii) modify, amend, renew,

extend or terminate any Lease, (iii) accept any rental payment (other than security deposits) on a Lease for more than one month in advance of its due date, or (iv) enter into any ground lease of the Property. Except for Residential Leases, Borrower shall submit to Lender for review a copy of each proposed Lease (marked to show changes from the form, if any, approved by Lender), together with financial information regarding the proposed tenant and such other information as Lender may reasonably request no less than ten (10) Business Days prior to execution thereof. All Lease renewals or extensions and all proposed Leases shall provide for rental rates and terms which at least approximate local market rates and shall be arm's length transactions with bona fide, third party tenants. Notwithstanding the foregoing, any Residential Lease on a form approved by Lender shall not require Lender's prior approval. At Lender's request, Borrower shall cause the tenant under any Lease (other than Residential Leases) to execute a subordination and attornment agreement in form and substance satisfactory to Lender. If requested by Lender, Borrower shall provide Lender with a copy of a fully executed original of each Lease executed subsequent to the Closing Date promptly following its execution.

(b)    Borrower will not suffer or permit any breach or default to occur in any of Borrower's obligations under any of the Leases nor suffer or permit the same to terminate by reason of any failure of Borrower to meet any requirement of any Lease including those with respect to any time limitation within which any of Borrower's work is to be done or the space is to be available for occupancy by the tenant. Borrower shall use reasonable efforts to notify Lender promptly in writing in the event a tenant commits a material default under a Lease (other than a Residential Lease). Borrower will not waive any rights under any of the Leases and will enforce the obligations of tenants under and guarantors of the Leases, including amendments approved by Lender.

(c)    Borrower shall deliver all tenant security deposits, including letters of credit, to Property Manager to be held in trust pursuant to Applicable Laws, subject in each case to the rights of the applicable tenant to the return of such security deposit in accordance with the applicable Lease. Upon forfeiture of any security deposit, Borrower shall cause Property Manager to pay to Lender the amount thereof, which shall be deposited into the CapEx Reserve. All lease termination payments or fees shall be paid to Lender and shall be deposited into the CapEx Reserve.

5.1.5  **Operations.**

(a)    Borrower shall comply with all Applicable Laws with regard to the Property and the Project.

(b)    At all times, Guarantors shall be in charge of executing Borrower's business plan and shall exercise operational and management control, including day-to-day business decisions, with respect to the Property and the Project, except for those duties delegated to Property Manager under the Management Agreement. Borrower shall not replace the Property Manager (or permit the replacement of the Property Manager by assignment of the Management Agreement or otherwise) or modify or terminate (except for the Property Manager's default) the Management Agreement or enter into any property management or exclusive leasing agreement without in each case Lender's prior written consent. Borrower shall enforce all material

CH01/ 12462729.7                        -27-

obligations of Property Manager under the Management Agreement and shall not waive any of such obligations.

(c)     All Personal Property shall continue to be located on the Land.  Borrower shall not, without the prior written consent of Lender, sell, assign, transfer, remove or permit to be removed from the Land or the Improvements any of the Personal Property.  So long as no Event of Default exists, Borrower may sell or otherwise dispose of the Personal Property when obsolete, worn out, inadequate, unserviceable or unnecessary for use in connection with the Project, but only upon replacing the same with other Personal Property at least equal in value and utility to the Personal Property that is disposed, and provided that the priority and perfection of Lender's security interest is fully preserved in such replacement Personal Property.  Borrower shall, from time to time, on request of Lender, deliver to Lender an inventory of the Personal Property in reasonable detail.  All Personal Property, and all replacements thereof, substitutions therefor or additions thereto, at all times, shall be kept and maintained free and clear of Liens, except for Permitted Exceptions.  Borrower shall, upon demand, execute and deliver to Lender such financing statements and other documents in form satisfactory to Lender, and will do all such acts and things as Lender may at any time, or from time to time, reasonably request or as may be necessary or appropriate to establish and maintain a first perfected security interest in the Personal Property, free of any Liens, except for Permitted Exceptions.

(d)     Borrower shall:  (i) promptly repair, restore or rebuild any Improvements now or hereafter on the Land which may become damaged or be destroyed, such restored or rebuilt Improvements to be of at least equal value and substantially the same character as prior to such damage or destruction, provided that any Loss Recoveries relating to such damage or destruction have been released to Borrower under the terms of this Agreement to effectuate such repairs or restoration, but regardless of whether such Loss Recoveries are sufficient for such repairs or restoration are available or sufficient for the purpose; (ii) keep the Property in good condition and repair and without waste, (iii) pay all operating costs for the Property and immediately pay when due any indebtedness which may be secured by a Lien, and upon request deliver to Lender satisfactory evidence of the discharge of such Lien, subject to any right Borrower may have hereunder to contest such Lien; (iv) complete within a reasonable time any Improvements now or at any time in process of construction upon the Property; (v) comply with all requirements of all covenants, easements and restrictions of record with respect to the Property and the use thereof; (vi) not make any alterations to the Property or demolish any portion of the Improvements or repairs and replacements in the ordinary course of business) without Lender's prior written consent, except as required by Applicable Law; (vii) not suffer or permit any change in the general nature of the occupancy of the Property, without Lender's prior written consent;  (viii) not initiate or acquiesce in any zoning reclassification or variance without Lender's prior written consent; (ix) provide and thereafter maintain adequate parking areas within the Property as may be required by Applicable Laws, together with any sidewalks, aisles, streets, driveways and sidewalk cuts and sufficient paved areas for ingress, egress, and right of way to and from the adjacent public thoroughfares necessary or desirable for the use thereof, and observe and comply with any conditions necessary to preserve and extend any and all rights, licenses, permits (including, without limitation, zoning variances, special exceptions and nonconforming uses), privileges, franchises and concessions that are applicable to the Property and the use and occupancy of the Property; (x) not cause or permit any resubdivision of the Land or the Conversion prior to satisfaction of all requirements of Applicable Laws; (xi) not grant any

easements, licenses, covenants, conditions or declarations of use against the Property except for the Declaration; (xii) use best efforts to operate the Property and the Project in conformity with the Operating Budget; (xiii) promptly perform and observe all agreements required to be performed by it under all Material Agreements and the Management Agreement; (xiv) give Lender notice of any default under Leases (other than Residential Leases), Material Agreements and the Management Agreement; (xv) not amend any document which is a Permitted Exception, including the Declaration, without in each case Lender's prior written consent, which consent will not be unreasonably withheld; and (xvi) promptly correct all defects (other than of an immaterial nature that do not affect the use of the Improvements for their intended purpose or their value) in the Improvements or any departure from the Construction Documents (except for non-material deviations therefrom that do not adversely affect the use of the Improvements for their intended purpose or their value) not previously approved by Lender to the extent required hereunder. Borrower agrees that the making of any Advance whether before or after such defects or departures are discovered by, or brought to the attention of, Lender shall not constitute a waiver of the Lender's right to require compliance with this covenant.

### 5.1.6    Prohibition on Conveyances and Liens.

(a)    Borrower shall not: (i) assign or attempt to assign its rights under this Agreement and any purported assignment of this Agreement shall be void or (ii) suffer or permit (A) any change in the management (whether direct or indirect) of the Property, (B) any Transfer other than a Permitted Transfer or (C) any replacement of any Authorizing Entity without in each case the prior written consent of Lender.

(b)    Without limiting the foregoing, should Borrower engage in or permit a Transfer, whether or not approved by Lender, including a Permitted Transfer, that would constitute or result in the occurrence of one or more non-exempt prohibited transactions under ERISA or the Internal Revenue Code, Borrower shall promptly (i) unwind any such Transfer upon notice from Lender or, at Lender's option, assist Lender in obtaining such exemption(s) from the Employee Benefits Security Administration with respect to such Transfer as Lender may deem necessary or appropriate, and (ii) reimburse Lender for any expenses incurred by Lender to obtain any such exemptions. Borrower's obligations under this subsection (b) shall survive the expiration of this Agreement and the other Loan Documents.

(c)    Borrower shall not suffer or permit any mechanic's or other lien or claim to be filed or otherwise asserted against the Property or any portion thereof and will promptly discharge the same if any claim for lien or any proceedings for the enforcement thereof are filed or commenced; provided, however, that so long as no Event of Default or monetary Default has occurred and is then continuing and Borrower has notified Lender in writing of its intent to contest such lien or claim, Borrower shall have the right to contest in good faith and with due diligence the validity of any such lien or claim upon furnishing to the Title Company such security or indemnity as it may require to induce the Title Company to issue an endorsement to the Title Policy insuring against all such claims, liens or proceedings; and provided further that Lender will not be required to make any further Advances unless any such mechanic's or other liens or claims has been released or insured against by the Title Company to the sole satisfaction of Lender.

CH01/ 12462729.7

**5.1.7  Single Purpose Entity/Change in Structure.** Borrower shall:

(a)      maintain its existence as a Single Purpose Entity;

(b)      not, without the prior written consent of Lender in each case, cause or permit (i) any amendment, replacement or termination of its Organizational Documents or the Organizational Documents of any Authorizing Entity, (ii) the creation of any new membership, partnership or shareholder interests, as applicable, in Borrower or any Authorizing Entity, (iii) any dissolution, voluntary termination of its existence or involuntary termination of its existence, unless such involuntary termination is rescinded or Borrower's existence is reinstated within thirty (30) days), or (iv) any change in Borrower's or any Authorizing Entity's state of formation or name;

(c)      not hold or acquire any ownership interest, legal or equitable, in any real or personal property other than the Property or become a shareholder of or a member or partner in any entity;

(d)      not change its legal status as a limited liability company or engage in any business other than, the acquisition, operation, management and disposition of the Property;

(e)      maintain Borrower's assets, accounts, books, records, financial statements, stationery, invoices, and checks separate from and not commingled with any of those of any other person or entity;

(f)      conduct Borrower's business in Borrower's name, pay Borrower's liabilities out of Borrower's funds, allocate fairly and reasonably any overhead for shared employees and office space, and maintain an arms-length relationship with Borrower's Affiliates;

(g)      hold itself out as a separate entity, maintain adequate capital in light of its contemplated business operations, and observe all organizational formalities;

(h)      not guarantee or become obligated for the debts of any other entity or person or hold out Borrower's credit as being available to satisfy the obligations of others, including not acquiring obligations or securities of Borrower's partners, members or shareholders;

(i)      not pledge Borrower's assets for the benefit of any other entity or person or make any loans or advances to any person or entity;

(j)      not enter into any contract or agreement with any party which is an Affiliate, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any Affiliate;

(k)      neither seek nor allow any owner of any membership or partnership interest, capital stock or other interest in Borrower to seek, the dissolution or winding up, in whole or in part, of Borrower;

CH01/ 12462729.7

-30-

(l)     not merge with or be consolidated into any other entity;

(m)     maintain Borrower's assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify Borrower's individual assets from those of any constituent party of Borrower, any Affiliate of Borrower, any Authorizing Entity, any Guarantor or any other person or entity; or

(n)     not incur any debts or financial obligations other than the Obligations and normal accounts payable in the ordinary course of business of not more than $200,000 in the aggregate and which are not more than sixty (60) days past due.

5.1.8     **Environmental Matters.** Borrower will:

(a)     not install, use, generate, manufacture, produce, store, release, discharge or dispose of on, under or about the Property, nor transport to or from the Property, any Hazardous Substance nor allow any other person or entity to do so except in minor amounts and under conditions permitted by Applicable Laws;

(b)     keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of, any Environmental Law;

(c)     give prompt notice to Lender of (i) any proceeding, investigation or inquiry commenced by any governmental authority with respect to the presence of any Hazardous Substance on, under or about the Property or the migration thereof to or from adjoining property; (ii) all claims made or threatened by any individual or entity against Borrower or the Property relating to any loss or injury allegedly resulting from any Hazardous Substance; and (iii) the discovery by Borrower of any occurrence or condition on any real property adjoining or in the vicinity of the Property which might cause the Property or any part thereof to be subject to any restriction on the ownership, occupancy, transferability or use of the Property under any Environmental Law; and

(d)     grant to Lender the right and privilege to: (i) join in and participate in, as a party if it so elects, any one or more legal proceedings or actions initiated with respect to the Property under any Environmental Law; and (ii) have all costs and expenses thereof (including without limitation Lender's reasonable attorneys' fees and costs) paid by Borrower.

5.1.9     **Terrorism and Anti-Money Laundering.**

(a)     Borrower shall, and shall cause all Authorizing Entities to, comply with applicable federal anti-terrorism and anti-money laundering laws and regulations. All payments by Borrower to Lender or from Lender to Borrower will only be made in Borrower's name and to and from a bank account of a bank based or incorporated in or formed under the laws of the United States or a bank that is not a "foreign shell bank" within the meaning of the U.S. Bank Secrecy Act (31 U.S.C. § 5311 *et seq.*), as amended, and the regulations promulgated thereunder by the U.S. Department of the Treasury, as such regulations may be amended from time to time.

(b)     Borrower shall provide Lender, from time to time, with such information as Lender determines to be necessary or appropriate to comply with the anti-money laundering

laws and regulations of any applicable jurisdiction, or to respond to requests for information concerning the identity of Borrower, any Authorizing Entity or other person or entity controlling or controlled by Borrower or any person or entity having a beneficial interest in Borrower, from any governmental authority, self-regulatory organization or financial institution in connection with its anti-money laundering compliance procedures, or to update such information.

(c)     Borrower shall promptly notify Lender in writing should Borrower become aware of any change in the information set forth in these representations.

5.1.10 **Anti-Forfeiture.**  Borrower represents and warrants to Lender that there has not been committed by Borrower or any other person in occupancy of or involved with the operation or use of the Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Property or any other Collateral or any monies paid in performance of Borrower's obligations under the Loan Documents. Borrower shall not commit, permit or suffer to exist any act, omission, or circumstance affording such right of forfeiture.  In furtherance thereof, Borrower hereby indemnifies Lender and agrees to defend with counsel acceptable to Lender at Borrower's sole cost and hold Lender harmless from and against any loss, damage or injury (including without limitation attorneys' fees and costs incurred by Lender) by reason of the breach of the covenants and agreements or the representations and warranties set forth in this paragraph.  Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Borrower or all or any part of the Collateral under any federal or state law for which forfeiture of the Property or any other Collateral or of any monies paid in performance of Borrower's obligations under the Loan Documents is a potential result, shall, at the election of Lender, constitute an Event of Default hereunder without notice or opportunity to cure.

5.2     **Construction Projects.**

5.2.1 **Construction Documents.**    Borrower shall diligently and continuously undertake to Complete each Construction Project.  Borrower shall not enter into, accept or permit any Change Orders without first obtaining Lender's written consent, except that Lender's prior consent shall not be required for (a) any Change Order for less than $25,000 provided that the aggregate value of all Change Orders, whether or not consented to by Lender, for the subject Construction Project does not exceed $200,000 or (b) any Change Order for an Exempt Project so long as the Change Order does not have the effect of changing the Exempt Project to a Construction Project which would not be an Exempt Project.  All Construction Contracts shall provide for a guaranteed maximum price and shall otherwise be in form and substance reasonably satisfactory to Lender.  At Lender's election, Borrower shall cause any or all Construction Contracts to be collaterally assigned to Lender, and shall cause the contractor under any Construction Contract to provide payment and performance bonds, in form and substance satisfactory to Lender.  Borrower shall submit all Construction Documents to Lender for all Construction Projects, including Exempt Projects.  Borrower shall not amend, modify, terminate or waive any rights under any Construction Documents.  Borrower will perform its obligations under the Construction Documents and will enforce the terms of the Construction Documents.

5.2.2   **Permits**.  Borrower shall pay for and obtain or cause to be paid for and obtained all permits, licenses and approvals required by Applicable Laws with regard to each Construction Project, whether necessary for commencement, completion, use or otherwise.

5.2.3   **Contractors**.  Except with respect to Exempt Projects, Borrower shall obtain Lender's approval of all contractors and all contracts and other Construction Documents for each component of the Construction Work.  Except with respect to Exempt Projects, all Construction Documents for each component of the Construction Work shall be assigned to Lender as security for the Loan, which assignments shall be consented to by the applicable contractor(s).  Each contractor or subcontractor performing any of the Construction Work shall be licensed by the appropriate state agency and shall provide Borrower with evidence of adequate liability insurance.  Upon Lender's request, Borrower shall provide written evidence that each contractor and subcontractor meets the requirements of this subsection.

5.2.4   **Deficiency**.  Borrower agrees that, if for any reason Lender concludes that a Deficiency shall exist, regardless of how such condition may have been brought about, Borrower shall, within five (5) days after written request by Lender, deposit the amount of the Deficiency in cash with Lender which deposit shall not bear interest.  Such deposit shall first be fully utilized to pay Project Costs before any further Advance shall be made.

5.2.5   **Lender Consultants**.  At Borrower's expense, Lender shall have the right to employ an inspecting architect, engineer or consultant with respect to a Construction Project.  Borrower shall pay immediately upon demand the reasonable fees and expenses of any architect or engineer employed by Lender for the purpose of reviewing plans or otherwise engaged by Lender with respect to any Construction Project.

5.2.6   **Immediate Post-Closing Repairs**.

(a)    **Bids**.  Borrower shall, within sixty (60) days after the Closing Date, obtain bids for all work identified in that certain Property Condition Report dated February 9, 2006 prepared by LandAmerica Assessment Corporation based on their inspection of the Property (the "**Condition Report**").  All bids shall be submitted to Lender for approval, including, without limitation, approval of the contractor, scope of work and bid amount.

(b)    **Immediate Repairs**.  Borrower shall, within one hundred twenty (120) days after the Closing Date, provide evidence satisfactory to Lender that all repairs described on **Exhibit G** attached hereto and as further described in the Condition Report (but excluding the Retaining Wall Work and the Fire Damage Repairs) (the "**Immediate Repairs**") have been Completed.  The time period provided in this subsection (b) shall be extended for such period of time as may be reasonably required to Complete the Immediate Repairs, but in no event more than an additional ninety (90) days, provided that (i) during such one hundred twenty (120) day period Borrower has promptly commenced all appropriate actions to timely Complete the Immediate Repairs and those actions have been and are thereafter diligently and continuously pursued by Borrower in good faith, (ii) no Default or Event of Default then exists and (iii) Lender is reasonably satisfied with the reasons for any delay in such Completion.

(c)    Retaining Wall Work.  Borrower shall, within one hundred eighty (180) days after the Closing Date, provide evidence satisfactory to Lender that all work described on **Exhibit H** attached hereto that relates to the retaining wall (the "**Retaining Wall Work**"), as further described in the Condition Report, has been Completed.  The time period provided in this subsection (c) shall be extended for such period of time as may be reasonably required to Complete the Retaining Wall Work, but in no event more than an additional ninety (90) days, provided that (i) during such one hundred eighty (180) day period Borrower has promptly commenced all appropriate actions to timely Complete the Retaining Wall Work and those actions have been and are thereafter diligently and continuously pursued by Borrower in good faith, (ii) no Default or Event of Default then exists and (iii) Lender is reasonably satisfied with the reasons for any delay in such Completion.  In the event the Retaining Wall Work has not been timely Completed as required above, Borrower shall deposit with Lender an amount equal to the positive difference between (i) the amount of all costs and expenses, as determined by Lender in its reasonable discretion, necessary to complete the Retaining Wall Work and (ii) the amount then held in the Retaining Wall Reserve, and Borrower hereby acknowledges that Lender shall have the right to use such additional deposit and all funds remaining in the Retaining Wall Reserve to cause the Completion of the Retaining Wall Work.  Such additional deposit shall be made by Borrower within ten (10) days after receipt of notice from Lender.

(d)    Fire Damage Repairs.    Borrower shall, no later than June 30, 2006, provide evidence satisfactory to Lender that all work described on **Exhibit I** attached hereto relating to repairs to the fire damage to Unit 3741D of the Property (the "**Fire Damage Repairs**") has been Completed. The time period provided in this subsection (d) shall be extended for such period of time as may be reasonably required to Complete the Fire Damage Repairs, but in no event more than an additional ninety (90) days, provided that (i) during the time period prior to and including June 30, 2006, Borrower has promptly commenced all appropriate actions to timely Complete the Fire Damage Repairs and those actions have been and are thereafter diligently and continuously pursued by Borrower in good faith, (ii) no Default or Event of Default then exists and (iii) Lender is reasonably satisfied with the reasons for any delay in such Completion.

(e)    Costs.    Lender's reasonable costs relating to review and approval of the bids, the Retaining Wall Work, the Immediate Repairs and the Fire Damage Repairs shall be deemed Charges.

5.3    **General Covenants.**

5.3.1    **Inspections.** Borrower will cooperate with Lender in arranging for inspections, from time to time, of the Property by representatives of Lender, including the inspections and the tests described in Section 3 of the Environmental Indemnity. Borrower will, and will cause Property Manager and any managing agent to, cooperate with Lender in arranging for inspections, including without limitation, to assist in ascertaining compliance of the Project and the Property with Applicable Laws.

5.3.2    **Further Assurances.** Borrower shall, from time to time, upon Lender's request, execute, deliver, record and furnish, or cause to be executed, delivered, recorded and furnished, such documents as Lender may reasonably deem necessary or desirable

(i) to perfect, and maintain perfected, valid first liens upon the Collateral, (ii) to correct any errors of a typographical nature which may be contained in any of the Loan Documents, and (iii) to consummate fully the transaction contemplated under this Agreement.

5.3.3   **Interest Rate Agreements**.  In the event Borrower enters into any interest rate hedge agreement, interest rate cap agreement, interest rate collar agreement or similar agreements regarding all or any part of the Indebtedness, Borrower shall notify Lender that Borrower has entered into such an agreement and at Lender's request shall assign such agreement to Lender as additional security for the Loan.

5.3.4   **Stamp Tax**.  If, by the laws of the United States of America, or of any state or political subdivision having jurisdiction over Borrower, any tax is due or becomes due in respect of the Loan, the granting of the Mortgage, or the terms of any of the other Loan Documents, Borrower shall pay such tax in the manner required by any such law.  Borrower further covenants to reimburse Lender for any sums which Lender may expend by reason of the imposition of any tax on the issuance of the Note made pursuant to this Agreement. Notwithstanding the foregoing, Borrower shall not be required to pay any income, franchise or other similar tax of Lender.

5.3.5   **Reports**.  Borrower shall deliver, or cause to be delivered, to Lender copies of all inspections, reports, test results and other material information prepared or received by Borrower from time to time from its owners, agents, representatives, architects, engineers, the Property Manager and any other parties involved in the maintenance, operation or leasing of the Property.

5.3.6   **Indemnity**.  Except to the extent caused by Lender's gross negligence or willful misconduct, Borrower shall indemnify Lender and hold harmless Lender from and against all claims, injury, damage, loss and liability of any and every kind suffered or incurred by reason of or in connection with (i) the Loan, including the administration thereof, this Agreement, the other Loan Documents, the Property and the leasing thereof, and the use or application of the Loan proceeds; (ii) the operation or maintenance of the Property including inspection fees; (iii) any breach of any representation made herein or of any other provision hereof; or (iv) any other action or inaction by, or matter which is the responsibility of, Borrower. Borrower shall pay Lender upon demand all claims, judgments, damages, losses and expenses (including court costs and reasonable attorneys' fees) incurred by Lender as a result of any legal or other action arising out of matters described in clauses (i) through (iv) of the preceding sentence. The provisions of this Section 5.3.6 shall survive repayment of the Indebtedness.

5.3.7   **No Dividends or Distributions**.  Except for (i) operating Revenues available to Borrower under Section 2.6, if any, or (ii) dividends, distributions and payments expressly permitted by this Agreement or otherwise approved by Lender, Borrower shall not make or permit any dividends, distributions or payments of any kind to any member/partner of Borrower, any Guarantor, or any Affiliate thereof. Notwithstanding anything to the contrary herein, asset management fee payments to Brentwood Asset Management & Advisory Group LLC, a California limited liability company ("**Asset Manager**") may only be made from the Borrower Return.

CH01/ 12462729.7

-35-

**5.3.8   Notice of Proceedings.** Borrower shall promptly notify Lender of each action, suit or proceeding threatened in writing or commenced as a result of injury, damage or liability occurring in, on or about the Property, other than actions for insured claims of under $100,000 which have been accepted by the insurance carrier without reservation of liability, and any other action, suit or proceeding against Borrower or any Guarantor which could have a Material Adverse Effect upon such party, and Borrower shall, upon Lender's request, at Borrower's expense, resist and defend such action, suit or proceeding, or cause the same to be resisted and defended by counsel designated by Borrower and approved in writing by Lender.

**5.3.9   Appraisals.** Lender shall have the right to obtain a new or updated Appraisal of the Property from time to time. Borrower shall cooperate with Lender in this regard. If the Appraisal is ordered or obtained prior to the Closing Date or in order to comply with any applicable law or regulatory requirement, or if an Event of Default exists, Borrower shall pay for any such Appraisal upon Lender's request.

**5.3.10   Furnishing Reports.** Upon Lender's written request, Borrower shall provide Lender with copies of all inspections, reports, test results and other information received by Borrower which in any way relate to the Property.

**5.3.11   Affiliate Transactions.** Prior to entering into any agreement with an Affiliate pertaining to the Property, Borrower shall deliver to Lender a copy of such agreement, which shall be satisfactory to Lender in its sole discretion. If requested by Lender, such agreement shall provide Lender the right to terminate such agreement upon Lender's (or its designee's) taking possession of the Property or acquisition of the Property through foreclosure, a deed in lieu of foreclosure, sale in accordance with the Code or otherwise.

**5.3.12   Notice of Default.** Borrower shall promptly upon acquiring knowledge thereof advise Lender of any default under any Material Agreement or any change in the condition (financial or otherwise) of Borrower that could be expected to have a Material Adverse Effect or materially impair its ability to comply with its obligations hereunder, or of the occurrence of any Default or Event of Default or the occurrence of any circumstance which would make any representation untrue or constitute a breach of any warranty in any material respect.

**5.3.13   Estoppel Statement.** After written request by Lender, Borrower shall within fifteen (15) Business Days furnish Lender with a statement, duly acknowledged and certified, setting forth (i) unpaid principal amount of the Loan, (ii) the date installments of interest and/or principal were last paid, (iii) that the Loan Documents to which Borrower is a party are valid, legal and binding obligations, subject to insolvency laws and general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law), and have not been modified or, if modified, giving particulars of such modification, and (iv) such other matters as Lender may reasonably request. Any prospective purchaser or assignee of any interest in the Loan shall be permitted to rely on such certificate. Borrower shall request and use reasonable good faith efforts to obtain for the Lender, upon request, estoppel certificates from any tenant in the form set forth on a form reasonably approved by the Lender; provided that Borrower shall not be required to deliver such certificates with respect to any Residential Lease or more frequently than once in any calendar year (unless an Event of Default hereunder or under

any of the Loan Documents then exists, in which case Borrower shall endeavor to obtain as many such certificates as the Lender shall request and, in any event, shall be obligated to obtain only those as to which the tenant under the applicable Lease has committed to provide pursuant to such applicable Lease.

5.3.14 **Place of Business**. Borrower shall not change its executive office or its principal place of business without giving Lender at least thirty (30) days' prior written notice thereof and promptly providing Lender such information as Lender reasonably request in connection therewith.

5.3.15 **Enforcement of Rights**. Borrower shall, upon request from Lender, pursue and enforce all remedies available to Borrower under the Sale and Purchase Agreement dated as of January 12, 2006 between Borrower (as successor to National Commercial Ventures, LLC) and The Courts Apartments Limited Partnership, a Georgia limited partnership.

5.4 **Loss of Note or other Loan Documents**. Upon notice from Lender of the loss, theft, or destruction of the Note and upon receipt of an affidavit of lost note and an indemnity reasonably satisfactory to Borrower from Lender, or in the case of mutilation of the Note, upon surrender of the mutilated Note, Borrower shall make and deliver a new note of like tenor in lieu of the then to be superseded Note. If any of the other Loan Documents were lost or mutilated, Borrower agrees to execute and deliver replacement Loan Documents in the same form of such Loan Document(s) that were lost or mutilated.

## ARTICLE 6
## CASUALTIES AND CONDEMNATION

6.1 **Lender's Election to Apply Loss Recoveries on Indebtedness**.

(a)     Lender is authorized to collect and receive any and all Loss Recoveries. Subject to the provisions of <u>Section 6.1(b)</u> below, Lender may elect to collect, retain and apply to the Indebtedness (including, without limitation, the Exit Fee) all Loss Recoveries without prepayment premium or penalty.  Any Loss Recoveries remaining after repayment of the Indebtedness shall be paid by Lender to Borrower.

(b)     Lender agrees to make available the Loss Recoveries for restoration of the Improvements if (i) no Default or Event of Default exists, (ii) the entire amount of the Loss Recoveries is deposited with Lender, (iii) in Lender's reasonable judgment, the amount of the Loss Recoveries available for restoration is sufficient to pay the full and complete costs of such restoration, or if not sufficient, Borrower has deposited with Lender an amount, which together with the amount of the Loss Recoveries available for restoration of the Improvements, in Lender's reasonable judgment, will be sufficient to pay the full and complete costs of such restoration, (iv) the income from the Property will not, following restoration, decrease more than ten percent (10%) as a result of such casualty or condemnation, (v) the cost of restoration will not exceed thirty percent (30%) of the amount of the Loan funded as of the date of such casualty, (vi) in Lender's sole determination after completion of restoration the Loan Amount will not exceed eighty percent (80%) of the fair market value of the Property, (vii) in Lender's reasonable

determination, the Property can be restored to an architecturally and economically viable project in compliance with Applicable Laws within eighteen (18) months, (viii) each Guarantor reaffirms in writing such Guarantor's obligations under the Loan Documents, and (ix) in Lender's reasonable determination, such restoration will be completed not later than four (4) months prior to the Maturity Date.

       (c)    In case of loss or damage by fire or other casualty, Borrower shall promptly give Lender and the insurance companies that have insured against such risks, notice of such loss or damage, and Lender is authorized:

       (i)    If an Event of Default has occurred and is continuing, to settle and adjust any claim under insurance policies which insure against such risks; or if no Event of Default then exists to participate in all negotiations regarding settlement and adjustment of claims under insurance policies and approve any settlement; or

       (ii)    to allow Borrower, with Lender's consent, to agree with the insurance company or companies on the amount to be paid in regard to such loss; provided that Borrower shall not make any settlement with any insurance company without Lender's consent.

       (d)    Borrower shall cooperate with Lender in all reasonable respects in obtaining for Lender the benefits of any insurance proceeds lawfully or equitably payable in connection with the Property, and Lender shall be reimbursed for any out-of-pocket expenses reasonably incurred in connection therewith (including reasonable attorneys' fees and disbursements, and, if reasonably necessary to collect such proceeds, the expense of an appraisal on behalf of Lender in case of a fire or other casualty affecting the Property or any part thereof) out of such as recoveries.

### 6.2    <u>Borrower to Restore</u>.

       (a)    In case Lender does not elect to apply or does not have the right to apply the Loss Recoveries to the Indebtedness, as provided in <u>Section 6.1</u> above, Borrower shall:

       (i)    Subject to <u>Section 6.1(c)</u> above, proceed with diligence to make settlement with insurers or the appropriate governmental authorities and cause the Loss Recoveries to be deposited with Lender;

       (ii)    In the event the Loss Recoveries and the available proceeds of the Loan are insufficient to assure Lender that all contemplated repairs or construction will be completed, promptly deposit with Lender any amount necessary to assure that such contemplated repairs or construction will be completed; and

       (iii)    Promptly proceed with the resumption of any affected Construction Project of the improvements and/or the repair of all damage resulting from such fire, condemnation or other cause and restoration to its former condition.

       (b)    Any request by Borrower for a disbursement by Lender of Loss Recoveries and funds deposited by Borrower shall be treated by Lender as if such request were for an Advance with respect to a Construction Project, and the disbursement thereof shall be

conditioned upon Borrower's compliance with and satisfaction of the same conditions precedent as would be applicable under this Agreement for an Advance with respect to a Construction Project and subject to any other reasonable disbursement conditions as Lender may impose. If Loss Recoveries shall exceed the amount necessary to complete the repair, restoration or rebuilding of the Improvements, such excess shall be applied on account of the Indebtedness irrespective of whether such Indebtedness is then due and payable without payment of any premium or penalty. If Loss Recoveries shall be insufficient to fully pay for all costs necessary to complete the repair, restoration or rebuilding of the Improvements, the difference shall be treated as a Deficiency.

(c)    No casualty, condemnation or application of Loss Recoveries shall excuse Borrower from complying with all Obligations under the Loan Documents.

(d)    All Loss Recoveries not applied to the Indebtedness shall be held by Lender and shall be deemed to be Deposits.

## ARTICLE 7
## DEFAULT

7.1    **Events of Default.** Each of the following shall constitute an "**Event of Default**" under this Agreement:

(a)    Borrower fails to pay within five (5) days of the date due any installment of principal or interest, or fails to pay all principal or interest due on the Maturity Date, or fails to pay when due any other amount due Lender hereunder or under any other Loan Document or fails to make any deposit required by Sections 2.5.1, 2.6, 5.1.2(b) or (c), 5.1.4(c) or 5.2.4 or Borrower breaches or defaults under any of the terms or provisions of Sections 5.1.1, 5.1.2, 5.1.3, 5.1.6(a), 5.1.7, 5.1.9, 5.2.6, 5.3.7 or 5.3.13 of this Agreement or CVI fails to satisfy the provisions of Section 5.1.1(h); or

(b)    Borrower breaches, defaults under or fails to keep or perform any agreement, undertaking, obligation, covenant, condition, term or provision of this Agreement other than those otherwise described in this Section 7.1, and such breach, default or failure continues for a period of thirty (30) days after written notice from Lender; provided that the cure period provided in this subsection (b) shall be extended for such period of time as may be reasonably required to effect a cure, but in no event more than one hundred twenty (120) days from the date of notice if the breach, default or failure is of a nature that it cannot be cured by the payment of money or cured within the cure period solely for reasons outside of Borrower's control, provided that Borrower has promptly commenced all appropriate actions to cure the default within such cure period and those actions are thereafter diligently and continuously pursued by Borrower in good faith; or

(c)    any representation, warranty or certification, made or given pursuant to any Loan Document by or on behalf of Borrower or any Guarantor or otherwise made by or on behalf of Borrower or any Guarantor or any document delivered to induce Lender to enter into this Agreement or make the Initial Disbursement or any Advance or in connection with or as contemplated by this Agreement, proves to be untrue or fraudulent in any material respect at any

time when such representation, warranty or certification is made or deemed reaffirmed hereunder or such document is delivered; provided that if the circumstances causing such misrepresentation or warranty are capable of cure and Borrower is curing such circumstance, such representation and warranty continues to be untrue ten (10) days after written notice from Lender to Borrower; or

(d)    Borrower shall fail to comply with any requirement of Applicable Law or of any Governmental Authority having jurisdiction within thirty (30) days after Borrower has notice of such requirement, except for failures which do not have a Material Adverse Effect; or

(e)    except as otherwise expressly authorized in this Agreement, Borrower enters into any secondary or additional financing agreements or arrangements of any kind whatsoever without the prior written consent of Lender; or

(f)    there is an attachment, execution or other judicial seizure of any material portion of Borrower's assets or the assets of any Guarantor and such seizure is not discharged within sixty (60) days; or

(g)    any order or decree is entered by any court of competent jurisdiction enjoining or prohibiting Lender, Borrower, any Guarantor, or any thereof, from substantially performing any of such party's obligations under this Agreement, and such order or decree is not stayed or vacated, or the proceedings out of which such order or decree arose are not dismissed, within sixty (60) days after the granting of such decree or order; or

(h)    Borrower, any Authorizing Entity or any Guarantor commences or acquiesces to an Insolvency Proceeding; or

(i)    all or a substantial part of the assets of Borrower, or any Authorizing Entity or any Guarantor are attached, seized, subject to a writ or distress warrant or are levied upon unless the same is released within sixty (60) days; or Borrower, any Authorizing Entity or any Guarantor shall make an assignment for the benefit of creditors or Borrower shall not be generally paying its debts as they become or has admitted in writing to its inability to pay its debts as they become due; or

(j)    the commencement of any involuntary petition in bankruptcy against Borrower, any Authorizing Entity or any Guarantor or the institution against Borrower, any Authorizing Entity or any Guarantor of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or the appointment of a receiver, trustee or similar officer for all or any substantial part of the property of Borrower, any Authorizing Entity or any Guarantor which shall remain undismissed or undischarged for a period of sixty (60) days; or

(k)    the dissolution, termination or merger of Borrower, any Authorizing Entity, or the death of any Guarantor, or Richard J. Nathan becomes incapacitated, unless a substitute Guarantor or, as applicable, a substitute individual acceptable to Lender for purposes of carrying out the covenant set forth in Section 5.1.5 has been accepted by Lender in its reasonable discretion within thirty (30) days thereafter; or

(l)    one or more final, unappealable judgments are entered (i) against Borrower in amounts aggregating in excess of $100,000 or (ii) against any Guarantor in amounts aggregating in excess of $500,000, and said judgments are not satisfied, stayed or bonded over within thirty (30) days after entry;

(m)    if Borrower or any Guarantor shall fail to pay any debt owed by it or is in default under any agreement with Lender or any other party (other than a failure or default for which (i) Borrower's maximum liability does not exceed $100,000 and (ii) Guarantor's maximum liability does not exceed $1,000,000 or amounts aggregating in excess of $5,000,000) and such failure or default continues after any applicable grace period specified in the instrument or agreement relating thereto; or

(n)    the occurrence of (i) any "Event of Default" under and as defined in any other Loan Document or (ii) any default or failure to keep or perform any agreement, undertaking, obligation, covenant, condition, term or provision of any other Loan Document which default or failure remains uncured beyond any applicable notice or grace period contained therein.

7.2    **Remedies.**

7.2.1    **Rights of Lender.**  After any Event of Default, Lender shall have the right, in addition to all the remedies conferred upon Lender by law or equity or the terms of any of the Loan Documents, to do any or all of the following, concurrently or successively, without notice to Borrower:

(a)    declare the Indebtedness to be, and the Indebtedness shall thereupon become, immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Note to the contrary notwithstanding;

(b)    terminate the Lender's obligations under this Agreement to extend credit of any kind or to make any Advance or disbursement, whereupon the commitment and obligations of the Lender to extend credit or to make any Advance hereunder shall terminate;

(c)    enter upon, take possession of, and use the Property and all parts thereof, and all material, equipment and supplies therein, to the extent of Borrower's interest therein, complete the Project and do anything which in its sole judgment is necessary or desirable to fulfill, pay, settle or compromise the obligation to Borrower hereunder and continue to operate the Property;

(d)    use and apply any monies or letters of credit deposited by Borrower with Lender, to cure any such default or to apply on account of any Indebtedness; and

(e)    exercise or pursue any other remedy or cause of action permitted under this Agreement or any other Loan Documents, or conferred upon Lender by operation of Law.

With respect to clause (c) above, Lender and its designees, representatives, agents, licensees and contractors shall be entitled to such entry, possession and use without the consent of any party

and without any legal process or other condition precedent whatsoever. Borrower acknowledges that any denial of such entry, possession and use by Lender will cause irreparable injury and damages to Lender and Lender shall be entitled to injunctive relief to obtain such entry.

7.2.2 **Attorney in Fact**. Without restricting the generality of the foregoing and for the purposes aforesaid in Section 7.2.1, Borrower hereby appoints and constitutes Lender its lawful attorney-in-fact with full power of substitution in the Property to: Complete any Construction Project or Construction Work in progress; use unadvanced funds remaining under the Note or which may be reserved, escrowed or set aside for any purposes hereunder at any time, or to advance funds in excess of the face amount of the Note; make changes in the applicable Construction Documents which shall be necessary or desirable to Complete each such Construction Project or such Construction Work; retain or employ new general contractors, subcontractors, architects, engineers and inspectors as Lender determines shall be required for said purposes; pay, settle or compromise all existing bills and claims, which may be liens or security interests, or to avoid such bills and claims becoming liens against the Property; execute all applications and certificates in the name of Borrower prosecute and defend all actions or proceedings in connection with any Construction Project or Construction Work; take action and require such performance as it deems necessary under any of the bonds to be furnished and to make settlements and compromises with the surety or sureties thereunder, and in connection therewith, to execute instruments of release and satisfaction; and to do any and every act which Borrower might do in its own behalf; it being understood and agreed that this power of attorney shall be a power coupled with an interest and cannot be revoked.

7.2.3 **Payments by Lender**. All sums whatsoever paid or incurred by Lender hereunder of any kind whatsoever, shall constitute Indebtedness and shall bear interest from the date of payment or incurrence until paid at the Default Rate.

7.2.4 **Automatic Acceleration**. Notwithstanding the foregoing, upon the occurrence of any Event of Default under Section 7.1(h) and 7.1(j) with respect to Borrower, all Indebtedness shall automatically become due and payable, without any presentment, demand, protest or notice of any kind to Borrower.

7.2.5 **Failure to Clear Liens**. If Borrower shall fail promptly to discharge any mechanics' claim filed or otherwise asserted or to contest any such claim and to cause the Title Company to insure against such claim in the manner required by this Agreement, or, having commenced to contest the same, if Borrower shall thereafter fail to prosecute such contest in good faith or with due diligence, or fail to maintain such security or indemnity so required by the Title Company for its full amount, or, upon adverse conclusion of any such contest, if Borrower shall fail to cause any judgment or decree to be satisfied and lien to be released, then, and in any such event, upon giving notice to Borrower, Lender may, but shall not be required to, (i) procure the release and discharge of any such claim and any judgment or decree thereon, without inquiring into or investigating the amount, validity or enforceability of such lien or claim, and (ii) effect any settlement or compromise of the same or furnish the security or indemnity required by the Title Company. Any amounts so expended by Lender, including premiums paid or security furnished in connection with the issuance of any surety company bonds, shall be paid by Borrower immediately upon Lender's demand shall be added to the Indebtedness and shall bear interest until paid at the Default Rate.

# ARTICLE 8
# SECURITY AGREEMENT

8.1　**Grant of Security Agreement.**　To secure payment of the Indebtedness and performance of the other Obligations, Borrower hereby grants to Lender a security interest in and to: (a) all funds of Borrower on deposit from time to time with Lender or any agent of Lender or on deposit in any depository account controlled by Lender, and (b) all Personal Property and all replacements, substitutions and additions to such property described in this paragraph and all proceeds thereof.

8.2　**Nature of Interest.**　Borrower hereby represents, warrants, covenants and agrees as follows:

(a)　Borrower (being the Debtor as that term is used in the Code) is and will be the true and lawful owner of the Personal Property and has rights in and the power to transfer the Personal Property, free and clear of all liens, charges or encumbrances other than liens and encumbrances in favor of Lender and liens and encumbrances, if any, expressly permitted by the Loan Documents.

(b)　The Collateral is to be used by Borrower solely for business purposes.

(c)　The only persons having any interest in the Personal Property are Borrower, Lender and holders of interests, if any, expressly permitted hereby.

(d)　No Financing Statement, other than Financing Statements showing Lender as the sole secured party, or with respect to liens or encumbrances, if any, expressly permitted hereby; covering any of the Personal Property or any proceeds thereof is on file in any public office except pursuant hereto.

8.3　**Financing Statements.**

(a)　Borrower, at its own cost and expense, upon Lender's demand, will furnish to Lender such further information and will execute and deliver to Lender such Financing Statements and other documents in form satisfactory to Lender and will do all such acts as Lender may request at any time or from time to time or as may be necessary or appropriate to establish and maintain a first priority perfected security interest in the Personal Property as security for the Indebtedness.

(b)　Borrower will pay the cost of filing or recording such Financing Statements or other documents, in all public offices wherever filing or recording is deemed by Lender to be desirable. Borrower hereby irrevocably authorizes Lender at any time, and from time to time, to file in any appropriate jurisdiction any initial Financing Statements and amendments thereto that (i) indicate that Lender holds a valid security interest in all assets of Borrower (or words of similar effect), regardless of whether any particular asset comprised in the Personal Property falls within the scope of Article 9 of the Code, or as being of an equal or lesser scope or within greater detail, and (ii) contain any other information required by the Code, and in the case of a Financing Statement filed as a fixture filing or indicating Collateral as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral

CH01/ 12462729.7

relates. Borrower agrees to furnish any such information to Lender promptly upon request. Borrower further ratifies and affirms its authorization for any Financing Statements and/or amendments thereto, executed and filed by Lender in any jurisdiction prior to the date of this Agreement.

8.4    **Remedies.**  Upon an Event of Default hereunder, in addition to all the remedies available in Section 7.2, Lender shall have the remedies of a secured party under the Code, including, without limitation, the right to take immediate and exclusive possession of the Personal Property, or any part thereof, and for that purpose, so far as Borrower can give authority therefor, with or without judicial process, may enter (if this can be done without breach of the peace) upon any place which the Personal Property or any part thereof may be situated and remove the same in compliance with the applicable requirements of the Code; and Lender shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale, until disposed of, or may propose to retain the Personal Property subject to Borrower's right of redemption, if any, as provided in the Code.  Lender may render the Personal Property unusable without removal and may dispose of the Personal Property on the Property.  Lender may require Borrower to assemble the Personal Property and make it available to Lender for its possession at a place to be designated by Lender which is reasonably convenient to both parties.  Lender will give Borrower at least ten (10) days' notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or any other intended disposition thereof is made.  The requirements of reasonable notice shall be met if such notice is mailed, by certified United States mail or equivalent, postage prepaid, to Borrower's Address at least ten (10) days before the time of the sale or disposition.  Lender may buy at any public sale.  Lender may buy at private sale if the Personal Property is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations.  Any such sale may be held in conjunction with any foreclosure sale of the Land, the Improvements and any other Collateral.  The net proceeds realized upon any such disposition, after deduction for the expenses of retaking, holding, preparing for sale, selling and the reasonable attorneys' fees and legal expenses incurred by Lender, shall be applied against the Indebtedness in such order or manner as Lender shall select.  Lender will account to Borrower for any surplus realized on such disposition after the Indebtedness has been fully and finally satisfied in accordance with the applicable requirements of the Code.

8.5    **General Security Agreement Provisions.**

(a)    The terms and provisions contained in this Article 8, unless the context otherwise requires, shall have the meanings and be construed as provided in the Code.

(b)    To the extent permitted by applicable law, the security interest created hereby is specifically intended to cover all Leases between Borrower or its agents as lessor, and various tenants named therein, as lessee, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacement of the Leases, together with all of the right, title and interest of Borrower, as lessor thereunder.

(c)    Borrower agrees that:

(i)    Where Collateral is in possession of a third party, Borrower will join with Lender in notifying the third party of Lender's interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Lender;

(ii)    Borrower will cooperate with Lender in obtaining control with respect to Collateral consisting of: deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

(iii)    Until all of the Obligations are paid and performed in full, Borrower will not suffer, cause or permit any change in Borrower's legal status without Lender's prior written consent.

## ARTICLE 9
## GENERAL PROVISIONS

9.1    **Costs and Expenses.**  Borrower unconditionally agrees to pay all Charges promptly upon demand.  In case of any Default, Borrower shall pay or cause to be paid all of Lender's costs and expenses, including reasonable attorneys' fees in connection with the administration or enforcement of the Loan Documents.  In addition to, and without limiting the generality of, the foregoing, if at any time hereafter prior to repayment of the Indebtedness in full and all Obligations satisfied in full, Lender employs counsel, consultants or appraisers for advice or other representation, whether or not any suit has been or shall be filed and whether or not other legal proceedings have been or shall be instituted, with respect to the Property or the marketing thereof or any of the Loan Documents, in connection with any consent, approval or amendment or to protect, collect, lease, sell, take possession of, or liquidate any of the Collateral, or to attempt to enforce any security interest or lien in any of the Collateral, or to enforce any rights of Lender or any of Borrower's obligations hereunder or those of any other person, firm or corporation which may be obligated to Lender by virtue of this Agreement or any of the other Loan Documents heretofore or hereafter delivered to Lender by or for the benefit of Borrower to defend any litigation initiated by a third-party to which Lender becomes a party, then, in any such event, all of the reasonable fees and expenses arising from such services, and all expenses, costs and charges relating thereto, shall constitute additional Indebtedness, payable on demand and shall bear interest at the Default Rate.  Lender may make Advances at any time to reimburse Lender for the foregoing costs and expenses.  Wherever it is provided for herein that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, all legal fees and disbursements of Lender, for outside firms, or for in-house counsel.

9.2    **Effect of Inspections and Investigations.**  The authority herein conferred upon Lender, and any action taken by Lender, to inspect the Property, will be exercised and taken by Lender for its own protection only and shall not be relied upon by Borrower for any purpose whatsoever and any action taken by Lender or Lender's environmental consultant to review any environmental reports or to assess any environmental matters in connection with the Property will be exercised and taken by Lender and by Lender's environmental consultant for their own protection only and shall not be relied upon by Borrower for any purpose whatsoever; and neither Lender nor Lender's environmental consultant shall be deemed to have assumed any responsibility to Borrower with respect to any such action herein authorized or taken by Lender, or Lender's environmental consultant or with respect to the Property, or prevention of

mechanic's and other liens from being claimed or asserted against the Property or review and assessment of environmental matters. Any review, investigation or inspection conducted by Lender, any environmental, architectural or engineering consultants retained by Lender or any agent or representative of Lender in order to verify independently Borrower's satisfaction of any conditions precedent to Advances, Borrower's performance of any of the covenants, agreements and obligations of Borrower under this Agreement, or the validity of any representations and warranties made hereunder (regardless of whether or not the party conducting such review, investigation or inspection should have discovered that any of such conditions precedent were not satisfied or that any such covenants, agreements or obligations were not performed or that any such representations or warranties were not true), shall neither affect nor constitute a waiver by Lender of (i) any representations and warranties under this Agreement or Lender's reliance thereon or (ii) Lender's reliance upon any certifications of Borrower required under this Agreement or any other facts, information or reports furnished Lender hereunder. Lender neither undertakes nor assumes any responsibility or duty to any Borrower Party or any other party to select, review, inspect, examine, supervise, pass judgment upon or inform any Borrower Party or any third party of (a) the existence, quality, adequacy or suitability of appraisals of the Property or any other Collateral, (b) any environmental report, or (c) any other matters or items, including, but not limited to, engineering, soils and seismic reports which are contemplated in the Loan Documents. Any such selection, review, inspection, examination and the like, and any other due diligence conducted by Lender is solely for the purpose of protecting Lender's rights under the Loan Documents, and shall not render such Lender liable to any Borrower Party or any third party for the existence, sufficiency, accuracy, completeness or legality thereof.

9.3    **Acquiescence not to Constitute Waiver of Lender's Requirements.** Each and every covenant and condition for the benefit of Lender contained in this Agreement may be waived by Lender, provided, however, that, to the extent that Lender may have acquiesced in any noncompliance with any conditions precedent to the Initial Disbursement or any Advance, such acquiescence shall not be deemed to constitute a waiver by Lender of any such conditions precedent with respect to any future disbursements of Loan proceeds.

9.4    **Protective Advances by Lender.** Lender shall have the right, but not the obligation, to do any and all acts which Lender may deem reasonably necessary to assure the protection of the Collateral and the lien or charge of the Loan Documents, including, but not limited to, during the continuance of an Event of Default and in addition to the rights under Article 7 and Article 8 hereof and any remedies set forth in the other Loan Documents, the settlement, compromise or contest of any Lien or claim of Lien, the taking of possession of the Property and Completion of all Construction Work and the commencement of, appearance in, or defense of any action or proceeding purporting to affect the rights, obligations or duties of the parties hereto. Any expense paid or incurred, or any advance made by Lender in such connection, shall be paid by Borrower to Lender upon demand. Such amounts as are advanced or expended by Lender hereunder and any other amounts advanced by Lender pursuant to this Agreement or any other the other Loan Documents shall constitute Indebtedness and shall bear interest from the date of advance or expenditure until repayment at the Default Rate.

9.5    **Increased Costs.** Borrower agrees to pay Lender additional amounts to compensate Lender for the reduction of any amounts received or receivable from Borrower as a result of any change after the date hereof in any applicable law or by any domestic or foreign

court, changing the basis of taxation of payments under this Agreement to Lender excluding taxes imposed on or measured by the net income or receipts of Lender or any franchise tax or similar tax imposed on Lender. Any amount payable by Borrower under this Section 9.5 shall be paid within five (5) days of receipt by Borrower of a notice by Lender setting forth the amount due and the basis for the determination of such amount, which statement shall be conclusive and binding upon Borrower absent manifest error. Failure on the part of Lender to demand payment from Borrower for any such amount attributable to any particular period shall not constitute a waiver of Lender's right to demand payment of such amount for any subsequent or prior period.

9.6    **Tax Liability.** If, by reason of a change in any applicable tax, banking or lending laws or regulations occurring after the date hereof, (a) Borrower is required to make any deduction or withholding in respect of any taxes, duties or other charges from any payment due under the Loan Documents, (b) Lender is charged with responsibility for the payment of all or any part of the Impositions or (c) the method of collecting Impositions is changed so as to affect Lender's rights under this Agreement or any other Loan Document, or the liens and security interests granted under the Loan Documents, then upon Lender's demand Borrower shall pay to Lender the amount determined by Lender as necessary to fully compensate Lender for all losses that Lender may suffer as a result of such change; provided that if Lender determines that it may be unlawful to charge Borrower for such losses then Lender shall have the right to declare all Indebtedness (including, without limitation, the Exit Fee) to be fully due and payable not earlier than ninety (90) days from the date of such declaration without prepayment premium or penalty.

9.7    **Document and Recording Tax Indemnification.** Borrower agrees to indemnify, defend and hold harmless Lender from and against any claim that any documentary stamp or mortgage tax is due and payable in connection with the Loan or the execution, delivery or recording of the Loan Documents and to pay such taxes and expenses incurred by Lender in connection therewith. Borrower may contest any determination that any such taxes are due, but shall pay any such taxes (including penalties and interest) when legally required. The indemnity obligations contained in this Section shall survive repayment of the Loan.

9.8    **Assignments and Participations.** Lender may, at any time or times and without Borrower's consent, make a Loan Transfer, grant any Participation or sell and assign the Loan and the Loan Documents in connection with a Securitization.

9.9    **Cooperation.** Borrower shall, and shall cause each of the other Borrower Parties to, reasonably cooperate with Lender in connection with servicing the Loan, any Loan Transfer, Participation, Securitization or any other financing created or obtained in connection with the Loan and, if Lender elects at any time, in connection with the creation tranches of the Loan or splitting the Loan into separate Loans (in the aggregate amount of the Loan Amount) having different priorities, including signing new notes and amendments to this Agreement and the other Loan Documents evidencing such tranches or splitting of the Loan, provided Lender shall reimburse Borrower for reasonable out-of-pocket expenses actually incurred relating to such a Loan Transfer, Participation or Securitization and provided that the Loan Amount, the Interest Rate, timing of payments by Borrower and other economic and/or material terms of the Loan shall not, taken as a whole, be changed as a result thereof.

9.10    **Disclosure of Information.**

(a)    Lender shall have the right to make available to any party for the purpose of any Loan Transfer, Participation, Securitization or any other financing created or obtained in connection with the Loan (including any prospective purchaser, any Rating Agency, any Governmental Authority and any prospective bidder at any foreclosure sale of the Property) any and all information that Lender may have with respect to the Property, or any Borrower Party, whether provided by Borrower, any Guarantor or any third party or obtained as a result of any environmental assessments. Borrower and Guarantor agrees that Lender shall have no liability whatsoever as a result of delivering any such information to any third party, and Borrower and each Guarantor, on behalf of itself and its successors and assigns, hereby releases and discharges Lender from any and all liability, claims, damages, or causes of action, arising out of, connected with or incidental to the delivery of any such information to any third party. Borrower and each Guarantor irrevocably waives any and all rights it may have under applicable state or federal law to prohibit disclosure, including but not limited to any right of privacy. Further Borrower and each Guarantor acknowledges that such information may be transmitted via the internet or by email.

(b)    Without limiting <u>Section 9.10(a)</u>, all news releases, publicity or advertising by the Borrower or its Affiliates through any media intended to reach the general public which refers to the Loan Documents or the financing evidenced by the Loan Documents, to the Borrower or Lender, shall be subject to the prior written approval of Lender, such approval of Lender not to be unreasonably withheld or delayed. Notwithstanding the foregoing, the Borrower and its Affiliates shall use commercially reasonable efforts to keep all information obtained in connection with the transaction described in this Agreement, confidential, except that any such party, as applicable, may disclose any such information (a) its auditors, attorneys and other consultants in connection with the transaction described in this Agreement (each such recipient being informed of the confidential nature of such information and directed to keep the same confidential), (b) to the extent required by any Applicable Law, and (c) if such information is otherwise available to the public not through a breach hereof.

9.11    <u>Notices</u>. All Notices shall be in writing and shall be (a) delivered in person, in which event the Notice shall be deemed received when delivery (or refusal of receipt) is actually made, (b) sent by facsimile, in which event the Notice shall be deemed received on the date of transmission if transmission is confirmed before 4:00 p.m. Chicago time on a Business Day or if transmission is confirmed after 4:00 p.m. Chicago time, then on the next Business Day provided that the sender obtains electronic confirmation of receipt and that a copy of such Notice is also delivered pursuant to clause (a) or (c); or (c) sent by a nationally recognized overnight courier for next Business Day delivery, in which event the Notice shall be deemed received on the first Business Day after delivery to, and acceptance for delivery by, the courier. All such Notices shall be addressed to the party for whom the Notice is intended, with a copy to its attorney, at their respective Addresses indicated in <u>Section 1.1</u> of this Agreement and if sent by facsimile such Notices shall be sent to the facsimile number set forth in <u>Section 1.1</u>. Either party may change its Address or facsimile number by giving written notice to the other in accordance with the foregoing notice provision.

9.12    <u>No Waiver; Rights and Remedies Cumulative</u>. No failure by Lender to exercise, or delay by Lender in exercising, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege

hereunder preclude any other or further exercise thereof, or the exercise of any other right, power or privilege. The rights and remedies provided in this Agreement are cumulative and not exclusive of any right or remedy provided by law. No notice to or demand on Borrower in any case shall, in itself, entitle Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of Lender to any other or further action in any circumstances without notice or demand.

9.13   **Inurement.** This Agreement and the Loan Documents shall be binding upon and inure to the benefit of the respective parties hereto and their respective successors and assigns, provided that no assignment by Borrower shall be effective, except as provided herein.

9.14   **Form of Documents.** All documents and other matters required by any of the provisions of this Agreement to be submitted or furnished to Lender shall be in form and substance satisfactory to Lender.

9.15   **Time is of the Essence.** Time is hereby declared to be of the essence of this Agreement and of every part hereof.

9.16   **Entire Agreement.** This Agreement and the other Loan Documents constitute the entire agreement between the parties hereto and may not be modified or amended in any manner other than by supplemental written agreement executed by the parties hereto. This Agreement supersedes any other agreement, oral or written, made by Lender with or for the benefit of Borrower.

9.17   **Governing Law.** THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS AND THE TERMS OF THE LOAN EVIDENCED HEREBY AND THEREBY WERE EACH NEGOTIATED IN THE STATE OF ILLINOIS, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. THEREFORE, THIS AGREEMENT SHALL BE CONSTRUED AND INTERPRETED WITH, AND GOVERNED BY THE INTERNAL LAWS OF THE STATE OF ILLINOIS (WITHOUT GIVING EFFECT TO ILLINOIS CHOICE OF LAW PRINCIPLES); PROVIDED, HOWEVER, THAT THE LAWS OF THE STATE WHERE THE LAND IS LOCATED SHALL APPLY TO THE CREATION, PERFECTION AND ENFORCEMENT OF ANY LIENS, SECURITY INTERESTS AND ENCUMBRANCES GRANTED OR CREATED BY THE MORTGAGE ON REAL PROPERTY LOCATED IN THE STATE WHERE THE LAND IS LOCATED, AND THE MANAGEMENT, OPERATION, DISPOSITION AND REALIZATION OF THE SECURITY PROVIDED THEREBY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE LAWS OF THE STATE OF ILLINOIS SHALL APPLY TO ALL MATTERS RELATING TO THE CHARGING AND COLLECTION OF INTEREST AND FEES UNDER THE LOAN DOCUMENTS.

9.18   **Captions.** The captions and headings of various Articles and Sections of this Agreement and Exhibits pertaining hereto are for convenience only and are not to be considered as defining or limiting in any way the scope or intent of the provisions hereof.

References to any Section or Sections shall be deemed to refer to Sections of this Agreement unless otherwise indicated.

  9.19 **Modification, Waiver**. No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge or change is sought.

  9.20 **Counterparts**. This Agreement may be signed in multiple counterparts, each of which constitute an original and, taken together, shall constitute a single agreement.

  9.21 **Detached Signatures**. Borrower certifies that Borrower's Counsel has been delegated the power to authorize Lender, or Lender's Counsel, to attach signature pages of Borrower, Guarantors and if applicable any Affiliate of Borrower, to the final, compiled versions of each of the Loan Documents. Borrower further agrees that should any dispute arise as to which version of the Loan Documents is the "final" version, the computer files maintained by Lender's Counsel, including without limitation any records of email communications, shall be conclusive except in the case of manifest error.

  9.22 **Partial Invalidity; Severability**. If any of the provisions of this Agreement or the other Loan Documents, or the application thereof to any person, party or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the other Loan Documents, or the application of such provision or provisions to persons, parties or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law and to this end, the provisions of this Agreement and all the other Loan Documents are declared to be severable. All covenants and agreements of Borrower and Guarantors shall be joint and several.

  9.23 **Definitions Include Amendments**. Definitions contained in this Agreement and the Appendix which identify documents, including, but not limited to, the Loan Documents, shall be deemed to include all amendments and supplements to such documents from the date hereof, and all future amendments, modifications, and supplements thereto entered into from time to time to satisfy the requirements of this Agreement or otherwise with the consent of Lender. Reference to this Agreement contained in any of the foregoing documents shall be deemed to include all amendments and supplements to this Agreement.

  9.24 **Waiver of Damages**. In no event shall Lender be liable to Borrower for punitive, exemplary or consequential damages, including, without limitation, lost profits, whatever the nature of a breach by Lender of its obligations under this Agreement or any of the Loan Documents, and Borrower waives all claims for punitive, exemplary or consequential damages.

  9.25 **Claims Against Lender**. Lender shall not be in default under this Agreement, or under any other Loan Documents, unless a written notice specifically setting forth the claim of Borrower shall have been given to Lender within thirty (30) days after Borrower

first had Knowledge of the occurrence of the event which Borrower alleges gave rise to such claim and Lender does not remedy or cure the default, if any there be, promptly thereafter.

9.26   **Set-Offs.**   After the occurrence and during the continuance of an Event of Default, Borrower hereby irrevocably authorizes and directs Lender from time to time to charge Borrower's accounts and deposits with Lender or its Affiliates, and to pay over to Lender an amount equal to any amounts from time to time due and payable to Lender hereunder, under the Note or under any other Loan Document.

9.27   **Relationship.**   The relationship between Lender and Borrower shall be that of creditor-debtor only.  No term in this Agreement or in the other Loan Documents and no course of dealing between the parties shall be deemed to create any relationship of agency, partnership or joint venture or any fiduciary duty by Lender to Borrower or any other party.

9.28   **Agents.**   In exercising any rights under the Loan Documents or taking any actions provided for therein, Lender may act through its employees, agents or independent contractors as authorized by Lender.

9.29   **Waiver of Marshaling of Assets.**   To the fullest extent Borrower may legally do so, Borrower waives all rights to a marshaling of the assets of Borrower, Guarantors, its members, if any, and others with interests in Borrower and of the Collateral, or to a sale in inverse order of alienation in the event of foreclosure of the interests hereby created, and agrees not to assert any right under any laws pertaining to the marshaling of assets, the sale in inverse order of alienation, homestead exemption, the administration of estates of decedents, or any other matters whatsoever to defeat, reduce or affect the right of Lender under the Loan Documents to a sale of any of the Collateral for the collection of the related debt without any prior or different resort for collection, or the right of Lender to the payment o the related debt out of the net proceeds of the Collateral in preference to every other claimant whatsoever.   In addition, Borrower, for itself and its successors and assigns, waives in the event of foreclosure of the Mortgage, any equitable right otherwise available to Borrower which would require the separate sale of portions of the Property.

9.30   **Conflict.**   In the event of any conflict between the provisions of this Agreement and any of the other Loan Documents, the provisions of this Agreement shall control.

9.31   **Brokers and Financial Advisors.**   Borrower will be solely responsible for any fee that may be payable to Broker.  Other than Broker, Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the transaction contemplated by this Agreement.  Borrower hereby indemnifies Lender and holds Lender harmless from and against any and all claims, liabilities, costs and expenses of any kind in any way relating to or arising from a claim by a financial advisors, brokers, placement agents or finders that such Person acted on behalf of Borrower in connection with the transactions contemplated herein.  The provisions of this Section 9.31 shall survive the expiration and termination of this Agreement and the repayment o the Indebtedness.

9.32   **No Third Party Beneficiaries.**   This Agreement and the other Loan Documents are solely for the benefit of Lender and Borrower, and nothing contained in this

CH01/ 12462729.7

Agreement or the other Loan Documents shall be deemed to confer upon anyone other than Lender and Borrower any right to insist upon or to enforce the performance or observance of any of the obligations contained herein or therein. All conditions to the obligations of Lender to make the Loan hereunder are imposed solely and exclusively for the benefit of Lender and Borrower, and not other person or entity shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make the Loan in the absence of strict compliance with any or all thereof and not other person shall under any circumstances be deemed to be a beneficiary of such conditions, any or all of which may be freely waived in whole or in pat by Lender if, Lender's sole discretion, Lender deems it advisable or desirable to do so.

9.33   **Waiver of Jury Trial**. BORROWER AND LENDER EACH HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR BASED UPON, OR ARISING OUT OF, THE SUBJECT MATTER OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY BORROWER AND LENDER, AND BORROWER ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER AND LENDER EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THE LOAN DOCUMENTS AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS.

9.34   **Consent To Jurisdiction**. BORROWER HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF COOK, STATE OF ILLINOIS AND IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED IN SUCH COURTS. BORROWER EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS.   BORROWER HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON BORROWER BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWER, AT THE ADDRESS SET FORTH IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.

9.35   **Definitional Provisions.** All terms defined in Schedule 1.2 attached to and made a part of this Agreement or defined elsewhere in this Agreement shall, unless otherwise defined therein, have the same meanings when used in the Note, Mortgage, any other Loan Documents, or any certificate or other document made or delivered pursuant hereto. The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement. The word "include(s)" when used in this Agreement

and the other Loan Documents means "include(s), without limitation," and the word "including" means "including, but not limited to."

9.36 **Interpretation**. With respect to all Loan Documents, whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The word "Obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language in the Loan Documents. This Agreement and all of the other Loan Documents shall not be construed more strictly against one party than against the other, merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties. Unless otherwise specified, any matter requiring Lender's consent or approval shall be interpreted as requiring Lender's consent or approval in the exercise of its sole and absolute discretion, and any such consent or approval shall be in writing, unless otherwise specifically indicated.

**[The next page is the signature page]**

Bristol Court

**IN WITNESS WHEREOF,** the parties hereto caused this Agreement to be executed as of the day and year first above written.

**BORROWER:**

**THE LANDINGS FLORIDA, LLC,**
a Florida limited liability company

By:    The Landings Florida Member, LLC,
       a Delaware limited liability company,
       Its Sole Member and Manager

       By:    Spinnaker/Regatta V, LLC,
              a Washington limited liability company,
              Its Sole Member and Manager

              By:    CVI/Spinnaker/Regatta V, Inc.,
                     a Washington corporation,
                     Its Manager

                     By: _____
                     Name: Richard Nathan
                     Title:   President and Sole Director

**LENDER:**

**ORIX REAL ESTATE CAPITAL, INC.,** a Delaware
corporation

By: _____
Name: _____
Title: _____

Bristol Court

IN WITNESS WHEREOF, the parties hereto caused this Agreement to be executed as of the day and year first above written.

**BORROWER:**

**THE LANDINGS FLORIDA, LLC,**
a Florida limited liability company

By:     The Landings Florida Member, LLC,
a Delaware limited liability company,
Its Sole Member and Manager

By:     Spinnaker/Regatta V, LLC,
a Washington limited liability company,
Its Sole Member and Manager

By:     CVI/Spinnaker/Regatta V, Inc.,
a Washington corporation,
Its Manager

By: _____
Name: Richard Nathan
Title:   President and Sole Director

**LENDER:**

**ORIX REAL ESTATE CAPITAL, INC.,** a Delaware corporation

By: _____
Name: _____
Title: _____
Michael J. Moran
SVP & General Counsel

CH01/ 12462729.5

## SCHEDULE 1.2

The following terms shall have the following meanings:

"**Accrued Interest**" means all accrued and unpaid interest on the outstanding principal balance of the Loan from time to time.

"**ACH**" means a pre-authorized Automated Clearinghouse transaction.

"**Advance**" means (a) each advance of any portion of the Loan Amount other than the Initial Disbursement and (b) each advance from the CapEx Reserve, the Fire Damage Reserve or the Retaining Wall Reserve.

"**Affiliate**" means with respect to a specified Person, any other Person which, directly or indirectly, through one or more intermediaries, Controls or is Controlled by or is under common control with such Person, including, without limitation, any general or limited partnership in which such Person is a partner, or any such Person's immediate family members, direct ancestors or descendants of a person.

"**Agreement**" means this Loan Agreement.

"**Applicable Laws**" means all applicable statutes, laws, treaties, regulations, rules, ordinances or orders of any kind whatsoever, including court decisions interpreting, administering or applying the foregoing. The term Applicable Laws shall include all zoning or building laws or ordinances; all environmental protection laws or regulations, including, without limitation, all Environmental Laws; any rules, regulations orders of any governmental agency, department, commission, board, bureau or other instrumentality or Governmental Authority; any building or environmental permit issued to Borrower or in respect of the Property; any order, writ or injunction of any court having jurisdiction over Borrower or the Property; and any condition, easement, right of way, covenant or restriction of record affecting Borrower or the Property.

"**Appraisal**" means a market appraisal of the Property prepared by a licensed MAI appraiser engaged or approved by Lender and satisfies either (a) the requirements of the "Uniform Standards of Professional Appraisal Practice" as adopted b the Appraisal Standards Board of the Appraisal Foundation, or (b) the guidelines in Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, in either case as in effect on the Closing Date.

"**Approved CapEx Expenses**" means costs and expenses actually incurred by Borrower for repairs or improvements to the Property (other than tenant improvement costs) which (i) are noted on **Exhibit G** attached hereto, including the Immediate Repairs or (ii) have been approved by Lender in its discretion.

"**Approved Lease**" means a Lease entered into after the date of this Agreement in compliance with the applicable terms and provisions of this Agreement.

"**Approved Plans**" means complete plans, drawings, specifications and scope of work, that comply with Applicable Laws and have been approved in writing by Lender, for any

Construction Project.

"**Architect**" means the licensed architect, if any, engaged by Borrower in connection with a Construction Project.

"**Asset Manager**" has the meaning set forth in <u>Section 5.3.7</u>.

"**Authorizing Entity**" means each corporation, partnership, limited partnership, limited liability company or other legal entity whose consent or authorization is required for Borrower to enter into, and perform its obligations under, this Agreement and the other Loan Documents.

"**Bankruptcy Code**" means Chapter 11 of Title II of the United States Code (11 U.S.C. §101 *et seq.*), as it may be amended, restated, replaced or superseded from time to time.

"**Basis Point**" means one one-hundredth of one percent.

"**Blocked Account**" means an account subject to a bank account control agreement among Borrower, Lender, the depository bank and, if applicable, the Property Manager in form and substance satisfactory to Lender.

"**Borrower**" has the meaning set forth in <u>Section 1.1.1</u>.

"**Borrower's Address**" has the meaning set forth in <u>Section 1.1.1</u>.

"**Borrower's Counsel**" has the meaning set forth in <u>Section 1.1.1</u>.

"**Borrower's Counsel's Address**" has the meaning set forth in <u>Section 1.1.1</u>.

"**Borrower's Knowledge**" means the actual knowledge, after reasonable inquiry, of any Guarantor, the general partner or managing member of Borrower (or if the general partner or managing member is an entity, each controlling shareholder, individual general partner or managing member of such entity), and each individual officer, employee or representative of a Borrower Party or Property Manager who exercises supervisory authority or has supervisory responsibilities with respect to the Property.

"**Borrower's Legal Status**" has the meaning set forth in <u>Section 1.1.1</u>.

"**Borrower Parties**" means, collectively, Borrower, each Authorizing Entity and each Guarantor; and "**Borrower Party**" means any of the foregoing individually.

"**Borrower Return**" has the meaning set forth in <u>Section 2.6</u>.

"**Broker**" has the meaning set forth in <u>Section 1.1.5</u>.

"**Business Day**" means any weekday other than any holiday in the State of Illinois during which banks are required or authorized to be closed.

"**CapEx Holdback**" has the meaning set forth in <u>Section 1.1.4</u>.

"**CapEx Reserve**" has the meaning set forth in <u>Section 1.1.3</u>.

"**Change Order**" means any modification, addition or other change either to any Construction Document after it has been approved by Lender, or to the scope or specifications of any Construction Project after the same have been approved by Lender.

"**Charges**" means costs and expenses of the Loan, and any and all other fees owing to Lender pursuant to the Loan Documents, including all reasonable costs and expenses incurred by Lender in connection with the documentation of the Loan or any modification, extension, renewal or amendment thereof, all workout costs relating to the Loan, all recording, filing and registration fees and charges, mortgage or documentary taxes, UCC searches, title and survey charges, all fees and disbursements of Lender's attorneys and consultants, any out-of-pocket costs involved in the disbursement and administration of the Loan, any repair or maintenance costs incurred by Lender with respect to the Property, all payments made to remove or protect against Liens other than those which are Permitted Exceptions or otherwise for the protection of the Collateral, all costs and expenses incurred by Lender in connection with the determination of whether or not Borrower has performed the obligations undertaken by Borrower hereunder or has satisfied any conditions precedent to the obligations of Lender hereunder, and any out-of-pocket costs in connection with evaluating any Borrower request, including any request for consent or approval of any matter, regardless of whether it is granted, including the review of any proposed Lease or non-disturbance and attornment agreement.

"**Closing Checklist**" means the checklist prepared by Lender and furnished to Borrower of documents, certificates, reports, surveys, title property insurance requirements and other items and deliveries that Borrower is obligated to deliver or satisfy as a condition to the Initial Disbursement.

"**Closing Date**" means the date the Initial Disbursement is made.

"**Code**" means the Uniform Commercial Code as adopted in the State of Illinois, as amended from time to time.

"**Collateral**" means the Property and all other assets of Borrower, whether now owned or hereafter acquired, and all proceeds thereof.

"**Commitment Fee**" has the meaning set forth in <u>Section 1.1.4</u>.

"**Committed Amount**" means, as of any date of determination the principal balance of the Loan <u>plus</u> any undisbursed portions of the Holdback.

"**Completion**" or "**Complete**" means one hundred percent (100%) completion of construction, subject to usual and customary punch list items, in a good and workmanlike manner and in compliance with all Applicable Laws and private restrictions included in Permitted Exceptions, and in a manner consistent and compliant in all material respects with the applicable Construction Documents as approved by Lender, and free and clear of all liens, claims, encumbrances and rights of others, other than Permitted Exceptions, as evidenced by the issuance of certificates of completion by Lender's consultant or inspecting architect or engineer, if any, Borrower's architect and the general contractor, in each case in form and substance

acceptable to Lender and, if available or required under Applicable Law, a final or partial certificate of occupancy and, as applicable, acceptance of completion by the applicable tenant.

"**Condition Report**" has the meaning set forth in Section 5.2.6.

"**Construction Contracts**" means each contract or agreement to which Borrower or any agent of Borrower is a party, providing for the provision of construction services (including architect's or engineering services), labor or material in connection with any of the Construction Work.

"**Construction Documents**" means each of the following as approved by Lender with respect to each Construction Project:  the Approved Plans, a completion schedule, the Project Budget and the applicable Construction Contracts.

"**Construction Project**" means and refers to each discrete Construction Work project; provided separate phases or stages of work relating to a single improvement or project shall be considered part of a single Construction Project.  For example, any buildout of tenant space by Borrower, and any capital improvements to the Property, including renovations and additions, will constitute a Construction Project.

"**Construction Work**" means all interior or exterior construction and construction-related activities, including without limitation, any tenant improvements, renovations, alterations, additions, expansions, capital improvements, repairs and replacements to or at the Improvements.

"**Contested Taxes**" means any Impositions which Borrower is contesting in accordance with the provisions of the Loan Documents.

"**Control**" or "**Control**":  As such term is used with respect to any entity, including the correlative meanings of the terms "controlled by" and "under common control with", shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of such person or entity through the ownership of 50% or more of the outstanding voting securities in such entity.

"**CVI**" has the meaning set forth in Section 1.1.1(e).

"**Debt Service**" means, for the period of determination, the product obtained by multiplying the principal balance of the Loan by the greater of (a) the Interest Rate as of the date of determination and (b) seven and one-half percent (7.5%).

"**Default**" means the existence of any circumstance or the occurrence of any event which with the passage of time or the giving of notice, or both, would constitute an Event of Default.

"**Default Rate**" has the meaning set forth in Section 1.1.4.

"**Deficiency**" means (a) with respect to any Construction Project, the amount, if any, by which the cost to Complete such Construction Project exceeds the sum of any retainage

JUDGE BUCKLO
MAGISTRATE JUDGE VALDEZ

08 C 1492

for work completed with respect to such Construction Project plus the undisbursed amount of any Holdback that has been allocated to such Construction Project, all as estimated or determined by Lender in its reasonable discretion; provided that in the case of a Construction Project that is in the nature of tenant improvements, the cost to Complete, solely for purposes of determining the amount of a Deficiency, if any, shall be reduced by the amount the applicable tenant is obligated to pay for its share of such costs; and (b) with respect to the Interest Holdback (or the interest reserve in the Project Budget), the amount by which the undisbursed balance of the Interest Holdback will be insufficient to pay all Accrued Interest until the Maturity Date as determined by Lender.

"**Delivered Report**" has the meaning set forth in <u>Section 4.1.4</u>.

"**Deposits**" means all amounts Borrower is required to deposit with Lender, including the Monthly Tax Deposits, the Monthly Insurance Deposits, funds in the CapEx Reserve, the Fire Damage Reserve and the Retaining Wall Reserve, and any other deposits held by Lender, including tenant security deposits and Loss Recoveries (unless and until the same are applied to the Indebtedness).

"**Eligible Expenses**" means ordinary and necessary operating expenses of the Property during the applicable month which are either consistent with the Operating Budget or otherwise reasonably incurred in the ordinary course of Borrower's business, excluding any expenses paid to Borrower or any Affiliate of Borrower (including, without limitation, any payment to Asset Manager), unless expressly permitted by Lender.

"**Engineering Reports**" means the property condition reports relating to the physical condition of the Property prepared by consultants engaged or approved by Lender and either addressed to Lender or covered by a reliance letter in favor of Lender confirming that Lender may fully rely upon the contents of such report.

"**Environmental Claim**" means any claim made by a Governmental Authority or third party relating to the presence at, on, under or about, or the release from, the Property of Hazardous Substances.

"**Environmental Indemnity**" means the Environmental Indemnity Agreement executed by Borrower and Guarantors in favor of Lender.

"**Environmental Law**" means and includes, without limitation, any federal, state or local law, whether under common law, statute, rule regulation or otherwise, requirements under permits or other authorizations issued with respect thereto, and other orders, decrees, judgments, directive or other requirements of any Governmental Authority relating to or imposing liability or standards of conduct, disclosure or notification with regard to the protection of human health, the environment, ecological conditions, Hazardous Substances or any activity involving Hazardous Substances, all as previously or now existing and in the future to be amended.

"**Environmental Report**" means any report relating to the presence or possible presence of Hazardous Substances at, on, under or about the Property or the compliance of the Property with Environmental Laws.

CH01/ 12462729.7                                    -5-

"**Environmental Site Assessment**" means a Phase I and, if required by Lender, a Phase II environmental site assessment covering the Property prepared by a licensed hydrogeologist, licensed environmental consulting firm engaged or approved by Lender in conformance with the current standards promulgated by ASTM and the requirements of Lender, and either addressed to Lender or covered by a reliance letter in favor of Lender confirming that Lender may fully rely upon the contents of such report.

"**ERISA**" means The Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder from time to time.

"**Event of Default**" has the meaning set forth in Section 7.1.

"**Exempt Project**" means any Construction Project having a total cost of $100,000 or less; provided no Retaining Wall Work, Fire Damage Repairs or Immediate Repairs shall be deemed Exempt Projects regardless of the cost of such work.

"**Financing Statement**" means financing statements filed under the Code and any amendments thereto or extensions or terminations thereof.

"**Fire Damage Repairs**" has the meaning set forth in Section 5.2.6.

"**Fire Damage Reserve**" has the meaning set forth in Section 1.1.4.

"**Governmental Authority**" means any federal, state, county or municipal government, or political subdivision thereof, any governmental or quasi-governmental agency, authority, board, bureau, commission, department, instrumentality, or public body, or any court, administrative tribunal, or public utility.

"**Guarantor**" and "**Guarantors**" have the respective meanings set forth in Section 1.1.1.

"**Guaranty**" means, individually, each guaranty signed by a Guarantor in favor of Lender and, collectively, all such guaranties.

"**Hazardous Substances**" means and includes, without limitation: any substance, chemical, material or waste (A) the presence of which causes a nuisance or trespass of any kind under any applicable Environmental Law; (B) which is regulated by any Governmental Authority or is likely to create liability under any Environmental Law because of its toxic, flammable, corrosive, reactive, carcinogenic, mutagenic, infectious, radioactive, or other hazardous property or because of its effect on the environment, natural resources or human health and safety; including but not limited to, flammables and explosives, gasoline, petroleum and petroleum products, asbestos containing materials, polychlorinated biphenyls, lead and lead-based paint, radon, radioactive materials, microbial matter, biological toxins, mylotoxins, mold or mold spores or any hazardous or toxic material, substance or waste which is defined by those or similar terms or is regulated as such by any Governmental Authority; or (C) which is designated, classified, or regulated as being a hazardous or toxic substance, material, pollutant, waste (or a similar such designation) under any federal, state or local law, regulation or ordinance, including under any Environmental Law.

"**Holdback**" and "**Holdbacks**" have the meanings set forth in <u>Section 1.1.4</u>.

"**Immediate Repairs**" has the meaning set forth in <u>Section 5.2.6</u>.

"**Impositions**" means all general and special taxes and assessments imposed on the Property, including water charges, sewer charges and all other charges against the Property of any nature whatsoever; provided that if said taxes, assessments or other charges exclude the Improvements or any part thereof now constructed or to be constructed, then Lender's reasonable estimate as to the amount of taxes, assessments and charges to be levied and assessed on all of the Improvements shall be used to determine the amount of Impositions. If any such general or special taxes or assessments shall be levied, charged, assessed or imposed upon or for the Property, or any portion thereof, and if such taxes or assessments shall also be a levy, charge, assessment or imposition upon or for any other premises, then the amount of Impositions shall be based upon the entire amount of such taxes or assessments, and Borrower shall not have the right to apportion the amount of any such taxes or assessments for the purposes of such computation.

"**Improvements**" means, from time to time, all buildings, parking lots, fixtures and other structures attached to or located upon the Land.

"**In Balance**" means no Deficiency then exists.

"**Indebtedness**" means all obligations of Borrower to Lender from time to time for the payment of money, including without limitation, the principal amount of the Loan outstanding from time to time, all Accrued Interest, the Exit Fee, all Charges and all amounts expended by Lender or on its behalf which Borrower is obligated to reimburse, including interest, as provided in the Loan Documents.

"**Initial Disbursement**" has the meaning set forth in <u>Section 1.1.4</u>.

"**Insolvency Laws**" means the federal Bankruptcy Code, or any similar federal or state insolvency laws, governing any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or the appointment of a receiver or similar administrator for the protection of creditors.

"**Insolvency Proceeding**" means the filing or pendency of any voluntary or involuntary petition or proceeding under any Insolvency Laws against or affecting any Borrower Party or the Property.

"**Interest**" means interest on the Indebtedness at the Interest Rate or the Default Rate, as applicable.

"**Interest Rate**" has the meaning set forth in <u>Section 1.1.4</u>.

"**Land**" has the meaning set forth in <u>Section 1.1.3</u>.

"**Lease**" means any oral or written lease and any other occupancy arrangement, possessory license or other agreement demising or otherwise granting possessory rights, to any party of all or any party of the Property.

"**Legal Limits**" means the limits imposed on Lender's ability to accept payments of interest, fees or other charges in connection with the Loan, under Applicable Laws, including without limitation, usury laws.

"**Lender**" has the meaning set forth in <u>Section 1.1.2</u> of this Agreement, and shall include the successors and assigns of each owner of the Loan Documents from time to time.

"**Lender's Address**" has the meaning set forth in <u>Section 1.1.2</u>.

"**Lender's Counsel**" has the meaning set forth in <u>Section 1.1.2</u>.

"**Lender's Counsel's Address**" has the meaning set forth in <u>Section 1.1.2</u>.

"**LIBOR**" means the rate published each Business Day in *The Wall Street Journal* for notes maturing thirty (30) days after issuance under the caption "Money Rates, London Interbank Offered Rates (Libor)".

"**Licenses**" means all certifications, permits, licenses, approvals, registrations, authorizations, accreditations or consents from all applicable Governmental Authorities.

"**Lien**" means any security interest, encumbrance, mortgage or lien, whether consensual or created by law, whether statutory or common law, (including tax liens, mechanics' or materialmens' liens and environmental liens) which encumbers the Collateral or any portion thereof.

"**Loan**" means the loan made pursuant to this Agreement.

"**Loan Amount**" has the meaning set forth in <u>Section 1.1.4</u>.

"**Loan Budget**" has the meaning set forth in <u>Section 1.1.4</u>.

"**Loan Documents**" means, collectively, this Agreement, the Note, the Mortgage, the Guaranty, the Environmental Indemnity and any other documents, agreements, certificates or instruments evidencing or securing or which guaranty the Obligations or executed in connection with the Loan whether on or about the Closing Date or thereafter, and any modifications, renewals or extensions thereof, including, without limitation, any interest rate protection agreement entered into by Borrower.

"**Loan Transfer**" means any transfer or assignment by Lender of the Loan or any partial interest therein, the Loan Documents or the servicing rights with respect to the Loan.

"**Loss Recoveries**" means all proceeds of insurance paid or payable to Borrower arising out of any loss, damage or casualty affecting the Property and all awards, damages and payments paid or payable to Borrower arising out of any actual or threatened condemnation or eminent domain proceeding affecting the Property or any portion of the Property.

"**Management Agreement**" has the meaning set forth in <u>Section 1.1.5</u>.

"**Material Agreement**" means each Construction Contract and any other agreement to which Borrower is a party, other than Leases, and which is not terminable at the option of Borrower upon 30 days notice (or less).

"**Material Adverse Effect**" means that the matter in question could reasonably be anticipated to materially and adversely affect (a) a party's ability to perform its obligations under the Loan Documents, including the ability to Complete any Construction Project, (b) Borrower's ability to operate the Property in conformance with the then current Operating Budget or (c) the value, cash flow or marketability of the Collateral, either presently or as contemplated to be operated, constructed, used, leased or configured pursuant to the then current business plan of Borrower as approved by Lender, (d) enforceability of any Loan Document or the perfection or priority of any lien created under any Loan Document, or (e) the business operations, economic performance, assets or condition (financial or otherwise) of any of Borrower or any Guarantor.

"**Maturity Date**" has the meaning set forth in Section 1.1.4.

"**Monthly Cash Flow Amount**" means, for any month in question, the amount of Revenues which constitute operating cash flow (i.e., excluding such items as Loan disbursements, Loss Recoveries, forfeited security deposits, lease termination fees and other Revenues required to be deposited with Lender or applied to the principal balance of the Loan) generated from all sources with respect to the Property during the applicable month, reduced only by that amount of money expended to pay Eligible Expenses, the Monthly Insurance Deposit and the Monthly Tax Deposit. If the Property does not generate rental income or other operating cash flow the Monthly Cash Flow Amount shall be zero.

"**Monthly Insurance Deposit**" means an amount equal to (a) one-twelfth (1/12th) of the total annual Premiums that will next become due and payable as estimated by Lender, less (b) any amount then held by Lender for the payment of such Premiums divided by the number of months to elapse prior to the date when such total annual Premiums become due and payable.

"**Monthly Interest Deficiency**" means the excess of Accrued Interest for any calendar month over the Monthly Cash Flow Amount for such month.

"**Monthly Tax Deposit**" means one-twelfth (1/12th) of the amount of the total annual Impositions applicable to the Property, provided that if the total annual Impositions have not yet been finally determined, then the Tax Deposit shall be based on Lender's estimate of such total, plus, if requested by Lender the amount of money which, together with the aggregate of the monthly deposits to be made as of one month prior to the date on which the next installment of Impositions becomes due, shall be sufficient to pay in full such installment, as determined by Lender.

"**Mortgage**" means the mortgage, deed of trust, deed to secure debt or similar instrument made by Borrower in favor of Lender, which encumbers the Land and Improvements as security for the Indebtedness.

"**Net Operating Income**" means annualized revenues of the Property from whatever source, based on the six (6) months prior to the date of determination, excluding, however, all interest income, late fees, rental revenues in respect of Leases that are sixty (60)

days or more in arrears in payment of rent or Leases with tenants that are subject to an Insolvency Proceeding, less annualized operating expenses of the Property based on the six (6) months prior to the date of determination (which shall include a capital reserve of two hundred fifty and no/100 dollars ($250.00) per unit contained in the Improvements and a management fee to the Property Manager equal to three percent (3%) of the annualized Revenues), each as determined by Lender.  Notwithstanding the foregoing, if on the date of determination the tenants in occupancy occupy more than 94% of the Improvements, the rental revenues of the Property shall be reduced to an amount reflecting an occupancy level of 94%, as determined by Lender.

"**Note**" means the promissory note in the original principal amount of the Loan made by Borrower and payable to the order of Lender.

"**Notices**" means all communications, requests or notices required or appropriate to be given under this Agreement or any of the other Loan Documents.

"**Obligations**" means all or any payment or performance obligations of Borrower or Guarantors to Lender under the Loan Documents.

"**OFAC**" means the Office of Foreign Asset Control of the United States Department of the Treasury.

"**OFAC Prohibited Person**" shall mean a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of OFAC (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action.

"**Operating Agreement**" means each Lease, each declaration of covenant, restrictions and/or conditions to which the Property is subject, and any other material agreement which affects the use, occupancy or operation of the Property and which is not terminable upon 30 days notice or less and under the terms of which a Lien could be imposed upon the Property or a reversion of title could occur.

"**Operating Budget**" means the annual operating budget for the Property as approved by Lender in connection with approval of Borrower's then current business plan as amended from time to time with the written approval of Lender.

"**Organizational Documents**" means all of the documents creating or governing Borrower or, as applicable, an Authorizing Entity.

"**Participation**" means any participation interest in the Loan.

"**Permitted Exceptions**" means all Liens and exceptions to title shown on Schedule B of the Title Policy and all Liens in favor of Lender.

"**Permitted Transfer**" means (a) any absolute Transfer (as opposed to a Transfer

for collateral purposes) of direct or indirect ownership interests in Borrower to Affiliates of Borrower, family members of the owners (at Closing) of direct or indirect ownership interests in Borrower (or trusts maintained for the benefit of such persons); and (b) any sale, conveyance or assignment of direct or indirect ownership interests in Borrower, or their Affiliates among the owners of such ownership interests; provided that in the case of Transfers described in clauses (a) and (b), above, (i) after giving effect to such Transfer, Borrower shall be Controlled and at least fifty percent 50% owned by Guarantors or entities wholly owned by Guarantors, (ii) Lender is provided with prior written notice of any such Transfer and evidence that the transferee is not an OFAC Prohibited Person and (iii) as determined by Lender's in its sole discretion, such transfer shall not create any violation or default under Section 5.1.1(e) of this Agreement.

"**Person**" means any individual, trustee under a trust agreement or declaration of trust, corporation, partnership, limited liability company, unincorporated organization, association or other legal entity.

"**Personal Property**" means all of Borrower's personal property, fixtures, attachments and equipment located upon, attached to, used or required to be used in connection with the operation of the Property, including the following types of property, as defined in Article 9 of the Code: Accounts, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Electronic Chattel Paper, Equipment, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter of Credit Rights, and Supporting Obligations.

"**Premiums**" means the premium charges and all other related costs necessary to maintain in force all of the policies of insurance that Borrower is required to maintain pursuant to the Loan Documents.

"**Project**" has the meaning set forth in Section 1.1.3.

"**Project Budget**" means a detailed budget, in form and substance satisfactory to Lender, specifying all Project Costs.

"**Project Costs**" means all costs and expenses of every kind and nature whatsoever to be incurred by Borrower in connection with the Completion of a Construction Project, including such reserves and contingencies as Lender shall reasonably require.

"**Project Yield**" means the ratio, expressed as a percentage, of Net Operating Income as projected by Lender to the Committed Amount as of the date of determination.

"**Property**" means collectively, the Land, the Improvements, including any Improvements that are constructed after the Closing Date, all Personal Property, all Leases and appurtenances relating to any of the foregoing.

"**Property Manager**" has the meaning set forth in Section 1.1.5.

"**Rating Agency**" means any statistical rating agency that has assigned, or has been requested to assign, a rating to any Securities.

"**Rent Roll**" means the rent roll for the Property that is attached to this Agreement

as <u>Exhibit E</u>.

"**Retaining Wall Reserve**" has the meaning set forth in <u>Section 1.1.4</u>.

"**Retaining Wall Work**" has the meaning set forth in <u>Section 5.2.6</u>.

"**Revenues**" means all rents, revenues and other income, from whatever source, including without limitation, lease termination fees, returns of deposits and any other ordinary or extraordinary revenues or income generated from or relating to the ownership, leasing, management, maintenance or operation of the Property.

"**Scheduled Payment Date**" means the first Business Day of each calendar month after the Closing Date, provided that if the Closing Date is not the first day of a calendar month, then the first Scheduled Payment Date shall be the first Business Day of the second calendar month following the calendar month during which the Closing Date occurs..

"**Securities**" means any mortgage pass-through certificates or other securities issued, directly or indirectly, by Lender representing rights or interests in or with respect to the Loan.

"**Securitization**" means any rated or unrated public offering or private placement of any Securities.

"**Single Purpose Entity**" means an entity which (i) exists solely for the purpose of owning and operating the Project, (ii) conducts business only in its own name, (iii) does not engage in any business other than the ownership, management and operation of the Property, (iv) does not hold, directly or indirectly, any ownership interest (legal or equitable) in any entity or any real or personal property other than the interest which it owns in the Property, (v) does not have any assets other than those related to its interest in the Property and does not have any debt other than as permitted by this Agreement and does not guarantee or otherwise obligate itself with respect to the debts of any person or entity, (vi) has its own separate books, records, accounts, financial statements and tax returns (with no commingling of funds or assets), (vii) holds itself out as being a company separate and apart from any other entity, and (viii) observes limited liability company/partnership/corporate formalities, as the case may be, independent of any other entity.

"**Subsidiary**" means, with respect to a Person, any entity of which such Person would be the direct or indirect parent entity.

"**Survey**" means a land title survey of the Land and the Improvements prepared by a licensed surveyor and certified to Lender in the form required by Lender as complying with then current ALTA/ACSM standards with such Table A items as Lender shall designate.

"**Title Company**" has the meaning set forth in <u>Section 1.1.3</u>.

"**Title Policy**" means the loan policy of title insurance issued by the Title Company to Lender in form and substance approved and accepted by Lender on the Closing Date which, among other things, insures the lien of the Mortgage as a first priority mortgage lien

against the Property.

      "**Transfer**" means any sale, transfer, lease (other than an Approved Lease), conveyance, alienation, pledge, assignment, mortgage, encumbrance, hypothecation or other disposition of (a) all or any portion of the Property or any portion of any other Collateral, (b) all or any portion of Borrower's right, title and interest (legal or equitable) in and to the Property or any portion of any other Collateral, or (c) any interest in Borrower or any interest in any Authorizing Entity.

Bristol Court

# EXHIBIT A

## Legal Description

### TRACT 1

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

BEGINNING at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30° 23' 54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34° 32' 12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point; thence S 67° 10' 12" E, a distance of 119.25 feet to a point; thence N 23° 38' 00" E a distance of 190.00 feet to a point; thence N 44° 43' 00" E a distance of 116.00 feet to a point; thence S 46° 08' 05" E a distance of 263.52 feet to a point; thence N 79° 55' 00" E a distance of 208.00 feet to a point; thence N 14° 48' 00" E a distance of 164.00 feet to a point; thence N 44° 00' 00" E a distance of 59.00 feet to a point; thence N 84° 04' 00" E a distance of 57.00 feet to a point; thence S 57° 02' 00" E a distance of 53.00 feet to a point; thence S 75° 16' 39" E a distance of 134.70 feet to a point; thence N 61° 30' 00" E a distance of 54.00 feet to a point; thence N 83° 06' 00" E a distance of 36.00 feet to a point; thence S 62° 48' 16" E a distance of 149.00 feet to a point; thence S 51° 58' 09" W a distance of 47.88 feet to a point; thence S 02° 42' 00" E a distance of 50.00 feet to a point; thence S 38° 48' 00" E a distance of 160.00 feet to a point; thence S 73° 47' 00" E a distance of 90.00 feet to a point; thence N 76° 28' 00" E a distance of 189.00 feet to a point; thence N 46° 14' 00" E a distance of 38.00 feet to a point; thence N 20° 31' 00" E a distance of 21.00 feet to a point; thence N 49° 37' 40" E a distance of 288.98 feet to a point; thence N 17° 57' 00" E a distance of 332.00 feet to a point; thence N 65° 39' 00" E a distance of 121.00 feet to a point; thence S 16° 11' 00" W a distance of 148.00 feet to a point; thence S 73° 49' 00" E a distance of 198.00 feet to a point; thence N 16° 11' 00" E a distance of 155.00 feet to a point; thence N 78° 39' 00" E a distance of 42.00 feet to a point; thence S 07° 00' 00" E a distance of 127.00 feet to a point; thence S 72° 57' 17" E a distance of 131.25 feet to a point on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence S 16° 27' 41" W, along said northwestern right-of-way line of Peachtree Corners West, a distance of 608.00 feet, more or less, to the point of intersection of said right-of-way line with the centerline of Crooked Creek; thence in a generally northwesterly direction, along said centerline of Crooked Creek, and following the meanderings thereof, a distance of 592.00 feet, more or less, to the point of intersection of the centerline of said creek with the line common to said Land Lots 282 and 305; thence S 58° 50' 02" W, along said line common to Land Lots 282 and 305, a distance of 1,462.00 feet, more or less, to the iron pin found at the POINT OF BEGINNING.

### TRACT 2

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30° 23' 54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34° 32' 12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point, said point marking the TRUE POINT OF BEGINNING; FROM SAID TRUE POINT OF BEGINNING AS THUS ESTABLISHED, running thence N 34° 32' 12" W, along said line common to Land Lots 305 and 306, a distance of 491.78 feet to an iron pin found; thence N 59° 22' 15" E a distance of 1,683.24 feet to an iron pin

found; thence S 31° 09' 38" E a distance of 350.58 feet to an iron pin found; thence S 31° 00' 33" E a distance of 586.68 feet to an iron pin found; thence N 58° 11' 41" E a distance of 385.16 feet to an iron pin found; thence N 17° 02' 50" E a distance of 305.00 feet to an iron pin set; thence N 00° 20' 57" E a distance of 45.12 feet to an iron pin found; thence S 71° 48' 28" E a distance of 511.13 feet to an iron pin set on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence in a southwesterly direction, along said northwestern right-of-way line of Peachtree Corners West, the following courses and distances: along the arc of a 2,200.00 foot radius curve, an arc distance of 461.36 feet to a point (said arc being subtended by a chord lying to the southeast of said arc and bearing S 22° 28' 09" W a distance of 460.51 feet); and S 16° 27' 41" W a distance of 37.00 feet to a point; thence N 72° 57' 17" W a distance of 131.25 feet to a point; thence N 07° 00' 00" W a distance of 127.00 feet to a point; thence S 78° 39' 00" W a distance of 42.00 feet to a point; thence S 16° 11' 00" W a distance of 155.00 feet to a point; thence N 73° 49' 00" W a distance of 198.00 feet to a point; thence N 16° 11' 00" E a distance of 148.00 feet to a point; thence S 65° 39' 00" W a distance of 121.00 feet to a point; thence S 17° 57' 00" W a distance of 332.00 feet to a point; thence S 49° 37' 40" W a distance of 288.98 feet to a point; thence S 20° 31' 00" W a distance of 21.00 feet to a point; thence S 46° 14' 00" W a distance of 38.00 feet to a point; thence S 76° 28' 00" W a distance of 189.00 feet to a point; thence N 73° 47' 00" W a distance of 90.00 feet to a point; thence N 38° 48' 00" W a distance of 160.00 feet to a point; thence N 02° 42' 00" W a distance of 50.00 feet to a point; thence N 51° 58' 09" E a distance of 47.88 feet to a point; thence N 62° 48' 16" W a distance of 149.00 feet to a point; thence S 83° 06' 00" W a distance of 36.00 feet to a point; thence S 61° 30' 00" W a distance of 54.00 feet to a point; thence N 75° 16' 39" W a distance of 134.70 feet to a point; thence N 57° 02' 00" W a distance of 53.00 to a point; thence S 84° 04' 00" W a distance of 57.00 feet to a point; thence S 44° 00' 00" W a distance of 59.00 feet to a point; thence S 14° 48' 00" W a distance of 164.00 feet to a point; thence S 79° 55' 00" W a distance of 208.00 feet to a point; thence N 46° 08' 05" W a distance of 263.52 feet to a point; thence S 44° 43' 00" W a distance of 116.00 feet to a point; thence S 23° 38' 00" W a distance of 190.00 feet to a point; thence N 67° 10' 12" W a distance of 119.25 feet to the TRUE POINT OF BEGINNING. Said Tract containing 39.434 acres.

With respect to TRACT 1 AND TRACT 2

TOGETHER WITH rights created in that certain Cross-Easement Agreement between Peachtree Associates, an Illinois limited partnership, and Peachtree Investors, an Illinois limited partnership, dated June 12, 1986, recorded at Deed Book 3600, page 218, Gwinnett County, Georgia Records (it being intended that said Cross-Easement Agreement not be terminated by merger by reason of the conveyance of all property encumbered thereby to the same entity).

Tax Map Parcel #'s 6 305 9 and 6 305 11

Street Address of Real Estate: 3655 Westchase Village Lane, Norcross, Georgia

Bristol Court

# EXHIBIT B

## Loan Budget

| Sources | | | | | | | |
|---|---|---|---|---|---|---|---|
| Initial Funding | $24,100,000 | | | | | | |
| CapEx Holdback | $2,000,000 | | | | | | |
| Interest Reserve | $400,000 | | | | | | |
| Max Loan Commitment | $26,500,000 | | | | | | |
| Borrower Cash Equity | $3,965,000 | | | | | | |
| **Total Sources** | **$30,465,000** | | | | | | |
| | | | | | | | |
| **Uses** | | | | | | | |
| Purchase Price | $26,850,000 | | | | | | |
| Capital Improvements | $2,000,000 | | | | | | |
| Interest Reserve | $400,000 | | | | | | |
| Lender Fee | $270,000 | | | | | | |
| Insurance | $200,983 | | | | | | |
| Insurance Reserve | $19,295 | | | | | | |
| Legal | $142,525 | | | | | | |
| Broker Fee | $132,500 | | | | | | |
| Deposits | $96,895 | | | | | | |
| Working Capital | $125,898 | | | | | | |
| Third Party Reports | $10,200 | | | | | | |
| Tax Reserves | $127,144 | | | | | | |
| Pest Control | $19,500 | | | | | | |
| Closing Costs | $64,614 | | | | | | |
| Prepaid Interest | $5,446 | | | | | | |
| **Total Uses** | **$30,465,000** | | | | | | |

Borrower is escrowing funds with the Lender to complete work outside of the Loan Budget:

(1) $200,000 for repair to railroad ties (Section 2.8 Retaining Wall Reserve)

(2) $50,000 for fire damage to one living unit (Section 2.7 Fire Damage Reserve)

(3) $268,250 for capital improvements outside of the Approved CapEx Budget

Bristol Court

# EXHIBIT C

## Ownership Structure



Bristol Court

# EXHIBIT D

## Pending Suits

None.

Bristol Court

# EXHIBIT E

## Rent Roll

**[Please see attached]**

02/22/2006                          SOUTHEASTERN REALTY                    Page  1
11:07 am                  The Courts At Peachtree Corner             ID 3.6.6
                          Rent Roll As Of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | | Code | Amount | | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|---|------|--------|---|------|--------|----------------------|------------------|
| | | | | | | | **--- Charges ---** | | | **--- Credits ---** | | | |
| 13603A O | | O | 1125.00 | Simon, Jacquline | 1419 | CA | RENT | 1125.00 | PW | M/IC | 205.00 | | |
| | | | | | | CJ | ARGN | 64.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | 999.00 | 0.00 |
| 13603B O | | O | 1125.00 | Flanders, Patricia | | CA | RENT | 1125.00 | PW | M/IC | 26.00 | | |
| | | | | | | CJ | ARGN | 64.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 1178.00 | 0.00 |
| 13611A B2 | | O | 685.00 | Rivera, Asencon | | CA | RENT | 685.00 | PW | M/IC | 286.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 447.00 | 0.00 |
| 13611B B2 | | O | 685.00 | Taeples, Karl | | CJ | TRSH | 10.00 | PW | RNWC | 20.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | RENT | 685.00 | | | | 713.00 | 0.00 |
| 13611C B2 | | O | 685.00 | Lester, Robert | | CA | RENT | 685.00 | PW | M/IC | 184.00 | | |
| | | | | | | CJ | TRSH | 10.00 | EX | GTOL | -10.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 559.00 | 0.00 |
| 13611D B2 | | O | 685.00 | Knosi, Joanne | 1419 | CA | RENT | 685.00 | PW | M/IC | 198.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 535.00 | 0.00 |
| 13611E B3 | | O | 695.00 | Villegas, Antonio | | CA | RENT | 695.00 | PW | RNWC | 216.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 527.00 | 0.00 |
| 13611F B3 | | O | 695.00 | Lilly, Kasheem | | CA | RENT | 695.00 | PW | M/IC | 159.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 32.00 | | | | 583.00 | 0.00 |
| 13611G B3 | | O | 695.00 | Owen, Robert | | CJ | TRSH | 10.00 | PW | RNWC | 183.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | RENT | 695.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 660.00 | 0.00 |
| 13611H B3 | | O | 695.00 | Sanchez, Denis | | CA | RENT | 695.00 | PW | M/IC | 256.00 | | |

02/22/2006
11:07 am
                                    SOUTHEASTERN REALTY                                   Page   2
                                The Courts At Peachtree Corner                            ID 3.6.6
                                  Rent Roll As Of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| | | | | | | CJ PIT | 10.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 497.00 | 0.00 |
| 13611I | B1 | O | 675.00 | Colon, Edward | | CA RENT | 675.00 | PW M/IC | 276.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 447.00 | 0.00 |
| 13611J | B1 | O | 675.00 | Canteno, Jamie | | CA RENT | 675.00 | PW RNWC | 276.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 447.00 | 0.00 |
| 13621A | C1 | O | 680.00 | Adams, Toni | | CA RENT | 680.00 | PW M/IC | 281.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 447.00 | 0.00 |
| 13621B | C1 | V | 680.00 | Vacant Unit | | CA RENT | 680.00 | PT VAC | 680.00 | 0.00 | 0.00 |
| 13621E | C2 | O | 690.00 | Van Eerton, Peter | | CA RENT | 690.00 | PW M/IC | 155.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | 583.00 | 0.00 |
| 13621F | C2 | O | 690.00 | Tieku, Joseph | | CJ TRSH | 10.00 | PW RNWC | 236.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 695.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 507.00 | 0.00 |
| 13625A | C1 | O | 680.00 | Bolman, Eva | | CJ WTR$ | 5.00 | PW M/IC | 226.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 685.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 507.00 | 0.00 |
| 13625B | C1 | O | 680.00 | Butler, Regina | | CA RENT | 685.00 | PW RNWC | 156.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 577.00 | 0.00 |
| 13625E | C2 | O | 690.00 | Nwachukwu, Michael | | CJ TRSH | 10.00 | PW RNWC | 100.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX GTOL | -5.00 | | |

02/22/2006
11:07 am

SOUTHEASTERN REALTY

The Courts At Peachtree Corner

Rent Roll As Of 22 Feb 2006

Page   1
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| | | | | | | CA RENT | 695.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 643.00 | 0.00 |
| 13625F | C2 | O | 690.00 | Albert Frimpong | | CA RENT | 695.00 | PW RNWC | 186.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 557.00 | 0.00 |
| 13635A | A2 | O | 650.00 | Florez, Jose | | CA RENT | 650.00 | PW M/IC | 212.00 | | |
| | | | | | | CJ ARGN | 27.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 481.00 | 0.00 |
| 13635B | A2 | O | 650.00 | Guerrero, Jose | | CA RENT | 650.00 | PW RNWC | 206.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 27.00 | | | 466.00 | 0.00 |
| 13635C | A2 | O | 650.00 | Caldelas, Jose | | CA RENT | 650.00 | PW RNWC | 176.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | 522.00 | 0.00 |
| 13635D | A2 | O | 650.00 | Diaz, Etionce | | CA RENT | 650.00 | PW M/IC | 146.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 27.00 | | | 546.00 | 0.00 |
| 13635E | A3 | O | 660.00 | Gladney, Kim | | CA RENT | 660.00 | PW RNWC | 165.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 27.00 | | | 537.00 | 0.00 |
| 13635F | A3 | O | 660.00 | Martinez, Oscar | | CJ TRSH | 10.00 | PW RNWC | 141.00 | | |
| | | | | | | CA RENT | 660.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 27.00 | | | 561.00 | 0.00 |
| 13635G | A3 | O | 660.00 | Alba, Ricardo | 1419 | CA RENT | 660.00 | PW M/IC | 150.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 27.00 | | | 552.00 | 0.00 |
| 13635H | A3 | O | 660.00 | Spiecker, Nicole | | CA RENT | 660.00 | PW M/IC | 186.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |

12/22/2006
11:07 am

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 22 Feb 2006

Page 4
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | Code | | Charges Amount | | Credits Code | | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--|--------|--|------|--|--------|----------------|------------------|
| | | | | | | CJ | WTR$ | 5.00 | | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | 546.00 | 0.00 |
| 13635I | A1 | O | 640.00 | Domineck, Brenda | | CA | RENT | 640.00 | PW | M/IC | | 187.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | 495.00 | 0.00 |
| 13635J | A1 | O | 640.00 | Anguiano, Luis Fernando | 1419 | CA | RENT | 640.00 | PW | M/IC | | 130.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | 552.00 | 0.00 |
| 13639A | A2 | O | 650.00 | Eric, Neal T. | | CJ | ARGN | 27.00 | PW | RNWC | | 90.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | LTOL | | 10.00 | | |
| | | | | | | CA | RENT | 640.00 | | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | | |
| | | | | | | CA | LTOR | 10.00 | | | | | 592.00 | 0.00 |
| 13639B | A2 | O | 650.00 | Mohsen, Ghalei | | CJ | ARGN | 27.00 | PW | RNWC | | 201.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | | -35.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | | |
| | | | | | | CA | RENT | 685.00 | | | | | | |
| | | | | | | CA | GTOR | -35.00 | | | | | 626.00 | 0.00 |
| 13639C | A2 | O | 650.00 | Hlyva, Maryana | | CJ | TRSH | 10.00 | PW | M/IC | | 250.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | | |
| | | | | | | CA | RENT | 650.00 | | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | 442.00 | 0.00 |
| 13639D | A2 | O | 650.00 | Moncke, Chinweuba | | CJ | ARGN | 27.00 | PW | RNWC | | 142.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | | |
| | | | | | | CA | RENT | 650.00 | | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | | 550.00 | 0.00 |
| 13639E | A3 | O | 660.00 | Pereira, Victor | | CJ | TRSH | 10.00 | PW | RNWC | | 167.00 | | |
| | | | | | | CA | RENT | 660.00 | PW | RNWC | | 167.00 | | |
| | | | | | | CJ | ARGN | 27.00 | PX | GTOL | | -660.00 | | |
| | | | | | | CA | RENT | 660.00 | | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | | |
| | | | | | | CJ | WTR$ | 6.00 | | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | | |
| | | | | | | CA | GTOR | -660.00 | | | | | 1090.00 | 0.00 |
| 13639F | A3 | O | 660.00 | Combes, Cara | | CJ | WTR$ | 5.00 | PW | M/IC | | 221.00 | | |
| | | | | | | CJ | ARGN | 27.00 | PX | GTOL | | -10.00 | | |

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Charges Amount | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|--------|--------|
| | | | | | | CA RENT | 670.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 491.00 | 491.00 |
| 13639G A3 | | O | 660.00 | Adeogun, Nancy | | CA RENT | 660.00 | PW RNWC | 176.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 27.00 | | | 526.00 | 0.00 |
| 13639H A1 | | O | 660.00 | Gonzalez, Franc | | CJ ARGN | 32.00 | PW M/IC | 166.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 665.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 546.00 | 0.00 |
| 13639I A1 | | O | 640.00 | Jackson, Tannula | | CA RENT | 640.00 | PW M/IC | 241.00 | | |
| | | | | | | CJ ARGN | 27.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 441.00 | 0.00 |
| 13639J A1 | | O | 640.00 | Diallo, Abdoulaye | | CJ TRSH | 10.00 | PW RNWC | 206.00 | | |
| | | | | | | CJ ARGN | 27.00 | PX GTOL | -40.00 | | |
| | | | | | | CA RENT | 680.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -40.00 | | | 516.00 | 0.00 |
| 13656A D2 | | O | 760.00 | Cephacile, Joseph | | CA RENT | 760.00 | PW M/IC | 203.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | 615.00 | 0.00 |
| 13656B D2 | | O | 760.00 | Jones, Aneitra | | CJ WTR$ | 5.00 | PW RNWC | 104.00 | | |
| | | | | | | CJ ARGN | 43.00 | PX GTOL | -10.00 | | |
| | | | | | | CA RENT | 770.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 724.00 | 0.00 |
| 13656C D2 | | O | 760.00 | Parrora, Ismeal | | CA RENT | 760.00 | PW RNWC | 240.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | 576.00 | 0.00 |
| 13656D D2 | | O | 760.00 | Laraki, Rachid | | CA RENT | 760.00 | PW RNWC | 261.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 557.00 | 0.00 |

```
02/22/2006                          SOUTHEASTERN REALTY                              Page   6
11:07 am                       The Courts At Peachtree Corner                        ID 3.6.6
                                 Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Charges Amount | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|--------|--------|
| 13656E | D4 | O | 780.00 | Thompson, Jaqueline | | CA RENT | 780.00 | PW M/IC | 181.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 47.00 | | | 657.00 | 0.00 |
| 13656F | D4 | O | 780.00 | Grizales, Diana | | CA RENT | 780.00 | PW RNWC | 256.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | 562.00 | 0.00 |
| 13656G | D4 | O | 780.00 | Munoz, Maria | | CA RENT | 780.00 | PW M/IC | 261.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 44.00 | | | 558.00 | 0.00 |
| 13656H | D4 | O | 780.00 | Raghavan, Arun | | CA RENT | 780.00 | PW RNWC | 231.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX QTOL | -10.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 617.00 | 0.00 |
| 13656I | D1 | O | 750.00 | Kirk, Kenya | 1419 | CA RENT | 750.00 | PW M/IC | 251.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 547.00 | 0.00 |
| 13656J | D1 | O | 750.00 | Adewimmi, Sokan | | CA RENT | 750.00 | PW M/IC | 221.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 587.00 | 0.00 |
| 13656A | C1 | O | 680.00 | Contreras, Franklin | | CA RENT | 685.00 | PW RNWC | 206.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX QTOL | -5.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 527.00 | 0.00 |
| 13656B | C1 | O | 680.00 | Oburota, Samuel | 1419 | CA RENT | 685.00 | PW RNWC | 177.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX QTOL | -5.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 556.00 | 0.00 |
| 13656E | C2 | O | 690.00 | Mintz, Elizabeth | | CA RENT | 695.00 | PW RNWC | 217.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX QTOL | -5.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |

| Unit | Type | Stat | Market | Name | Entity | ----- Charges ----- | | ----- Credits ----- | | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|------|------|------|------|------|
| | | | | | | Code | Amount | Code | Amount | | |
| | | | | | | CA GTOR | -5.00 | | | 626.00 | 0.00 |
| 13658T | C2 | O | 690.00 | Nworke, Ben | | CA RENT | 680.00 | PW RNWC | 153.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX LTOL | 10.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 34.00 | | | | |
| | | | | | | CA LTOR | 10.00 | | | 576.00 | 0.00 |
| 13660A | C1 | O | 680.00 | Saul, Jan | | CJ TRSH | 10.00 | PW RNWC | 48.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX LTOL | 15.00 | | |
| | | | | | | CA RENT | 666.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA LTOR | 15.00 | | | 665.00 | 0.00 |
| 13660B | C1 | O | 680.00 | Barrera, Roman | | CA RENT | 690.00 | PW M/IC | 191.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX GTOL | -10.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 547.00 | 0.00 |
| 13660B | C2 | O | 690.00 | Cantanhede, Fernando | | CJ TRSH | 10.00 | PW M/IC | 160.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CA RSHT | 695.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 683.00 | 0.00 |
| 13660F | C2 | O | 690.00 | Oppong, Kwesi | | CJ ARGN | 33.00 | PW RNWC | 196.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RSHT | 695.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 547.00 | 0.00 |
| 13661A | B1 | O | 845.00 | Model | 1419 | CA RENT | 830.00 | PT VACM | 830.00 | | |
| | | | | | | CA LTOR | 15.00 | PK LTOL | 15.00 | | 0.00 | 0.00 |

*** WARNING *** Resident Model Has Auto-Bill Transactions That Net To Zero *** WARNING ***

| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|------|------|------|------|------|
| 13661B | B1 | O | 845.00 | Recobs, Rubin | 1419 | CJ TRSH | 10.00 | PW RNWC | 226.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 687.00 | 0.00 |
| 13661E | B2 | O | 855.00 | Campbell, Cosetta | | CJ ARGN | 48.00 | PW RNWC | 156.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 767.00 | 0.00 |

```
02/22/2006                          SOUTHEASTERN REALTY                              Page   8
11:08 am                        The Courts At Peachtree Corner                       ID 3.8.6
                                  Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | | Charges Code | Charges Amount | | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|--|------|--------|--|------|--------|--------|--------|
| 13661F | E2 | O | 855.00 | Heath, Cedric Glenn | | CJ | TRSH | 10.00 | PW | M/IC | 211.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 860.00 | | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 712.00 | 0.00 |
| 13663A | E1 | O | 845.00 | Forrester, Doria | | CA | RENT | 845.00 | PW | M/IC | 224.00 | | |
| | | | | | | CJ | WTRS | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | 684.00 | 0.00 |
| 13663B | E1 | O | 845.00 | Morales, Helen | | CA | RENT | 850.00 | PW | RNWC | 149.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PW | RNWC | 159.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | GTOL | -5.00 | | |
| | | | | | | CJ | WTRS | 5.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 605.00 | 0.00 |
| 13661E | E2 | O | 855.00 | Lopez, Arabella | | CA | RENT | 855.00 | PR | EXPO | 855.00 | 0.00 | 0.00 |

*** WARNING *** Resident Lopez, Arabella Has Auto-Bill Transactions That Net To Zero *** WARNING ***

| Unit | Type | Stat | Market | Name | Entity | | Charges Code | Charges Amount | | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|--|------|--------|--|------|--------|--------|--------|
| 13663F | E2 | O | 855.00 | Mix, Don | | CJ | ARGN | 43.00 | PW | M/IC | 205.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 860.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 713.00 | 0.00 |
| 13665A | E1 | O | 845.00 | Allen, Kevin | 1419 | CJ | ARGN | 48.00 | PW | RNWC | 220.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 850.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 693.00 | 0.00 |
| 13665B | E1 | O | 845.00 | Simeneh, Nebiyu | | CJ | TRSH | 10.00 | PW | M/IC | 204.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 850.00 | | | | | |
| | | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 710.00 | 0.00 |
| 13665E | E2 | O | 855.00 | Sanchez, Manuel | | CA | RENT | 860.00 | PW | RNWC | 276.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 46.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 645.00 | 0.00 |
| 13665F | E2 | O | 855.00 | Contreras, Jose S. | | CJ | TRSH | 10.00 | PW | RNWC | 106.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PX | GTOL | -5.00 | | |

```
02/22/2006                          SOUTHEASTERN REALTY                              Page   9
11:08 am                        The Courts At Peachtree Corner                       ID 3.6.6
                                 Rent Roll As Of 22 Feb 2006
=====================================================================================================

                                        ----- Charges -----    ----- Credits -----   Net Change   Resident
Unit   Type  Stat Market   Name              Entity    Code  Amount     Code  Amount  In Balance   Balance
------ ----- ---- ------   ------------      ------    ----  ------     ----  ------  ----------   --------
                                                    CA  RENT    860.00
                                                    CJ  WTR$      5.00
                                                    CA  GTOR     -5.00                   817.00      0.00

13732A C1    V    680.00  Vacant Unit                 CA  RENT    680.00  PT  VAC   680.00   0.00     0.00

13732B C1    O    680.00  James, Ray                  CA  RENT    680.00  PW  M/IC  286.00
                                                    CJ  ARGN     33.00
                                                    CJ  WTR$      5.00
                                                    CJ  TRSH     10.00                   442.00      0.00

13732E C2    O    690.00  Havelwyn, Sue               CA  RENT    695.00  PW  RNWC  166.00
                                                    CJ  ARGN     32.00  PX  GTOL   -5.00
                                                    CJ  TRSH     10.00
                                                    CJ  WTR$      5.00
                                                    CA  GTOR     -5.00                   576.00      0.00

13732F C2    O    690.00  Reyes, Walter               CA  RENT    690.00  PW  M/IC  240.00
                                                    CJ  TRSH     10.00
                                                    CJ  ARGN     33.00
                                                    CJ  WTR$      5.00                   498.00      0.00

13736A C1    O    680.00  Matos, Elmer                CJ  TRSH     10.00  PW  RNWC  261.00
                                                    CJ  ARGN     33.00  PX  GTOL   -5.00
                                                    CA  RENT    685.00
                                                    CJ  WTR$      6.00
                                                    CA  GTOR     -5.00                   472.00      0.00

13736B C1    O    680.00  Andrade, Roberto            CJ  ARGN     33.00  PW  RNWC  156.00
                                                    CJ  TRSH     10.00  PX  GTOL   -5.00
                                                    CA  RENT    685.00
                                                    CJ  WTR$      5.00
                                                    CA  GTOR     -5.00                   577.00      0.00

13736E C2    O    690.00  Iglesias, Absalon           CA  RENT    695.00  PW  RNWC  145.00
                                                    CJ  TRSH     10.00  PX  GTOL   -5.00
                                                    CJ  WTR$      5.00
                                                    CJ  ARGN     33.00
                                                    CA  GTOR     -5.00                   598.00      0.00

13736F C2    V    690.00  Vacant Unit                 CA  RENT    690.00  PT  VAC   690.00   0.00     0.00

13740A C1    O    680.00  Juarez, Edilberto   1419    CJ  ARGN     33.00  PW  M/IC  142.00
                                                    CJ  WTR$      5.00
                                                    CA  RENT    680.00
                                                    CJ  TRSH     10.00                   586.00      0.00
```

```
02/22/2006                          SOUTHEASTERN REALTY                              Page  10
11:08 am                       The Courts At Peachtree Corner                        ID 3.8.6
                                Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Charges Amount | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| 13740H | C1 | O | 680.00 | Monso, Edi Ocho | | CJ ARGN | 33.00 | PW M/IC | 145.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA RENT | 680.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | 583.00 | 0.00 |
| 13740B | C2 | O | 690.00 | Mei, Lui | | CA RENT | 695.00 | PW RNWC | 160.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 583.00 | 0.00 |
| 13740F | C2 | O | 690.00 | Sabol, Jerome | | CJ TRSH | 10.00 | PW M/IC | 252.00 | | |
| | | | | | | CJ WTRS | 5.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 705.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 501.00 | 0.00 |
| 13744A | F1 | O | 965.00 | Mendoza, Calestino | | CJ ARGN | 56.00 | PW M/IC | 247.00 | | |
| | | | | | | CJ WTRS | 5.00 | PX GTOL | -10.00 | | |
| | | | | | | CA RENT | 975.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 799.00 | 0.00 |
| 13744B | F1 | O | 965.00 | Santillian, Jose | 1419 | CJ ARGN | 59.00 | PW RNWC | 171.00 | | |
| | | | | | | CJ WTRS | 5.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 980.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 883.00 | 0.00 |
| 13744E | F2 | O | 975.00 | Webster, Donald | | CA RENT | 975.00 | PW M/IC | 176.00 | | |
| | | | | | | CJ ARGN | 59.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | 873.00 | 0.00 |
| 13744F | F2 | V | 975.00 | Vacant Unit | | CA RENT | 975.00 | PT VAC | 975.00 | 0.00 | 0.00 |
| 13748A | F1 | O | 965.00 | Marco Iturbe | | CA RENT | 965.00 | PW M/IC | 240.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 59.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | 799.00 | 0.00 |
| 13748B | F1 | O | 965.00 | Carron, Renne | | CA RENT | 965.00 | PR EMPO | 700.00 | | |
| | | | | | | | | PW M/IC | 265.00 | 0.00 | 0.00 |

*** WARNING *** Resident Carron, Renne Has Auto-Bill Transactions That Not To Zero *** WARNING ***

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Charges Amount | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| 13748E | F2 | O | 975.00 | Bost, Richard | | CA RENT | 975.00 | PW M/IC | 250.00 | | |
| | | | | | | CJ ARGN | 64.00 | | | | |

```
02/22/2006                          SOUTHEASTERN REALTY                              Page 11
11:06 am                      The Courts At Peachtree Corner                         ID 3.6.6
                                Rent Roll As of 22 Feb 2006
```

|                            |      |      |        |                   |        |      | ----- Charges ----- |        | ----- Credits ----- |        | Net Change |Resident|
|Unit|Type|Stat|Market|Name|Entity|Code|Amount|Code|Amount|In Balance|Balance|
|----|----|----|------|----|------|----|------|----|------|----------|-------|
| | | | | | |CJ|TRSH|10.00| | | | |
| | | | | | |CJ|WTR$|5.00| | | |804.00|0.00|
|13740F|F2|O|975.00|Davis, Tikvica| |CJ|ARGN|59.00|PP|REFR|200.00| | |
| | | | | | |CJ|WTR$|6.00|PW|M/IC|294.00| | |
| | | | | | |CA|RENT|980.00|PX|GTOL|-5.00| | |
| | | | | | |CJ|TRSH|10.00| | | | |
| | | | | | |CA|GTOR|-5.00| | | |560.00|0.00|
|13771A|E1|O|845.00|Banahebe, Kwadwo| |CA|RENT|850.00|PW|M/IC|202.00| | |
| | | | | | |CJ|ARGN|48.00|PX|GTOL|-5.00| | |
| | | | | | |CJ|TRSH|10.00| | | | |
| | | | | | |CJ|WTR$|5.00| | | | |
| | | | | | |CA|GTOR|-5.00| | | |711.00|0.00|
|13771B|E1|O|845.00|Halliburton, Joe|1419|CJ|WTR$|5.00|PW|REWC|48.00| | |
| | | | | | |CJ|TRSH|10.00|PX|GTOL|-5.00| | |
| | | | | | |CA|RENT|850.00| | | | |
| | | | | | |CJ|ARGN|48.00| | | | |
| | | | | | |CA|GTOR|-5.00| | | |865.00|0.00|
|13771E|E2|O|855.00|Johnson, Crystal| |CA|RENT|845.00|PW|M/IC|195.00| | |
| | | | | | |CJ|ARGN|48.00|PX|LTOL|10.00| | |
| | | | | | |CJ|WTR$|5.00| | | | |
| | | | | | |CJ|TRSH|10.00| | | | |
| | | | | | |CA|LTOR|10.00| | | |713.00|0.00|
|13771F|E2|O|865.00|David Solano|1419|CJ|TRSH|10.00|PW|M/IC|231.00| | |
| | | | | | |CJ|WTR$|5.00|PX|LTOL|5.00| | |
| | | | | | |CA|RENT|850.00| | | | |
| | | | | | |CJ|ARGN|48.00| | | | |
| | | | | | |CA|LTOR|5.00| | | |682.00|0.00|
|13775A|B1|O|845.00|Freeman, Jimmie| |CJ|ARGN|48.00|PW|M/IC|214.00| | |
| | | | | | |CJ|WTR$|5.00|PX|GTOL|-5.00| | |
| | | | | | |CA|RENT|850.00| | | | |
| | | | | | |CJ|TRSH|10.00| | | | |
| | | | | | |CA|GTOR|-5.00| | | |699.00|0.00|
|13775B|B1|O|845.00|Mo Cray, Dayle| |CJ|WTR$|5.00|PW|M/IC|122.00| | |
| | | | | | |CJ|ARGN|48.00|PX|GTOL|-5.00| | |
| | | | | | |CA|RENT|850.00| | | | |
| | | | | | |CJ|TRSH|10.00| | | | |
| | | | | | |CA|GTOR|-5.00| | | |791.00|0.00|
|13775E|E2|O|855.00|Johnson, Angel|1419|CA|RENT|850.00|PW|M/IC|247.00| | |
| | | | | | |CJ|TRSH|10.00|PX|LTOL|5.00| | |

```
02/22/2006                        SOUTHEASTERN REALTY                           Page  12
11:08 am                      The Courts At Peachtree Corner                    ID 3.6.6
                              Rent Roll As Of 22 Feb 2006
==============================================================================================

                                              ----- Charges -----    ----- Credits -----  Net Change   Resident
Unit  Type  Stat Market      Name             Entity     Code   Amount      Code   Amount  In Balance    Balance
----- ----- ---- -------     -----------      ------      ----  --------    ----  -------- ---------- -----------
                                                        CJ  ARGN    48.00
                                                        CJ  WTR$     5.00
                                                        CA  LTOR     5.00                     666.00      666.00

13775F E2    O    855.00 Marquez, Juan                   CH  MTM    100.00   PW  M/IC  323.00
                                                        CJ  ARGN    48.00   PX  GTOL   -5.00
                                                        CA  RENT   860.00
                                                        CJ  TRSH    10.00
                                                        CJ  WTR$     5.00
                                                        CA  GTOR    -5.00                     700.00        0.00

13779A E1    O    845.00 Anderson, Lakeisha              CA  RENT   850.00   PW  M/IC  291.00
                                                        CJ  ARGN    48.00   PX  GTOL   -5.00
                                                        CJ  TRSH    10.00
                                                        CJ  WTR$     5.00
                                                        CA  GTOR    -5.00                     622.00        0.00

13779R E1    O    845.00 Garcia, David                   CA  RENT   850.00   PW  M/IC  218.00
                                                        CJ  ARGN    48.00   PX  GTOL   -5.00
                                                        CJ  TRSH    10.00
                                                        CJ  WTR$     5.00
                                                        CA  GTOR    -5.00                     695.00        0.00

13779E E2    O    855.00 Nyirenda, Namukolo              CA  RENT   860.00   PW  M/IC  261.00
                                                        CJ  ARGN    48.00   PX  GTOL   -5.00
                                                        CJ  TRSH    10.00
                                                        CJ  WTR$     5.00
                                                        CA  GTOR    -5.00                     662.00        0.00

13779F E2    O    855.00 Santiago, Nava                  CJ  TRSH    10.00   PW  RNWC  161.00
                                                        CJ  ARGN    48.00   PX  GTOL   -5.00
                                                        CA  RENT   860.00
                                                        CJ  WTR$     5.00
                                                        CA  GTOR    -5.00                     762.00        0.00

13786A E1    O    845.00 Williamson, Fred                CA  RENT   845.00   PW  M/IC  136.00
                                                        CJ  ARGN    48.00
                                                        CJ  WTR$     5.00
                                                        CJ  TRSH    10.00                     712.00        0.00

13786B E1    O    845.00 Garcia, Mirelza                 CA  RENT   850.00   PW  M/IC  261.00
                                                        CJ  ARGN    48.00   PX  GTOL   -5.00
                                                        CJ  WTR$     5.00
                                                        CJ  TRSH    10.00
                                                        CA  GTOR    -5.00                     662.00        0.00

13786E E2    O    855.00 Munoz, Gabriel                  CJ  ARGN    48.00   PW  M/IC  150.00
```

```
02/22/2006                          SOUTHEASTERN REALTY                              Page  13
11:08 am                       The Courts At Peachtree Corner                         ID 1.6.6
                               Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| | | | | | | CJ WTRS | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 773.00 | 0.00 |
| 13786F E2 | | O | 855.00 | Willis, Towanda | | CJ ARGN | 48.00 | PW M/IC | 212.00 | | |
| | | | | | | CJ WTRS | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 711.00 | 0.00 |
| 13790A E1 | | O | 845.00 | Sanchez, Rufino | | CA RENT | 855.00 | PW M/IC | 195.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CJ ARGN | 48.00 | | | 713.00 | 0.00 |
| 13790B E1 | | O | 845.00 | Jackson, Eric | | CA RENT | 850.00 | PW M/IC | 251.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 662.00 | 0.00 |
| 13790E E2 | | V | 855.00 | Vacant Unit | 1419 | CA RENT | 855.00 | PT VAC | 855.00 | 0.00 | 0.00 |
| 13790F E2 | | O | 855.00 | Valencia, Jaun | 1419 | CJ ARGN | 48.00 | PW M/IC | 274.00 | | |
| | | | | | | CJ WTRS | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 649.00 | 0.00 |
| 13794A E1 | | O | 845.00 | More, Silvia | | CA RENT | 845.00 | PW M/IC | 236.00 | | |
| | | | | | | CJ ARGN | 49.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 673.00 | 0.00 |
| 13794B E1 | | O | 845.00 | Gray, Willie | | CA RENT | 850.00 | PW RNWC | 30.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 883.00 | 0.00 |
| 13794E E2 | | O | 855.00 | Cunnigham, Lester | | CJ WTRS | 5.00 | PW M/IC | 201.00 | | |
| | | | | | | CJ ARGN | 49.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 721.00 | 0.00 |

02/22/2006
11:08 am

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 22 Feb 2006

Page 14
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ----- Charges ----- | | ----- Credits ----- | | | |
| 13794F | E2 | O | 856.00 | Ubochi, Ted | | CJ TRSH | 10.00 | PW RNWC | 270.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 653.00 | 0.00 |
| 13822A | C1 | O | 680.00 | Samaniego, Marcelo | | CA RENT | 680.00 | PW M/IC | 281.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 32.00 | | | 416.00 | 0.00 |
| 13822B | C1 | O | 680.00 | Moreno, Jose | | CA RENT | 680.00 | PW M/IC | 142.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 586.00 | 0.00 |
| 13822E | C2 | O | 690.00 | Cholick, Robert | | CJ ARGN | 33.00 | PW RNWC | 171.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 695.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 572.00 | 0.00 |
| 13822F | C2 | O | 690.00 | Terry, Sue | | CJ WTR$ | 5.00 | PH RNWC | 155.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CA RENT | 690.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 583.00 | 0.00 |
| 13824A | C1 | O | 680.00 | Kolnes, Ann | | CA RENT | 680.00 | PW M/IC | 141.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 587.00 | 0.00 |
| 13824B | C1 | O | 680.00 | Deval, Erasmo | | CJ TRSH | 10.00 | PW M/IC | 266.00 | | |
| | | | | | | CJ ARGN | 34.00 | | | | |
| | | | | | | CA RENT | 680.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 443.00 | 0.00 |
| 13824E | C2 | O | 690.00 | Britt, William | | CA RENT | 690.00 | PW RNWC | 221.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 517.00 | 0.00 |
| 13824F | C2 | O | 690.00 | Kseniyo, Euprikova | | CA RENT | 695.00 | PW M/IC | 289.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 454.00 | 0.00 |

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | Code | Charges Amount | Code | Credits Amount | Net Change Id Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|--------|--------|
| 13825A | Q | O | 1125.00 | Lopez, Roe | | CJ ARGN | 64.00 | PW M/IC | 211.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -75.00 | | |
| | | | | | | CA RENT | 1200.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -75.00 | | | 1060.00 | 0.00 |
| 13826B | F1 | O | 965.00 | Murray, Elizabeth | | CJ TRSH | 10.00 | PW M/IC | 240.00 | | |
| | | | | | | CJ ARGN | 58.00 | | | | |
| | | | | | | CA RENT | 965.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 799.00 | 0.00 |
| 13825F | F2 | O | 976.00 | Pachero, Jorge | | CJ TRSH | 10.00 | PW M/IC | 264.00 | | |
| | | | | | | CJ ARGN | 58.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 990.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 799.00 | 0.00 |
| 13826A | E1 | O | 845.00 | Jones, April | | CJ WTR$ | 5.00 | PW M/IC | 251.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 662.00 | 0.00 |
| 12826B | E1 | O | 845.00 | Sellers, Andrew | | CJ ARGN | 48.00 | PW RNWC | 283.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 630.00 | 0.00 |
| 13828A | E1 | O | 845.00 | Thompson, Calvin | | CA RENT | 850.00 | PW M/IC | 251.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 662.00 | 0.00 |
| 13828B | E1 | V | 845.00 | Vacant Unit | | CA RENT | 845.00 | PT VAC | 845.00 | 0.00 | 0.00 |
| 13826E | E2 | O | 855.00 | Diosdado, Alfredo | | CJ ARGN | 55.00 | PW M/IC | 217.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 713.00 | 0.00 |
| 13828F | E2 | O | 855.00 | Lopez, Omar | | CJ ARGN | 48.00 | PW RNWC | 136.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |

02/22/2006                          SOUTHEASTERN REALTY                           Page  16
11:08 am                        The Courts At Peachtree Corner                    ID 3.6.6
                                Rent Roll As Of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 787.00 | 0.00 |
| 13830A | D2 | O | 760.00 | Dinh, Ngoc Tram | | CA RENT | 760.00 | PW M/IC | 261.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | 587.00 | 657.00 |
| 13830B | D2 | O | 760.00 | Adinnu, Assumpta | | CJ TRSH | 10.00 | PW KNWC | 191.00 | | |
| | | | | | | CJ WTRS | 5.00 | PK GTOL | -10.00 | | |
| | | | | | | CA RENT | 770.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 637.00 | 0.00 |
| 13830C | D2 | O | 760.00 | Thompson, Horace | | CJ TRSH | 10.00 | PW KNWC | 171.00 | | |
| | | | | | | CJ WTRS | 5.00 | PK GTOL | -10.00 | | |
| | | | | | | CA RENT | 770.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 657.00 | 0.00 |
| 13830D | D2 | O | 760.00 | Flores, Santos | | CJ TRSH | 10.00 | PW KNWC | 386.00 | | |
| | | | | | | CJ ARGN | 43.00 | PK GTOL | -10.00 | | |
| | | | | | | CA RENT | 770.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 442.00 | 0.00 |
| 13830E | D3 | O | 770.00 | Perez, Iris | | CA RENT | 770.00 | PW M/IC | 271.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | 557.00 | 0.00 |
| 13830F | D3 | O | 770.00 | Patterson, Paul | | CA RENT | 770.00 | PW M/IC | 171.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CJ ARGN | 44.00 | | | 658.00 | 0.00 |
| 13830G | D3 | O | 770.00 | Gamez, Emeterio | | CA RENT | 770.00 | PW M/IC | 271.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | 557.00 | 0.00 |
| 13830H | D3 | O | 770.00 | Jackman, Kinda | | CA RENT | 770.00 | PW KNWC | 196.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ WTRS | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 632.00 | 0.00 |
| 13830J | D1 | O | 750.00 | Akinretoye, Peter | | CA RENT | 780.00 | PW KNWC | 260.00 | | |

```
02/21/2006                          SOUTHEASTERN REALTY                              Page 17
11:08 am                       The Courts At Peachtree Corner                        ID 3.6.6
                                  Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -30.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CA CTOR | -30.00 | | | 578.00 | 0.00 |
| 13836A F1 | | O | 965.00 | Davis, Dawn | | CJ ARGN | 58.00 | PW M/IC | 254.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 980.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 799.00 | 0.00 |
| 13836B F1 | | O | 965.00 | Barrows, Lisa | | CA RENT | 965.00 | PW M/IC | 242.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 59.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 797.00 | 797.00 |
| 13836E F2 | | O | 975.00 | Islas, Marco | | CJ WTR$ | 5.00 | PW M/IC | 241.00 | | |
| | | | | | | CJ ARGN | 59.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 990.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 823.00 | 0.00 |
| 13836F F2 | | V | 975.00 | Vacant Unit | 1419 | CA RENT | 975.00 | PT VAC | 975.00 | 0.00 | 0.00 |
| 13840A E1 | | O | 845.00 | Amponsah, Charles | 1419 | CJ ARGN | 48.00 | PW RNWC | 220.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -6.00 | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -6.00 | | | 693.00 | 0.00 |
| 13840B E1 | | O | 845.00 | Searcy, Edward | | CA RENT | 850.00 | PW RNWC | 245.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 666.00 | 0.00 |
| 13840E E2 | | O | 855.00 | Brown, Venue X-6302 | | CJ TRSH | 10.00 | PW RNWC | 153.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 870.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 780.00 | 0.00 |
| 13840F E2 | | O | 855.00 | Meri, Jose | | CJ TRSH | 10.00 | PW RNWC | 216.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 707.00 | 0.00 |

02/22/2006

11:08 am

SOUTHEASTERN REALTY

The Courts At Peachtree Corner

Rent Roll As of 22 Feb 2006

Page 18

ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Charges Amount | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| 13842A | E1 | O | 845.00 | Ponce, Silvestor | CA | RENT | 850.00 | PW | M/IC | 202.00 | |
| | | | | | CJ | ARGN | 40.00 | PX | GTOL | -5.00 | |
| | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | CA | GTOR | -5.00 | | | 711.00 | 0.00 |
| 13842B | E1 | O | 845.00 | Billups, Jocelyn | CJ | ARGN | 43.00 | PW | M/IC | 246.00 | |
| | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | CA | RENT | 845.00 | | | | |
| | | | | | CJ | WTRS | 5.00 | | | 657.00 | 0.00 |
| 13842E | E2 | O | 855.00 | Thompson, Donald | CA | RENT | 860.00 | PW | RNWC | 181.00 | |
| | | | | | CJ | ARGN | 40.00 | PX | GTOL | -5.00 | |
| | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | CA | GTOR | -5.00 | | | 742.00 | 0.00 |
| 13842F | E2 | O | 855.00 | Powell, Rayna | CJ | ARGN | 40.00 | PW | RNWC | 170.00 | |
| | | | | | CJ | WTRS | 5.00 | PX | LTOL | 5.00 | |
| | | | | | CA | RENT | 850.00 | | | | |
| | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | CA | LTOR | 5.00 | | | 743.00 | 0.00 |
| 13842A | B2 | O | 685.00 | Segura, Israel | CA | RENT | 685.00 | PP | REFR | 200.00 | |
| | | | | | CH | MTM | 100.00 | PW | M/IC | 286.00 | |
| | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | CJ | ARGN | 33.00 | | | | |
| | | | | | CJ | WTRS | 5.00 | | | 347.00 | 0.00 |
| 13843B | B2 | O | 685.00 | Hernandez, Fredy | CA | RENT | 685.00 | PW | RNWC | 246.00 | |
| | | | | | CJ | ARGN | 33.00 | | | | |
| | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | CJ | TRSH | 10.00 | | | 487.00 | 0.00 |
| 13843C | B2 | O | 685.00 | Lopez, Alvaro | CA | RENT | 685.00 | PW | M/IC | 226.00 | |
| | | | | | CJ | ARGN | 33.00 | | | | |
| | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | CJ | WTRS | 5.00 | | | 507.00 | 0.00 |
| 13843D | B2 | O | 685.00 | Morgan, Joseph | CA | RENT | 685.00 | PW | M/IC | 186.00 | |
| | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | CJ | ARGN | 33.00 | | | 547.00 | 0.00 |
| 13843E | B3 | O | 695.00 | Montero, Bernardo | CJ | ARGN | 33.00 | PW | RNWC | 231.00 | |
| | | | | | CJ | WTRS | 5.00 | | | | |

```
02/22/2006                        SOUTHEASTERN REALTY                        Page 19
11:06 am                      The Courts At Peachtree Corner                 ID 3.6.6
                              Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|-------------|--------|------|--------|------|------|
| | | | | | | CA RENT | 695.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 512.00 | 0.00 |
| 13843F B3 | | O | 695.00 | Zollondz, Matthews | | CA RENT | 695.00 | PW M/IC | 180.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 563.00 | 0.00 |
| 13843G B3 | | O | 695.00 | Garcia, Erica | | CA RENT | 695.00 | PR EMPO | 248.00 | | |
| | | | | | | CM MTM | 100.00 | | | 547.00 | 0.00 |
| 13843H B3 | | O | 695.00 | Logan, Russell | | CA RENT | 705.00 | PW M/IC | 166.00 | | |
| | | | | | | CJ ARGN | 33.00 | PX GTOL | -10.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 587.00 | 0.00 |
| 13843I B1 | | V | 675.00 | Vacant Unit | | CA RENT | 675.00 | PT VAC | 675.00 | 0.00 | 0.00 |
| 13843J B1 | | O | 675.00 | San Agustin, Federico | | CA RENT | 675.00 | PW M/IC | 226.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 497.00 | 0.00 |
| 13850A D2 | | O | 760.00 | Leal, Aquiles | | CA RENT | 760.00 | PW RNWC | 231.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 587.00 | 0.00 |
| 13850B D2 | | O | 760.00 | Bradley, Tina | | CA RENT | 760.00 | PW M/IC | 142.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | 677.00 | 0.00 |
| 13850C D2 | | O | 760.00 | Crespo, Fernando | | CA RENT | 770.00 | PW RNWC | 211.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -10.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 617.00 | 0.00 |
| 13850D D2 | | O | 760.00 | Sifuentes, Dimas | | CA RENT | 760.00 | PW M/IC | 261.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 557.00 | 0.00 |
| 13850E D4 | | O | 780.00 | Okonkwo, Bibian | | CA RENT | 780.00 | PW M/IC | 281.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |

```
02/22/2006                                SOUTHEASTERN REALTY
11:08 AM                              The Courts At Peachtree Corner                      Page  20
                                        Rent Roll As Of 22 Feb 2006                       ID 3.6.6
-----------------------------------------------------------------------------------------------------
```

| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|-----------------------|------------------|
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  ARGN | 43.00 | | | | |
| | | | | | | | | | | 557.00 | 0.00 |
| 13850F D4 | | O | 760.00 | Torres, Eduardo | | CA  RENT | 770.00 | PW  RNWC | 271.00 | | |
| | | | | | | CJ  ARGN | 43.00 | PX  LTOL | 10.00 | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CA  LTOR | 10.00 | | | 557.00 | 0.00 |
| 13850G D1 | | O | 780.00 | Caucin, Rafael | | CA  RENT | 780.00 | PW  M/IC | 281.00 | | |
| | | | | | | CJ  ARGN | 43.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | 557.00 | 0.00 |
| 13850H D4 | | O | 760.00 | Carter, Craig | | CA  RENT | 770.00 | PW  M/IC | 209.00 | | |
| | | | | | | CJ  TRSH | 10.00 | PX  LTOL | 10.00 | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CA  LTOR | 10.00 | | | 609.00 | 0.00 |
| 13850I D1 | | O | 750.00 | Lopez, Rogelio | | CA  RENT | 750.00 | PW  M/IC | 151.00 | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  ARGN | 43.00 | | | 657.00 | 0.00 |
| 13850J D1 | | V | 750.00 | Vacant Unit | | CA  RENT | 750.00 | PT  VAC | 750.00 | 0.00 | 0.00 |
| 13862A B2 | | O | 685.00 | Lundquist, Jacob | | CA  RENT | 685.00 | PW  M/IC | 283.00 | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  ARGN | 33.00 | | | 450.00 | 0.00 |
| 13862B B2 | | O | 685.00 | Michirahondo, Musha | | CJ  TRSH | 10.00 | PW  RNWC | 273.00 | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CA  RENT | 685.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | 460.00 | 0.00 |
| 13862C B2 | | V | 685.00 | Vacant Unit | | CA  RENT | 685.00 | PT  VAC | 685.00 | 0.00 | 0.00 |
| 13862D B2 | | O | 685.00 | Herrera, Oscar | | CA  RENT | 685.00 | PW  RNWC | 261.00 | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | 472.00 | 0.00 |
| 13862E B3 | | O | 695.00 | Jerrics Meriwether (New) | | CA  RENT | 695.00 | PW  RNWC | 226.00 | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |

02/22/2006
11:08 am

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 21 Feb 2006

Page 21
ID 1.6.6

| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------------------------|-------------------|
| | | | | | | | ----- Charges ----- | | ----- Credits ----- | | |
| | | | | | | CJ | WTR$ 5.00 | | | 517.00 | 0.00 |
| 13862F B3 | | V | 695.00 | Vacant Unit | | CA RENT | 695.00 | PT VAC | 695.00 | 0.00 | 0.00 |
| 13862G B3 | | V | 695.00 | Vacant Unit | | CA RENT | 695.00 | PT VAC | 695.00 | 0.00 | 0.00 |
| 13862H B3 | | O | 695.00 | Cooper, Derek | | CA RENT | 695.00 | PW M/IC | 160.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | 583.00 | 583.00 |
| 13862I B1 | | O | 675.00 | Casique, Trinidad | | CA RENT | 675.00 | PW M/IC | 146.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | 577.00 | 0.00 |
| 13862J B1 | | O | 675.00 | Smith, James | | CJ ARGN | 33.00 | PW RNWC | 381.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PT GTOL | -10.00 | | |
| | | | | | | CA RENT | 685.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 352.00 | 0.00 |
| 13866A B2 | | O | 685.00 | Jones, Debra | | CJ TRSH | 10.00 | PW M/IC | 186.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA RENT | 685.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | 547.00 | 0.00 |
| 13866B B2 | | V | 685.00 | Vacant Unit | | CA RENT | 685.00 | PT VAC | 685.00 | 0.00 | 0.00 |
| 13866C B2 | | V | 685.00 | Vacant Unit | | CA RENT | 685.00 | PT VAC | 685.00 | 0.00 | 0.00 |
| 13866D B2 | | O | 685.00 | Lopez, Juan | | CA RENT | 685.00 | PW RNWC | 244.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 487.00 | 974.00 |
| 13866E B3 | | O | 695.00 | Ikpe, Comfort | | CA RENT | 695.00 | PW M/IC | 256.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 447.00 | 0.00 |
| 13866F B1 | | O | 695.00 | Buckmire, Amalia | | CA RENT | 695.00 | PW M/IC | 296.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 447.00 | 0.00 |
| 13866G B3 | | V | 695.00 | Vacant Unit | | CA RENT | 695.00 | PT VAC | 695.00 | 0.00 | 0.00 |

02/22/2006
11:08 am

SOUTHEASTERN REALTY

The Courts At Peachtree Corner

Rent Roll As Of 22 Feb 2006

Page 22
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | ----- Charges ----- | | ----- Credits ----- | | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| | | | | | | Code | Amount | Code | Amount | | |
| 13866H | B3 | V | 695.00 | Vacant Unit | | CA RENT | 695.00 | PT VAC | 695.00 | 0.00 | 0.00 |
| 13866I | B1 | O | 675.00 | Carlos Garcia, Juan | | CA RENT | 675.00 | PW M/IC | 276.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 447.00 | 0.00 |
| 13866J | B1 | V | 675.00 | Vacant Unit | | CA RENT | 675.00 | PT VAC | 675.00 | 0.00 | 0.00 |
| 13874A | D2 | O | 760.00 | Peres, Evi | 1419 | CA RENT | 770.00 | PW M/IC | 171.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -10.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CA GTOR | -10.00 | | | 667.00 | 0.00 |
| 13874B | D2 | O | 760.00 | James, Shekemba | 1419 | CA ARGN | 43.00 | PW M/IC | 261.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA RENT | 760.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 557.00 | 0.00 |
| 13874C | D2 | O | 760.00 | Ramos, Jone | 1419 | CA RENT | 760.00 | PW M/IC | 241.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 577.00 | 0.00 |
| 13874D | D2 | O | 760.00 | Okwara, Nneka | | CA RENT | 760.00 | PW M/IC | 241.00 | | |
| | | | | | | CJ ARGN | 44.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 578.00 | 0.00 |
| 13874E | D2 | V | 770.00 | Vacant Unit | | CA RENT | 770.00 | PT VAC | 770.00 | 0.00 | 0.00 |
| 13874F | D2 | O | 770.00 | Miller, Stephanie | | CJ ARGN | 43.00 | PW M/IC | 171.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA RENT | 770.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 657.00 | 0.00 |
| 13874G | D2 | O | 770.00 | Poydras, Lauria | | CJ TRSH | 10.00 | PW RNWC | 160.00 | | |
| | | | | | | CA RENT | 770.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | 678.00 | 0.00 |
| 13874H | D2 | O | 770.00 | Godwin, Vdibe | | CA RENT | 770.00 | PW M/IC | 271.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 557.00 | 0.00 |

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| 13874I | D1 | O | 750.00 | Lopez, Rodolfo | | CA RENT | 750.00 | PW M/IC | 142.00 | | |
| | | | | | | CJ ARGN | 44.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 667.00 | 0.00 |
| 13874J | D1 | V | 750.00 | Vacant Unit | | CA RENT | 750.00 | PT VAC | 750.00 | 0.00 | 0.00 |
| 13877A | G | O | 1125.00 | Bartleson, Starrett | | CA RENT | 1125.00 | PW RNWC | 105.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 64.00 | | | 1099.00 | 0.00 |
| 13877B | G | O | 1125.00 | Melendez, Celoclonio | | CA RENT | 1125.00 | PW M/IC | 146.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 64.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 1058.00 | 0.00 |
| 13886A | E1 | O | 845.00 | Gomez, Fransico | | CJ TRSH | 10.00 | PW M/IC | 191.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CJ ARGN | 49.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 723.00 | 0.00 |
| 13886B | E1 | O | 845.00 | Roger Gifford | | CA RENT | 860.00 | PW M/IC | 266.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -15.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 657.00 | 0.00 |
| 13886E | E2 | V | 855.00 | Vacant Unit | | CA RENT | 855.00 | PT VAC | 855.00 | 0.00 | 0.00 |
| 13886F | E2 | O | 855.00 | Greenway, Sara | 1419 | CJ TRSH | 10.00 | PW M/IC | 211.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 712.00 | 0.00 |
| 13889A | F1 | O | 965.00 | Armstrong, April | 1419 | CA RENT | 965.00 | PW M/IC | 169.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 59.00 | | | 870.00 | 870.00 |
| 13889B | F1 | O | 965.00 | Jackson, Kim | | CA RENT | 965.00 | PW M/IC | 166.00 | | |
| | | | | | | CJ ARGN | 59.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 873.00 | 0.00 |

02/22/2006
11:08 am

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 22 Feb 2006

Page  24
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| 13889E | F2 | O | 975.00 | Garcia, Saul | | CJ WTR$ | 5.00 | PW RNWC | 156.00 | | |
| | | | | | | CJ ARGN | 59.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 980.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 898.00 | 0.00 |
| 23889F | F2 | O | 975.00 | Mondrogon, Joel | | CJ WTR$ | 5.00 | PW RNWC | 172.00 | | |
| | | | | | | CJ ARGN | 59.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 990.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 892.00 | 0.00 |
| 13890A | E1 | O | 845.00 | Tahi, Thomas | | CJ WTR$ | 5.00 | PW W/IC | 261.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 650.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 652.00 | 0.00 |
| 13890B | E1 | O | 845.00 | Huang, Lina | | CJ TRSH | 10.00 | PW W/IC | 251.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 662.00 | 0.00 |
| 13890E | E2 | O | 855.00 | Parker, Micheal | | CJ WTR$ | 5.00 | PW W/IC | 212.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 711.00 | 0.00 |
| 13890F | E2 | O | 855.00 | Ampofoh, Diana | | CJ ARGN | 48.00 | PW RNWC | 221.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 702.00 | 0.00 |
| 13894A | E1 | O | 845.00 | Gonzalez, Miguel | | CJ ARGN | 48.00 | PW W/IC | 214.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 635.00 | 0.00 |
| 13894B | E1 | O | 845.00 | De La Cruz, Marcos | | CA RENT | 850.00 | PW W/IC | 200.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |

02/22/2006
11:08 am

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 22 Feb 2006

Page 25
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|--|------|--------|------|--------|------------|----------|
| | | | | | | CA | GTOR | -5.00 | | | 713.00 | 0.00 |
| 13894E E2 | | O | 855.00 | Diarrz, Souleymane | | CJ | WTR$ | 5.00 | PW | M/IC | 222.00 | |
| | | | | | | CJ | ARGN | 48.00 | PX | GTOL | -5.00 | |
| | | | | | | CA | RENT | 860.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 701.00 | 0.00 |
| 13894F E2 | | O | 855.00 | Dykes, Natasha | | CA | RENT | 855.00 | PW | M/IC | 201.00 | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CJ | ARGN | 49.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | 718.00 | 0.00 |
| 23741A D2 | | O | 760.00 | Estrada, Sargario | | CA | RENT | 760.00 | PW | M/IC | 261.00 | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CJ | ARGN | 44.00 | | | 558.00 | 0.00 |
| 23741B D2 | | O | 760.00 | Dialo, Abdoulye | | CA | RENT | 760.00 | PW | M/IC | 261.00 | |
| | | | | | | CJ | ARGN | 43.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | 557.00 | 0.00 |
| 23741C D2 | | O | 760.00 | Murrillo, Roy | | CA | RENT | 760.00 | PO | OTRC | 200.00 | |
| | | | | | | CJ | WTR$ | 5.00 | PW | M/IC | 261.00 | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | ARGN | 43.00 | | | 357.00 | 0.00 |
| 23741D D2 | | V | 760.00 | Vacant Unit | | CA | RENT | 760.00 | PT | VAC | 760.00 | 0.00 | 0.00 |
| 23741E D3 | | O | 770.00 | Mendoza, Yesenia | 1419 | CA | RENT | 770.00 | | | | |
| | | | | | | CH | MTM | 100.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | ARGN | 43.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | 928.00 | 0.00 |
| 23741F D3 | | V | 770.00 | Vacant Unit | | CA | RENT | 770.00 | PT | VAC | 770.00 | 0.00 | 0.00 |
| 23741G D3 | | O | 770.00 | Wilkens, Rosaria | | CA | RENT | 770.00 | PW | M/IC | 271.00 | |
| | | | | | | CJ | ARGN | 43.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | 557.00 | 0.00 |
| 23741H D3 | | O | 770.00 | Rosales, Hector | | CA | RENT | 770.00 | PW | M/IC | 271.00 | |
| | | | | | | CJ | ARGN | 43.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | 557.00 | 0.00 |

```
02/22/2006                          SOUTHEASTERN REALTY                        Page 26
11:08 am                        The Courts At Peachtree Corner                  ID 3.6.6
                                  Rent Roll As Of 22 Feb 2006
-----------------------------------------------------------------------------------------------
                                              ----- Charges -----   ----- Credits -----   Net Change   Resident
Unit   Type  Stat Market    Name        Entity      Code   Amount    Code     Amount      In Balance    Balance
------ ----- ---- -------   ----------  ------ --   ----   ------   --- ----   ------     ----------   ---------
```

| Unit | Type | Stat | Market | Name | Entity | | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23741I | D1 | O | 750.00 | Williamson, Gordan | 1419 | CA | RENT | 750.00 | PW M/IC | 151.00 | | |
| | | | | | | CJ | ARGN | 43.00 | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | 657.00 | 0.00 |
| 23744A | E1 | O | 845.00 | Zavala, Mario | | CA | RENT | 450.00 | PW M/IC | 221.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 690.00 | 0.00 |
| 23744B | E1 | O | 845.00 | Harley, Kayyon | | CA | RENT | 900.00 | PW RNWC | 213.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PX GTOL | -55.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | | CA | GTOR | -55.00 | | | 750.00 | 0.00 |
| 23748A | E1 | O | 845.00 | Riera, Hernan | 1419 | CA | RENT | 850.00 | PW RNWC | 301.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 613.00 | 0.00 |
| 23748B | E1 | O | 845.00 | Santamaria, Nazario | 1419 | CJ | TRSH | 10.00 | PP REFR | 200.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PW M/IC | 201.00 | | |
| | | | | | | CA | RENT | 850.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 513.00 | 0.00 |
| 23748E | E2 | O | 855.00 | Daley, Debbie | | CA | RENT | 860.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 923.00 | 946.00 |
| 23748F | E2 | O | 855.00 | Palomino, Nicolas | | CA | RENT | 860.00 | PW RNWC | 211.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 712.00 | 0.00 |
| 23749A | F1 | O | 965.00 | Maldonado, Victoira | | CA | RENT | 965.00 | PW M/IC | 259.00 | | |
| | | | | | | CJ | ARGN | 59.00 | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | 780.00 | 0.00 |

| Unit | Type | Stat | Market | Name | Entity | | Charges Code | Amount | | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|--|------|--------|--|------|--------|-----------|---------|
| 23749B | F1 | O | 965.00 | Gray, Emmett | | CJ | TRSH | 10.00 | PW | M/IC | 179.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX | GTOL | -10.00 | | |
| | | | | | | CA | RENT | 975.00 | | | | | |
| | | | | | | CJ | ARGN | 59.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 870.00 | 0.00 |
| 23749E | F2 | O | 975.00 | Juarez, Hector | 1419 | CA | RENT | 975.00 | PW | M/IC | 289.00 | | |
| | | | | | | CJ | ARGN | 59.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | 760.00 | 0.00 |
| 23749F | F2 | O | 975.00 | Parley, Jonas | | CA | RENT | 975.00 | PW | M/IC | 269.00 | | |
| | | | | | | CJ | ARGN | 59.00 | | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | 780.00 | 0.00 |
| 23750A | F1 | O | 965.00 | Yanez, Raul | | CA | RENT | 975.00 | PW | M/IC | 216.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | GTOL | -10.00 | | |
| | | | | | | CJ | ARGN | 59.00 | | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 833.00 | 0.00 |
| 23750B | F1 | O | 965.00 | Gonzalez, Andres | 1419 | CA | RENT | 965.00 | PW | M/IC | 239.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 56.00 | | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | 799.00 | 0.00 |
| 23750E | F2 | O | 975.00 | Alvarez, Francisco | | CA | RENT | 975.00 | PW | M/IC | 319.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 59.00 | | | | 730.00 | 0.00 |
| 23750F | F2 | O | 975.00 | Dominguez, Edgar | | CA | RENT | 975.00 | PW | M/IC | 289.00 | | |
| | | | | | | CJ | ARGN | 59.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTRS | 5.00 | | | | 760.00 | 0.00 |
| 23753A | E1 | O | 845.00 | Brown, James | | CJ | ARGN | 48.00 | PW | M/IC | 201.00 | | |
| | | | | | | CJ | WTRS | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 850.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 712.00 | 0.00 |
| 23753B | E1 | O | 845.00 | Hernandez, Rogelis | | CJ | WTRS | 5.00 | PW | M/IC | 202.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 850.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |

```
02/22/2006                          SOUTHEASTERN REALTY                              Page 28
11:08 AM                        The Courts At Peachtree Corner                       ID 3.6.6
                                 Rent Roll As Of 22 Feb 2006
=================================================================================================

Unit   Typo Stat Market    Name              Entity      ----- Charges -----   ----- Credits -----  Net Change  Resident
                                                         Code    Amount        Code    Amount      In Balance   Balance
------ ---- ---- ------ ------------------ ---------      -- ----  ---------    -- ----  ---------   ----------  ---------
                                                         CA GTOR    -5.00                              711.00      0.00

23753E E2    O    855.00 Kanyor, Daniel                  CJ TRSH    10.00     PW M/IC   183.00
                                                         CJ ARGN    48.00     PX LTOL     5.00
                                                         CA RENT   850.00
                                                         CJ WTRS     5.00
                                                         CA LTOR     5.00                              730.00      0.00

23753F E2    V    855.00 Vacant Unit                     CA RENT   855.00     PT VAC    855.00          0.00      0.00

23757A E1    O    845.00 Duran, Fernando                 CA RENT   845.00     PW M/IC   196.00
                                                         CJ TRSH    10.00
                                                         CJ WTRS     5.00
                                                         CJ ARGN    48.00                              712.00      0.00

23757B E1    O    845.00 Ventura, Jose        1419       CJ ARGN    48.00     PW M/IC   211.00
                                                         CJ WTRS     5.00     PX GTOL    -5.00
                                                         CA RENT   850.00
                                                         CJ TRSH    10.00
                                                         CA GTOR    -5.00                              702.00      0.00

23757E E2    O    855.00 Kakou, Barthelemy               CA RENT   860.00     PW RRWC   286.00
                                                         CJ TRSH    10.00     PX GTOL    -5.00
                                                         CJ WTRS     5.00
                                                         CJ ARGN    48.00
                                                         CA GTOR    -5.00                              637.00      0.00

23757F E2    O    855.00 Gibbs, Tiara                    CJ WTRS     5.00     PW RRWC   311.00
                                                         CJ ARGN    48.00     PX GTOL    -5.00
                                                         CA RENT   860.00
                                                         CJ TRSH    10.00
                                                         CA GTOR    -5.00                              612.00      0.00

23761A F1    V    965.00 Vacant Unit                     CA RENT   965.00     PT VAC    965.00          0.00      0.00

23761B F1    V    965.00 Vacant Unit                     CA RENT   965.00     PT VAC    965.00          0.00      0.00

23761E F2    O    975.00 Gallardo, Juan                  CJ WTRS     5.00     PW M/IC   183.00
                                                         CA RENT   975.00
                                                         CJ ARGN    59.00
                                                         CJ TRSH    10.00                              860.00      0.00

23761F F2    O    975.00 Cordova, Kimberly               CA RENT   975.00     PW M/IC   249.00
                                                         CJ ARGN    59.00
                                                         CJ TRSH    10.00
                                                         CJ WTRS     5.00                              860.00      0.00
```

```
02/22/2006                              SOUTHEASTERN REALTY                              Page  29
21:06 am                           The Courts At Peachtree Corner                        ID 3.6.6
                                     Rent Roll As Of 22 Feb 2006
================================================================================================
```

| Unit | Type | Stat | Market | Name | Entity | ----- Charges ----- | | | ---- Credits ---- | | Net Change | Resident |
|------|------|------|--------|------|--------|------|------|------|------|------|------|------|
| | | | | | | Cd | Code | Amount | Cd | Code | Amount | In Balance | Balance |
| 23764A O | | V | 1125.00 | Vacant Unit | | CA | RENT | 1125.00 | PT | VAC | 1125.00 | 0.00 | 0.00 |
| 23765A A2 | | V | 650.00 | Vacant Unit | | CA | RENT | 650.00 | PT | VAC | 650.00 | 0.00 | 0.00 |
| 23765B A2 | | O | 650.00 | Lemaz, Julie | 1419 | CA | RENT | 650.00 | PW | M/IC | 200.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 498.00 | 0.00 |
| 23765C A2 | | O | 650.00 | Cannon, Sherry | | CJ | TRSH | 10.00 | PW | M/IC | 200.00 | | |
| | | | | | | CA | RENT | 660.00 | PW | RNWC | 165.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -10.00 | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 337.00 | 0.00 |
| 23765D A2 | | O | 650.00 | Costello, Valentino | | CJ | TRSH | 10.00 | PW | M/IC | 251.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -35.00 | | |
| | | | | | | CA | RENT | 685.00 | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CA | GTOR | -35.00 | | | | 476.00 | 917.00 |
| 23765E A3 | | O | 660.00 | Davis, Sam | | CA | RENT | 660.00 | PW | M/IC | 155.00 | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 547.00 | 0.00 |
| 23765F A3 | | O | 660.00 | Morales, Evlalia | 1419 | CA | RENT | 660.00 | PW | M/IC | 261.00 | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 441.00 | 0.00 |
| 23765G A3 | | O | 660.00 | Flores, Jubenal | | CA | RENT | 660.00 | PW | RNWC | 216.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | 486.00 | 0.00 |
| 23765H A3 | | O | 660.00 | Rios, Sandra | | CA | RENT | 660.00 | PW | M/IC | 160.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | 552.00 | 0.00 |
| 23765I A1 | | O | 640.00 | Ortega, Ricardo | | CJ | TRSH | 10.00 | PW | M/IC | 130.00 | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CA | RENT | 640.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 552.00 | 0.00 |
| 23765J A1 | | O | 640.00 | Theard, Shaun | | CA | RENT | 660.00 | PW | M/IC | 334.00 | | |

02/22/2006                          SOUTHEASTERN REALTY                          Page 30
11:08 am                        The Courts At Peachtree Corner                   ID 3.6.6
                                   Rent Roll As Of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | | Code | Amount | | Code | Amount | Net Change In Balance | Resident Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | 348.00 | 0.00 |
| 23768B | F1 | O | 969.00 | Sanchez, Carlos | | CJ | TRSH | 10.00 | PW | RNWC | 140.00 | | |
| | | | | | | CJ | ARGN | 58.00 | PX | GTOL | -15.00 | | |
| | | | | | | CA | RENT | 980.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CA | GTOR | -15.00 | | | | 913.00 | 0.00 |
| 23768F | F2 | V | 976.00 | Vacant Unit | 1419 | CA | RENT | 975.00 | PT | VAC | 975.00 | 0.00 | 0.00 |
| 23769A | A2 | O | 650.00 | Poehner, Jeff | | CJ | ARGN | 27.00 | PW | RNWC | 16.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | RENT | 650.00 | | | | 657.00 | 0.00 |
| 22769B | A2 | O | 650.00 | Walters, Elizabeth | | CA | RENT | 650.00 | PW | M/IC | 146.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CB | CLNG | 27.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | 546.00 | 0.00 |
| 23769C | A2 | O | 650.00 | Rundell, Justine | | CA | RENT | 650.00 | PW | M/IC | 164.00 | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | 528.00 | 0.00 |
| 23769D | A2 | O | 650.00 | Irving, Tamara | | CJ | ARGN | 27.00 | PW | RNWC | 176.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CA | RENT | 650.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | 516.00 | 0.00 |
| 23769E | A3 | O | 660.00 | Lagiewka, Bonifacy | | CJ | ARGN | 27.00 | PW | RNWC | 105.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | RENT | 660.00 | | | | 597.00 | 0.00 |
| 23769F | A3 | O | 660.00 | Helms, Tye | | CA | RENT | 660.00 | PW | RNWC | 261.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 441.00 | 0.00 |
| 23769G | A3 | O | 660.00 | Hutchinson, Taneika | | CA | RENT | 660.00 | PW | RNWC | 186.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 27.00 | | | | 516.00 | 0.00 |

SOUTHEASTERN REALTY

The Courts At Peachtree Corner

Rent Roll As of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|------|------|
| 23769H | A3 | O | 660.00 | Li, Chao | | CA RENT | 660.00 | PW M/IC | 136.00 | | |
| | | | | | | CJ ARGN | 27.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 6.00 | | | 566.00 | 0.00 |
| 23769I | A1 | V | 640.00 | Vacant Unit | | CA RENT | 640.00 | PT VAC | 640.00 | 0.00 | 0.00 |
| 23769J | A1 | O | 640.00 | Arnold, William | | CA RENT | 640.00 | | | | |
| | | | | | | CJ ARGN | 27.00 | | | | |
| | | | | | | CJ TRSN | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 682.00 | 0.00 |
| 23773A | F1 | O | 965.00 | Guillen, Alex | | CJ ARGN | 59.00 | PW M/IC | 261.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 980.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 793.00 | 0.00 |
| 23773B | F1 | O | 965.00 | Soto, Florencio | | CA RENT | 960.00 | PW RNWC | 134.00 | | |
| | | | | | | CJ ARGN | 58.00 | PX LTOL | 6.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA LTOR | 5.00 | | | 899.00 | 0.00 |
| 23773E | F2 | O | 975.00 | Hairston, Donna Marie | | CJ TRSH | 10.00 | PW M/IC | 264.00 | | |
| | | | | | | CJ ARGN | 58.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 990.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 799.00 | 0.00 |
| 23773F | F2 | V | 975.00 | Vacant Unit | | CA RENT | 975.00 | PT VAC | 975.00 | 0.00 | 0.00 |
| 23777A | D2 | O | 760.00 | Zorn, Steven | | CA RENT | 760.00 | PW RNWC | 246.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | 572.00 | 572.00 |
| 23777B | D2 | O | 760.00 | Monroy, Antonio | | CA RENT | 760.00 | PW M/IC | 210.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 608.00 | 0.00 |
| 23777C | D2 | O | 760.00 | Mora, Rodolfo | 1419 | CA RENT | 760.00 | PW RNWC | 218.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 43.00 | | | 600.00 | 0.00 |

```
02/22/2006                        SOUTHEASTERN REALTY                           Page 32
11:08 am                      The Courts At Peachtree Corner                    ID 3.6.6
                               Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Charges Amount | Credits Code | Credits Amount | Net Charge In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|------|------|------|------|------|
| 23777D | D2 | O | 760.00 | Jackson, Jason | 1419 | CA RENT | 760.00 | PW M/IC | 261.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 557.00 | 0.00 |
| 23777E | D4 | O | 780.00 | Huff, Carol | | CA RENT | 780.00 | PW RNWC | 266.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 46.00 | | | 576.00 | 0.00 |
| 23777F | D4 | O | 780.00 | Vasquez, Florencio | | CA RENT | 780.00 | PW M/IC | 191.00 | | |
| | | | | | | CJ ARGN | 41.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 655.00 | 0.00 |
| 23777G | D4 | O | 780.00 | Jones, Talesha | | CA RENT | 780.00 | PW M/IC | 239.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 599.00 | 0.00 |
| 23777H | D4 | O | 780.00 | Ruiz, Alberto | | CA RENT | 780.00 | PW RNWC | 211.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 627.00 | 0.00 |
| 23777I | D1 | V | 750.00 | Vacant Unit | | CA RENT | 750.00 | PT VAC | 750.00 | 0.00 | 0.00 |
| 23777J | D1 | O | 750.00 | Gomez, Nemecio | | CA RENT | 750.00 | PW RNWC | 196.00 | | |
| | | | | | | CJ ARGN | 43.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 612.00 | 0.00 |
| 23781A | B2 | V | 685.00 | Vacant Unit | | CA RENT | 685.00 | PT VAC | 685.00 | 0.00 | 0.00 |
| 23781B | B2 | O | 685.00 | Cornejo, Joel | | CA RENT | 685.00 | PW RNWC | 231.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 11.00 | | | 502.00 | 0.00 |
| 23781C | B2 | O | 685.00 | Rivera, Natalia | | CA RENT | 685.00 | PW M/IC | 279.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 454.00 | 0.00 |
| 23781D | B2 | O | 685.00 | Thomas, Samuel | 1419 | CA RENT | 685.00 | PW M/IC | 266.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |

```
02/22/2006                          SOUTHEASTERN REALTY                              Page  33
11:00 AM                        The Courts At Peachtree Corner                       ID 3.6.6
                                Rent Roll As Of 22 Feb 2006
-----------------------------------------------------------------------------------------------
                                         ----- Charges -----   ----- Credits -----  Net Change   Resident
Unit   Type  Stat Market   Name           Entity   Code  Amount   Code   Amount     In Balance   Balance
                                                   CJ   TRSH   10.00
                                                                                       447.00        0.00

23781E B3    O    695.00 Sierra, Maria            CA   RENT  695.00  PW  M/IC  246.00
                                                   CJ   ARGN   33.00
                                                   CJ   TRSH   10.00
                                                   CJ   WTRS    5.00
                                                                                       497.00        0.00

23781F B3    O    695.00 Pizzurro, Jean           CA   RENT  695.00  PW  M/IC  236.00
                                                   CJ   TRSH   10.00
                                                   CJ   ARGN   33.00
                                                   CJ   WTRS    5.00
                                                                                       507.00        0.00

23781G B3    O    695.00 Loon, Deborah            CA   RENT  695.00  PW  M/IC  245.00
                                                   CJ   ARGN   33.00
                                                   CJ   WTRS    5.00
                                                   CJ   TRSH   10.00
                                                                                       498.00        0.00

23781H B3    V    695.00 Vacant Unit              CA   RENT  695.00  PT  VAC   695.00    0.00        0.00

23781I B1    O    675.00 Boatenga, Adwoa          CA   RENT  675.00  PW  M/IC  172.00
                                                   CJ   ARGN   33.00
                                                   CJ   TRSH   10.00
                                                   CJ   WTRS    5.00
                                                                                       551.00        0.00

23781J B1    O    675.00 Waye, Ricky              CA   RENT  675.00  PW  M/IC  276.00
                                                   CJ   ARGN   33.00
                                                   CJ   TRSH   10.00
                                                   CJ   WTRS    5.00
                                                                                       447.00      447.00

23785A B2    O    685.00 Ghogomu, Careine         CA   RENT  685.00  PW  RNWC  256.00
                                                   CJ   ARGN   33.00
                                                   CJ   TRSH   10.00
                                                   CJ   WTRS    5.00
                                                                                       477.00        0.00

23785B B2    V    685.00 Vacant Unit              CA   RENT  685.00  PT  VAC   685.00    0.00        0.00

23785C B2    O    685.00 Adensah, Adejoke         CA   RENT  685.00  PW  M/IC  286.00
                                                   CJ   TRSH   10.00
                                                   CJ   WTRS    5.00
                                                   CJ   ARGN   33.00
                                                                                       447.00        0.00

23785D B2    O    685.00 Cruz, Marcela            CA   RENT  685.00  PW  M/IC  222.00
                                                   CJ   TRSH   10.00
                                                   CJ   ARGN   33.00
                                                   CJ   WTRS    5.00
                                                                                       511.00        0.00

23785E B3    O    695.00 Kansc, Ibrahima  1419     CJ   ARGN   33.00  PW  RNWC  167.00
```

```
02/22/2006                              SOUTHEASTERN REALTY                              Page  34
11:08 AM                            The Courts At Peachtree Corner                       ID 3.6.6
                                    Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | | Charges Code | Amount | | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|---|------|--------|---|------|--------|------|------|
| | | | | | | CJ | WTR$ | 5.00 | PX | LTOL | 10.00 | | |
| | | | | | | CA | RENT | 685.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | LTOR | 10.00 | | | | 566.00 | 566.00 |
| 23785P B3 | | O | 695.00 | Newkirk, Shirlene | | CJ | ARGN | 33.00 | PW | RNWC | 171.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -10.00 | | |
| | | | | | | CA | RENT | 705.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 582.00 | 0.00 |
| 23785G B3 | | O | 695.00 | Infante, Eligenio | | CA | RENT | 695.00 | PW | RNWC | 224.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 519.00 | 0.00 |
| 23785H B2 | | O | 695.00 | Casselberry, Deborah | | CA | RENT | 695.00 | PW | M/IC | 160.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 583.00 | 0.00 |
| 23785I B1 | | V | 675.00 | Vacant Unit | | CA | RENT | 675.00 | PT | VAC | 675.00 | 0.00 | 0.00 |
| 23785J B1 | | O | 675.00 | Guillermo, Monteil | | CA | RENT | 675.00 | PW | M/IC | 276.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 447.00 | 0.00 |
| 23789A B2 | | O | 685.00 | Rodriguez, Pedro | | CA | RENT | 685.00 | PW | RNWC | 261.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 472.00 | 0.00 |
| 23789B B2 | | O | 685.00 | Tweneboah, Koduah | | CA | RENT | 685.00 | PW | M/IC | 279.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | 454.00 | 0.00 |
| 23789C B2 | | O | 685.00 | Pearson, Rayncuha | | CJ | TRSH | 10.00 | PW | M/IC | 146.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | RENT | 685.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 587.00 | 0.00 |
| 23789D B2 | | O | 685.00 | Oza, Rokesh | | CA | RENT | 695.00 | PW | RNWC | 191.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | GTOL | -10.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |

```
02/22/2006                              SOUTHEASTERN REALTY                              Page  35
11:08 am                              The Courts At Peachtree Corner                     ID 3.6.6
                                        Rent Roll As Of 22 Feb 2006
========================================================================================================
                                                ----- Charges -----   ----- Credits -----  Net Change   Resident
  Unit  Type  Stat  Market    Name         Entity      Code   Amount       Code    Amount  In Balance   Balance
======  ====  ====  ========  ==========   ======      ====  ========       ====  ======== ==========  ==========
                                                   CA  GTOR    -10.00
                                                                                               562.00     0.00
 23789E B3      O     695.00 Ni, Yong              CA  RENT    695.00   PW  M/IC   192.00
                                                   CJ  ARGN     33.00
                                                   CJ  TRSH     10.00
                                                   CJ  WTR$      5.00
                                                                                               551.00     0.00
 23789F B3      O     695.00 Jackson, Latoya       CA  RENT    695.00   PW  M/IC   296.00
                                                   CJ  ARGN     33.00
                                                   CJ  WTR$      5.00
                                                   CJ  TRSH     10.00
                                                                                               447.00     0.00
 23789G B3      O     695.00 Daniels, Veronica     CJ  TRSH     10.00   PW  RNWC    25.00
                                                   CJ  ARGN     32.00   PX  GTOL   -10.00
                                                   CA  RENT    705.00
                                                   CJ  WTR$      5.00
                                                   CA  GTOR    -10.00
                                                                                               727.00     0.00
 23789H B3      O     695.00 Mercer, Lea           CA  RENT    695.00   PW  M/IC   296.00
                                                   CJ  TRSH     10.00
                                                   CJ  WTR$      5.00
                                                   CJ  ARGN     33.00
                                                                                               447.00     0.00
 23789I B1      O     675.00 Sotillo, Simon        CA  RENT    685.00   PW  M/IC   257.00
                                                   CJ  TRSH     10.00   PX  GTOL   -10.00
                                                   CJ  WTR$      5.00
                                                   CJ  ARGN     33.00
                                                   CA  GTOR    -10.00
                                                                                               476.00     0.00
 23789J B1      O     675.00 Mc Pherson, Kristal   CA  RENT    675.00   PW  RNWC   381.00
                                                   CJ  ARGN     33.00
                                                   CJ  TRSH     10.00
                                                   CJ  WTR$      5.00
                                                                                               342.00     0.00
 23795A B2      O     685.00 Holloway, Karol       CA  RENT    685.00   PW  M/IC   150.00
                                                   CJ  WTR$      5.00
                                                   CJ  TRSH     10.00
                                                   CJ  ARGN     33.00
                                                                                               583.00     0.00
 23795B B2      O     685.00 Soaga, Caroline       CA  RENT    685.00   PW  RNWC   171.00
                                                   CJ  WTR$      5.00
                                                   CJ  TRSH     10.00
                                                   CJ  ARGN     33.00
                                                                                               562.00     0.00
 23795C B2      O     685.00 Alvarez, Lucia   1419 CA  RENT    685.00   PW  M/IC   191.00
                                                   CJ  ARGN     33.00
                                                   CJ  TRSH     10.00
```

```
02/22/2006                           SOUTHEASTERN REALTY                          Page  36
11:08 am                         The Courts At Peachtree Corner                   ID 3.6.6
                                   Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | ----- Charges ----- | | | ----- Credits ----- | | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|------|--------|------|--------|------|------|
| | | | | | | | Code | Amount | | Code | Amount | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 542.00 | 0.00 |
| 23796D B2 | | O | 685.00 | Reife, Reimond | | CA | RENT | 685.00 | PW | M/IC | 221.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 512.00 | 0.00 |
| 23795E B3 | | O | 695.00 | Perez, Escudero | | CA | RENT | 695.00 | PW | M/IC | 245.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 498.00 | 0.00 |
| 23795F B3 | | O | 696.00 | Obasi, Micheal | | CJ | ARGN | 33.00 | PW | RNWC | 196.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -10.00 | | |
| | | | | | | CA | RENT | 705.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 537.00 | 0.00 |
| 23795G B2 | | O | 695.00 | Gimboni, Gigi | | CJ | TRSH | 10.00 | PW | M/IC | 245.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CA | RENT | 695.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 498.00 | 498.00 |
| 23795H B2 | | O | 695.00 | Cruz, Hugo | | CA | RENT | 695.00 | PW | M/IC | 160.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 583.00 | 0.00 |
| 23795I B1 | | O | 675.00 | Melton, Larry | | CA | RENT | 675.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 723.00 | 0.00 |
| 23795J B1 | | O | 675.00 | Moises, Mora | | CJ | TRSH | 10.00 | PW | M/IC | 241.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | LTOL | 35.00 | | |
| | | | | | | CA | RENT | 640.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | LTOR | 35.00 | | | | 447.00 | 0.00 |
| 23820A C1 | | O | 680.00 | Ombimah, Lucy | | CJ | TRSH | 10.00 | PW | RNWC | 165.00 | | |
| | | | | | | CA | RENT | 685.00 | PX | GTOL | -5.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 568.00 | 0.00 |
| 23820B C1 | | O | 680.00 | Uribe, Samuel | | CJ | ARGN | 33.00 | PW | M/IC | 136.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -5.00 | | |

```
02/22/2006                          SOUTHEASTERN REALTY                          Page 37
11:08 am                       The Courts At Peachtree Corner                    ID 3.6.6
                                  Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|-----------------------|------------------|
| | | | | | | CA  RENT | 685.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CA  GTOR | -5.00 | | | 697.00 | 0.00 |
| 23820E | C2 | O | 690.00 | Massawe, Emanuel | | CA  RENT | 690.00 | PW  RNWC | 291.00 | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  ARGN | 33.00 | | | 447.00 | 0.00 |
| 23820F | C2 | O | 690.00 | Chambers, Charles | | CA  RENT | 690.00 | PW  M/IC | 155.00 | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  ARGN | 33.00 | | | 583.00 | 0.00 |
| 23824A | C1 | O | 680.00 | Cisse, Alima | | CA  RENT | 680.00 | PW  M/IC | 161.00 | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  ARGN | 32.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | 566.00 | 0.00 |
| 23824B | C1 | O | 680.00 | Flores, Fidel | 1419 | CA  RENT | 685.00 | PW  M/IC | 191.00 | | |
| | | | | | | CJ  TRSH | 10.00 | PX  GTOL | -5.00 | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CA  GTOR | -5.00 | | | 542.00 | 0.00 |
| 23824E | C2 | V | 690.00 | Vacant Unit | | CA  RENT | 690.00 | PT  VAC | 690.00 | 0.00 | 0.00 |
| 23824F | C2 | O | 690.00 | Parker, La'toya | | CJ  TRSH | 10.00 | PW  RNWC | 266.00 | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CA  RENT | 690.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | 472.00 | 0.00 |
| 23828A | C1 | V | 680.00 | Vacant Unit | | CA  RENT | 680.00 | PT  VAC | 680.00 | 0.00 | 0.00 |
| 23828B | C1 | O | 680.00 | Mincey, Vissaleya | | CA  RENT | 680.00 | PW  M/IC | 140.00 | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  WTR$ | 5.00 | | | 589.00 | 0.00 |
| 23828E | C2 | O | 690.00 | Mills, Beverly | | CA  RENT | 690.00 | PW  M/IC | 240.00 | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  ARGN | 33.00 | | | 498.00 | 0.00 |
| 23828F | C2 | O | 690.00 | Ndine, Toto | | CA  RENT | 690.00 | PW  M/IC | 211.00 | | |
| | | | | | | CJ  WTR$ | 5.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |

02/22/2006
11:08 Am

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 22 Feb 2006

Page 38
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | | Code | Amount | Codn | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|--|------|--------|------|--------|-----------------------|------------------|
| | | | | | | CJ | ARGN | 33.00 | | | | |
| | | | | | | | | | | | 627.00 | 0.00 |
| 23830A | E1 | O | 845.00 | Tagle, Victor | | CA | RENT | 850.00 | PW M/IC | 262.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 651.00 | 0.00 |
| 23830B | E1 | O | 845.00 | Hernandez, Jogo | | CA | RENT | 845.00 | PW M/IC | 196.00 | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | 712.00 | 0.00 |
| 23830B | E2 | O | 855.00 | Pan, Wei | | CA | RENT | 860.00 | PW RNWC | 150.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 773.00 | 0.00 |
| 23830F | E2 | O | 855.00 | Oscar Miranda | | CA | RENT | 860.00 | PW M/IC | 191.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 732.00 | 0.00 |
| 23834A | E1 | O | 845.00 | Mori, Luis | | CA | RENT | 850.00 | PW RNWC | 191.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 722.00 | 0.00 |
| 23834B | E1 | V | 845.00 | Vacant Unit | | CA | RENT | 845.00 | PT VAC | 845.00 | 0.00 | 0.00 |
| 23834E | E2 | O | 855.00 | De Leon, Otto | | CJ | WTR$ | 5.00 | PW M/IC | 232.00 | | |
| | | | | | | CJ | ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA | RENT | 860.00 | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 691.00 | 0.00 |
| 23834F | E2 | O | 855.00 | Fernadez, Rosa | | CA | RENT | 860.00 | PW RNWC | 171.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | |
| | | | | | | CA | GTOR | -5.00 | | | 752.00 | 0.00 |
| 23842A | E1 | O | 845.00 | Boves, Julia | | CA | RENT | 845.00 | PW M/IC | 246.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | |

SOUTHEASTERN REALTY
The Courts At Peachtree Corner
Rent Roll As Of 22 Feb 2006

----------------------------------------------------------------------------------------------------

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Amount | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|--------------|--------|--------------|--------|----------------------|------------------|
| | | | | | | CJ  ARGN | 48.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | 662.00 | 0.00 |
| 23842B E1 | | O | 845.00 | Hernandez, Juan | | CA  RENT | 850.00 | PW  M/IC | 262.00 | | |
| | | | | | | CJ  TRSH | 10.00 | PX  GTOL | -5.00 | | |
| | | | | | | CJ  ARGN | 48.00 | | | | |
| | | | | | | CJ  WTRS | 5.00 | | | | |
| | | | | | | CA  GTOR | -5.00 | | | 651.00 | 0.00 |
| 23842E E2 | | O | 855.00 | Mclean, David | | CA  RENT | 855.00 | PW  M/IC | 246.00 | | |
| | | | | | | CJ  ARGN | 48.00 | | | | |
| | | | | | | CJ  WTRS | 5.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | 672.00 | 0.00 |
| 23842F E2 | | O | 855.00 | Brown, Jerry | | CJ  TRSH | 10.00 | PW  RNWC | 311.00 | | |
| | | | | | | CJ  ARGN | 48.00 | PX  GTOL | -5.00 | | |
| | | | | | | CA  RENT | 860.00 | | | | |
| | | | | | | CJ  WTRS | 5.00 | | | | |
| | | | | | | CA  GTOR | -5.00 | | | 612.00 | 0.00 |
| 23846A E1 | | O | 845.00 | Pulido, Alejandro | | CA  RENT | 845.00 | PW  M/IC | 196.00 | | |
| | | | | | | CJ  ARGN | 48.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CJ  WTRS | 5.00 | | | 712.00 | 0.00 |
| 23846B E1 | | O | 845.00 | Buckley, Elisha | | CJ  WTRS | 5.00 | PW  M/IC | 221.00 | | |
| | | | | | | CJ  ARGN | 48.00 | PX  GTOL | -5.00 | | |
| | | | | | | CA  RENT | 850.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CA  GTOR | -5.00 | | | 692.00 | 0.00 |
| 23846E E2 | | O | 855.00 | Patel, Hitesh K. | | CJ  ARGN | 48.00 | PW  RNWC | 231.00 | | |
| | | | | | | CJ  WTRS | 5.00 | PX  GTOL | -5.00 | | |
| | | | | | | CA  RENT | 860.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |
| | | | | | | CA  GTOR | -5.00 | | | 691.00 | 0.00 |
| 23846F E2 | | V | 855.00 | Vacant Unit | | CA  RENT | 855.00 | PT  VAC | 855.00 | 0.00 | 0.00 |
| 23850A C1 | | O | 680.00 | Moden Mussa | | CA  RENT | 680.00 | PW  M/IC | 274.00 | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CJ  WTRS | 5.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | 454.00 | 0.00 |
| 23850B C1 | | O | 680.00 | Gutierrez, Leonardo | | CA  RENT | 680.00 | PW  M/IC | 281.00 | | |
| | | | | | | CJ  ARGN | 33.00 | | | | |
| | | | | | | CJ  TRSH | 10.00 | | | | |

02/22/2006
11:08 am

SOUTHEASTERN REALTY

The Courts At Peachtree Corner

Rent Roll As Of 22 Feb 2006

Page  40
ID 3.6.6

| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|-----------------------|------------------|
| | | | | | | | ----- Charges ----- | | ----- Credits ----- | | |
| | | | | | | CJ | WTR$ | 5.00 | | 447.00 | 0.00 |
| 23650R | C2 | O | 690.00 | Mitchell, Geogiana | | CA | RENT | 690.00 | PW  M/IC | 291.00 | |
| | | | | | | CJ | ARGN | 33.00 | | | |
| | | | | | | CJ | TRSH | 10.00 | | | |
| | | | | | | CJ | WTR$ | 5.00 | | 447.00 | 0.00 |
| 23650F | C2 | O | 690.00 | Campos, Ivan | | CA | RENT | 690.00 | PW  M/IC | 247.00 | |
| | | | | | | CJ | ARGN | 40.00 | | | |
| | | | | | | CJ | TRSH | 10.00 | | | |
| | | | | | | CJ | WTR$ | 5.00 | | 498.00 | 0.00 |
| 23654A | C1 | V | 680.00 | Vacant Unit | | CA | RENT | 680.00 | PT  VAC | 680.00 | 0.00 | 0.00 |
| 23654B | C1 | O | 680.00 | Evans, Furqwan | | CA | RENT | 685.00 | PW  RNWC | 246.00 | |
| | | | | | | CJ | WTR$ | 5.00 | PX  GTOL | -5.00 | |
| | | | | | | CJ | TRSH | 10.00 | | | |
| | | | | | | CJ | ARGN | 33.00 | | | |
| | | | | | | CA | GTOR | -5.00 | | 487.00 | 0.00 |
| 23654E | C2 | O | 690.00 | Kireky, Kwabena | | CJ | TRSH | 10.00 | PW  M/IC | 155.00 | |
| | | | | | | CJ | ARGN | 33.00 | | | |
| | | | | | | CA | RENT | 690.00 | | | |
| | | | | | | CJ | WTR$ | 5.00 | | 583.00 | 0.00 |
| 23654F | C2 | O | 690.00 | Pedraza, John | | CA | RENT | 690.00 | PW  M/IC | 178.00 | |
| | | | | | | CJ | WTR$ | 5.00 | | | |
| | | | | | | CJ | TRSH | 10.00 | | | |
| | | | | | | CJ | ARGN | 33.00 | | 560.00 | 0.00 |
| 23658A | C1 | O | 680.00 | Jackson, Kay | | CJ | ARGN | 33.00 | PW  M/IC | 275.00 | |
| | | | | | | CJ | TRSH | 10.00 | PX  GTOL | -5.00 | |
| | | | | | | CA | RENT | 685.00 | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | |
| | | | | | | CA | GTOR | -6.00 | | 468.00 | 0.00 |
| 23658B | C1 | O | 680.00 | Safford, Joe | | CA | RENT | 690.00 | PW  RNWC | 166.00 | |
| | | | | | | CJ | ARGN | 33.00 | PX  GTOL | -10.00 | |
| | | | | | | CJ | WTR$ | 5.00 | | | |
| | | | | | | CJ | TRSH | 10.00 | | | |
| | | | | | | CA | GTOR | -10.00 | | 572.00 | 0.00 |
| 23658E | C2 | O | 690.00 | Balciunas, Saulius | | CA | RENT | 690.00 | PW  RNWC | 291.00 | |
| | | | | | | CJ | ARGN | 33.00 | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | |
| | | | | | | CJ | TRSH | 10.00 | | 447.00 | 0.00 |

```
02/22/2006                          SOUTHEASTERN REALTY                          Page  41
11:08 am                        The Courts At Peachtree Corner                   ID 3.6.6
                                 Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | | Charges Code | Amount | | Credits Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|--|------|--------|--|------|--------|---------------|----------------|
| 23858F | C2 | O | 690.00 | Casas, Patricia | | CA | RENT | 695.00 | PW | M/IC | 389.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | GTOL | -5.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 454.00 | 0.00 |
| 23911A | D2 | O | 760.00 | Perez, Victor | | CJ | ARGN | 43.00 | PW | RNWC | 63.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -10.00 | | |
| | | | | | | CA | RENT | 770.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 765.00 | 0.00 |
| 23911B | D2 | O | 760.00 | Burgess, Janorris | | CJ | TRSH | 10.00 | PW | M/IC | 123.00 | | |
| | | | | | | CJ | ARGN | 43.00 | PX | LTOL | 75.00 | | |
| | | | | | | CA | RENT | 685.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CA | LTOR | 75.00 | | | | 620.00 | 0.00 |
| 23911C | D2 | O | 760.00 | Sepulveda, Luz | | CA | RENT | 760.00 | PW | M/IC | 181.00 | | |
| | | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 637.00 | 0.00 |
| 23911D | D2 | O | 760.00 | Rangel, Luis | | CA | RENT | 770.00 | PW | M/IC | 191.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -10.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | | CA | GTOR | -10.00 | | | | 637.00 | 0.00 |
| 23911E | D3 | V | 770.00 | Vacant Unit | | CA | RENT | 770.00 | PT | VAC | 770.00 | 0.00 | 0.00 |
| 23911F | D3 | O | 770.00 | Greene, Linda | | CJ | WTR$ | 5.00 | PW | RNWC | 40.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | LTOL | 55.00 | | |
| | | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | | CA | RENT | 715.00 | | | | | |
| | | | | | | CA | LTOR | 55.00 | | | | 733.00 | 0.00 |
| 23911G | D3 | O | 770.00 | Carrillo, Rodolfo | | CA | RENT | 770.00 | PW | M/IC | 199.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 629.00 | 0.00 |
| 23911H | D3 | O | 770.00 | Herring, Tiaica | | CA | RENT | 770.00 | PW | 1STX | 320.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PW | M/IC | -188.00 | | |
| | | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 320.00 | 0.00 |

02/22/2006                    SOUTHEASTERN REALTY                    Page 42
11:08 am              The Courts At Peachtree Corner            ID J.6.6
                      Rent Roll As Of 22 Feb 2006

| Unit Type | Stat | Market | Name | Entity | | Charges Code | Amount | | Credits Code | Amount | Net Change In Balance | Resident Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23911I D1 | O | 750.00 | Vasquez, Arturo | | CA | RENT | 750.00 | PW | M/IC | 251.00 | | |
| | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | CJ | ARGN | 43.00 | | | | 557.00 | 0.00 |
| 23911J D1 | O | 750.00 | Strickland, Chad | | CJ | TRSH | 10.00 | PW | M/IC | 251.00 | | |
| | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | CA | RENT | 750.00 | | | | | |
| | | | | | CJ | ARGN | 43.00 | | | | 557.00 | 0.00 |
| 23923A D2 | O | 760.00 | Ramos, Dalmy | | CA | RENT | 760.00 | PW | M/IC | 191.00 | | |
| | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | CJ | ARGN | 43.00 | | | | 627.00 | 0.00 |
| 23923B D2 | O | 760.00 | Suarez, Evi | | CA | RENT | 760.00 | PW | M/IC | 183.00 | | |
| | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | CJ | ARGN | 48.00 | | | | 640.00 | 0.00 |
| 23923C D2 | O | 760.00 | Lara, Rigoberto | | CA | RENT | 760.00 | PW | M/IC | 153.00 | | |
| | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | CJ | ARGN | 43.00 | | | | 665.00 | 0.00 |
| 23923D D2 | O | 760.00 | Nkazi, Kula | | CA | RENT | 760.00 | PW | RNWC | 165.00 | | |
| | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | CH | MTM | 100.00 | | | | | |
| | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | CJ | WTR$ | 5.00 | | | | 753.00 | 0.00 |
| 23923E D3 | O | 770.00 | Frose, Crystal | 1419 | CA | RENT | 780.00 | PW | M/IC | 291.00 | | |
| | | | | | CJ | ARGN | 43.00 | PX | GTOL | -10.00 | | |
| | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | CA | GTOR | -10.00 | | | | 547.00 | 0.00 |
| 23923F D4 | O | 780.00 | Chou, Kun-Hung | | CJ | TRSH | 10.00 | PW | RNWC | 125.00 | | |
| | | | | | CA | RENT | 760.00 | | | | | |
| | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | CJ | ARGN | 42.00 | | | | 713.00 | 0.00 |
| 23923G D4 | O | 780.00 | Soensen, Glen | 1419 | CA | RENT | 780.00 | PW | RNWC | 261.00 | | |
| | | | | | CJ | ARGN | 43.00 | | | | | |
| | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | CJ | WTR$ | 5.00 | | | | 557.00 | 5.00 |

02/22/2006                               SOUTHEASTERN REALTY                            Page 43
11:08 am                              The Courts At Peachtree Corner                     ID 1.6.6
                                        Rent Roll As Of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | | Code | Amount | | Code | Amount | Net Charge In Balance | Resident Balance |
|------|------|------|--------|------|--------|---|------|--------|---|------|--------|------------------------|------------------|
| | | | | | | | | | **----- Charges -----** | | **----- Credits -----** | | |
| 23923H | D4 | O | 780.00 | Jones, Charleen | | CA | RENT | 780.00 | PW | M/IC | 230.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | 598.00 | 0.00 |
| 23923I | D1 | O | 750.00 | Roger, Jennifer | | CJ | WTR$ | 5.00 | PW | RNWC | 196.00 | | |
| | | | | | | CJ | ARGN | 43.00 | PX | GTOL | -20.00 | | |
| | | | | | | CA | RENT | 770.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -20.00 | | | | 632.00 | 0.00 |
| 23923J | D1 | O | 750.00 | Harris, Kalinda | | CA | RENT | 740.00 | PW | M/IC | 214.00 | | |
| | | | | | | CJ | ARGN | 44.00 | PX | LTOL | 10.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | LTOR | 10.00 | | | | 565.00 | 0.00 |
| 23931A | E1 | O | 845.00 | Burge, Victoria | | CJ | WTR$ | 5.00 | PW | M/IC | 249.00 | | |
| | | | | | | CJ | ARGN | 46.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 850.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 662.00 | 0.00 |
| 23931B | E1 | O | 845.00 | De Leon, Oliver | | CA | RENT | 850.00 | PW | RNWC | 206.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 707.00 | 0.00 |
| 23931E | E1 | O | 855.00 | Sonii, Baseeru | | CJ | ARGN | 48.00 | PW | RNWC | 80.00 | | |
| | | | | | | CJ | WTR$ | 6.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 860.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 843.00 | 0.00 |
| 23931F | E2 | O | 855.00 | Clavelle, Shannon | | CJ | TRSH | 10.00 | PW | M/IC | 224.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 860.00 | | | | | |
| | | | | | | CJ | ARGN | 48.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 699.00 | 0.00 |
| 23935A | E1 | O | 845.00 | Douglas, Flavius | | CJ | ARGN | 48.00 | PW | RNWC | 176.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 850.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 737.00 | 0.00 |

```
02/22/2006                        SOUTHEASTERN REALTY                              Page 44
11:08 Am                      The Courts At Peachtree Corner                       ID 1.6.6
                               Rent Roll As Of 22 Feb 2006
-----------------------------------------------------------------------------------------
                                          ----- Charges -----  ----- Credits -----
Unit  Type  Stat Market    Name            Entity    Code   Amount    Code  Amount  Net Change  Resident
                                                                                    In Balance  Balance
----  ----  ---- ------    ----            ------    ----   ------    ----  ------  ----------  --------
23535B E1    O   845.00 Arnold, La Tonya             CJ  WTR$    5.00  PW RNMC  276.00
                                                     CJ  ARGN   48.00  PX GTOL   -5.00
                                                     CA  RENT  850.00
                                                     CJ  TRSH   10.00
                                                     CA  GTOR   -5.00                  637.00      0.00

23935E E2    O   855.00 Dixon, Annette               CJ  ARGN   48.00  PX GTOL   -5.00
                                                     CJ  WTR$    5.00
                                                     CA  RENT  860.00
                                                     CJ  TRSH   10.00
                                                     CA  GTOR   -5.00                  923.00      0.00

23535F E2    O   855.00 Grimaldo, Guadlupe           CJ  ARGN   58.00  PW M/IC  221.00
                                                     CJ  TRSH   10.00  PX GTOL   -5.00
                                                     CA  RENT  860.00
                                                     CJ  WTR$    5.00
                                                     CA  GTOR   -5.00                  712.00      0.00

23929A G     O  1125.00 Gao, Xua                     CA  RENT 1200.00  PW M/IC  277.00
                                                     CJ  ARGN   64.00  PX GTOL  -75.00
                                                     CJ  TRSH   10.00
                                                     CJ  WTR$    5.00
                                                     CA  GTOR  -75.00                 1002.00      0.00

23933B G     O  1125.00 Balsom, Lillian              CA  RENT 1125.00  PW M/IC  146.00
                                                     CJ  TRSH   10.00
                                                     CJ  WTR$    5.00
                                                     CJ  ARGN   64.00                 1056.00      0.00

23942A E1    V   845.00 Vacant Unit                  CA  RENT  845.00  PT VAC   845.00    0.00      0.00

23942B E1    O   845.00 Bryant, Peachool             CA  RENT  850.00  PW RNMC  301.00
                                                     CJ  WTR$    5.00  PX GTOL   -5.00
                                                     CJ  TRSH   10.00
                                                     CJ  ARGN   48.00
                                                     CA  GTOR   -5.00                  612.00      0.00

23942E E2    O   865.00 Dobbins, Andrew              CJ  TRSH   10.00  PW M/IC  211.00
                                                     CJ  ARGN   48.00  PX GTOL   -5.00
                                                     CA  RENT  860.00
                                                     CJ  WTR$    5.00
                                                     CA  GTOR   -5.00                  712.00      0.00

23942F E2    O   855.00 Henna, Ben                   CJ  ARGN   48.00  PW M/IC  261.00
                                                     CJ  WTR$    5.00  PX GTOL   -5.00
                                                     CA  RENT  860.00
                                                     CJ  TRSH   10.00
```

```
02/22/2006                        SOUTHEASTERN REALTY                          Page 45
11:08 am                     The Courts At Peachtree Corner                    ID 1.6.6
                              Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|-----------------------|------------------|
| | | | | | | CA GTOR | -5.00 | | | 662.00 | 0.00 |
| 23945A | E1 | O | 845.00 | Conatch, Isatou | | CJ ARGN | 48.00 | PW M/IC | 251.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 850.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 662.00 | 0.00 |
| 23945E | E1 | O | 845.00 | Del Pilar, Enrique | | CA RENT | 850.00 | PW M/IC | 264.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 649.00 | 0.00 |
| 23945E | E2 | V | 855.00 | Vacant Unit | | CA RENT | 855.00 | PT VAC | 855.00 | 0.00 | 0.00 |
| 23945F | E2 | O | 855.00 | Queen, Nina | | CJ WTR$ | 5.00 | PW M/IC | 274.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 649.00 | 0.00 |
| 23946A | E1 | V | 845.00 | Vacant Unit | | CA RENT | 845.00 | PT VAC | 845.00 | 0.00 | 0.00 |
| 23948B | E1 | O | 845.00 | Horrell, Keith | | CJ WTR$ | 5.00 | PW RNWC | 276.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -15.00 | | |
| | | | | | | CA RENT | 860.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -15.00 | | | 647.00 | 0.00 |
| 23948E | E2 | O | 855.00 | Hernandez Gamboa, Juan | | CA RENT | 860.00 | PW M/IC | 231.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 692.00 | 0.00 |
| 23948F | E2 | O | 855.00 | Torge, Pedro | | CA RENT | 855.00 | PW M/IC | 206.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 48.00 | | | 712.00 | 0.00 |
| 23949A | E1 | O | 845.00 | Garner, Amanda Kay | | CA RENT | 860.00 | PW RNWC | 191.00 | | |
| | | | | | | CJ ARGN | 48.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 722.00 | 0.00 |

```
02/22/2006                           SOUTHEASTERN REALTY                              Page 46
11:08 am                         The Courts At Peachtree Corner                       ID 3.6.6
                                  Rent Roll As Of 22 Feb 2006
=========================================================================================
                                               ----- Charges -----   ----- Credits -----   Net Change   Resident
Unit   Type   Stat   Market   Name        Entity     Code   Amount       Code   Amount     In Balance    Balance
------ ----   ----   ------   ----         ------ --  ----  --------   --  ----  --------   ----------   --------
23949B E1       V     845.00 Vacant Unit              CA    RENT    845.00  PT    VAC      845.00         0.00      0.00

23949E E2       O     855.00 Gomez, Ricardo           CJ    TRSH     10.00  PW    RMWC     301.00
                                                      CJ    ARGN     48.00  PX    GTOL      -5.00
                                                      CA    RENT    860.00
                                                      CJ    WTR$      5.00
                                                      CA    GTOR     -5.00                               622.00      0.00

23949F E2       O     855.00 Selmon, Quintessa   1419 CJ    TRSH     10.00  PW    M/IC     211.00
                                                      CJ    ARGN     48.00  PX    GTOL      -5.00
                                                      CA    RENT    860.00
                                                      CJ    WTR$      5.00
                                                      CA    GTOR     -5.00                               712.00      0.00

23963A E1       O     845.00 Miller, Shaneyra          CA    RENT    845.00  PW    M/IC     344.00
                                                      CJ    ARGN     53.00
                                                      CJ    WTR$      5.00
                                                      CJ    TRSH     10.00                               569.00      0.00

23963B E1       O     845.00 Xaysongkham, Souphaphone  CA    RENT    850.00  PW    RMWC     206.00
                                                      CJ    ARGN     46.00  PX    GTOL      -5.00
                                                      CJ    TRSH     10.00
                                                      CJ    WTR$      5.00
                                                      CA    GTOR     -5.00                               705.00      0.00

23963E E2       O     855.00 Rojas, Severiano          CJ    WTR$      5.00  PW    M/IC     274.00
                                                      CJ    ARGN     48.00  PX    GTOL      -5.00
                                                      CA    RENT    860.00
                                                      CJ    TRSH     10.00
                                                      CA    GTOR     -5.00                               649.00      0.00

23963F E2       O     855.00 Chavez, Jose              CJ    ARGN     48.00  PW    M/IC     232.00
                                                      CJ    WTR$      5.00  PX    GTOL      -5.00
                                                      CA    RENT    860.00
                                                      CJ    TRSH     10.00
                                                      CA    GTOR     -5.00                               691.00      0.00

23967A E1       O     845.00 Garcia, Raymundo          CJ    ARGN     48.00  PW    M/IC     164.00
                                                      CJ    WTR$      5.00  PX    GTOL      -5.00
                                                      CA    RENT    850.00
                                                      CJ    TRSH     10.00
                                                      CA    GTOR     -5.00                               749.00      0.00

23967B E1       O     845.00 Foley, Alexia             CJ    TRSH     10.00  PW    M/IC     201.00
                                                      CJ    ARGN     48.00  PX    GTOL      -5.00
                                                      CA    RENT    850.00
                                                      CJ    WTR$      5.00
```

```
02/22/2006                        SOUTHEASTERN REALTY                              Page  47
11:08 am                       The Courts At Peachtree Corner                      ID 3.6.6
                               Rent Roll As Of 22 Feb 2006
```

| Unit | Type | Stat | Market | Name | Entity | Charges Code | Charges Amount | Credits Code | Credits Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|------|--------|------|--------|--------|--------|
| | | | | | | CA GTOR | -5.00 | | | 712.00 | 0.00 |
| 23967E E2 | | O | 855.00 | Brooks, Samuel | | CA RENT | 855.00 | PW M/IC | 266.00 | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 662.00 | 0.00 |
| 23967F E2 | | O | 855.00 | Young, Fernando | 1419 | CJ TRSH | 10.00 | PW M/IC | 206.00 | | |
| | | | | | | CJ ARGN | 48.00 | | | | |
| | | | | | | CA RENT | 855.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 712.00 | 0.00 |
| 23970A G | | V | 1125.00 | Vacant Unit | | CA RENT | 1125.00 | PT VAC | 1125.00 | 0.00 | 0.00 |
| 23970B G | | O | 1125.00 | Perry, Pamela | | CJ WTR$ | 5.00 | PW RNWC | 190.00 | | |
| | | | | | | CJ ARGN | 64.00 | PX GTOL | -75.00 | | |
| | | | | | | CA RENT | 1200.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -75.00 | | | 1089.00 | 0.00 |
| 23971A C1 | | O | 680.00 | Smith, Bruce | | CA RENT | 685.00 | PW RNWC | 110.00 | | |
| | | | | | | CJ TRSH | 10.00 | PX GTOL | -5.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 623.00 | 0.00 |
| 23971B C1 | | O | 680.00 | Alexandre, Virginia | | CJ ARGN | 33.00 | PW RNWC | 161.00 | | |
| | | | | | | CJ WTR$ | 5.00 | PX GTOL | -5.00 | | |
| | | | | | | CA RENT | 685.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CA GTOR | -5.00 | | | 572.00 | 0.00 |
| 23971E C2 | | O | 690.00 | Rodriguez, Juan | | CA RENT | 690.00 | PW M/IC | 155.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 583.00 | 0.00 |
| 23971F C2 | | O | 690.00 | Egdiako, Nana 678-768-6026 | | CJ ARGN | 33.00 | PW M/IC | 227.00 | | |
| | | | | | | CJ WTR$ | 5.00 | | | | |
| | | | | | | CA RENT | 690.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | 511.00 | 0.00 |
| 23975A C1 | | O | 680.00 | Abner, Josephine | 1419 | CA RENT | 680.00 | PW M/IC | 281.00 | | |
| | | | | | | CJ ARGN | 33.00 | | | | |
| | | | | | | CJ TRSH | 10.00 | | | | |
| | | | | | | CJ WTR$ | 5.00 | | | 447.00 | 0.00 |

02/22/2006                              SOUTHEASTERN REALTY                              Page  48
11:08 am                           The Courts At Peachtree Corner                        ID 3.6.6
                                     Rent Roll As Of 22 Feb 2006

| Unit | Type | Stat | Market | Name | Entity | | Code | Amount | | Code | Amount | Net Change In Balance | Resident Balance |
|------|------|------|--------|------|--------|---|------|--------|---|------|--------|------------------------|------------------|
| | | | | | | | ----- Charges ----- | | ----- Credits ----- | | | | |
| 23975B | C1 | O | 680.00 | Correa, Sergio | | CJ | ARGN | 33.00 | PW | RNWC | 256.00 | | |
| | | | | | | CJ | WTR$ | 6.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 685.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 477.00 | 0.00 |
| 23975E | C2 | O | 690.00 | Lindsey, Melinda | | CA | RENT | 695.00 | PW | RNWC | 246.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | GTOL | -5.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 497.00 | 0.00 |
| 23975F | C2 | O | 690.00 | Rafael, Rosas | | CJ | ARGN | 33.00 | PW | RNWC | 361.00 | | |
| | | | | | | CJ | TRSH | 10.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 695.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 382.00 | 0.00 |
| 23975A | C1 | O | 680.00 | Addey, John | | CA | RENT | 680.00 | PW | M/IC | 281.00 | | |
| | | | | | | CJ | ARGN | 27.00 | | | | | |
| | | | | | | CJ | TRSH | 18.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 447.00 | 0.00 |
| 23979B | C1 | O | 680.00 | Ruiz, German | | CJ | TRSH | 10.00 | PW | M/IC | 180.00 | | |
| | | | | | | CJ | ARGN | 33.00 | PX | GTOL | -5.00 | | |
| | | | | | | CA | RENT | 685.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 583.00 | 0.00 |
| 23979E | C2 | O | 690.00 | Song, Kae Jung | | CA | RENT | 695.00 | PW | M/IC | 246.00 | | |
| | | | | | | CJ | WTR$ | 5.00 | PX | GTOL | -5.00 | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CA | GTOR | -5.00 | | | | 497.00 | 0.00 |
| 23979F | C2 | O | 690.00 | Johnson, Susannah | | CA | RENT | 690.00 | PW | M/IC | 291.00 | | |
| | | | | | | CJ | ARGN | 33.00 | | | | | |
| | | | | | | CJ | TRSH | 10.00 | | | | | |
| | | | | | | CJ | WTR$ | 5.00 | | | | 447.00 | 0.00 |
| ****** ******** * ********* ********************************* ********* | | | | | | == ==== | | ********** | -- ---- | | ********** | ----------- | ----------- |
| | | | 341520.00 | | | | | 363974.00 | | | 121092.00 | 242882.00 | 9037.00 |
| ****** ******** * ********* ********************************* ********* | | | | | | == ==== | | ********** | -- ---- | | ********** | ----------- | ----------- |
| | | | | | | CA | RENT | 343265.00 | PW | M/IC | 55238.00 | | |
| | | | | | | CJ | ARGN | 16046.00 | PW | RNWC | 27731.00 | | |
| | | | | | | CJ | WTR$ | 3985.00 | PX | GTOL | -2135.00 | | |
| | | | | | | CJ | TRSH | 3916.00 | PT | VAC | 36215.00 | | |

02/22/2006                          SOUTHEASTERN REALTY                      Page 49
11:08 pm                       The Courts At Peachtree Corner                ID 3.6.6
                               Rent Roll As Of 22 Feb 2006

|       |      |      |        |      |        | ----- Charges ----- | | ----- Credits ----- | | Net Change | Resident |
| Unit | Type | Stat | Market | Name | Entity | Code | Amount | Code | Amount | In Balance | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | CA | GTOR | -2135.00 | PX | LTOL | 290.00 |  |  |
|  |  |  |  |  |  | CJ | FIT | 30.00 | PT | VACM | 830.00 |  |  |
|  |  |  |  |  |  | CA | LTOR | 290.00 | PR | EMPO | 1803.00 |  |  |
|  |  |  |  |  |  | CH | MTM | 500.00 | PP | REFR | 600.00 |  |  |
|  |  |  |  |  |  | CK | CLNG | 27.00 | PO | OTRC | 200.00 |  |  |
|  |  |  |  |  |  |  |  |  | PM | 1STX | 320.00 |  |  |

Total Market Rent: $ 341,520.00    - Gain/Loss To Lease: $ 3,846.00    Net Rent: $ 343,368.00

*Certified to the best of my knowledge:*

*The Landings Florida, LLC*          2-22-06
                                      Date

Bristol Court

# EXHIBIT F

## Material Agreements

None.

Bristol Court

## Exhibit H

## Retaining Wall Work

Perform all repairs to retaining walls pursuant to recommendations further described in the Condition Report.

Bristol Court

## Exhibit I

### Fire Damage Repairs

Repair all fire damage to the unit and refurbish it to rentable condition.

# EXHIBIT C

BK46210PG0009

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2006 MAR -2 PM 2: 00

TOM LAWLER, CLERK

AFTER RECORDING RETURN TO:
Gregory D. Hughes - Hughes and White
2110 Powers Ferry Road
Suite 440
Atlanta, Georgia 30339

AFTER RECORDING RETURN TO:
Gregory D. Hughes - Hughes and White
2110 Powers Ferry Road
Suite 440
Atlanta, Georgia 30339

## DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

NOTE TO CLERK: NO INTANGIBLES RECORDING TAX DUE, MATURITY DATE LESS THAN THREE (3) YEARS-SHORT TERM NOTE

THIS INSTRUMENT IS A CONSTRUCTION MORTGAGE WITHIN THE MEANING OF SECTION 334(h) OF THE UNIFORM COMMERCIAL CODE AND SECURES AN OBLIGATION INCURRED FOR THE CONSTRUCTION OF AN IMPROVEMENT UPON LAND

This Deed to Secure Debt includes an assignment of leases and rents. This Deed to Secure Debt is also intended to constitute a fixture financing statement under the Uniform Commercial Code.

THIS DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT ("Security Deed") is made as of February 28, 2006 by THE LANDINGS FLORIDA, LLC, a Florida limited liability company ("Grantor"), having an address at c/o Commercial Ventures, Inc., 12100 Wilshire Blvd., Suite 250, Los Angeles, CA 90025, Attn: Richard Nathan and Greg Beach, and ORIX REAL ESTATE CAPITAL, INC., having an address at 100 North Riverside Plaza, Suite 1400, Chicago, Illinois 60606, and its successors and assigns ("Lender") pursuant to a

CH01/ 12463019.5                    0032902                    Bristol Court

50

certain Loan and Security Agreement of even date herewith between Grantor and Lender (the **"Loan Agreement"**). Capitalized terms used in this Security Deed and not defined in this Security Deed, but defined in the Loan Agreement, shall have the meanings given them in the Loan Agreement.

## WITNESSETH:

A.      Pursuant to the Loan Agreement, Lender has made a loan to Grantor in the maximum principal amount of $26,500,000 (Twenty-Six Million Five Hundred Thousand and No/100 Dollars) (the **"Loan"**). The Loan will mature on the Maturity Date set forth in the Loan Agreement. For reference purposes only, the Maturity Date is February 27, 2009, subject to earlier termination following the occurrence of an Event of Default in accordance with the terms of the Loan Agreement. Certain repayment obligations of Grantor with respect to the Loan are evidenced by Grantor's Note of even date herewith made payable to Lender (the **"Note"**) in the principal amount of the Loan. Grantor's obligations relating to the payment of principal and interest in connection with the Loan are set forth in the Note and the Loan Agreement, which instruments are hereby incorporated fully into this Security Deed. The terms of the Loan Agreement contemplate that advances of the Loan may be made subsequent to the date of this Security Deed.

B.      Lender is desirous of securing the prompt payment of the Note together with interest and prepayment fees, if any, thereon in accordance with the terms of the Loan Agreement, and any additional indebtedness accruing to Lender on account of any future payments, advances or expenditures made by Lender pursuant to the Loan Agreement or this Security Deed and any additional sums with interest thereon which may be loaned to Grantor by Lender or advanced by Lender or otherwise owed to Lender under the Loan Documents as well as timely performance of all of Grantor's obligations under the Loan Documents.

NOW, THEREFORE, to secure payment of all obligations of Grantor to Lender from time to time for the payment of money under the Loan Documents (the **"Indebtedness"**) and the performance of the payment or performance of any and all obligations of Grantor or any guarantors to Lender under the Loan Documents (the **"Obligations"**), including the covenants and agreements herein contained and contained in the other Loan Documents (the Indebtedness and the Obligations being collectively referred to as the **"Secured Obligations"**), and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor has executed this Security Deed and does hereby grant, bargain, sell, convey, assign and transfer to Lender, a security interest in and security title in the following described property, rights and interests, together with all of Grantor's hereafter acquired estate, right, title or interest in or to, such property, rights and interests (collectively referred to as the **"Property"**), all of which property, rights and interests are hereby pledged primarily and on a parity with the Land (defined below) and not secondarily:

-2-

CH01/ 12463019.5

(a) The real property legally described in **EXHIBIT A** attached hereto (the "**Land**") located in the State of Georgia (the "**State**");

(b) All buildings, structures and improvements of every nature whatsoever now or hereafter erected or situated on the Land, and all fixtures now owned or hereafter acquired by Grantor, on or used in connection with the Land or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all right, title and interest of Grantor in and to any such fixtures together with the benefit of any deposits or payments now or hereafter made on such fixtures by or on behalf of Grantor;

(c) All easements, rights-of-way, licenses, permits, rights of use or occupancy, privileges, tenements, appendages, hereditaments and appurtenances and other rights and privileges thereunto belonging or in any wise appertaining to the Land, whether now or in the future, and all the rents, issues, profits, reversions and remainders therefrom;

(d) All right, title and interest, if any, of Grantor, in and to the land lying within any street, alley, avenue, roadway or right-of-way open or proposed or hereafter vacated in front of or adjoining the Land; and all right, title and interest, if any, of Grantor in and to any strips and gores adjoining the Land;

(e) All rents, revenues, issues, profits, proceeds, income, royalties, security deposits, impounds, reserves, tax refunds, termination payments, cancellation payments, option payments, service reimbursements, prepaid rents, royalties, damages payable upon a default under any Lease, concession fees, lease termination payments, and other rights to revenues from the Property and/or the businesses and operations conducted by Grantor on the Property (collectively, the "**Rents**");

(f) All right, title and interest of Grantor in all leases, subleases, license agreements, concession agreements, and other occupancy agreements of any nature now or hereafter on the Property whether written or oral (collectively, "**Leases**"), together with all guaranties thereof and security therefor and all monies payable thereunder;

(g) All proceeds of the foregoing, together with any and all judgments, awards, payments or insurance proceeds, including interest thereon, and the right to receive the same, which may be paid or payable with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any fire, casualty, accident, damage or

-3-

BK4621PG00-12

other injury to or decrease in the value of the Property, to the extent of all amounts which may be secured by this Security Deed at the date of receipt of any such award or payment by Lender, and of the reasonable counsel fees, costs and disbursements incurred by Lender in connection with the collection of such award or payment, and the proceeds of any sale, option or contract to sell the Property or any portion thereof.

TO HAVE AND TO HOLD the Property, together with all and singular the rights, privileges, hereditaments and appurtenances thereunto in any way incident, appertaining or belonging to the use, benefit, behoof of Lender forever, in fee simple. This Security Deed is a Security Deed to secure debt passing legal title pursuant to the laws of the State governing deeds to secure debt and is not a mortgage, and is made and intended to secure the Secured Obligations. Grantor hereby covenants, represents and warrants that, at the time of the ensealing and delivery of these presents, Grantor is well seised of the Property in fee simple and with lawful authority to grant, bargain, sell, convey, assign and transfer the Property, and Grantor does hereby warrant and will forever defend the title thereto against the claims of all persons whatsoever and will maintain and preserve the lien, security interest and security title as a first and paramount lien, security interest and security title on the Property, subject only to liens and encumbrances permitted by the terms of this Security Deed.

Without limitation of the foregoing, this Security Deed secures the prompt payment and performance of all of the Secured Obligations, which include, without limitation, the following:

(i)    payment of all principal, Minimum Interest, Exit Fee and all other indebtedness, any other interest and prepayment fees, if any, evidenced by, and in accordance with the terms of, the Note and the Loan Agreement, and any and all Charges, additional indebtedness accruing to Lender on account of any future payments, advances or expenditures made by Lender pursuant to the Loan Agreement, the Note or this Security Deed and any additional sums with interest thereon which may be loaned to Grantor by Lender or advanced under the Loan Documents;

(ii)    payment of such additional sums with interest thereon which may hereafter be loaned to Grantor by Lender or advanced under the Loan Documents, even though the aggregate amount outstanding at any time may exceed the original principal balance stated herein and in the Note; and

(iii)    the due, prompt and complete performance of each and every covenant, condition, agreement, representation, warranties and other liabilities and obligations of Grantor or any other obligor contained in the Loan Agreement, this Security Deed, the Note, and every other Loan Document.

-4-

**GRANTOR FURTHER AGREES AS FOLLOWS:**

1. **Title.** Grantor hereby represents, warrants and covenants that Grantor is the holder of fee simple title to the Property, free and clear of any liens, security interests and security titles, and encumbrances except for Permitted Exceptions, and that Grantor has legal power and authority to convey the Property. At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Security Deed and the rights and powers of Lender created under it, against all adverse claims. Grantor shall give Lender prompt notice in writing if any claim is asserted which does or could affect any such matters, or if any action or proceeding is commenced which alleges or relates to any such claim. Lender may, at the expense of Grantor, appear in and defend any such claim, action or proceeding and any claim, action or other proceeding asserted or brought against Lender in connection with or relating to any part of the Property or this Security Deed.

2. **Effect of Extensions of Time.** If the payment, or performance of the Secured Obligations or any part thereof, is extended or varied, if the rate of interest charged under the Note is changed or if the time for payment or performance of the Secured Obligations is extended or varied, or if all or any part of any security for the payment or performance of the Secured Obligations is released, or if any person or entity liable for the payment or performance of the Secured Obligations is released, or if Lender takes other or additional security for the payment or performance of the Secured Obligations, or if Lender waives or fails to exercise any right granted in this Security Deed, or in the Note, or in any Loan Document, all persons now or at any time hereafter liable for the payment or performance of the Secured Obligations, or any part thereof, or interested in the Property, shall be deemed to have assented to such extension, variation, release, change, waiver, failure to exercise or the taking of additional security, and their liability and the lien, security interest and security title, and all provisions of this Security Deed, shall continue in full force, the right of recourse against all such persons being expressly reserved by Lender, notwithstanding such extension, variation, release, waiver, failure to exercise, or the taking of additional security.

3. **Assignment of Leases and Rents.**

(a) Grantor presently, absolutely and unconditionally assigns and transfers to Lender all of Grantor's right, title and interest in and to the Leases, the Rents and any rights and claims of any kind that Grantor may have now or in the future against any Tenant. To the fullest extent permitted by applicable law, the assignment of rents, income and other benefits contained in this Security Deed shall be fully operative without any further action on the part of either party. Lender shall be entitled, at its option, upon the occurrence of an Event of Default hereunder, to all rents, income and other benefits from the Property, whether or not Lender takes possession of such property. Such assignment and grant shall continue in effect until the Secured Obligations

-5-

have been paid and performed in full, the execution of this Security Deed constituting and evidencing the irrevocable consent of Grantor to the entry upon and taking possession of the Property by Lender pursuant to such grant, whether or not foreclosure proceedings have been instituted. Subject to the provisions of this Security Deed and provided there is no Event of Default, Lender hereby grants to Grantor a revocable license (which license shall terminate automatically and without further notice upon the occurrence of an Event of Default) to enforce the Leases and to collect the Rents as they become due (excluding, however, any lease termination, cancellation or similar payments which Grantor agrees shall be held in trust and turned over to Lender for credit to principal under the Loan). Upon revocation of such license, all Rents shall be paid directly to Lender and not through Grantor, all without the necessity of further action by Lender.

(b) Grantor hereby irrevocably appoints Lender its true and lawful attorney with full power of substitution and with full power for Lender in its own name and capacity or in the name and capacity of Grantor, from and after the occurrence of an Event of Default, to demand, collect, receive and give complete acquittance for any and all Rents, and at Lender's discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of Grantor or otherwise, which Lender may deem necessary or desirable in order to collect and enforce the payment of the Rents. Tenants of the Property are hereby expressly authorized and directed to pay any and all amounts due Grantor pursuant to the Leases to Lender or such nominee as Lender may designate in writing delivered to and received by such Tenants who are expressly relieved of any and all duty, liability or obligation to Grantor in respect of all payments so made.

(c) From and after the occurrence of an Event of Default, Lender is hereby vested with full power to use all measures, legal and equitable, deemed by it necessary or proper to collect the Rents assigned hereunder, either by itself or through a receiver, including the right of Lender or its designee to enter upon the Property, or any part thereof, with or without force and with or without process of law and take possession of all or any part of the Property together with all personal property, fixtures, documents, books, records, papers and accounts of Grantor relating thereto, and may exclude the Grantor, its agents and servants, wholly therefrom. Grantor hereby consents to the appointment of such receiver. Grantor hereby grants full power and authority to Lender to exercise all rights, privileges and powers herein granted at any and all times after service of a notice exercising the powers granted herein, without further notice to Grantor, with full power to use and apply all of the Rents herein assigned to the payment of the costs of managing and operating the Property and to any Secured Obligations or any other liability of Grantor to

-6-

Lender, including but not limited to the payment of taxes, special assessments, insurance premiums, damage claims, the costs of maintaining, repairing, rebuilding and restoring buildings or other improvements or to making the same rentable, attorneys' fees, costs and expenses incurred in connection with the enforcement of this Security Deed, and to principal and interest payments due from Grantor to Lender under the Loan Agreement and the Note or this Security Deed, all in such order as Lender may determine. Lender shall be under no obligation to exercise or prosecute any of the rights or claims assigned to it hereunder or to perform or carry out any of the obligations of the lessor under any of the Leases and does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of Grantor in the Leases, provided Lender may, at its sole option, institute any legal or equitable action which Lender in its sole discretion, deems desirable to collect any or all of the Rents.

(d) Following the occurrence of an Event of Default, Lender may perform any or all obligations of Grantor under any of the Leases or this Security Deed and take such actions as Lender deems appropriate to protect its security interest including without limitation (i) appearing in any action or proceeding affecting any of the Leases or the Property; (ii) executing new leases and modifying, terminating or canceling existing Leases; (iii) collecting, modifying and compromising any Rents payable under the Leases; (iv) enforcing any of the Leases, including, if necessary, evicting lessees; and (v) any other remedies permitted Lender under applicable law. The foregoing are in addition to the remedies afforded Lender under any of the other Loan Documents or in law or equity, by statute or otherwise, all of which rights are reserved by Lender. It is further understood that the assignment of the Leases contained in this Security Deed shall not operate to place responsibility for the control, care, management or repair of the Property, or parts thereof, upon Lender, nor shall it operate to make Lender liable for the performance of any of the terms and conditions of any of the Leases, or for any waste of the Property by any lessee under any of the Leases or any other person, or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any lessee, licensee, employee or stranger.

(e) Except to the extent caused by Lender's gross negligence or willful misconduct, Grantor hereby agrees to indemnify, hold harmless and defend Lender from and against any liability, obligation, loss, cost, expense, civil fines, penalties or damage (including attorneys' fees) incurred by Lender under the Leases until such time as Lender shall actually take possession of the Property.

-7-

CH01/ 12463019.5

(f) Nothing herein shall be construed as constituting the Lender a mortgagee in possession of the Property in the absence of Lender taking actual possession of the Property.

4. **Lender's Performance of Defaulted Acts**. In case of an Event of Default, Lender may, but need not, and whether electing to declare the whole of the Secured Obligations due and payable or not, and without waiver of any other remedy, make any payment or perform any act herein required of Grantor in this Security Deed or pursuant to any of the other Loan Documents in any form and manner deemed expedient, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien, security interest or security title, or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Property or contest any tax or assessment or cure any default of landlord in any lease of the Property. All sums paid for any of the purposes authorized in this paragraph and all expenses paid or incurred in connection such purposes, including reasonable attorneys' fees, and any other sums advanced by Lender in regard to any Impositions or to protect the Property or the lien, security interest and security title, hereof, shall be so much additional Indebtedness, and shall become immediately due and payable upon demand, together with interest thereon accruing at the Default Rate until paid. Inaction of Lender shall never be considered as a waiver of any right accruing to Lender on account of any default on the part of Grantor. In addition, any costs, expenses and fees, including attorneys' fees, incurred by Lender in connection with (a) sustaining the lien, security interest and security title of this Security Deed or its priority, (b) protecting or enforcing any of Lender's rights hereunder, (c) recovering any of the Secured Obligations, (d) any litigation or proceedings affecting the Loan Agreement, the Note, this Security Deed, any of the other Loan Documents or the Property, including without limitation, bankruptcy and probate proceedings, or (e) preparing for the commencement, defense or participation in any threatened litigation or proceedings affecting the Loan Agreement, the Note, this Security Deed, any of the other Loan Documents or the Property, shall be so much additional Indebtedness, and shall become immediately due and payable by Grantor to Lender, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate.

5. **Lender's Reliance on Tax Bills, Etc**. Lender in making any payment hereby authorized:

(a) relating to taxes and assessments, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof; or

(b) relating to insurance premiums, may do so according to any bill or statement procured from the appropriate company without inquiry into the accuracy of such bill or statement; or

-8-

CH01/ 12463019.5

BK4621 0PG0017

(c) for the purchase, discharge, compromise or settlement of any other prior lien, security interest or security title, may do so without inquiry as to the validity or amount of any claim for lien, security interest or security title which may be asserted.

6. **Events of Default; Acceleration**. Upon the occurrence of any Event of Default, then and in every such case the whole of the Secured Obligations shall, at once, at the option of Lender, become immediately due and payable without any presentment, demand, protest or notice of any kind. Without limiting the foregoing Grantor expressly acknowledges and affirms that any Transfer that is not permitted under the Loan Documents constitutes an Event of Default which would give rise to Lender's right to accelerate the Secured Obligations.

7. **Lender's Right to Possession in Case of Default**. Whether or not Lender has declared the Secured Obligations to be due and payable, Lender may either in person or by agent, with or without bringing any action or proceeding, enter upon and take possession of the Property, or any part thereof, in its own name, and do any acts which it deems reasonably necessary or desirable to preserve the value, marketability or rentability of the Property, or part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the same in such order and manner as Lender may elect. Without limiting the generality of the foregoing, to the extent permitted by applicable law, Lender shall have full power to: (a) cancel or terminate any Lease or sublease for any cause or on any ground which would entitle Grantor to cancel such Lease or sublease; (b) elect to disaffirm any Lease or sublease which is then subordinate to the lien hereof; (c) extend or modify any then existing Leases and to enter into new Leases, which extensions, modifications and Leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such Leases, and the options or other such provisions to be contained therein, shall be binding upon Grantor and all persons whose interests in the Property are subject to the lien of this Security Deed and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale (if applicable), discharge of the Secured Obligations, satisfaction of any foreclosure judgment, or issuance of any certificate of sale or deed to any purchaser; (d) make any repairs, renewals, replacements, alterations, additions, betterments and improvements to the Property as Lender deems are necessary; (e) insure and reinsure the Property and all risks incidental to Lender's possession, operation and management thereof; and (f) receive all of such Rents. The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any Event of Default or invalidate any act done in connection with such Event of Default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Lender shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence

-9-

CH01/ 12463019.5

of and during the continuance of any Event of Default, including the right to exercise the power of sale. If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Lender, and Grantor hereby specifically covenants and agrees that Grantor will not oppose, contest or otherwise hinder or delay Lender in any action or proceeding by Lender to obtain such judgment or decree. Grantor will pay to Lender, upon demand, all reasonable expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Indebtedness and shall be secured by this Security Deed. Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Property and conduct the business thereof. Lender may collect and receive all the income, rents, issues, profits and revenues from the Property, including those past due as well as those accruing thereafter, and Lender may apply any monies and proceeds received by Lender, in whatever order or priority Lender in its sole discretion may determine, to the payment of (i) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (ii) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (iii) the cost of insurance; (iv) such taxes, assessments and other similar charges as Lender may at its option pay; (v) other proper charges upon the Property or any part thereof; (vi) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender; and (vii) the Indebtedness. Anything in this Security Deed to the contrary notwithstanding, Lender shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as the result of any exercise by Lender of its rights under this Security Deed, and Lender shall be liable to account only for the rents, incomes, issues, profits and revenues actually received by Lender. In the event that all Events of Default shall be cured, and as a result thereof Lender surrenders possession of the Property to Grantor, the same right of taking possession shall continue to exist if any subsequent Event of Default shall occur.

       8. __Foreclosure Sale__. Lender may sell and dispose of the Property at public auction, at the usual place for conducting sales at the courthouse in the county where the Property or any part thereof may be located, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding the date of such sale (without regard to the actual number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Lender may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Property in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Lender may bid and purchase at such sale; and Grantor

-10-

CH01/ 12463019.5

hereby constitutes and appoints Lender the agent and attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Lender (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to the Property; and Lender shall collect the proceeds of such sale, applying such proceeds as provided in Section 10 below (in the event of deficiency, Grantor shall immediately on demand from Lender pay over to Lender, or its nominee, such deficiency); and Grantor agrees that in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Lender may have at law or in equity. If an Event of Default shall have occurred, Lender may, in addition to and not in abrogation of the rights in this Security Deed, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment and performance of the Secured Obligations and (ii) to pursue any other remedy available to it, all as Lender at its sole discretion may elect.

9.  **Expenses.**  Following the occurrence of an Event of Default, Grantor covenants and agrees to pay to Lender all reasonable expenditures and expenses which may be paid or incurred by or on behalf of Lender for attorneys' fees and other costs and expenses, including without limitation the cost of procuring all such abstracts of title, title searches and examinations, title insurance policies, certificates of title, and similar data and assurances with respect to title as Lender may deem reasonably necessary either to exercise the power of sale granted herein or prosecute such suit or to evidence to bidders at any sale which may be had pursuant to this Security Deed the true condition of the title to or the value of the Property. All expenditures and expenses of the nature in this Section mentioned, and such expenses and fees as may be incurred in the protection of the Property and the maintenance of the lien, security interest and security title of this Security Deed, including the reasonable fees of any attorneys employed by Lender in any litigation or proceeding affecting this Security Deed, or the Property, including probate and bankruptcy proceedings, or in preparations for the commencement or defense of any proceeding or threatened suit or proceeding, shall be immediately due and payable by Grantor, with interest thereon at the Default Rate and shall be secured by this Security Deed.

10.  **Application of Proceeds.**  The proceeds of any foreclosure sale of the Property shall be distributed and applied in the following order or priority; first, on account of all reasonable costs and expenses incident to the foreclosure proceedings, including all such items as are mentioned in the preceding Sections; second, all other items which under the terms hereof constitute indebtedness additional to that evidenced by the Loan Agreement,

-11-

with interest thereon as herein provided; third, all principal and interest remaining unpaid under the Loan Agreement; and fourth, any overage to Grantor, or to the person or entity lawfully entitled thereto.

11. **Appointment of Receiver**. Upon the occurrence of an Event of Default, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right to the appointment of a receiver of the Property, whether or not Lender shall simultaneously exercise any of its other rights and remedies hereunder. Such appointment may be made without notice, without giving bond, without regard to the solvency or insolvency of Grantor or any other party liable for payment of the Indebtedness at the time of application for such receiver and without regard to the then value or occupancy of the Property, and Lender or any other holder hereof may be appointed as such receiver. Grantor hereby irrevocably consents to the appointment of such receiver and waives all notice thereof. Such receiver shall have the power to collect the rents, income, issues and profits of the Property and to apply the same in whole or in part to the reduction of the Indebtedness, and to extend or modify any then existing leases and to make new leases, which extensions, modifications and new leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the maturity date of the Indebtedness and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Grantor and all persons whose interests in the Property are subject to this Security Deed. Such receiver shall have all other powers permitted under State law, which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property. Grantor will pay to Lender, upon demand, all expenses, including receivers' fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of the preceding Sections and any such amounts paid by Lender shall be added to the Indebtedness and shall be secured by this Security Deed.

12. **Waiver of Homestead**. Grantor hereby waives and renounces all homestead and exemption rights provided for by the Constitution and the laws of the United States and of any state, in and to the Property as against the collection of the Indebtedness and enforcement of the Obligations, or any part hereof.

13. Intentionally deleted.

14. **Rights Cumulative; Modification**. Each right, power and remedy conferred upon Lender in this Security Deed is cumulative and in addition to every other right, power or remedy, express or implied, given now or hereafter existing, at law or in equity, and each and every right, power and remedy set forth in this Security Deed or any other Loan Document, or otherwise so existing, may be exercised from time to time as often and in such order as may be deemed expedient by Lender, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy, and no delay or omission of

-12-

BK4 6 2 40 PG 0 0 2 1

Lender in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any default or acquiescence therein. This Security Deed cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

15. **Compliance with Lien Laws.**

(a) If any provision in this Security Deed shall be inconsistent with any provision of the laws of the State applicable to security deeds (the **"Lien Laws"**), the provisions of the Lien Laws shall take precedence over the provisions of this Security Deed, but shall not invalidate or render unenforceable any other provision of this Security Deed that can be construed in a manner consistent with the Lien Laws.

(b) If any provision of this Security Deed shall grant to Lender (including Lender acting as a lender-in-possession) or a receiver any powers, rights or remedies which are more limited than the powers, rights or remedies that would otherwise be vested in Lender or in such receiver under the Lien Laws in the absence of such provision, Lender and such receiver shall be vested with the powers, rights and remedies granted in the Lien Laws to the full extent permitted by law.

16. **Lender's Right of Inspection.** Lender shall have the right to inspect the Property at all reasonable times and access thereto shall be permitted for that purpose. Without limiting the generality of the foregoing, if Lender deems it reasonably necessary, Lender (by its officers, managers, employees and agents) at any time and from time to time, either prior to or after the occurrence of an Event of Default hereunder for any reason in its reasonable discretion, may contract for the services of persons (the **"Site Reviewers"**) to perform environmental assessments (the **"Site Assessment"**) on the Property for the purposes of determining whether there exists on or near the Property any environmental conditions which could reasonably be expected to result in liability, cost or expense to the owner, occupier or operator of the Property arising under any state, federal or local law, rule or regulation relating to Hazardous Substances. The Site Assessments may be performed at any time or times, upon reasonable notice, and under reasonable conditions established by Grantor which do not impede the performance of the Site Assessments. The Site Reviewers are hereby authorized to enter upon the Property for such purposes. The Site Reviewers are further authorized to perform both above and below the ground testing for the presence of Hazardous Substances on the Property and such other tests on the Property as may be appropriate to conduct the Site Assessments in the reasonable opinion of the Site Reviewers. Grantor will supply to the Site Reviewers such historical and operation information regarding the Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters. On request, Lender shall make the results of

-13-

such Site Assessments fully available to Grantor, and if no Event of Default then exists, Grantor may at its election participate under reasonable procedures in the direction of such Site Assessments and the descriptions of Tasks of the Site Reviewers. The cost of performing such Site Assessments shall be paid by Grantor upon demand of Lender and such obligations shall be Secured Obligations.

17. **Condemnation**. Grantor hereby assigns, transfers and sets over to Lender the entire proceeds of any award or any claim for damages for any of the Property taken or damaged under the power of eminent domain or by condemnation which proceeds shall be treated as Loss Recoveries under the Loan Agreement. Grantor agrees to execute and deliver, from time to time, such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award or payment.

18. **Cancellation Upon Payment and Discharge of Grantor's Obligations**. Lender shall cancel and surrender this Security Deed and the lien, security interest and security title hereof by proper instrument upon payment and discharge of all of the Secured Obligations including any prepayment charges provided for herein or in the Note and payment of a reasonable fee to Lender for the execution of such release together with all reasonable expenses incurred by Lender in connection with the execution of such release.

19. **Waiver of Defense**. No action for the enforcement of the lien, security interest and security title, or any provision hereof, shall be subject to any defense which would not be good and available to the party interposing same in an action at law upon the Note hereby secured.

20. **Waiver of Statutory Rights**. To the extent permitted under the Lien Laws, Grantor shall not, and will not, apply for, avail itself of, insist upon or plead or in any manner claim or take advantage of any appraisement, homestead, valuation, stay, extension or exemption laws, or any so-called "**Moratorium Laws,**" now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Security Deed, but hereby waives the benefit of such laws. Grantor, for itself and all who may claim through or under Grantor, waives any and all right to have the property and estates comprising the Property marshaled upon any foreclosure of the lien, security interest and security title hereof and agrees that any court having jurisdiction to foreclose such lien, security interest and security title may order the Property sold as an entirety. Grantor hereby expressly waives any and all rights of reinstatement and redemption, if any, from sale pursuant to a Foreclosure of this Security Deed on behalf of Grantor, and each and every person claiming by, through or under Grantor.

21. **Financing Statement**. This Security Deed also constitutes a financing statement for the purpose of Section 9-502 of the Code and shall constitute a "fixture filing" under such statutes.

(a) The Debtor is the Grantor hereunder.

-14-

CH01/ 12463019.5

(b) The Secured Party is the Lender hereunder.

(c) This financing statement covers the Collateral that is related to the Real Property which includes Goods which are or are to become fixtures on the Real Property.

(d) Grantor is the record owner of the Real Property.

(e) Grantor's organizational identification number is L04000069762.

22. **Future Advances**. This Security Deed is given to secure not only present indebtedness, but also future advances of the Loan, whether or not such future advances are obligatory or at the option of Lender, to the same extent as if such future advances were made on the date of the execution of this Security Deed. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but all indebtedness secured hereby shall in no event exceed the limitation, if any, set forth in the granting clauses of this Security Deed.

23. **Miscellaneous**.

(a) **Successors and Assigns**. This Security Deed and all provisions hereof shall extend to and be binding upon Grantor and its successors, grantees and assigns, any subsequent owner or owners of the Property and all persons claiming under or through Grantor (but this clause shall not be construed as constituting the consent by Lender to the transfer of any interest in the Property), and the word **"Grantor"** when used herein shall include all such persons and all persons liable for the payment of or performance of the Secured Obligations or any part thereof, whether or not such persons shall have executed the Note or this Security Deed. The word **"Lender"**, when used herein, shall include the successors and assigns of Lender named herein, and the holder or holders, from time to time, of the Note.

(b) **Invalidity of Provisions**. In the event one or more of the provisions contained in this Security Deed or in any other Loan Document shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of Lender, not affect any other provision of this Security Deed and this Security Deed shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

(c) **Governing Law**. The validity and interpretation of this Security Deed and of all other documents evidencing or securing the Secured Obligations shall be construed in accordance with the laws of the State of Illinois, except that the Lien Laws shall govern any question regarding the

-15-

CH01/ 12463019.5

creation, perfection or enforcement of the liens, security interests and security titles granted Lender under this Security Deed.

(d) **Rights of Tenants**. Lender shall have the right and option to commence a Foreclosure subject to the rights of any tenant or tenants of the Property. The failure to join any such tenant or tenants as party defendant or defendants in any Foreclosure to foreclose their rights shall not be asserted by Grantor as a defense in any civil action instituted for satisfaction of the Secured Obligations, or any part thereof, or any deficiency remaining unpaid after Foreclosure and sale of the Property, any statute or rule of law at any time existing to the contrary notwithstanding. Tenants and other transferees of interests in the Property, whether directly or indirectly, shall be subject to all of the terms of this Security Deed and all of the other Loan Documents, which terms include a right in favor of Lender to accelerate the Secured Obligations upon any Transfer that is not permitted by Lender under the Loan Documents.

(e) **Option of Lender to Subordinate**. At the option of Lender, this Security Deed shall become subject and subordinate, in whole or in part (but not with respect to priority of entitlement to insurance proceeds or any award in condemnation) to any or all Leases upon the execution by Lender and recording or registration thereof, at any time hereafter, in the appropriate recording office for the recording of instruments affecting the Property, of a unilateral declaration to that effect.

(f) **Property Management Agreement**. Any property management agreement hereafter entered into by Grantor shall, to the extent enforceable under the Lien Laws, be subject and subordinate to the lien, security interest and security title of this Security Deed and Lender may terminate such agreement at any time after the occurrence of an Event of Default. Such property management agreement or a short form thereof, evidencing the foregoing subordination, shall, at Lender's request, be recorded with the appropriate recording office for the Property.

(g) **Subrogation**. To the extent that Lender, on or after the date hereof, pays any sum due under any provision of law or any instrument or document creating any lien, security interest or security title prior or superior to the lien, security interest and security title of this Security Deed, or Grantor or any other person pays any such sum with the proceeds of the Loan, Lender shall have and be entitled to a lien, security interest and security title on the Property equal in priority to the lien, security interest or security title discharged, and Lender shall be subrogated to, and receive and enjoy all rights and liens, security interests and security titles possessed, held or enjoyed by, the holder of such lien, security interest or security title, which shall remain in existence and benefit Lender in securing the Secured Obligations. Lender

-16-

shall be subrogated, notwithstanding their release of record, to the lien, security interest or security title of all security deeds, mortgages, trust deeds, superior titles, vendors' liens, liens, security interests and security titles, charges, encumbrances, rights and equities on the Property, to the extent that any obligation under any thereof is directly or indirectly paid or discharged with proceeds of disbursements or advances under the Note.

(h) **Notices**. All Notices required or appropriate under this Security Deed shall be given in compliance with provisions of the Loan Agreement governing the giving of Notices.

24. **Waiver of Jury Trial**. GRANTOR AND LENDER, BY ITS ACCEPTANCE OF THIS DEED, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE THIS DEED OR BASED UPON, OR ARISING OUT OF, THE SUBJECT MATTER OF THIS DEED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GRANTOR AND LENDER, AND GRANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR AND LENDER EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS DEED AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FURTHER DEALINGS.

25. **Construction Mortgage**. The Secured Obligations include indebtedness incurred for the construction of an improvement upon the Land and this Security Deed is intended to be a "construction mortgage" as that term is used in the Uniform Commercial Code, as adopted in the State.

26. **Observance of Lease Assignment**. Grantor acknowledges that, concurrently herewith, Grantor has executed and delivered to Lender, as additional security for payment and performance of the Secured Obligations, a separate assignment of rents and leases ("**Assignment of Rents**") pursuant to which Grantor has assigned to Lender interests in the Leases and the rents and income from the Property. All of the provisions of the Assignment of Rents are hereby incorporated herein as though fully set forth in the text of this Security Deed. Grantor agrees to abide by all of the provisions of the Assignment of Rents which shall be deemed to be in addition to, and not in substitution of, any of the terms of this Security Deed.

-17-

CH01/ 12463019.5

27. <u>Compliance with State Specific Laws</u>.

(a) Grantor represents and warrants to Lender that no portion of the Property is used as a dwelling place by Grantor at the time this Security Deed is entered into, and, accordingly, the notice requirement of Official Code of Georgia Annotated Section 44-14-162.2 shall not be applicable to any exercise of the power of sale contained in this Security Deed.

(b) Time is of the essence of this Security Deed.

(c) The interest of Lender hereunder and all the Secured Obligations arise from a "commercial transaction" within the meaning of Official Code of Georgia Annotated § 44-14-260(l). Accordingly, pursuant to Official Code of Georgia Annotated §44-14-263, Grantor waives any and all rights which Grantor may have to notice prior to seizure by Lender of any interest in personal property of Grantor which constitutes part of the Property, whether such seizure is by writ of possession or otherwise, and also waives the requirement for any bond in connection with any writ of immediate possession sought by Grantor.

(d) Grantor agrees to indemnify, defend and hold Lender harmless from and against any claim that any Georgia Intangible Recording taxes are due and payable in connection with the Loan or this Security Deed.

(e) <u>Attorneys' Fees</u>. Notwithstanding any other terms or provisions of this Deed or any other Loan Document, in any instance where Grantor is obligated under the terms of this Deed or any other Loan Document that is governed by the laws of the State of Georgia to pay any attorneys fees, such attorneys fees shall be limited to the reasonable and documented actual attorneys fees and expenses paid or incurred by Grantee to outside or inside counsel charged at the standard hourly rates of the attorneys handling the subject matter, provided, however, that any attorneys' fees paid or incurred during or in connection with a default under any of the Loan Documents shall not be subject to challenge by Grantor for being unreasonable, but shall still be limited to the documented actual attorneys and expenses paid or incurred by Grantee to outside or inside counsel charged at the standard hourly rates of the attorneys handling the subject matter. In no event shall "attorneys fees", "reasonable attorneys fees" or similar phrases, as used herein or in the other Loan Documents governed by the laws of the State of Georgia, be construed to mean the statutory attorneys fees specified in O.L.G.A. §13-1-11, it being the intent of the parties that the Lender shall only be able to collect attorneys' fees actually incurred rather than the statutory amount.

**[The balance of this page is intentionally blank; signature page follows.]**

-18-

CH01/ 12463019.5

*To the maximum extent permitted by law*

28. **WAIVER OF DUE PROCESS.** GRANTOR HEREBY VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY WAIVES ANY AND ALL RIGHTS OF GRANTOR TO DUE PROCESS OF LAW IN CONNECTION WITH THE SECURED OBLIGATIONS, WHICH RIGHTS MAY INCLUDE PRIOR NOTICE AND A PRIOR JUDICIAL HEARING IN CONNECTION WITH THE EXERCISE OF ANY AND ALL RIGHTS AND REMEDIES GRANTED TO AGENT PURSUANT TO THE TERMS HEREOF, SAID REMEDIES INCLUDING, BUT NOT LIMITED TO, SELLING THE REAL PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION AT THE USUAL PLACE FOR CONDUCTING SALES AT THE COURTHOUSE IN THE COUNTY WHERE SUCH PROPERTY OR ANY PART THEREOF MAY BE LOCATED TO THE HIGHEST BIDDER FOR CASH AFTER FIRST ADVERTISING THE TIME, TERMS AND PLACE OF SUCH SALE BY PUBLISHING A NOTICE THEREOF, ONCE A WEEK FOR FOUR CONSECUTIVE WEEKS, IN A NEWSPAPER IN WHICH SHERIFF'S ADVERTISEMENTS ARE PUBLISHED IN SAID COUNTY, ALL OTHER NOTICE HAVING BEEN WAIVED BY GRANTOR.

IN WITNESS WHEREOF, Grantor has caused this Security Deed to be duly executed, UNDER SEAL, and delivered as of the date first above written.

Signed, sealed and
delivered in the presence of:

**GRANTOR:**

**THE LANDINGS FLORIDA, LLC,**
a Florida limited liability company

Print Name: _Raymond Hopkins_
Unofficial Witness

By:    The Landings Florida Member, LLC,
      a Delaware limited liability company,
      Its Sole Member and Manager

Notary Public

By:    Spinnaker/Regatta V, LLC,
      a Washington limited liability company,
      Its Sole Member and Manager

Commission Expiration
Date: April 5, 2007

[Affix Notarial Seal]

By:    CVI/Spinnaker/Regatta V, Inc.,
      a Washington corporation,
      Its Manager

By: _____
Name: Richard Nathan
Title:   President and Sole Director

TRACY TI-ONG
COMM. #1419276
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXPIRES APRIL 5, 2007

## EXHIBIT A

## LEGAL DESCRIPTION

### TRACT 1

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

BEGINNING at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30° 23' 54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34° 32' 12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point; thence S 67° 10' 12" E, a distance of 119.25 feet to a point; thence N 23° 38' 00" E a distance of 190.00 feet to a point; thence N 44° 43' 00" E a distance of 116.00 feet to a point; thence S 46° 08' 05" E a distance of 263.52 feet to a point; thence N 79° 55' 00" E a distance of 208.00 feet to a point; thence N 14° 48' 00" E a distance of 164.00 feet to a point; thence N 44° 00' 00" E a distance of 59.00 feet to a point; thence N 84° 04' 00" E a distance of 57.00 feet to a point; thence S 57° 02' 00" E a distance of 53.00 feet to a point; thence S 75° 16' 39" E a distance of 134.70 feet to a point; thence N 61° 30' 00" E a distance of 54.00 feet to a point; thence N 83° 06' 00" E a distance of 36.00 feet to a point; thence S 62° 48' 16" E a distance of 149.00 feet to a point; thence S 51° 58' 09" W a distance of 47.88 feet to a point; thence S 02° 42' 00" E a distance of 50.00 feet to a point; thence S 38° 48' 00" E a distance of 160.00 feet to a point; thence S 73° 47' 00" E a distance of 90.00 feet to a point; thence N 76° 28' 00" E a distance of 189.00 feet to a point; thence N 46° 14' 00" E a distance of 38.00 feet to a point; thence N 20° 31' 00" E a distance of 21.00 feet to a point; thence N 49° 37' 40" E a distance of 288.98 feet to a point; thence N 17° 57' 00" E a distance of 332.00 feet to a point; thence N 65° 39' 00" E a distance of 121.00 feet to a point; thence S 16° 11' 00" W a distance of 148.00 feet to a point; thence S 73° 49' 00" E a distance of 198.00 feet to a point; thence N 16° 11' 00" W a distance of 155.00 feet to a point; thence N 78° 39' 00" E a distance of 42.00 feet to a point; thence S 07° 00' 00" E a distance of 127.00 feet to a point; thence S 72° 57' 17" E a distance of 131.25 feet to a point on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence N 16° 27' 41" W, along said northwestern right-of-way line of Peachtree Corners West, a distance of 608.00 feet, more or less, to the point of intersection of said right-of-way line with the centerline of Crooked Creek; thence in a generally northwesterly direction, along said centerline of Crooked Creek, and following the meanderings thereof, a distance of 592.00 feet, more or less, to the point of intersection of the centerline of said creek with the line common to said Land Lots 282 and 305; thence S 58° 50' 02" W, along said line common to Land Lots 282 and 305, a distance of 1,462.00 feet, more or less, to the iron pin found at the POINT OF BEGINNING.

### TRACT 2

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30° 23' 54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34° 32' 12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point, said point marking the TRUE POINT OF BEGINNING; FROM SAID TRUE POINT OF BEGINNING AS THUS ESTABLISHED, running thence N 34° 32' 12" W, along said line common to Land Lots 305 and 306, a distance of 491.78 feet to an iron pin found; thence N 59° 22' 15" E a distance of 1,683.24 feet to an iron pin found; thence S 31° 09' 38" E a distance of 350.58 feet to an iron pin found; thence S 31° 00' 33" E a distance of 586.68 feet to an iron pin found; thence N 58° 11' 41" E a distance of 385.16 feet to an iron pin found;

thence N 17° 02' 50" E a distance of 305.00 feet to an iron pin set; thence N 00° 20' 57" E a distance of 45.12 feet to an iron pin found; thence S 71° 48' 28" E a distance of 511.13 feet to an iron pin set on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence in a southwesterly direction, along said northwestern right-of-way line of Peachtree Corners West, the following courses and distances:  along the arc of a 2,200.00 foot radius curve, an arc distance of 461.36 feet to a point (said arc being subtended by a chord lying to the southeast of said arc and bearing S 22° 28' 09" W a distance of 460.51 feet); and S 16° 27' 41" W a distance of 37.00 feet to a point; thence N 72° 57' 17" W a distance of 131.25 feet to a point; thence N 07° 00' 00" W a distance of 127.00 feet to a point; thence S 78° 39' 00" W a distance of 42.00 feet to a point; thence S 16° 11' 00" W a distance of 155.00 feet to a point; thence N 73° 49' 00" W a distance of 198.00 feet to a point; thence N 16° 11' 00" E a distance of 148.00 feet to a point; thence S 65° 39' 00" W a distance of 121.00 feet to a point; thence S 17° 57' 00" W a distance of 332.00 feet to a point; thence S 49° 37' 40" W a distance of 288.98 feet to a point; thence S 20° 31' 00" W a distance of 21.00 feet to a point; thence S 46° 14' 00" W a distance of 38.00 feet to a point; thence S 76° 28' 00" W a distance of 189.00 feet to a point; thence N 73° 47' 00" W a distance of 90.00 feet to a point; thence N 38° 48' 00" W a distance of 160.00 feet to a point; thence N 02° 42' 00" W a distance of 50.00 feet to a point; thence N 51° 58' 09" E a distance of 47.88 feet to a point; thence N 62° 48' 16" W a distance of 149.00 feet to a point; thence S 83° 06' 00" W a distance of 36.00 feet to a point; thence S 61° 30' 00" W a distance of 54.00 feet to a point; thence N 75° 16' 39" W a distance of 134.70 feet to a point; thence N 57° 02' 00" W a distance of 53.00 to a point; thence S 84° 04' 00" W a distance of 57.00 feet to a point; thence S 44° 00' 00" W a distance of 59.00 feet to a point; thence S 14° 48' 00" W a distance of 164.00 feet to a point; thence S 79° 55' 00" W a distance of 208.00 feet to a point; thence N 46° 08' 05" W a distance of 263.52 feet to a point; thence S 44° 43' 00" W a distance of 116.00 feet to a point; thence S 23° 38' 00" W a distance of 190.00 feet to a point; thence N 67° 10' 12" W a distance of 119.25 feet to the TRUE POINT OF BEGINNING.  Said Tract containing 39.434 acres.

With respect to TRACT 1 AND TRACT 2

TOGETHER WITH rights created in that certain Cross-Easement Agreement between Peachtree Associates, an Illinois limited partnership, and Peachtree Investors, an Illinois limited partnership, dated June 12, 1986, recorded at Deed Book 3600, page 218, Gwinnett County, Georgia Records (it being intended that said Cross-Easement Agreement not be terminated by merger by reason of the conveyance of all property encumbered thereby to the same entity).

Tax Map Parcel #'s 6 305 9 and 6 305 11

Street Address of Real Estate: 3655 Westchase Village Lane, Norcross, Georgia

# EXHIBIT D

Bristol Court

## GUARANTY (Payment)

**THIS GUARANTY** ("Guaranty") is dated as of February 28, 2006 and is made by COMMERCIAL VENTURES, INC., a Delaware corporation ("Guarantor"), for the benefit of ORIX Real Estate Capital, Inc. and its successors and assigns ("Lender").

## RECITALS

A.     Lender has agreed to loan up to the principal amount of Twenty-Six Million Five Hundred Thousand and No/100 Dollars ($26,500,000) (the "Loan") to The Landings Florida, LLC, a Florida limited liability company ("Borrower") pursuant to the terms and conditions of a certain Loan and Security Agreement of even date herewith (as amended from time to time, the "Loan Agreement") by and between Borrower and Lender.  All capitalized terms not otherwise defined in this Guaranty shall have the meanings given them in the Loan Agreement.

B.     Lender has required, as a condition precedent to extension and disbursement of the Loan to Borrower and in consideration therefor, the execution and delivery of this Guaranty by Guarantor.

C.     Guarantor has an interest in Borrower, and having a financial interest in the Property, has agreed to execute and deliver this Guaranty to Lender.

**NOW THEREFORE**, in consideration of the Recitals set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1.     **Liabilities.**  Notwithstanding any exculpation or other provisions in any Loan Document to the contrary, Guarantor agrees to be personally liable for the payment and satisfaction of all of the following (collectively, "Guarantor's Liabilities"):

(a)     Subject to the limitation(s) set forth in Paragraph 9 below, the full and prompt payment when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter, of all Indebtedness, including Expenses; and

(b)     Subject to the limitation(s) set forth in Paragraph 9 below, the full performance when due of all Obligations.

The term "Expenses" means all reasonable attorneys' fees, court costs and other legal expenses and all other costs and expenses of any kind which Lender or any subsequent holder of the Note may pay or incur in attempting to collect, compromise or enforce, in any respect, any of Guarantor's Liabilities, whether or not suit is ever filed, and whether or not in connection with any insolvency, bankruptcy, reorganization, arrangement or other similar proceeding involving Borrower, Guarantor or any other guarantor.  If Lender pays any such cost or expense, "Expenses" shall also include interest at the Default Rate on any such payment from the date such cost or expenses is incurred until repayment to Lender in full.

CH01/ 12462743.5

2.    **Absolute Guaranty**.

(a)    This Guaranty is an absolute, independent and present guaranty of payment and performance and not of collection. Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other person or party that may be obligated for all or any part of Guarantor's Liabilities nor to pursue any other rights or remedies before seeking satisfaction of Guarantor's Liabilities. Guarantor shall pay all of Guarantor's Liabilities to Lender in full immediately upon demand, subject to the limitation(s) set forth in Paragraph 9 below. One or more successive actions may be brought against Guarantor, as often as Lender deems advisable, until all of Guarantor's Liabilities are paid and performed in full, subject to the limitation(s) set forth in Paragraph 9 below.

(b)    Subject to the limitation(s) set forth in Paragraph 9 below, Guarantor hereby agrees to indemnify, defend and save harmless Lender from and against any and all costs, losses, liabilities, claims, causes of action, expenses and damages, including reasonable attorneys' fees and disbursements, which Lender may suffer or otherwise may arise by reason of Borrower's failure to pay or perform any of the Indebtedness or the Obligations when due, irrespective of whether such costs, losses, liabilities, claims, causes of action, expenses or damages are incurred by Lender prior or subsequent to (i) Lender's declaring the principal, interest and other sums evidenced or secured by the Loan Documents to be due and payable, (ii) the commencement or completion of a judicial or non-judicial foreclosure of the Mortgage or (iii) the conveyance of all or any portion of the Property by deed-in-lieu of foreclosure.

(c)    Notwithstanding the limitation(s) set forth in Paragraph 9 below and without regard to such limitation(s), Guarantor agrees that no portion of any sums applied (other than sums received from Guarantor in full or partial satisfaction of its obligations hereunder), from time to time, in reduction of the Indebtedness shall be deemed to have been applied in reduction of the Guarantor's Liabilities until such time as the Debt has been paid in full, or Guarantor shall have made the full payment required hereunder, it being the intention hereof that the Guarantor's Liabilities shall be the last portion of the Indebtedness to be deemed satisfied.

3.    **Representations and Warranties**. Guarantor hereby represents and warrants to Lender as follows:

(a)    **Review of this Guaranty and the Loan Documents**. Guarantor has reviewed with the benefit of its legal counsel the terms of this Guaranty and each other Loan Document.

(b)    **Organization; Authorization**. If Guarantor is not a natural person, Guarantor is duly organized, validly existing and in good standing under the laws of the State of its formation, and has duly qualified and is in good

CH01/ 12462743.5

standing under the laws of each other State in which its activities require that it be qualified. Guarantor has all requisite partnership or corporate (as the case may be) power and all material governmental licenses, authorizations, consents, and approvals necessary to own its assets and carry on its business as now being conducted. Guarantor delivered this Guaranty executed by the proper individuals pursuant to proper authority duly granted.

(c)    **Enforceability**.   Each obligation under this Guaranty is legal, valid, binding and enforceable against Guarantor in accordance with its terms.

(d)    **Financial Statements**.   The financial statements furnished on behalf of Guarantor to Lender in connection with this Guaranty or the Loan Documents are: (a) true and correct in all material respects; (b) have been prepared in accordance with sound accrual basis accounting principles consistently applied; and (c) present fairly the financial condition of Guarantor as of the respective dates thereof. No material adverse change has occurred in the financial condition of Guarantor since the effective dates of such financial statements.

(e)    **No Existing Defaults and No Litigation**.   Guarantor is not in default under any agreement, and no event has occurred that with the passage of time and/or the giving of notice would constitute a default under any agreement, the effect of which could materially adversely affect performance of Guarantor's obligations under this Guaranty. There are no litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending or, to the best of Guarantor's knowledge, threatened against Guarantor before any court or other governmental authority of any kind which could materially adversely affect performance of Guarantor's obligations under this Guaranty. Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions of this Guaranty will violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of Guarantor, or any other indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind to which Guarantor is a party or to which Guarantor or the property of Guarantor may be subject.

(f)    **No Misstatements or Omissions**.   This Guaranty does not contain any untrue statement of fact nor omit to state any fact material to this Guaranty. Guarantor has no knowledge of any material fact, inaccuracy or untruth concerning the Borrower or Borrower's financial condition which has not been disclosed to Lender and might adversely affect Lender's determination to enter into or arrange disbursement of the Loan.

- 3 -

(g)    **Governmental Approval**.  No registration with or consent or approval of, or other action by, any Federal, state, municipal or other governmental agency, authority or regulatory body, domestic or foreign, relating to Guarantor is or will be required in connection with the execution, delivery and performance of this Guaranty.

(h)    **Loans to Borrower**.  Borrower has no unpaid loans or advances from, or other obligations to, Guarantor.

(i)    **Compliance with Financial Requirements**.  As of the Closing Date, Guarantor's tangible net worth, determined in accordance with sound accrual basis accounting principles consistently applied, and Guarantor's cash and readily marketable securities are sufficient to meet the Financial Requirements (as defined below).

4.    **Indemnities**.  Guarantor hereby indemnifies Lender and agrees to defend and hold Lender harmless from and against any loss, cost, damage or expense occurring by reason of a breach of the representations or warranties set forth in this Guaranty, and the loss, mitigation, subordination or other consequences adverse to Lender by reason of this Guaranty being challenged as a preference or suffering any other subjugation under any bankruptcy or other law, whether state or federal, affecting debtors, creditors and/or the relationship between such parties.

5.    **Covenants**.  For as long as this Guaranty shall remain in effect, Guarantor hereby covenants and agrees as follows:

(a)    **Periodic Financial Reports**.  In addition to any financial reports required under the Mortgage, within 10 days after the request of Lender, Guarantor shall deliver to Lender a copy of Guarantor's unaudited balance sheet, income statement and statement of changes in financial position for the immediately preceding fiscal year.  Each such report shall: (a) include a schedule of all material contingent liabilities and all other notes and schedules relating thereto; (b) be in a form reasonably satisfactory to Lender; and (c) be accompanied by a certification by Guarantor to Lender (made by the chief financial officer in the case of any corporate Guarantor) that such report: (i) has been prepared in accordance with sound accrual basis accounting principles consistently applied; (ii) presents fairly the financial condition of Guarantor as of the respective dates thereof; and (iii) shows all direct and contingent material liabilities of Guarantor as of such dates.  In addition, Guarantor shall deliver to Lender from time to time such other financial statements and information as Lender may reasonably request.

(b)    **Transfers, Sales, Etc**.  Guarantor shall not sell, lease, transfer, convey or assign any of Guarantor's material assets, directly or indirectly, unless: (i) Guarantor shall receive adequate consideration for such assets; and (ii) such transaction will not have a material adverse affect on the financial condition of Guarantor.

- 4 -

(c)　　**Rescinded or Returned Payments**.  If at any time any part of any payment previously applied by Lender to any of Guarantor's Liabilities is rescinded or returned by Lender for any reason, including the insolvency, bankruptcy or reorganization of Borrower or any other party, Guarantor's Liabilities shall be deemed to have continued in existence to the extent that such payment is rescinded or returned, and this Guaranty shall be reinstated as to Guarantor's Liabilities as though such prior application by Lender had not been made.

(d)　　**Certain Permitted Actions of Lender**.  Lender may from time to time, in Lender's sole discretion and without notice to Guarantor, take any of the following actions without in any way affecting the obligations of Guarantor: (i) obtain a security interest in any property to secure any of the Indebtedness or the Obligations or any obligation hereunder; (ii) obtain the primary or secondary obligation of any additional obligor or obligors with respect to any of the Indebtedness or the Obligations; (iii) extend, modify, subordinate, exchange or release any of the Indebtedness or the Obligations; (iv) modify, subordinate, exchange or release Lender's security interest in any part of any property securing any of the Indebtedness or the Obligations or any obligation hereunder, or extend, modify, subordinate, exchange or release any obligations of any obligor with respect to any such property; (v) alter the manner or place of payment of the Indebtedness or the Obligations; (vi) enforce this Guaranty against Guarantor for payment of any of Guarantor's Liabilities, whether or not Lender shall have (A) proceeded against Borrower or any other guarantor or any other party primarily or secondarily obligated with respect to any of Guarantor's Liabilities or (B) resorted to or exhausted any other remedy or any other security or collateral; and (vii) foreclose on, take possession of or sell any of the collateral or security for Guarantor's Liabilities or enforce any other rights under any other Loan Document.

(e)　　**Lender's Option to Release**.  Lender may from time to time in Lender's sole discretion release Guarantor from any of Guarantor's obligations hereunder or release Borrower or any other obligor from any of the Indebtedness or the Obligations without notice to any other guarantor or any other party and without in any way releasing or affecting the liability of Guarantor.

(f)　　**Application of Payments**.  Lender may apply any payment made on account of the Indebtedness or the Obligations toward such of the Indebtedness or the Obligations, and in such order as Lender may from time to time elect in Lender's sole discretion, whether or not the Indebtedness or the Obligations are guaranteed hereby, otherwise secured or due at the time of application.

(g)　　**Subordination**.  Guarantor hereby subordinates any debts, obligations, claims or liens of Guarantor against Borrower, of any kind (including any right of Guarantor to a return of any capital contributed to Borrower), to all of Guarantor's Liabilities and to any other claims or liens of Lender against Borrower or the property of any of them.  Upon any notice by Lender to Borrower

- 5 -

(k)  **Obligations and Taxes**.  Guarantor shall pay and discharge promptly when due all taxes, assessments and governmental charges or levies imposed upon Guarantor or upon Guarantor's income or profits or in respect of Guarantor's property before the payment shall become delinquent or in default; provided, however, that Guarantor shall not be required to pay and discharge or to cause to be paid and discharged any such tax, assessment or governmental charge or levy so long as the validity or amount thereof shall be contested in good faith by appropriate proceedings and Guarantor shall, to the extent required by generally accepted accounting principles applied on a consistent basis, have set aside on Guarantor's books adequate reserves with respect thereto.

6.  **Waivers**.  Guarantor hereby expressly waives:

(a)  **Notices**.  Notice of the acceptance by Lender of this Guaranty, notice of the existence, creation or non-payment of any of Guarantor's Liabilities, presentment, demand, notice of dishonor, protest, notice of protest, and all other notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, except any specifically required by this Guaranty.

(b)  **Disclosures About Borrower**.  Any obligation Lender may have to disclose to Guarantor any facts Lender now or hereafter may know or have reasonably available to it regarding Borrower or Borrower's financial condition, or regarding the Property or any other collateral for the Loan whether or not Lender has a reasonable opportunity to communicate such facts or has reason to believe that any such facts are unknown to Guarantor or materially increase the risk to Guarantor beyond the risk Guarantor intends to assume hereunder. Guarantor shall be fully responsible for keeping informed of the financial condition of Borrower and of all other circumstances bearing on the risk of nonpayment or nonperformance of Guarantor's Liabilities.

(c)  **Diligence in Collection**.  All diligence in collection of any of Guarantor's Liabilities, any obligation hereunder, or any guaranty or other security for any of the foregoing.

(d)  **Benefit of Certain Laws**.  The benefit of all appraisement, valuation, marshaling, forbearance, stay, extension, reinstatement, redemption, homestead, exemption and moratorium laws now or hereafter in effect.

(e)  **Certain Defenses**.  Any defense based on the incapacity, lack of authority, death or disability of any other person or entity or the failure of Lender to file or enforce a claim against the estate of any other person or entity in any administrative, bankruptcy or other proceeding.

(f)  **Election of Remedies Defense**.  Any defense based on an election of remedies by Lender, whether or not such election may affect in any way the recourse, subrogation or other rights of Guarantor against Borrower or any other person in connection with Guarantor's Liabilities.

- 7 -

(g)     **Defenses Relating to Collateral Sale**.  Any defense based on the failure of Lender to: (i) provide notice to Guarantor of a sale or other disposition (including any collateral sale pursuant to the Uniform Commercial Code) of any of the security for any of Guarantor's Liabilities; or (ii) conduct such a sale or disposition in a commercially reasonable manner.

(h)     **Defenses Relating to Loan Administration**.  Any defense based on the negligence of Lender in administering the Loan, or taking or failing to take any action in connection therewith or any claim based on allegations that Lender failed to act in a commercially reasonable manner or failed to exercise any obligation of good faith and fair dealing.

(i)     **Right to Enforce Lender's Remedies**.  Any right to enforce any remedies or to participate in any security Lender now has, or later may have, against Borrower, or any requirement to exhaust any remedies, whether by subrogation or otherwise, or any requirement to mitigate damages, until all of the Indebtedness has been paid to Lender and all other Obligations have been performed.

7.     **Miscellaneous**.

(a)     **Continuing Guaranty**.  This Guaranty is unconditional and irrevocable and shall in all respects be a continuing guaranty and a primary obligation of Guarantor and shall not be subject to any counterclaim, set-off, abatement, deferment or defense based on any claim that Guarantor may have against Lender, Borrower, any other guarantor, or any other person or entity.  This Guaranty shall remain in full force and effect until all of the following have occurred: (i) all of Guarantor's Liabilities have been satisfied in full; and (ii) Lender has no further obligation to make any advance under the Loan Documents.  No notice of discontinuance or revocation shall affect any of the obligations of Guarantor hereunder or of Borrower or of any other obligor with respect to any of Guarantor's Liabilities.  Lender shall not be obligated to accept at any time any deed in lieu of foreclosure, and all obligations of Guarantor hereunder shall survive foreclosure or any deed in lieu of foreclosure which Lender may accept, to the extent any of Guarantor's Liabilities remain unsatisfied.

(b)     **Obligations; Successors and Assigns**.  All obligations under this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of Lender, each holder of the Note and the successors and assigns of each holder of the Note.

(c)     **Assignment by Lender**.  Lender may from time to time, without notice to Guarantor, assign or transfer any interest in any of Guarantor's Liabilities by loan participation or otherwise, and notwithstanding such assignment or transfer, such Guarantor's Liabilities shall remain Guarantor's Liabilities for purposes of this Guaranty.

(d)  **No Exculpation**.    No exculpatory, "non-recourse", "limited recourse", or other language contained in any other Loan Document or in any other document shall in any way prevent or limit Lender from enforcing this Guaranty against Guarantor personally.

(e)  **Legal Tender of United States**.    All payments hereunder shall be made in coin or currency which at the time of payment is legal tender in the United States of America for public and private debts.

(f)  **Time of Essence**.    Time is of the essence of this Guaranty.

(g)  **Definitions; Captions; Gender**.    With respect to any reference in this Guaranty to any defined term: (i) if such defined term refers to a person, or a trust, corporation, partnership or other entity, then it shall also mean all heirs, personal representatives, successors and assigns of such person or entity; and (ii) if such defined term refers to a document, instrument or agreement, then it shall also include any replacement, extension or other modification thereof. Captions contained in this Guaranty in no way define, limit or extend the scope or intent of their respective provisions. Use of the masculine, feminine or neuter gender and of singular and plural shall not be given the effect of any exclusion or limitation herein. The use in this Guaranty of the term "including", and related terms such as "include", shall in all cases mean "including, without limitation".

(h)  **Notices**.    All Notices given under or pursuant to this Guaranty shall be in writing and shall be (a) delivered in person, in which event the Notice shall be deemed received when delivery is actually made, (b) telecopied, in which event the Notice shall be deemed received on the date of transmission if transmission is confirmed before 4:00 p.m. Chicago time on a Business Day or if transmission is confirmed after 4:00 p.m. Chicago time, then on the next Business Day provided that the sender obtains electronic confirmation of receipt and that a copy of such Notice is also delivered pursuant to clause (a) or (c); or (c) sent by a nationally recognized overnight courier for next business day delivery, in which event the Notice shall be deemed received on the first Business Day after delivery to, and acceptance for delivery by, the courier. All such Notices intended for Lender shall be delivered, with a copy to its attorney, to their respective Addresses provided in the Loan Agreement and if sent by facsimile such Notices shall be sent to the facsimile numbers set forth in the Loan Agreement. Either party may change its Address or facsimile number by giving written notice to the other in accordance with the foregoing notice provision.

Guarantor's Address for Notices is:

> Commercial Ventures, Inc.
> 12100 Wilshire Blvd., Suite 250
> Los Angeles, CA  90025
> Attn:  Richard Nathan and Greg Beach
> Facsimile No:  (310) 207-8497

With a copy to:                    Shumaker Steckbauer Weinhart
                                   333 S. Hope Street, 36th Floor
                                   Los Angeles, CA  90071
                                   Attn:  Brian Weinhart
                                   Facsimile No:  (213) 229-2870

    (i)    **Entire Agreement**.  This Guaranty constitutes the entire agreement of Guarantor for the benefit of Lender with respect to the subject matter hereof and supersedes any prior agreements with respect to the subject matter hereof.

    (j)    **No Modification Without Writing**.  This Guaranty may not be terminated or modified in any way nor can any right of Lender or any obligation of Guarantor be waived or modified, except by a writing signed by Lender and Guarantor.

    (k)    **Independent Obligations**.  The obligations of Guarantor hereunder are independent of the obligations of Borrower and each other guarantor.  In the event of any default hereunder, Lender may institute a separate action against Guarantor with or without joining or instituting a separate action against Borrower or against any other guarantor or other obligor.

    (l)    **Financial Risk**.  Guarantor shall be fully responsible for keeping himself, herself or itself, as the case may be, informed of the financial condition of Borrower and of all other circumstances bearing on the risk of nonpayment or nonperformance of the Indebtedness or Obligations.

    (m)    **Severability**.  Each provision of this Guaranty shall be interpreted so as to be effective and valid under applicable law, but if any provision of this Guaranty shall in any respect be ineffective or invalid under such law, such ineffectiveness or invalidity shall not affect the remainder of such provision or the remaining provisions of this Guaranty.

    (n)    **Cumulative**.  The obligations of Guarantor hereunder are in addition to any other obligations Guarantor may now or hereafter have to Lender, and shall not be affected in any way by the delivery to Lender by Guarantor or any other guarantor of any other guaranty, or any combination thereof.  All rights and remedies of Lender and all obligations of Guarantor under this Guaranty are cumulative.  In addition, Lender shall have all rights and remedies available to Lender in law or equity for the enforcement of this Guaranty.

    (o)    **Effect of Lender's Delay or Action**.  No delay by Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude any other exercise thereof or the exercise of any other right or remedy.  No action of Lender permitted hereunder shall in any way impair or otherwise affect any right of

- 10 -

Lender or obligation of Guarantor under this Guaranty. Lender shall not be liable in any way for any decrease in the value or marketability of any property securing any of Guarantor's Liabilities which may result from any action or omission of Lender in enforcing any part of this Guaranty.

(p)    **Subrogation**. Until all of Guarantor's Liabilities have been paid to Lender, and all periods under applicable bankruptcy law for the contest of any payment by Guarantor as a preferential or fraudulent payment have expired, Guarantor knowingly and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which such Guarantor may now or hereafter have by and from Borrower and Borrower's successors and assigns, for any payments made by Guarantor to Lender, including without limitation, any rights which might allow Borrower, Borrower's successors and assigns or creditors, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of or for the benefit of Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender. Guarantor further waives any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor to proceed against Borrower.

(q)    **Joint and Several**. Guarantor's Liabilities shall be the joint and several obligations and liabilities of Guarantor, Borrower and any other guarantor of all or part of the Indebtedness or Obligations. Notwithstanding any provisions of this Agreement to the contrary, it is intended that the joint and several nature of the liability of Guarantor's Liabilities and the liens and security interests, if any, granted as security for the Indebtedness or Obligations, not constitute a fraudulent conveyance under the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time (a "Fraudulent Conveyance"). Consequently, if the liability of Guarantor for Guarantor's Liabilities, or any liens or security interests granted by Guarantor securing Guarantor's Liabilities would, but for the application of this sentence, constitute a Fraudulent Conveyance, the liability of Guarantor and the liens and security interests securing such liability shall be valid and enforceable only to the maximum extent that would not cause such liability or such lien or security interest to constitute a Fraudulent Conveyance.

(r)    **Unconditional Obligations**. The obligations of Guarantor shall be unconditional, irrespective of (i) the institution of any proceeding under the Bankruptcy Code, or any similar proceeding, by or against Guarantor or Borrower or Lender's election in any such proceeding of the application of Section 1111(b)(2) of the Bankruptcy Code; (ii) any borrowing or grant of a security interest by Borrower as debtor-in-possession, under Section 364 of the

Bankruptcy Code; (iii) the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of Lender's claim(s) for repayment of any of Guarantor's Liabilities; or (iv) any other circumstance other than payment in full of Guarantor's Liabilities which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(s)    **Governing Law**. THE TERMS OF THE LOAN AND THIS GUARANTY WERE EACH NEGOTIATED IN THE STATE OF ILLINOIS, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING LOAN TRANSACTION, INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. THEREFORE, THIS GUARANTY SHALL BE CONSTRUED AND INTERPRETED WITH, AND GOVERNED BY, THE INTERNAL LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO ILLINOIS CHOICE OF LAW PRINCIPLES.

(t)    **CONSENT TO JURISDICTION**. GUARANTOR ACKNOWLEDGES THAT LENDER'S PRINCIPAL OFFICE IS LOCATED IN CHICAGO, ILLINOIS AND THAT LENDER MAY BE IRREPARABLY HARMED IF REQUIRED TO INSTITUTE OR DEFEND ANY ACTION IN ANY JURISDICTION OTHER THAN THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION OR THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS. THEREFORE, GUARANTOR IRREVOCABLY: (A) AGREES THAT ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING TO THIS GUARANTY MAY BE BROUGHT ONLY IN THE CIRCUIT COURT OF COOK COUNTY OR FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION AT LENDER'S OPTION; (B) CONSENTS TO THE JURISDICTION OF EACH SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING; (C) WAIVES ANY OBJECTION WHICH GUARANTOR MAY HAVE TO THE LAYING OF VENUE IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY OF SUCH COURTS; AND (D) AGREES TO JOIN LENDER IN ANY PETITION FOR REMOVAL TO ANY OF SUCH COURTS.

(u)    **WAIVER OF JURY TRIAL**. GUARANTOR AND LENDER BY ITS ACCEPTANCE OF THIS GUARANTY, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE THIS GUARANTY OR BASED UPON OR ARISING OUT OF THE SUBJECT MATTER OF THIS GUARANTY. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTOR AND LENDER, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY

- 12 -

REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GUARANTOR AND LENDER EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS GUARANTY AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FURTHER DEALINGS.

8.    **Certain Provisions of the Loan Agreement**.    Without limiting Guarantor's Liabilities, Guarantor acknowledges and agrees to be personally bound by and liable for the performance of the provisions of Sections 9.10 and 9.21 of the Loan Agreement.

9.    **Limitation of Liability**.

(a)    Notwithstanding anything to the contrary herein, (i) Guarantor shall have no liability under this Guaranty until (A) an Event of Default under the Loan Agreement has occurred and (B) Lender has commenced the exercise of remedies under one or more of the Loan Documents and (ii) Guarantor's liability under this Guaranty shall be limited to an amount equal to the Deficiency (if any) plus Expenses.

(b)    "Deficiency" shall mean the positive difference, if any, obtained by subtracting from the Indebtedness either, at Lender's sole option, (i) the "as is" "where is" and "with all faults" value of the Property set forth in an appraisal performed in accordance with Lender's requirements and prepared by an MAI certified appraiser selected by Lender in its sole discretion after an Event of Default under the Loan Agreement, which appraisal shall determine the value of the Property as of the date of such appraisal or (ii) the amount received by Lender upon exercise of some or all, at Lender's discretion, of its remedies under the Mortgage and the other Loan Documents; provided that in no event shall the Deficiency exceed One Million Five Hundred Thousand Dollars ($1,500,000). Guarantor acknowledges and agrees that Lender may calculate the Deficiency under clause (i) above without any obligation to: (A) proceed against Borrower or any other guarantor or any other party primarily or secondarily obligated with respect to any of Guarantor's Liabilities; (B) resort to or exhaust any other remedy or any other security or collateral; or (C) foreclose on, take possession of or sell any of the collateral or security for Guarantor's Liabilities or enforce any other rights under any other Loan Document. In connection with any appraisal obtained under clause (i) above, (x) all related costs and expenses shall be deemed Expenses, (y) there shall be no assumption of restoration or refurbishment of any improvements and (z) the value shall be reduced by deducting the reasonable estimated closing costs relating to the sale of the Property including, without limitation, brokerage commissions, title policy expenses, tax prorations, escrow fees and other common charges incurred by a seller of real property.

- 13 -

(c)     Guarantor shall pay the Deficiency plus Expenses to Lender within ten (10) days of Lender's request therefor.  Any portion of the Deficiency or Expenses not paid to Lender within such ten (10) day period shall bear interest at the Default Rate until paid.

10.     **Net Operating Income Threshold.**  Guarantor shall have the right to request, by written notice delivered to Lender no more than once in any six (6) month period (each a "Threshold Test Request"), that Lender calculate the then current Net Operating Income pursuant to the terms of the Loan Agreement.  In the event that Guarantor delivers such a Threshold Test Request and Lender's calculation of the Net Operating Income is equal to or greater than $1,950,000 (the "Net Operating Income Threshold"), this Guaranty shall be of no further force and effect.  If an Event of Default occurs prior to Lender's determination pursuant to this section that the Net Operating Income is equal to or greater than the Net Operating Income Threshold, this Guaranty shall remain in full force and effect regardless of any future calculations of Net Operating Income.

11.     **Financial Covenant**.  Guarantor shall maintain (a) a tangible net worth, determined in accordance with sound accrual basis accounting principles consistently applied, of not less than $60,000,000; and (b) cash and readily marketable securities in an amount not less than $1,500,000 (collectively, the "Financial Requirements").  No later than thirty (30) days after the end of each calendar quarter and within sixty (60) days of the end of each calendar year, Guarantor shall submit financial statements meeting the requirements set forth in Section 5(a) above to demonstrate such Guarantor's compliance with the foregoing financial covenant. Failure to meet the Financial Requirements shall be an "Event of Default" under this Agreement and the Loan Agreement; provided if Guarantor fails to meet the Financial Requirements, it shall not be an Event of Default if, within ten (10) days after such failure, an Affiliate of Guarantor satisfactory to Lender in its sole discretion shall execute and deliver to Lender a guaranty agreement satisfactory to Lender in its reasonable discretion.  Lender's expenses in relation to providing such substitute guarantor, including any investigations as to the acceptability of the substitute and all legal costs reasonably incurred in connection with the replacement guaranty agreement, shall be paid by Borrower.

**[The remainder of this page is intentionally blank; signature page follows.]**

CH01/ 12462743.5

Bristol Court

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the day and year first above written.

COMMERCIAL VENTURES, INC.,
a Delaware corporation

By: _____

Print Name:  Richard Nathan

Its:  President

# EXHIBIT E

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement"), effective as of February 28, 2006, is made and delivered by ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation (the "Company"), to ORIX CAPITAL MARKETS, LLC, a Delaware limited liability company (the "Purchaser").

NOW THEREFORE, for Twenty Three Million Four Hundred Fifty Six Thousand Three Hundred Seventeen and 83/100 Dollars ($23,456,317.83) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company does hereby sell, convey, transfer, assign and deliver to the Purchaser, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Company's right, title and interest in and to all of the securities, interests, participations and other assets of the Company listed on Schedule A hereto (the "Purchased Assets"), including without limitation:

(a)     Any and all notes, certificates, instruments, securities and other documentary evidence of the Purchased Assets;

(b)     All receivables of the Company directly related to the Purchased Assets; and

(c)     All of the rights and interests of the Company under all contracts and other agreements to which the Company is a party or by which it is bound solely and directly related to the Purchased Assets, and all other rights and causes of action of every kind of the Company solely and directly related to the Purchased Assets.

The Purchaser hereby assumes and agrees to be bound by all of the liabilities and obligations of the Company directly arising from or directly related to the Purchased Assets that first occur or accrue from and after the date of this Agreement. The Company shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Purchased Assets received by the Purchaser or the Company for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Purchased Assets.

The Company and the Purchaser further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

CH01/ 12465125.2

Effective as of the date first written above.

ORIX REAL ESTATE CAPITAL, INC., a Delaware
corporation

By:

Name:   David R. Brown
Title:    President and CEO

AGREED AND ACCEPTED
as of the date first written above:

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company

By:

Name:   Edgar L. Smith, II
Title:    President and COO

CH01/ 12465125.2

**SCHEDULE A**

**PURCHASED ASSETS**

That certain Loan and Security Agreement dated as of February 28, 2006, by and between The Landings Florida, LLC, a Florida limited liability company ("**Borrower**"), and ORIX Real Estate Capital, Inc., a Delaware corporation ("**OREC**"), and all documents and agreements delivered in connection therewith, including but not limited to:

1.  Note, dated as of February 28, 2006, made by Borrower to the order of OREC in the original principal amount of $26,500,000.

2.  Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement, dated as of February 28, 2006, made by Borrower for the benefit of OREC.

3.  Assignment of Rents, Leases and Other Income dated as of February 28, 2006 by Borrower in favor of OREC.

4.  Authorization to File UCC Financing Statements dated as of February 28, 2006 made by Borrower to OREC.

5.  Guaranty (Payment), dated as of February 28, 2006, by Commercial Ventures, Inc., a Delaware corporation, for the benefit of OREC.

6.  Guaranty (Carveout), dated as of February 28, 2006, by Richard J. Nathan for the benefit of OREC.

7.  Environmental Indemnity Agreement, dated as of February 28, 2006, by Borrower and Richard J. Nathan to and for the benefit of OREC.

8.  Post-Closing Agreement, dated as of February 28, 2006, between Borrower and OREC.

9.  Agreement Re: Blocked Accounts dated as of February 28, 2006 made by and among Borrower, OREC and LaSalle Bank National Association.

10. Negative Pledge Agreement dated as of February 28, 2006 made by The Landings Florida Member, LLC in favor of OREC.

11. Subordination of Management Agreement and Waiver of Management Liens dated as of February 28, 2006 made by GREP Southeast, LLC-Management Series and Borrower in favor of OREC.

12. Collateral Assignment of Undertakings and Purchase Agreement dated as of February 28, 2006 by and between Borrower and OREC.

13. Letter to Lender dated as of February 28, 2006 from Borrower, Commercial Ventures, Inc. and Richard J. Nathan and countersigned by escrowee authorizing Lender to wire.

# EXHIBIT F

## FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT AND GUARANTY (PAYMENT) AND REAFFIRMATION OF GUARANTIES

THIS FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT AND GUARANTY (PAYMENT) AND REAFFIRMATION OF GUARANTIES (this "Amendment"), which is dated as of May ___, 2007, is by and between The Landings Florida, LLC, a Florida limited liability company ("Borrower"), ORIX Real Estate Capital, Inc., a Delaware corporation ("Lender") and Commercial Ventures, Inc., a Delaware corporation ("CVI") and Richard J. Nathan ("Nathan") (CVI and Nathan are collectively referred to herein as "Guarantors").

### RECITALS

A.     Whereas, Borrower and Lender have executed that certain Loan and Security Agreement dated February 28, 2006 ("Loan Agreement") in connection with a certain loan in the original principal amount of up to $26,500,000 ("Loan"). All capitalized terms used herein and not otherwise defined shall have the meanings given them in the Loan Agreement.

B.     As a condition of making the Loan, CVI executed that certain Guaranty (Payment) dated as of February 28, 2006 ("Payment Guaranty"), and Nathan executed that certain (i) Guaranty (Carveout) dated as of February 28, 2006 ("Carveout Guaranty"), and (ii) along with Borrower, that certain Environmental Indemnity Agreement dated as of February 28, 2006 ("Environmental Indemnity"). The Payment Guaranty, Carveout Guaranty and Environmental Indemnity are collectively referred to herein as the "Guaranties").

C.     Whereas, Borrower and Lender desire to amend the terms of the Loan Agreement as set forth herein, and CVI and Lender desire to amend the terms of the Payment Guaranty as set forth herein.

### AGREEMENT

NOW, THEREFORE, in consideration of (i) the facts set forth hereinabove (which are hereby incorporated into and made a part of this Amendment), (ii) the agreements by Lender to modify the Loan Agreement and the Payment Guaranty, as provided herein, (iii) the covenants and agreements contained herein, and (iv) for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.     Interest Holdback Deficiency.  Borrower acknowledges that there is presently a Deficiency with respect to the Interest Holdback. Pursuant to Section 5.2.4 of the Loan Agreement, Borrower agrees to deposit with Lender concurrently with the execution and delivery of this Amendment the sum of $300,000 ("Interest Deposit") to be held by Lender in accordance with the terms of said Section 5.2.4. Upon Lender's receipt of the Interest Deposit, Lender shall reallocate $200,000 from the CapEx Holdback to the Interest Holdback by reducing the line item for "Washer/Dryer connections" shown on Exhibit G to the Loan Agreement by $200,000 and by increasing the Interest Holdback by $200,000. Accordingly, Borrower and Lender agree that the Interest Holdback as defined in Section 1.1.4 of the Loan Agreement is

hereby amended to mean $600,000 and that Exhibit B and Exhibit G to the Loan Agreement are hereby deleted in their entirety and are replaced with Exhibit B and Exhibit G attached hereto. Borrower and Lender agree that any Monthly Interest Deficiency shall be funded first out of the Interest Deposit before Lender makes any further Advances out of the Interest Holdback.

2.    _Advances._  The following is hereby added as the final sentence to Section 3.2.1(b) of the Loan Agreement: "Notwithstanding anything contained in this Agreement to the contrary, in no event shall Lender be obligated to make Advances in any thirty (30) day period in an amount greater than $100,000."

3.    _Rebalancing._  The following paragraph is hereby added as Section 5.5 of the Loan Agreement:

5.5    **_Rebalancing._**  In the event the entire outstanding principal balance of the Loan, including all Accrued Interest and the Exit Fee, is not paid in full on or before October 31, 2007, Borrower shall deposit with Lender no later than October 31, 2007 an amount which, when added to the then unfunded amount of the Interest Holdback, shall cause the available amount of the Interest Holdback to equal $200,000.

4.    _Payment Guaranty._  Section 9(b) of the Payment Guaranty is hereby amended by deleting the phrase "One Million Five Hundred Thousand Dollars ($1,500,000)" and replacing it with the following: "One Million Seven Hundred Thousand Dollars ($1,700,000)."

5.    _Representations._  Borrower hereby represents, covenants and warrants to Lender as follows:

(a)    The representations and warranties in the Loan Agreement and the other Loan Documents are true and correct as of the date hereof.

(b)    There is currently no Event of Default or event which with notice or the passage of time or both would become an Event of Default under the Note, the Mortgage, the Loan Agreement or the other Loan Documents.

(c)    The Loan Documents are in full force and effect and, following the execution and delivery of this Amendment, they continue to be the legal, valid and binding obligations of Borrower enforceable in accordance with their respective terms, subject to limitations imposed by general principles of equity.

(d)    There has been no material adverse change in the financial condition of Borrower, Guarantors or any other party whose financial statement has been delivered to Lender in connection with the Loan from the date of the most recent financial statement received by Lender.

(e)    As of the date hereof, Borrower has no claims, counterclaims, defenses, or set-offs with respect to the Loan or the Loan Documents as modified herein.

(f)    Borrower is validly existing under the laws of the State of its formation or organization and has the requisite power and authority to execute and deliver this Amendment.

# EXHIBIT G

DrinkerBiddle&rdnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

n North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
ww.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

*Via Facsimile and Overnight Courier*

Mr. Richard J. Nathan
314 Cliffwood Drive
Los Angeles, CA 90049

Re:   $26,500,000 Loan ("Loan") to The Landings Florida, LLC ("Borrower") made by
ORIX Real Estate Capital, Inc.

Dear Mr. Nathan:

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc.,
for itself and on behalf of the holder of the Loan Documents (as hereinafter defined)
("Lender") with respect to the above-captioned Loan. In connection with the Loan, you
entered into that certain Guaranty (Carveout) ("Carveout Guaranty") dated as of February
28, 2006 for the benefit of Lender.

This letter is written to notify you that there are one or more Events of Default under the
Loan (a copy of Lender's notice to Borrower is enclosed for your reference). As
Guarantor under the Carveout Guaranty, you may currently have liability to Lender and
may become additionally liable to Lender in the future.

Lender reserves the right, in its sole and absolute discretion, at any time and from time to
time and without limitation of any reservations and limitations, to take any and all
actions, and to exercise any and all rights and remedies, in respect of the Carveout
Guaranty for any matters described therein (whether presently known or unknown to
Lender) as Lender may consider necessary, appropriate or useful. Lender's rights and
remedies include, without limitation, taking one or more actions against you and/or your
assets. Further, Lender will look to you for payment of any and all losses, damages,
costs, fees and expenses, including attorneys' fees, incurred by Lender and payment of all
other amounts that are or become due and payable under the Carveout Guaranty
(including, if applicable, repayment of all Indebtedness under the Loan), all of which are
hereby reserved by Lender. Nothing contained herein is intended to or shall limit or
restrict any rights or remedies available to Lender on account of the aforementioned
Events of Default under the Loan Documents (including, without limitation the Carveout
Guaranty), at law or in equity.

r & Reath LLP
Published 1849

Mr. Richard J. Nathan
October 9, 2007
Page 2

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438).

Sincerely,

Michael E. Mermall, Esq.

cc:    Brian Weinhart, Esq.
       Michael J. Moran, Esq.
       Daniel Palmer

CH02/ 22500748.1

The Landings Florida, LLC
November 5, 2007
Page 4

## **EXHIBIT D**

Letter dated October 9, 2007, from DBGC to Borrower and BAM

*[See attached]*

DrinkerBiddle. GardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*
91 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

*Via Facsimile and Overnight Courier*

The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn: Richard Nathan and Greg Beach

Brentwood Asset Management and
   Advisory Group LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025

Re:   Asset Management Agreement ("Agreement") between The Landings Florida, LLC
      ("Borrower") and Brentwood Asset Management and Advisory Group LLC ("BAM")
      dated February 28, 2006 regarding The Bristol Court Apartments, Norcross, Georgia
      ("Property")

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for
itself and on behalf of the holder of the Loan (as hereinafter defined) ("Lender") with respect
to that certain $26,500,000 loan ("Loan") made by Lender to Borrower.

You are hereby notified that there currently exist one or more Events of Default under the
Loan (a copy of Lender's notice to Borrower is enclosed for your reference). This letter is
written to notify Borrower and BAM that Lender is hereby immediately terminating the
Agreement pursuant to the terms of the Agreement.  A copy of the executed Agreement is
enclosed for your reference.

Borrower shall immediately cease making any payments to BAM under the Agreement, and
BAM shall accept no such payments.  Failure to comply with these instructions may permit
Lender to take additional action and to exercise any and all available rights and remedies as
Lender may consider necessary, appropriate or useful, including looking to Borrower and
BAM for payment of any and all losses, damages, costs, fees and expenses, including
attorneys' fees, incurred by Lender in connection with your failure to comply with these
instructions and the enforcement of Lender's rights under the Agreement, all of which are
hereby reserved by Lender.  Nothing contained herein is intended to or shall limit or restrict
any rights or remedies available to Lender on account of the aforementioned Events of
Default under the Loan Documents, at law or in equity.

In the event you have any questions concerning this letter, you may either contact the
undersigned or Daniel Palmer at Lender (312-669-6438).  Thank you for your cooperation
and immediate attention to this matter.

Sincerely,

Michael E. Mermall, Esq.

cc:   Michael J. Moran, Esq.
      Daniel Palmer

Drinker Biddle & Reath LLP
established 1849

The Landings Florida, LLC
November 5, 2007
Page 5

## EXHIBIT "E"

### Liens

1.  Materialman's and Mechanic's Claim of Lien by Century Turn Key, LLC vs. The Landings Florida, LLC, et al., filed March 7, 2007, recorded in GED Book 2063, page 183, Gwinnett County, Georgia Records.

2.  Materialman's and Mechanic's Claim of Lien by Eisner's Superior Flooring, Inc., vs. The Landings Florida, LLC, filed March 23, 2007, recorded in GED Book 2069, page 122, Gwinnett County, Georgia Records.

3.  Materialman's and Mechanic's Claim of Lien by Athens-Atlanta Asphalt Company, Inc., vs. The Landings Florida, LLC, et a., filed July 18, 2007, and recorded in GED Book 2124, page 268, Gwinnett County, Georgia Records.

4.  Materialman's and Mechanic's Claim of Lien by HGA Landscape Services, LLC vs. The Landings Florida, LLC, et al., filed September 24, 2007, and recorded in GED Book 2162, page 99, Gwinnett County, Georgia Records.

5.  Materialman's and Mechanic's Claim of Lien by Carpet South, Inc. vs. The Landings Florida, LLC, filed February 27, 2007, and recorded at GED Book 2057, page 44, Gwinnett County, Georgia Records, as affected by Notice of Suit Filed styled Carpet South, Inc. v. The Landings Florida, LLC, d/b/a Bristol Court Apartments, Civil Action No. 07C-09322-2, filed July 10, 2007, and recorded in GED Book 2120, page 155, aforesaid records.

6.  Materialman's and Mechanic's Claim of Lien by Southeastern Appliance & Lighting Company vs. The Landings Florida, LLC, filed March 28, 2007, and recorded at GED Book 2071, page 242, Gwinnett County, Georgia Records, as affected by Notice of Suit File styled The Climatic Corporation as assignee of Southeastern Appliance and Lighting Co., v. The Landings Florida, LLC, et al., Civil Action No. 07C-13229-6, filed September 18, 2007, and recorded in GED Book 2159, page 130, aforesaid records.

7.  Claim of Lien by Allsouth Renovations, Inc., vs. The Landings Florida, LLC, filed March 5, 2007, and recorded at GED Book 2061, page 242, Gwinnett County, Georgia Records, as affected by Notice of Filing of Action for Claim on Mechanic's and Materialman's Lien, styled Allsouth Renovations, Inc., vs. The Landings Florida, LLC, Civil Action File No. 07-C-06427-S6, filed May 14, 2007, and recorded at GED Book 2092, page 2, aforesaid records.

US2000 10419193.3

 

**package id**
0038956

**ship date**
Mon, Nov 05

**to**
Richard Nathan and Greg
    Beach
The Landings Florida, LLC
12100 Wilshire Blvd c/O
    Commercial Ventures, Inc.
Ste 250
Los Angeles , CA 90025-7117
US
4048156375

**residential address**
No

**return label**
No

**from**
Peter Glass  (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA  30309 US
6109

**billing**
ORIX CAPITAL MARKETS,
    LLC.ORIX / BRISTOL
    COURT
    APARTMENT...MENTS
(39456.350301)

**operator**
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

**create time**
11/05/07, 6:41PM

**vendor**
FedEx

**tracking number**
790867372934

**service**
FedEx Priority

**packaging**
FedEx Envelope

**signature**
Indirect signature - at or near
    address

**courtesy quote**
12.90
The courtesy quote does not reflect
fuel surcharge and does not
necessarily reflect all accessorial
charges.

### Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.




**package id**
0038961

**ship date**
Mon, Nov 05

**to**
Richard Nathan and Greg
Beach
Commercial Ventures, Inc.
12100 Wilshire Blvd
Ste 250
Los Angeles , CA  90025-7117
US
4048156375

**residential address**
No

**return label**
No

**from**
Peter Glass  (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA  30309 US
6109

**billing**
ORIX CAPITAL MARKETS,
LLC.ORIX / BRISTOL
COURT
APARTMENT...MENTS
(39456.350301)

**operator**
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

**create time**
11/05/07, 6:46PM

**vendor**
FedEx

**tracking number**
798302637231

**service**
FedEx Priority

**packaging**
FedEx Envelope

**signature**
Indirect signature - at or near
address

**courtesy quote**
12.90
*The courtesy quote does not reflect*
*fuel surcharge and does not*
*necessarily reflect all accessorial*
*charges.*

## Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

 

**package id**
0038959

**ship date**
Mon, Nov 05

**to**
Mr. Richard Nathan
314 Cliffwood Drive
Los Angeles , CA  90049  US
4048156375

**residential address**
No

**return label**
No

**from**
Peter  Glass  (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA  30309  US
6109

**billing**
ORIX CAPITAL MARKETS,
LLC.ORIX / BRISTOL
COURT
APARTMENT...MENTS
(39456.350301)

**operator**
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

**create time**
11/05/07, 6:45PM

**vendor**
FedEx

**tracking number**
798302636279

**service**
FedEx Priority

**packaging**
FedEx Envelope

**signature**
Indirect signature - at or near
address

**courtesy quote**
12.90
*The courtesy quote does not reflect
fuel surcharge and does not
necessarily reflect all accessorial
charges.*

## Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

 

**package id**
0038957

**ship date**
Mon, Nov 05

**to**
Brian Weinhart
Shumaker Steckbauer
Weinhart
333 S Hope St
Fl 36
Los Angeles , CA  90071-1406
US
4048156375

**residential address**
No

**return label**
No

**from**
Peter Glass  (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA  30309 US
6109

**billing**
ORIX CAPITAL MARKETS,
LLC.ORIX / BRISTOL
COURT
APARTMENT...MENTS
(39456.350301)

**operator**
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

**create time**
11/05/07, 6:43PM

**vendor**
FedEx

**tracking number**
798802386599

**service**
FedEx Priority

**packaging**
FedEx Envelope

**signature**
Indirect signature - at or near
address

**courtesy quote**
12.90
*The courtesy quote does not reflect
fuel surcharge and does not
necessarily reflect all accessorial
charges.*

## Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              1242
RECIPIENT ADDRESS     353503019131O2078497
DESTINATION ID
ST. TIME              11/05 20:08
TIME USE              05'15
PAGES SENT            18
RESULT                OK
```



# KILPATRICK STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/<br>PHONE NO. | FAX NO. |
|---|---|
| The Landings Florida, LLC<br>c/o Commercial Ventures, Inc.<br>12100 Wilshire Blvd., Suite 250<br>Los Angeles, California 90025<br>Attention: Richard Nathan and Greg Beach | (310) 207-8497 |

Peter B. Glass
**FROM**

18
**PAGES (WITH COVER)**

7213
**REFERENCE NO**

39456/350301
**CLIENT/MATTER NO.**

## PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.



**KILPATRICK**
**STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | FAX NO. |
|---|---|
| The Landings Florida, LLC c/o Commercial Ventures, Inc. 12100 Wilshire Blvd., Suite 250 Los Angeles, California 90025 Attention: Richard Nathan and Greg Beach | **(310) 207-8497** |

Peter B. Glass

**FROM**

18

PAGES (WITH COVER)

7213

REFERENCE NO

39456/350301

CLIENT/MATTER NO.

## PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

## COMMENTS

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER | |
|---|---|
| TRANSMISSION RECEIPT DATE/TIME: | |
| COMPLETED BY: | JOB CODE |

US2000 10425453.1

ATLANTA AUGUSTA CHARLOTTE LONDON NEW YORK RALEIGH STOCKHOLM WASHINGTON WINSTON-SALEM

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

TX/RX NO             1240
RECIPIENT ADDRESS    35350301913102078497
DESTINATION ID
ST. TIME             11/05 19:50
TIME USE             05'17
PAGES SENT           18
RESULT               OK
```



**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | |
|---|---|
| Mr. Richard J. Nathan<br>314 Cliffwood Drive<br>Los Angeles, California 90049 | **FAX NO.**<br>**(310) 207-8497** |

| Peter B. Glass | 18 |
|---|---|
| FROM | PAGES (WITH COVER) |
| 7213 | 39456/350301 |
| REFERENCE NO | CLIENT/MATTER NO. |

### PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.


# KILPATRICK
# STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | FAX NO. |
|---|---|
| Mr. Richard J. Nathan<br>314 Cliffwood Drive<br>Los Angeles, California 90049 | (310) 207-8497 |

Peter B. Glass
**FROM**

18
**PAGES (WITH COVER)**

7213
**REFERENCE NO**

39456/350301
**CLIENT/MATTER NO.**

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above.  If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited.  If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER | |
|---|---|
| TRANSMISSION RECEIPT DATE/TIME: | |
| COMPLETED BY: | JOB CODE |

US2000 10425466.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO                 1241
RECIPIENT ADDRESS        35350301913102078497
DESTINATION ID
ST. TIME                 11/05 19:59
TIME USE                 05'18
PAGES SENT                18
RESULT                   OK
```





# KILPATRICK
# STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/<br>PHONE NO. | FAX NO. |
|---|---|
| Commercial Ventures, Inc.<br>12100 Wilshire Blvd., Suite 250<br>Los Angeles, California 90025<br>Attention: Richard Nathan and Greg Beach | **(310) 207-8497** |

Peter B. Glass
FROM

18
PAGES (WITH COVER)

7213
REFERENCE NO

39456/350301
CLIENT/MATTER NO.

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.



KILPATRICK
STOCKTON LLP
Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | FAX NO. (310) 207-8497 |
|---|---|
| Commercial Ventures, Inc.<br>12100 Wilshire Blvd., Suite 250<br>Los Angeles, California 90025<br>Attention: Richard Nathan and Greg Beach | |

Peter B. Glass
FROM

18
PAGES (WITH COVER)

7213
REFERENCE NO

39456/350301
CLIENT/MATTER NO.

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER |
|---|
| TRANSMISSION RECEIPT DATE/TIME: |
| COMPLETED BY: _____  JOB CODE _____ |

US2000 10425457.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

```
************************
***   TX REPORT   ***
************************


TRANSMISSION OK

TX/RX NO              0857
RECIPIENT ADDRESS     353503019121322928 70
DESTINATION ID
ST. TIME              11/05 19:50
TIME USE              02'14
PAGES SENT            18
RESULT                OK
```



# KILPATRICK STOCKTON LLP

**Attorneys at Law**

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | FAX NO. |
|---|---|
| Shumaker Steckbauer Weinhart, 333 S. Hope Street, 36th Floor Los Angeles, California 90071 Attn: Brian Weinhart | **(213) 229-2870** |

| Peter B. Glass | 18 |
|---|---|
| FROM | PAGES (WITH COVER) |
| 7213 | 39456/350301 |
| REFERENCE NO | CLIENT/MATTER NO. |

## PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

## COMMENTS

Please see our today's letter transmitted herewith.



**KILPATRICK**
**STOCKTON** LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | FAX NO. |
|---|---|
| Shumaker Steckbauer Weinhart, 333 S. Hope Street, 36th Floor Los Angeles, California 90071 Attn: Brian Weinhart | (213) 229-2870 |

Peter B. Glass
**FROM**

18
**PAGES (WITH COVER)**

7213
**REFERENCE NO**

39456/350301
**CLIENT/MATTER NO.**

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER | | |
|---|---|---|
| TRANSMISSION RECEIPT DATE/TIME: | | |
| COMPLETED BY: | | JOB CODE |

US2000 10425463.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

# EXHIBIT H



# KILPATRICK STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
PGlass@KilpatrickStockton.com

**VIA OVERNIGHT COURIER SERVICE**
**FOR NEXT BUSINESS DAY DELIVERY**
**AND FASCIMILE (310) 207-8497**
The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, California 90025
Attention: Richard Nathan and Greg Beach

**VIA OVERNIGHT COURIER SERVICE**
**FOR NEXT BUSINESS DAY DELIVERY**
**AND FASCIMILE (310) 207-8497**
Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, California 90025
Attention: Richard Nathan and Greg Beach

**VIA OVERNIGHT COURIER SERVICE**
**FOR NEXT BUSINESS DAY DELIVERY**
**AND FASCIMILE (213) 229-2870**
Shumaker Steckbauer Weinhart,
333 S. Hope Street, 36th Floor
Los Angeles, California 90071
Attn: Brian Weinhart

**VIA OVERNIGHT COURIER SERVICE**
**FOR NEXT BUSINESS DAY DELIVERY**
**AND FASCIMILE (310) 207-8497**
Mr. Richard J. Nathan
314 Cliffwood Drive
Los Angeles, California 90049

Re:   Loan (the "*Loan*") in the original stated principal amount of $26,500,000.00, from ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation ("*Lender*") to THE LANDINGS FLORIDA, LLC, a Florida limited liability company ("*Borrower*"), closed as of February 28, 2006

Ladies and Gentlemen:

This firm, together with the firm of Drinker Bidddle Garnder Carton ("*DBGC*"), represents Lender with respect to the Loan and the transactions relating to the Loan.

Terms used herein, but which are not otherwise defined shall have the meanings ascribed thereto as set forth in that certain letter dated October 9, 2007 (the "*Borrower Default Notice*"), from DBGC to Borrower.  For your easy reference, a copy of the Borrower Default Notice is attached hereto as Exhibit A and is incorporated herein by this reference.

Lender is the owner and holder of the Loan and the Loan Documents.

In the Borrower Default Notice and in letters each dated October 9, 2007 and each from DBGC (collectively, the "*Other Default Notices*") to Borrower, to Commercial Ventures, Inc. ("*CVI*"), to Richard J. Nathan ("*Nathan*," and together with CVI, "*Guarantors*") and to

US2000 10419193.3

The Landings Florida, LLC
November 5, 2007
Page 2

Borrower and Brentwood Asset Management and Advisory Group, LLC ("*BAM*"), each of Borrower, CVI, Nathan and BAM were given notice that Events of Default under the Loan Documents had occurred and were continuing. For your easy reference, copies of each of the Other Default Notices are attached hereto as <u>Exhibit B</u>, <u>Exhibit C</u> and <u>Exhibit D</u>, respectively, and are by this reference incorporated herein..

The Events of Default described in the Borrower Default Notice are continuing, and other Defaults and/or Events of Default have occurred and are continuing, specifically including,(without limitation or prejudice to Lender's rights to assert any other Defaults and/or Events of Default not enumerated herein, the following: (a) Borrower failed to pay within five (5) days of the date due the amounts due and owing on October 1, 2007 under the Note and the other Loan Documents; (b) Borrower failed to pay the amounts due and owing on November 1, 2007 under the Note and the other Loan Documents; (c) Borrower suffered and permitted Transfers of portions of the Property and the Collateral as evidenced by the existence of the liens filed against and encumbering portions of the Property and the Collateral, specifically including, without limitation, those liens (collectively, the "*Specified Liens*") described on <u>Exhibit E</u> attached hereto and incorporated herein by this reference; (d) Borrower suffered and permitted mechanic's liens and other liens and claims to be filed and asserted against portions of the Property, specifically including, without limitation, the Specified Liens, and did not promptly discharge same after claims for liens and proceedings for the enforcement thereof were filed and commenced; (e) Borrower failed to pay all Impositions before the same became delinquent, specifically including, without limitation, 2007 ad valorem property taxes assessed by Gwinnett County, Georgia against portions of the Property which were due and payable no later than September 15, 2007; (f) Borrower suffered and permitted Transfers of portions of the Property and the Collateral as evidenced by the existence of the tax lien encumbering portions of the Property and the Collateral because Borrower failed to pay 2007 ad valorem property taxes assessed by Gwinnett County, Georgia against portions of the Property which were due and payable no later than September 15, 2007; (g) representations and warranties made and given pursuant to the First Amendment by Borrower were untrue in material respects at the time which such representations and warranties were made and affirmed and when such First Amendment was delivered because of the existence of those Specified Liens which were filed prior to the First Amendment.

Section 2.1 of the Note states:

"If (a) an Event of Default occurs or (b) the right to enforce the Mortgage shall accrue to the holder thereof, whether or not foreclosure proceedings have been commenced, then, at the election of the holder of this Note and without notice, the unpaid principal sum of this Note, together with accrued interest thereon, Additional Interest, if any, and all other fees and charges payable under the Loan Documents shall at once become immediately due and payable."

The Landings Florida, LLC
November 5, 2007
Page 3

Similarly, Section 6 of the Deed to Secure Debt states:

"Upon the occurrence of any Event of Default, then and in every such case the whole of the Secured Obligations shall, at once, at the option of Lender, become immediately due and payable without any presentment, demand, protest or notice of any kind. Without limiting the foregoing Grantor expressly acknowledges and affirms that any Transfer that is not permitted under the Loan Documents constitutes an Event of Default which would give rise to Lender's right to accelerate the Secured Obligations."

Events of Default having occurred and continuing, we, for and on behalf of Lender, hereby notify you that Lender has exercised its option to accelerate and declare due and immediately payable the unpaid principal sum of the Note, together with accrued interest thereon, Additional Interest, if any, and all other fees and charges payable under the Loan Documents and the whole of the Secured Obligations.

Section 2.3.4 of the Loan Agreement provides:

"If any payment due on any Schedule Payment Date or any other amount due hereunder (other than the principal amount due on the Maturity Date) is not made within ten (10) days of the Scheduled Payment Date, or, as applicable, ten (10) days (or such earlier time as may be specified herein) after request for payment by Lender, Lender, at its option and in addition to any other remedy available to Lender, may impose a late payment fee, which Borrower covenants to pay upon demand calculated at the rate of five percent (5%) of the amount of such delinquent payment or deposit [hereinafter referred to as "*Late Payment Fee*"]. Without limiting the foregoing, any late payment fee shall be paid without prejudice to the right of Lender to collect any other amounts provided to be paid upon an Event of Default, including without limitation any other amounts due at the Default Rate, or to declare a default hereunder under any of the other Loan Documents."

Demand is hereby made for payment of each Late Payment Fee due under Section 2.3.4 of the Loan Agreement.

Section 2.2 of the Note states as follows: "Following the occurrence of an Event of Default, the unpaid principal balance of the Loan shall bear interest at the Default Rate." Additionally, Section 2.3.1(c) of the Loan Agreement provides in relevant part:

"Following the occurrence of an Event of Default, interest shall be computed at,

The Landings Florida, LLC
November 5, 2007
Page 4

and Borrower shall pay interest on the unpaid principal balance of the Loan at, the Default Rate until such Event of Default has been cured to Lender's satisfaction. All other payments, reimbursements and other amounts due from Borrower to Lender under the Loan Documents not paid when due shall bear interest at the Default Rate from the date when due until the date when received by the Lender."

You are hereby notified that interest calculated at the Default Rate on the unpaid principal balance of the Loan began to accrue upon the occurrence of the first Event of Default and began to accrue on all other payments, reimbursements and other amounts due from Borrower to Lender under the Loan Documents when such amounts were not paid when due. In each case, interest shall continue to accrue at the Default Rate on such amounts until payment in full of the Loan and all Secured Obligations is received by Lender. Demand is hereby made for the payment of all amounts of accrued but unpaid interest calculated at the Default Rate due and payable in accordance with the terms of the Loan Documents.

Section 1.1.3(e) of the Loan Agreement provides that if the Loan is paid in full after the Lockout Period whether by prepayment or upon maturity, the "Exit Fee" is equal to "one percent (1%) of the Loan Amount less any portion thereof paid in connection with any previous prepayments." The maturity of the Loan having been accelerated as hereinabove provided, demand is hereby made for the payment of all Indebtedness due under the Loan Documents, specifically including, without limitation, the Exit Fee.

All of Lender's claims, demands and accruals regarding the Secured Obligations, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

Lender reserves the right to exercise, in such order as Lender elects, any one or more of the remedies available to Lender under the Loan Documents or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and remedies. Without limiting the generality of the foregoing, you are hereby notified that Lender shall commence non-judicial foreclosure proceedings against the Property. Please be further advised that no past or future delay or omission in the exercise of any right or remedy accruing to Lender as a result of any Default or any Event of Default is intended to constitute a waiver of any right or remedy accruing to Lender as a result of that Default or any other Default or that Event of Default or any other Event of Default.

Payment to Lender in an amount less than all amounts due under the Loan Documents, together with all interest accrued thereon at the Default Rate as aforesaid, should not be construed as an accord and satisfaction or as Lender's agreement to accept a lesser amount as payment in full of all amounts due under the Loan Documents. Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment

The Landings Florida, LLC
November 5, 2007
Page 5

may not be deemed to be an accord and satisfaction, and is not and shall not be deemed to be binding upon Lender. Lender may accept any such payment or check without prejudice to its rights to receive the balance of all amounts due under the Loan Documents or to pursue its remedies.

Please note that we have no obligation or duty to inform Borrower or Guarantors, or any other obligor under any of the other Loan Documents, of Lender's intention to exercise its rights and remedies. We are, however, doing so in this letter as an accommodation to Borrower and Guarantors. Borrower and Guarantors shall not be entitled to expect notice in the future of Lender's elections or specifications of Borrower's and Guarantors' obligations under any of the Loan Documents by reason of Lender's election to provide the notices and specifications set forth in this letter.

Neither this letter nor any statement by or on behalf of Lender as to the amounts due and owing under any of the Loan Documents: (i) shall constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity; or (ii) shall constitute an offer to settle or waive any rights of Lender under any of the Loan Documents.

Please accept this letter as notice to the addressees hereof that copies of all Notices to Lender under any of the Loan Documents should be sent to this firm, to the attention of the undersigned, as Lender's Counsel in addition to, and not in substitution for, DBGC. The address and facsimile number for this firm are set forth on the first page of this letter.

You are hereby notified that Lender shall strictly enforce the Loan Documents in accordance with their respective terms.

Sincerely,

Peter B. Glass

cc:    Mr. Chuck Crouch (via e-mail)
       Mr. Mark Pakes
       Michael E. Mermall, Esq.
       Tom Biafore, Esq.
       Bill McMillan, Esq.
       Lindsey M. Kesler, Esq.

US2000 10419193.3

# EXHIBIT A

Borrower Default Notice

*[See attached]*

# DrinkerBiddle ardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

1 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1600 phone
312-569-3000 fax
w.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

## *Via Facsimile and Overnight Courier*

The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn: Richard Nathan and Greg Beach

Re:  $26,500,000 Loan ("Loan") to The Landings Florida, LLC ("Borrower") made by
     ORIX Real Estate Capital, Inc.

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for
itself and on behalf of the holder of the Loan Documents (as hereinafter defined) ("Lender")
with respect to the above-captioned Loan. The Loan is evidenced and secured by, *inter alia*,
(i) a Note ("Note") in the amount of $26,500,000 dated as of February 28, 2006, (ii) a Deed
to Secure Debt, Assignment of Leases and Rents and Security Agreement ("Deed to Secure
Debt") dated as of February 28, 2006, (iii) a Loan and Security Agreement ("Loan
Agreement") dated as of February 28, 2006, (iv) a Guaranty (Payment) ("Payment
Guaranty") dated as of February 28, 2006, (v) a Guaranty (Carveout) ("Carveout Guaranty")
dated as of February 28, 2006, (vi) an Environmental Indemnity Agreement ("Environmental
Indemnity") dated as of February 28, 2006, (vii) a Subordination of Management Agreement
and Waiver of Management Liens ("Subordination of Management Agreement") dated as of
February 28, 2006, (viii) an Agreement Re: Blocked Accounts ("Blocked Account
Agreement") dated as of February 28, 2006, (ix) an Assignment of Rents, Leases and Other
Income ("Assignment of Rents") dated as of February 28, 2006, and (x) a Negative Pledge
Agreement ("Negative Pledge") dated as of February 28, 2006. The loan is further evidenced
by a First Amendment to Loan and Security Agreement and Guaranty (Payment) and
Reaffirmation of Guaranties ("First Amendment") dated as of May, 2007. The Note, Deed to
Secure Debt, Loan Agreement, Payment Guaranty, Carveout Guaranty, Environmental
Indemnity, Subordination of Management Agreement, Blocked Account Agreement,
Assignment of Rents, Negative Pledge, First Amendment and all other documents,
agreements, certificates or instruments evidencing or securing or which guaranty the Loan or
executed in connection with the Loan whether on or about the closing date of the Loan or
thereafter, and any modifications, renewals or extensions thereof shall hereinafter be referred
to as the "Loan Documents." All capitalized terms used herein and not otherwise defined
shall have the meanings given them in the Loan Agreement.

This letter constitutes Lender's notice to Borrower (and, via a copy of this letter to Richard J.
Nathan, the guarantor under the Carveout Guaranty, and, via a copy of this letter to
Commercial Ventures, Inc., the guarantor under the Payment Guaranty) of the occurrence
and existence of certain Events of Default under the terms of the Loan Documents. Among
and without prejudice to any other Defaults and/or Events of Default not enumerated herein,
Borrower has failed to pay monies due and owing under the Loan Documents and has failed

& Reath LLP
established 1849

The Landings Florida, LLC
October 9, 2007
Page 2

to cause all Revenues to be deposited to the Blocked Account. Other events may have occurred which constitute Events of Default under the Loan Documents, and Lender reserves the right to assert the existence of other and additional Events of Default, regardless of Lender's current knowledge of any such additional Events of Default.

Since the occurrence of the above-referenced Events of Default, interest on the entire unpaid balance of the Loan has been accruing at the Default Rate and will continue to do so as provided in the Loan Agreement. Furthermore, Lender reserves the right, in its sole and absolute discretion, at any time and from time to time and without limitation of any reservations and limitations, to take any and all other actions, and to exercise any and all other rights and remedies, in respect of the aforedescribed Events of Default and any other Event of Default (whether presently known or unknown to Lender) as Lender may consider necessary, appropriate or useful. Lender's rights and remedies include, without limitation, acceleration of the Loan and the Note and all Indebtedness thereunder, foreclosure under the Deed to Secure Debt, the charging of late fees, and other actions against the assets and properties of Borrower. Further, Lender will look to Borrower and the Guarantors for payment of any and all losses, damages, costs, fees and expenses, including attorneys' fees, incurred by Lender and payment of all other amounts that are or become due and payable under the Loan Documents, all of which are hereby reserved by Lender. Nothing contained herein is intended to or shall limit or restrict any rights or remedies available to Lender on account of the aforementioned Events of Default under the Loan Documents, at law or in equity.

Additionally, please be advised that Borrower remains obligated to cause all Revenues to be deposited into the Blocked Account.

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438).

Sincerely,

Michael B. Metnall, Esq.

cc:     Commercial Ventures, Inc.
        Richard J. Nathan
        Brian Weinhart, Esq.
        Michael J. Moran, Esq.
        Daniel Palmer

CH02/ 22500745.1

The Landings Florida, LLC
November 5, 2007
Page 2

## **EXHIBIT B**

Letter dated October 9, 2007, from DBGC to CVI

[*See attached*]

# DrinkerBiddle & ardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

1 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
w.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

*Via Facsimile and Overnight Courier*

Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn: Richard Nathan and Greg Beach

Re:   $26,500,000 Loan ("Loan") to The Landings Florida, LLC ("Borrower") made by
ORIX Real Estate Capital, Inc.

Gentlemen:

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for itself and on behalf of the holder of the Loan Documents (as hereinafter defined) ("Lender") with respect to the above-captioned Loan. In connection with the Loan, Commercial Ventures, Inc. ("CVI") entered into that certain Guaranty (Payment) ("Payment Guaranty") dated as of February 28, 2006 for the benefit of Lender.

This letter is written to notify CVI that there are one or more Events of Default under the Loan (a copy of Lender's notice to Borrower is enclosed for your reference). As Guarantor under the Payment Guaranty, CVI may currently have liability to Lender and may become additionally liable to Lender in the future.

Lender reserves the right, in its sole and absolute discretion, at any time and from time to time and without limitation of any reservations and limitations, to take any and all actions, and to exercise any and all rights and remedies, in respect of the Payment Guaranty for any matters described therein (whether presently known or unknown to Lender) as Lender may consider necessary, appropriate or useful. Lender's rights and remedies include, without limitation, taking one or more actions against the assets of CVI. Further, Lender will look to CVI for payment of any and all losses, damages, costs, fees and expenses, including attorneys' fees, incurred by Lender and payment of all other amounts that are or become due and payable under the Payment Guaranty (including repayment of certain Indebtedness under the Loan), all of which are hereby reserved by Lender. Nothing contained herein is intended to or shall limit or restrict any rights or remedies available to Lender on account of the aforementioned Events of Default under the Loan Documents (including, without limitation the Payment Guaranty), at law or in equity.

le & Reath LLP
established 1849

Commercial Ventures, Inc.
October 9, 2007
Page 2

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438).

Sincerely,

Michael E. Mermall, Esq.

cc:    Richard J. Nathan
       Brian Weinhart, Esq.
       Michael J. Moran, Esq.
       Daniel Palmer

CH02/22500747.1

The Landings Florida, LLC
November 5, 2007
Page 3

## **EXHIBIT C**

Letter dated October 9, 2007, from DBGC to Nathan

[*See attached*]

DrinkerBiddle     ardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
tdrinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

*Via Facsimile and Overnight Courier*

Mr. Richard J. Nathan
314 Cliffwood Drive
Los Angeles, CA 90049

Re:    $26,500,000 Loan ("Loan") to The Landings Florida, LLC ("Borrower") made by ORIX Real Estate Capital, Inc.

Dear Mr. Nathan:

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for itself and on behalf of the holder of the Loan Documents (as hereinafter defined) ("Lender") with respect to the above-captioned Loan. In connection with the Loan, you entered into that certain Guaranty (Carveout) ("Carveout Guaranty") dated as of February 28, 2006 for the benefit of Lender.

This letter is written to notify you that there are one or more Events of Default under the Loan (a copy of Lender's notice to Borrower is enclosed for your reference). As Guarantor under the Carveout Guaranty, you may currently have liability to Lender and may become additionally liable to Lender in the future.

Lender reserves the right, in its sole and absolute discretion, at any time and from time to time and without limitation of any reservations and limitations, to take any and all actions, and to exercise any and all rights and remedies, in respect of the Carveout Guaranty for any matters described therein (whether presently known or unknown to Lender) as Lender may consider necessary, appropriate or useful. Lender's rights and remedies include, without limitation, taking one or more actions against you and/or your assets. Further, Lender will look to you for payment of any and all losses, damages, costs, fees and expenses, including attorneys' fees, incurred by Lender and payment of all other amounts that are or become due and payable under the Carveout Guaranty (including, if applicable, repayment of all Indebtedness under the Loan), all of which are hereby reserved by Lender. Nothing contained herein is intended to or shall limit or restrict any rights or remedies available to Lender on account of the aforementioned Events of Default under the Loan Documents (including, without limitation the Carveout Guaranty), at law or in equity.

e & Reath LLP
Established 1849

Mr. Richard J. Nathan
October 9, 2007
Page 2

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438).

Sincerely,

Michael E. Mermall, Esq.

cc:    Brian Weinhart, Esq.
       Michael J. Moran, Esq.
       Daniel Palmer

CH02/22500748.1

The Landings Florida, LLC
November 5, 2007
Page 4

## EXHIBIT D

Letter dated October 9, 2007, from DBGC to Borrower and BAM

*[See attached]*

**DrinkerBiddle** GardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

1 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
w.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

*Via Facsimile and Overnight Courier*

The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn: Richard Nathan and Greg Beach

Brentwood Asset Management and
   Advisory Group LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025

Re:    Asset Management Agreement ("Agreement") between The Landings Florida, LLC
       ("Borrower") and Brentwood Asset Management and Advisory Group LLC ("BAM")
       dated February 28, 2006 regarding The Bristol Court Apartments, Norcross, Georgia
       ("Property")

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for itself and on behalf of the holder of the Loan (as hereinafter defined) ("Lender") with respect to that certain $26,500,000 loan ("Loan") made by Lender to Borrower.

You are hereby notified that there currently exist one or more Events of Default under the Loan (a copy of Lender's notice to Borrower is enclosed for your reference). This letter is written to notify Borrower and BAM that Lender is hereby immediately terminating the Agreement pursuant to the terms of the Agreement. A copy of the executed Agreement is enclosed for your reference.

Borrower shall immediately cease making any payments to BAM under the Agreement and BAM shall accept no such payments. Failure to comply with these instructions may permit Lender to take additional action and to exercise any and all available rights and remedies as Lender may consider necessary, appropriate or useful, including looking to Borrower and BAM for payment of any and all losses, damages, costs, fees and expenses, including attorneys' fees, incurred by Lender in connection with your failure to comply with these instructions and the enforcement of Lender's rights under the Agreement, all of which are hereby reserved by Lender. Nothing contained herein is intended to or shall limit or restrict any rights or remedies available to Lender on account of the aforementioned Events of Default under the Loan Documents, at law or in equity.

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438). Thank you for your cooperation and immediate attention to this matter.

Sincerely,

Michael E. Mermall, Esq.

cc:    Michael J. Moran, Esq.
       Daniel Palmer

The Landings Florida, LLC
November 5, 2007
Page 5

## EXHIBIT "E"

### Liens

1.  Materialman's and Mechanic's Claim of Lien by Century Turn Key, LLC vs. The Landings Florida, LLC, et al., filed March 7, 2007, recorded in GED Book 2063, page 183, Gwinnett County, Georgia Records.

2.  Materialman's and Mechanic's Claim of Lien by Eisner's Superior Flooring, Inc., vs. The Landings Florida, LLC, filed March 23, 2007, recorded in GED Book 2069, page 122, Gwinnett County, Georgia Records.

3.  Materialman's and Mechanic's Claim of Lien by Athens-Atlanta Asphalt Company, Inc., vs. The Landings Florida, LLC, et a., filed July 18, 2007, and recorded in GED Book 2124, page 268, Gwinnett County, Georgia Records.

4.  Materialman's and Mechanic's Claim of Lien by HGA Landscape Services, LLC vs. The Landings Florida, LLC, et al., filed September 24, 2007, and recorded in GED Book 2162, page 99, Gwinnett County, Georgia Records.

5.  Materialman's and Mechanic's Claim of Lien by Carpet South, Inc. vs. The Landings Florida, LLC, filed February 27, 2007, and recorded at GED Book 2057, page 44, Gwinnett County, Georgia Records, as affected by Notice of Suit Filed styled <u>Carpet South, Inc. v. The Landings Florida, LLC, d/b/a Bristol Court Apartments</u>, Civil Action No. 07C-09322-2, filed July 10, 2007, and recorded in GED Book 2120, page 155, aforesaid records.

6.  Materialman's and Mechanic's Claim of Lien by Southeastern Appliance & Lighting Company vs. The Landings Florida, LLC, filed March 28, 2007, and recorded at GED Book 2071, page 242, Gwinnett County, Georgia Records, as affected by Notice of Suit File styled <u>The Climatic Corporation as assignee of Southeastern Appliance and Lighting Co., v. The Landings Florida, LLC, et al.</u>, Civil Action No. 07C-13229-6, filed September 18, 2007, and recorded in GED Book 2159, page 130, aforesaid records.

7.  Claim of Lien by Allsouth Renovations, Inc., vs. The Landings Florida, LLC, filed March 5, 2007, and recorded at GED Book 2061, page 242, Gwinnett County, Georgia Records, as affected by Notice of Filing of Action for Claim on Mechanic's and Materialman's Lien, styled <u>Allsouth Renovations, Inc., vs. The Landings Florida, LLC</u>, Civil Action File No. 07-C-06427-S6, filed May 14, 2007, and recorded at GED Book 2092, page 2, aforesaid records.

# PS◆SHIP™



**package id**
0038956

**ship date**
Mon, Nov 05

**to**
Richard Nathan and Greg
  Beach
The Landings Florida, LLC
12100 Wilshire Blvd c/O
  Commercial Ventures, Inc.
Ste 250
Los Angeles , CA  90025-7117
  US
4048156375

**residential address**
No

**return label**
No

**from**
Peter Glass  (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA  30309 US
6109

**billing**
ORIX CAPITAL MARKETS,
  LLC.ORIX / BRISTOL
  COURT
  APARTMENT...MENTS
  (39456.350301)

**operator**
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

**create time**
11/05/07, 6:41PM

**vendor**
FedEx

**tracking number**
790867372934

**service**
FedEx Priority

**packaging**
FedEx Envelope

**signature**
Indirect signature - at or near
  address

**courtesy quote**
12.90
*The courtesy quote does not reflect
fuel surcharge and does not
necessarily reflect all accessorial
charges.*

## Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

 

**package id**
0038961

**ship date**
Mon, Nov 05

**to**
Richard Nathan and Greg
   Beach
Commercial Ventures, Inc.
12100 Wilshire Blvd
Ste 250
Los Angeles , CA 90025-7117
US
4048156375

**residential address**
No

**return label**
No

**from**
Peter Glass (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA 30309 US
6109

**billing**
ORIX CAPITAL MARKETS,
LLC.ORIX / BRISTOL
COURT
APARTMENT...MENTS
(39456.350301)

**operator**
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

**create time**
11/05/07, 6:46PM

**vendor**
FedEx

**tracking number**
798302637231

**service**
FedEx Priority

**packaging**
FedEx Envelope

**signature**
Indirect signature - at or near
   address

**courtesy quote**
12.90
The courtesy quote does not reflect
fuel surcharge and does not
necessarily reflect all accessorial
charges.

## Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

 

**package id**
0038959

**ship date**
Mon, Nov 05

**to**
Mr. Richard Nathan
314 Cliffwood Drive
Los Angeles , CA  90049  US
4048156375

**residential address**
No

**return label**
No

**from**
Peter Glass  (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA  30309  US
6109

**billing**
ORIX CAPITAL MARKETS,
LLC.ORIX / BRISTOL
COURT
APARTMENT...MENTS
(39456.350301)

**operator**
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

**create time**
11/05/07, 6:45PM

**vendor**
FedEx

**tracking number**
798302636279

**service**
FedEx Priority

**packaging**
FedEx Envelope

**signature**
Indirect signature - at or near
address

**courtesy quote**
12.90
*The courtesy quote does not reflect
fuel surcharge and does not
necessarily reflect all accessorial
charges.*

### Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

# PS◈SHIP™



*package id*
0038957

*ship date*
Mon, Nov 05

*to*
Brian Weinhart
Shumaker Steckbauer
   Weinhart
333 S Hope St
Fl 36
Los Angeles , CA 90071-1406
US
4048156375

*residential address*
No

*return label*
No

*from*
Peter Glass (7213)
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta , GA 30309 US
6109

*billing*
ORIX CAPITAL MARKETS,
LLC.ORIX / BRISTOL
COURT
APARTMENT...MENTS
(39456.350301)

*operator*
Debra Grant
404 815 6375
dGrant@kilpatrickstockton.com

*create time*
11/05/07, 6:43PM

*vendor*
FedEx

*tracking number*
798802386599

*service*
FedEx Priority

*packaging*
FedEx Envelope

*signature*
Indirect signature - at or near
address

*courtesy quote*
12.90
*The courtesy quote does not reflect
fuel surcharge and does not
necessarily reflect all accessorial
charges.*

## _egal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim n excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot xceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable nstruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the cipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and onditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-000-463-3339).

©2003-2007 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
Other product and company names listed are trademarks or trade names of their respective companies.

```
***********************
***    TX REPORT    ***
***********************

TRANSMISSION OK

TX/RX NO              1242
RECIPIENT ADDRESS     35350301913102078497
DESTINATION ID
ST. TIME              11/05 20:08
TIME USE              05'15
PAGES SENT            18
RESULT                OK
```





# KILPATRICK
# STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

November 5, 2007

# FAX

| RECIPIENT/<br>PHONE NO. | FAX NO. |
|---|---|
| The Landings Florida, LLC<br>c/o Commercial Ventures, Inc.<br>12100 Wilshire Blvd., Suite 250<br>Los Angeles, California 90025<br>Attention: Richard Nathan and Greg Beach | **(310) 207-8497** |

| Peter B. Glass | 18 |
|---|---|
| FROM | PAGES (WITH COVER) |
| 7213 | 39456/350301 |
| REFERENCE NO. | CLIENT/MATTER NO. |

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

CONFIDENTIALITY NOTE:
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.



**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | FAX NO. |
|---|---|
| The Landings Florida, LLC<br>c/o Commercial Ventures, Inc.<br>12100 Wilshire Blvd., Suite 250<br>Los Angeles, California 90025<br>Attention: Richard Nathan and Greg Beach | **(310) 207-8497** |

Peter B. Glass
FROM

18
PAGES (WITH COVER)

7213
REFERENCE NO

39456/350301
CLIENT/MATTER NO.

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER | |
|---|---|
| TRANSMISSION RECEIPT DATE/TIME: | |
| COMPLETED BY: | JOB CODE |

US2000 10425453.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

```
***********************
***   TX REPORT   ***
***********************


TRANSMISSION OK

TX/RX NO               1240
RECIPIENT ADDRESS      35350301913102078497
DESTINATION ID
ST. TIME               11/05 19:50
TIME USE               05'17
PAGES SENT             18
RESULT                 OK
```



# KILPATRICK
## STOCKTON LLP
Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/<br>PHONE NO. | FAX NO. |
|---|---|
| Mr. Richard J. Nathan<br>314 Cliffwood Drive<br>Los Angeles, California 90049 | (310) 207-8497 |

Peter B. Glass
FROM

18
PAGES (WITH COVER)

7213
REFERENCE NO.

39456/350301
CLIENT/MATTER NO.

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

CONFIDENTIALITY NOTE:
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

COMMENTS

Please see our today's letter transmitted herewith.



**KILPATRICK STOCKTON** LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/<br>PHONE NO. | FAX NO. |
|---|---|
| Mr. Richard J. Nathan<br>314 Cliffwood Drive<br>Los Angeles, California 90049 | **(310) 207-8497** |

| Peter B. Glass | 18 |
|---|---|
| FROM | PAGES (WITH COVER) |

| 7213 | 39456/350301 |
|---|---|
| REFERENCE NO | CLIENT/MATTER NO. |

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER | |
|---|---|
| TRANSMISSION RECEIPT DATE/TIME: | |
| COMPLETED BY: | JOB CODE |

US2000 10425466.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO                 1241
RECIPIENT ADDRESS        35350301913102078497
DESTINATION ID
ST. TIME                 11/05 19:59
TIME USE                 05'18
PAGES SENT               18
RESULT                   OK
```



# KILPATRICK STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

November 5, 2007

# FAX

| RECIPIENT/<br>PHONE NO. | FAX NO. |
|---|---|
| Commercial Ventures, Inc.<br>12100 Wilshire Blvd., Suite 250<br>Los Angeles, California 90025<br>Attention: Richard Nathan and Greg Beach | (310) 207-8497 |

| | |
|---|---|
| Peter B. Glass | 18 |
| FROM | PAGES (WITH COVER) |
| 7213 | 39456/350301 |
| REFERENCE NO | CLIENT/MATTER NO. |

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.



# KILPATRICK STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | FAX NO. (310) 207-8497 |
|---|---|
| Commercial Ventures, Inc. 12100 Wilshire Blvd., Suite 250 Los Angeles, California 90025 Attention: Richard Nathan and Greg Beach | |

| Peter B. Glass | 18 |
|---|---|
| FROM | PAGES (WITH COVER) |

| 7213 | 39456/350301 |
|---|---|
| REFERENCE NO | CLIENT/MATTER NO. |

## PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above.  If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited.  If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER |
|---|
| TRANSMISSION RECEIPT DATE/TIME: _____ |
| COMPLETED BY: _____    JOB CODE _____ |

US2000 10425457.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO                0857
RECIPIENT ADDRESS       35350301912132292870
DESTINATION ID
ST. TIME                11/05 19:50
TIME USE                02'14
PAGES SENT              18
RESULT                  OK
```



# KILPATRICK STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

# FAX

| RECIPIENT/ PHONE NO. | | FAX NO. |
|---|---|---|
| Shumaker Steckbauer Weinhart, 333 S. Hope Street, 36th Floor Los Angeles, California 90071 Attn: Brian Weinhart | | (213) 229-2870 |

Peter B. Glass
FROM

18
PAGES (WITH COVER)

7213
REFERENCE NO

39456/350301
CLIENT/MATTER NO.

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

**CONFIDENTIALITY NOTE:**
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

**COMMENTS**

Please see our today's letter transmitted herewith.

 **KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

November 5, 2007

# FAX

| RECIPIENT/<br>PHONE NO. | FAX NO. |
|---|---|
| Shumaker Steckbauer Weinhart,<br>333 S. Hope Street, 36th Floor<br>Los Angeles, California 90071<br>Attn: Brian Weinhart | (213) 229-2870 |

Peter B. Glass
FROM

18
PAGES (WITH COVER)

7213
REFERENCE NO

39456/350301
CLIENT/MATTER NO.

**PLEASE CALL 404 815 6497 IF YOU HAVE DIFFICULTY WITH THIS TRANSMISSION.**

CONFIDENTIALITY NOTE:
The information contained in this fax message is being transmitted to and is intended for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby advised that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify us by telephone and destroy this fax message.

COMMENTS

Please see our today's letter transmitted herewith.

| TO BE COMPLETED BY KS OPERATIONS CENTER | |
|---|---|
| TRANSMISSION RECEIPT DATE/TIME: _____ | |
| COMPLETED BY: _____ | JOB CODE _____ |

US2000 10425463.1

# EXHIBIT I

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement"), effective as of November 5, 2007, is made and delivered by ORIX CAPITAL MARKETS, LLC, a Delaware limited liability company (the "Assignor"), to ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation (the "Assignee").

NOW THEREFORE, for Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor does hereby sell, convey, transfer, assign and deliver to the Assignee, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Assignor's right, title and interest in and to all of the securities, interests, participations and other assets of the Assignor listed and described in Schedule A of that certain Assignment and Assumption Agreement, dated as of February 28, 2006 (a copy of which is attached hereto as Exhibit A), between Assignee and Assignor (the "Assigned Assets"), including without limitation:

    (a)    Any and all notes, certificates, instruments, securities and other documentary evidence of the Assigned Assets;

    (b)    All receivables of the Assignor directly related to the Assigned Assets; and

    (c)    All of the rights and interests of the Assignor under all contracts and other agreements to which the Assignor is a party or by which it is bound solely and directly related to the Assigned Assets, and all other rights and causes of action of every kind of the Assignor solely and directly related to the Assigned Assets.

The Assignee hereby assumes and agrees to be bound by all of the liabilities and obligations of the Assignor directly arising from or directly related to the Assigned Assets that first occur or accrue from and after the date of this Agreement. The Assignor shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Assigned Assets received by the Assignee or the Assignor for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Assigned Assets.

The Assignor and the Assignee further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

For the purposes of this Agreement, signatures transmitted by facsimile or pdf. (e-mail) shall have the same force and effect as original signatures.

[SIGNATURES ON FOLLOWING PAGE]

Effective as of the date first written above.

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company

By: _____
    Name: Jeffrey Yeckin
    Title: President and CEO

AGREED AND ACCEPTED
as of the date first written above:

ORIX REAL ESTATE CAPITAL, INC.,
a Delaware corporation

By: _____
    Name:  David R. Brown
    Title:   President and CEO

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement"), effective as of February 28, 2006, is made and delivered by ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation (the "Company"), to ORIX CAPITAL MARKETS, LLC, a Delaware limited liability company (the "Purchaser").

NOW THEREFORE, for Twenty Three Million Four Hundred Fifty Six Thousand Three Hundred Seventeen and 83/100 Dollars ($23,456,317.83) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company does hereby sell, convey, transfer, assign and deliver to the Purchaser, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Company's right, title and interest in and to all of the securities, interests, participations and other assets of the Company listed on Schedule A hereto (the "Purchased Assets"), including without limitation:

(a)    Any and all notes, certificates, instruments, securities and other documentary evidence of the Purchased Assets;

(b)    All receivables of the Company directly related to the Purchased Assets; and

(c)    All of the rights and interests of the Company under all contracts and other agreements to which the Company is a party or by which it is bound solely and directly related to the Purchased Assets, and all other rights and causes of action of every kind of the Company solely and directly related to the Purchased Assets.

The Purchaser hereby assumes and agrees to be bound by all of the liabilities and obligations of the Company directly arising from or directly related to the Purchased Assets that first occur or accrue from and after the date of this Agreement. The Company shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Purchased Assets received by the Purchaser or the Company for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Purchased Assets.

The Company and the Purchaser further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

CH01/ 12465125.2

Effective as of the date first written above.

ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation

By: _____

    Name:  David R. Brown
    Title:   President and CEO

AGREED AND ACCEPTED
as of the date first written above:

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company

By: _____

    Name:  Edgar L. Smith, II
    Title:   President and COO

CH01/ 12465125.2

**SCHEDULE A**

**PURCHASED ASSETS**

That certain Loan and Security Agreement dated as of February 28, 2006, by and between The Landings Florida, LLC, a Florida limited liability company ("Borrower"), and ORIX Real Estate Capital, Inc., a Delaware corporation ("OREC"), and all documents and agreements delivered in connection therewith, including but not limited to:

1.  Note, dated as of February 28, 2006, made by Borrower to the order of OREC in the original principal amount of $26,500,000.

2.  Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement, dated as of February 28, 2006, made by Borrower for the benefit of OREC.

3.  Assignment of Rents, Leases and Other Income dated as of February 28, 2006 by Borrower in favor of OREC.

4.  Authorization to File UCC Financing Statements dated as of February 28, 2006 made by Borrower to OREC.

5.  Guaranty (Payment), dated as of February 28, 2006, by Commercial Ventures, Inc., a Delaware corporation, for the benefit of OREC.

6.  Guaranty (Carveout), dated as of February 28, 2006, by Richard J. Nathan for the benefit of OREC.

7.  Environmental Indemnity Agreement, dated as of February 28, 2006, by Borrower and Richard J. Nathan to and for the benefit of OREC.

8.  Post-Closing Agreement, dated as of February 28, 2006, between Borrower and OREC.

9.  Agreement Re: Blocked Accounts dated as of February 28, 2006 made by and among Borrower, OREC and LaSalle Bank National Association.

10. Negative Pledge Agreement dated as of February 28, 2006 made by The Landings Florida Member, LLC in favor of OREC.

11. Subordination of Management Agreement and Waiver of Management Liens dated as of February 28, 2006 made by GREP Southeast, LLC-Management Series and Borrower in favor of OREC.

12. Collateral Assignment of Undertakings and Purchase Agreement dated as of February 28, 2006 by and between Borrower and OREC.

13. Letter to Lender dated as of February 28, 2006 from Borrower, Commercial Ventures, Inc. and Richard J. Nathan and countersigned by escrowee authorizing Lender to wire.

# EXHIBIT J

## ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Agreement**"), effective as of November 30, 2007, is made and delivered by **ORIX REAL ESTATE CAPITAL, INC.**, a Delaware corporation (the "**Assignor**"), to **ORIX CAPITAL MARKETS, LLC**, a Delaware limited liability company (the "**Assignee**").

**NOW THEREFORE**, for Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor does hereby sell, convey, transfer, assign and deliver to the Assignee, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Assignor's right, title and interest in and to all of the securities, interests, participations and other assets of the Assignor listed and described in Schedule A of that certain Assignment and Assumption Agreement, dated as of February 28, 2006 (a copy of which is attached hereto as Exhibit A)(the "**Initial Assignment**"), between Assignee and Assignor (the "**Assigned Assets**"), including without limitation:

    (a)    Any and all notes, certificates, instruments, securities and other documentary evidence of the Assigned Assets;

    (b)    All receivables of the Assignor directly related to the Assigned Assets; and

    (c)    All of the rights and interests of the Assignor under all contracts and other agreements to which the Assignor is a party or by which it is bound solely and directly related to the Assigned Assets, and all other rights and causes of action of every kind of the Assignor solely and directly related to the Assigned Assets.

The Assigned Assets initially were assigned and transferred by Assignor to Assignee pursuant to the Initial Assignment. Thereafter, pursuant to that certain Assignment and Assumption Agreement, dated as of November 5, 2007, between Assignee and Assignor (a copy of which is attached hereto as Exhibit B), the Assigned Assets were transferred and conveyed by Assignee back to Assignor. Assignor now desires, pursuant to this Agreement, to again assign and transfer to Assignee the Assigned Assets.

The Assignee hereby assumes and agrees to be bound by all of the liabilities and obligations of the Assignor directly arising from or directly related to the Assigned Assets that first occur or accrue from and after the date of this Agreement. The Assignor shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Assigned Assets received by the Assignee or the Assignor for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Assigned Assets.

The Assignor and the Assignee further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

For the purposes of this Agreement, signatures transmitted by facsimile or pdf. (e-mail) shall have the same force and effect as original signatures.

[SIGNATURES ON FOLLOWING PAGE]

Effective as of the date first written above.

ORIX REAL ESTATE CAPITAL, INC.,
a Delaware corporation

By:_____
        Name:   David R. Brown
        Title:     President and CEO


AGREED AND ACCEPTED
as of the date first written above:

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company


By:_____
        Name:_____
        Title:_____

Effective as of the date first written above.

ORIX REAL ESTATE CAPITAL, INC.,
a Delaware corporation

By: _____

Name:   David R. Brown
Title:    President and CEO


**AGREED AND ACCEPTED**
as of the date first written above:

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company

By: _____

Name: _____
Title: _____

<u>EXHIBIT A</u>

<u>FEBRUARY 28, 2006 ASSIGNMENT AND ASSUMPTION AGREEMENT</u>

[SEE ATTACHED]

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement"), effective as of February 28, 2006, is made and delivered by ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation (the "Company"), to ORIX CAPITAL MARKETS, LLC, a Delaware limited liability company (the "Purchaser").

NOW THEREFORE, for Twenty Three Million Four Hundred Fifty Six Thousand Three Hundred Seventeen and 83/100 Dollars ($23,456,317.83) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company does hereby sell, convey, transfer, assign and deliver to the Purchaser, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Company's right, title and interest in and to all of the securities, interests, participations and other assets of the Company listed on Schedule A hereto (the "Purchased Assets"), including without limitation:

(a)     Any and all notes, certificates, instruments, securities and other documentary evidence of the Purchased Assets;

(b)     All receivables of the Company directly related to the Purchased Assets; and

(c)     All of the rights and interests of the Company under all contracts and other agreements to which the Company is a party or by which it is bound solely and directly related to the Purchased Assets, and all other rights and causes of action of every kind of the Company solely and directly related to the Purchased Assets.

The Purchaser hereby assumes and agrees to be bound by all of the liabilities and obligations of the Company directly arising from or directly related to the Purchased Assets that first occur or accrue from and after the date of this Agreement. The Company shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Purchased Assets received by the Purchaser or the Company for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Purchased Assets.

The Company and the Purchaser further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

CH01/ 12465125.2

Effective as of the date first written above.

ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation

By: _____

Name:  David R. Brown
Title:    President and CEO

AGREED AND ACCEPTED
as of the date first written above:

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company

By: _____

Name:  Edgar L. Smith, II
Title:    President and COO

CH01/ 12465125.2

## SCHEDULE A

## PURCHASED ASSETS

That certain Loan and Security Agreement dated as of February 28, 2006, by and between The Landings Florida, LLC, a Florida limited liability company ("Borrower"), and ORIX Real Estate Capital, Inc., a Delaware corporation ("OREC"), and all documents and agreements delivered in connection therewith, including but not limited to:

1. Note, dated as of February 28, 2006, made by Borrower to the order of OREC in the original principal amount of $26,500,000.

2. Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement, dated as of February 28, 2006, made by Borrower for the benefit of OREC.

3. Assignment of Rents, Leases and Other Income dated as of February 28, 2006 by Borrower in favor of OREC.

4. Authorization to File UCC Financing Statements dated as of February 28, 2006 made by Borrower to OREC.

5. Guaranty (Payment), dated as of February 28, 2006, by Commercial Ventures, Inc., a Delaware corporation, for the benefit of OREC.

6. Guaranty (Carveout), dated as of February 28, 2006, by Richard J. Nathan for the benefit of OREC.

7. Environmental Indemnity Agreement, dated as of February 28, 2006, by Borrower and Richard J. Nathan to and for the benefit of OREC.

8. Post-Closing Agreement, dated as of February 28, 2006, between Borrower and OREC.

9. Agreement Re: Blocked Accounts dated as of February 28, 2006 made by and among Borrower, OREC and LaSalle Bank National Association.

10. Negative Pledge Agreement dated as of February 28, 2006 made by The Landings Florida Member, LLC in favor of OREC.

11. Subordination of Management Agreement and Waiver of Management Liens dated as of February 28, 2006 made by GREP Southeast, LLC-Management Series and Borrower in favor of OREC.

12. Collateral Assignment of Undertakings and Purchase Agreement dated as of February 28, 2006 by and between Borrower and OREC.

13. Letter to Lender dated as of February 28, 2006 from Borrower, Commercial Ventures, Inc. and Richard J. Nathan and countersigned by escrowee authorizing Lender to wire.

**EXHIBIT B**

**NOVEMBER 5, 2007 ASSIGNMENT AND ASSUMPTION AGREEMENT**

[SEE ATTACHED]

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement"), effective as of November 5, 2007, is made and delivered by ORIX CAPITAL MARKETS, LLC, a Delaware limited liability company (the "Assignor"), to ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation (the "Assignee").

NOW THEREFORE, for Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor does hereby sell, convey, transfer, assign and deliver to the Assignee, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Assignor's right, title and interest in and to all of the securities, interests, participations and other assets of the Assignor listed and described in Schedule A of that certain Assignment and Assumption Agreement, dated as of February 28, 2006 (a copy of which is attached hereto as Exhibit A), between Assignee and Assignor (the "Assigned Assets"), including without limitation:

(a)     Any and all notes, certificates, instruments, securities and other documentary evidence of the Assigned Assets;

(b)     All receivables of the Assignor directly related to the Assigned Assets; and

(c)     All of the rights and interests of the Assignor under all contracts and other agreements to which the Assignor is a party or by which it is bound solely and directly related to the Assigned Assets, and all other rights and causes of action of every kind of the Assignor solely and directly related to the Assigned Assets.

The Assignee hereby assumes and agrees to be bound by all of the liabilities and obligations of the Assignor directly arising from or directly related to the Assigned Assets that first occur or accrue from and after the date of this Agreement. The Assignor shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Assigned Assets received by the Assignee or the Assignor for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Assigned Assets.

The Assignor and the Assignee further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

For the purposes of this Agreement, signatures transmitted by facsimile or pdf. (e-mail) shall have the same force and effect as original signatures.

[SIGNATURES ON FOLLOWING PAGE]

Effective as of the date first written above.

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company

By: _____

Name: Jeffrey Yackin

Title: President and CEO


AGREED AND ACCEPTED
as of the date first written above:

ORIX REAL ESTATE CAPITAL, INC.,
a Delaware corporation

By: _____

Name:   David R. Brown

Title:    President and CEO

Effective as of the date first written above.

**ORIX CAPITAL MARKETS, LLC,**
a Delaware limited liability company


By:_____
    Name:_____
    Title:_____

**AGREED AND ACCEPTED**
as of the date first written above:

**ORIX REAL ESTATE CAPITAL, INC.,**
a Delaware corporation

By:_____
    Name:  David R. Brown
    Title:    President and CEO

## EXHIBIT A

### FEBRUARY 28, 2006 ASSIGNMENT AND ASSUMPTION AGREEMENT

[SEE ATTACHED]

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement"), effective as of February 28, 2006, is made and delivered by ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation (the "Company"), to ORIX CAPITAL MARKETS, LLC, a Delaware limited liability company (the "Purchaser").

NOW THEREFORE, for Twenty Three Million Four Hundred Fifty Six Thousand Three Hundred Seventeen and 83/100 Dollars ($23,456,317.83) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company does hereby sell, convey, transfer, assign and deliver to the Purchaser, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Company's right, title and interest in and to all of the securities, interests, participations and other assets of the Company listed on Schedule A hereto (the "Purchased Assets"), including without limitation:

(a)    Any and all notes, certificates, instruments, securities and other documentary evidence of the Purchased Assets;

(b)    All receivables of the Company directly related to the Purchased Assets; and

(c)    All of the rights and interests of the Company under all contracts and other agreements to which the Company is a party or by which it is bound solely and directly related to the Purchased Assets, and all other rights and causes of action of every kind of the Company solely and directly related to the Purchased Assets.

The Purchaser hereby assumes and agrees to be bound by all of the liabilities and obligations of the Company directly arising from or directly related to the Purchased Assets that first occur or accrue from and after the date of this Agreement. The Company shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Purchased Assets received by the Purchaser or the Company for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Purchased Assets.

The Company and the Purchaser further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

CH01/ 12465125.2

Effective as of the date first written above.

ORIX REAL ESTATE CAPITAL, INC., a Delaware
corporation

By: _____

    Name:  David R. Brown
    Title:   President and CEO


AGREED AND ACCEPTED
as of the date first written above:

ORIX CAPITAL MARKETS, LLC,
a Delaware limited liability company

By: _____

    Name:  Edgar L. Smith, II
    Title:   President and COO

CH01/ 12465125.2

**SCHEDULE A**

**PURCHASED ASSETS**

That certain Loan and Security Agreement dated as of February 28, 2006, by and between The Landings Florida, LLC, a Florida limited liability company ("Borrower"), and ORIX Real Estate Capital, Inc., a Delaware corporation ("OREC"), and all documents and agreements delivered in connection therewith, including but not limited to:

1.  Note, dated as of February 28, 2006, made by Borrower to the order of OREC in the original principal amount of $26,500,000.

2.  Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement, dated as of February 28, 2006, made by Borrower for the benefit of OREC.

3.  Assignment of Rents, Leases and Other Income dated as of February 28, 2006 by Borrower in favor of OREC.

4.  Authorization to File UCC Financing Statements dated as of February 28, 2006 made by Borrower to OREC.

5.  Guaranty (Payment), dated as of February 28, 2006, by Commercial Ventures, Inc., a Delaware corporation, for the benefit of OREC.

6.  Guaranty (Carveout), dated as of February 28, 2006, by Richard J. Nathan for the benefit of OREC.

7.  Environmental Indemnity Agreement, dated as of February 28, 2006, by Borrower and Richard J. Nathan to and for the benefit of OREC.

8.  Post-Closing Agreement, dated as of February 28, 2006, between Borrower and OREC.

9.  Agreement Re: Blocked Accounts dated as of February 28, 2006 made by and among Borrower, OREC and LaSalle Bank National Association.

10.  Negative Pledge Agreement dated as of February 28, 2006 made by The Landings Florida Member, LLC in favor of OREC.

11.  Subordination of Management Agreement and Waiver of Management Liens dated as of February 28, 2006 made by GREP Southeast, LLC-Management Series and Borrower in favor of OREC.

12.  Collateral Assignment of Undertakings and Purchase Agreement dated as of February 28, 2006 by and between Borrower and OREC.

13.  Letter to Lender dated as of February 28, 2006 from Borrower, Commercial Ventures, Inc. and Richard J. Nathan and countersigned by escrowee authorizing Lender to wire.

CH01/ 12465125.2

# EXHIBIT K

## ALLONGE TO NOTE

This Allonge to Note is attached to and made a part of that certain Note, dated as of February 28, 2006, made by The Landings Florida, LLC, a Florida limited liability company, to the order of ORIX Real Estate Capital, Inc., in the original principal amount of $26,500,000.

Pay to the order of ORIX Capital Markets, LLC, a Delaware limited liability company, without recourse, warranty or representation.

ASSIGNOR:

**ORIX REAL ESTATE CAPITAL, INC.**, a
Delaware corporation

By:

Its: David R. Brown
President & CEO

Dated: As of November 30, 2007

(CHICAGO)_1029246_1  1/20/04 9:58 AM

# EXHIBIT L

BK 4 8 4 6 7 PG 0 4 3 3

'FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2007 DEC -3  AM 8: 29

TOM LAWLER, CLERK

**309825**

---

Space Above For Recorder's Use

| | |
|---|---|
| **AFTER RECORDING RETURN TO:**<br><br>Kilpatrick Stockton LLP<br>1100 Peachtree Street, Suite 2800<br>Atlanta, Georgia 30309-4530<br>Attention: Peter B. Glass, Esq. | **PLEASE CROSS REFERENCE TO:**<br><br>Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement dated February 28, 2006, recorded in Deed Book 46210, Page 9, Gwinnett County, Georgia Records; and Assignment of Rents, Leases and Other Income dated February 28, 2006, recorded in Deed Book 46210, Page 30 Gwinnett County, Georgia Records |

---

## TRANSFER AND ASSIGNMENT
## OF
## DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT
## AND OF
## ASSIGNMENT OF RENTS, LEASES AND OTHER INCOME

THIS TRANSFER AND ASSIGNMENT OF DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT AND OF ASSIGNMENT OF RENTS, LEASES AND OTHER INCOME (the "*Assignment*") is made and executed this 30th day of November, 2007, by **ORIX REAL ESTATE CAPITAL, INC.**, a Delaware corporation ("*Assignor*"), having as its address 100 North Riverside Plaza, Suite 1400, Chicago, Illinois 60606, to and for the benefit of **ORIX CAPITAL MARKETS, LLC**, a Delaware limited liability company ("*Assignee*"), having as its address 100 North Riverside Plaza, Suite 1400, Chicago, Illinois 60606.

FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00) in hand paid and other good and valuable considerations, the receipt and sufficiency whereof are hereby acknowledged, Assignor hereby grants, bargains, sells, conveys, assigns and transfers to Assignee all of Assignor's rights, titles and interests in and to the following (collectively, the "*Assigned Instruments*"):

1.   That certain Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement made as of February 28, 2006, by The Landings Florida, LLC, a Florida limited liability company, as "Grantor" therein, and ORIX Real Estate Capital, Inc., a Delaware corporation as

1

US2000 10467660.1

0162517

12

BK 4 8 4 6 7 PG 0 4 3 4

"Grantee" therein, filed and recorded March 2, 2006, in Deed Book 46210, Page 9, Records of the Clerk of the Superior Court of Gwinnett County, Georgia;

2.     That certain Assignment of Rents, Leases and Other Income made as of February 28, 2006, by The Landings Florida, LLC, a Florida limited liability company, as "Assignor" therein, and ORIX Real Estate Capital, Inc., a Delaware corporation, as "Assignee" therein, filed and recorded March 2, 2006, in Deed Book 46210, Page 30, Records of the Clerk of the Superior Court of Gwinnett County, Georgia; and

3.     That certain Loan and Security Agreement dated as of February 28, 2006, by and between The Landings Florida, LLC, a Florida limited liability company, and ORIX Real Estate Capital, Inc., a Delaware corporation, as "Lender" therein, as amended by that certain First Amendment to Loan and Security Agreement dated as of May, 2007, by and between The Landings Florida, LLC, a Florida limited liability company, as "Borrower" therein, ORIX Real Estate Capital, Inc., a Delaware corporation, as "Lender" therein, and Commercial Ventures, Inc., a Delaware corporation, and Richard J. Nathan, together as "Guarantors" therein (said Loan and Security Agreement as thus amended being herein called the "*Amended Loan Agreement*," together with all other "Loan Documents" as defined in the Amended Loan Agreement.

Assignee hereby accepts and takes the aforesaid grant, bargain, sale, conveyance, assignment and transfer of the Assigned Instruments.

This Assignment: (a) shall be governed by and construed in accordance with the laws of the State of Georgia; (b) shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns; and (c) shall be effective as of the date first above written. Time is of the essence of this Assignment.

IN WITNESS WHEREOF, the undersigned Assignor has caused this Assignment to be executed by Assignor's duly authorized and empowered officer and delivered to Assignee on the date first above written.

Signed, sealed and delivered in the presence of:

Noreen Boyden
_____
Witness

Maja Spahovic
_____
Notary Public

My commission expires: 1/22/09

[Notary Seal]

"OFFICIAL SEAL"
MAJA SPAHOVIC
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 01/22/2009

US2000 1046766

**ASSIGNOR**

ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation

By: _____

Name:   David R. Brown
        President & CEO

Title: _____

2

# EXHIBIT M

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2008 FEB 19 AM 9: 17

TOM LAWLER, CLERK

| | |
|---|---|
| ORIX CAPITAL MARKETS, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE LANDINGS FLORIDA, LLC, | ) |
| COMMERCIAL VENTURES, INC. and | ) |
| RICHARD J. NATHAN, | ) |
| | ) |
| Respondents. | ) |

Civil Action File No. 07A-11010-9

## ORDER CONFIRMING FORECLOSURE SALE

Upon consideration of the arguments of counsel, pleadings, testimony and documentary evidence, and after conducting a full evidentiary hearing, the Court hereby FINDS as follows:

1.    That this is a proceeding to confirm the foreclosure sale of real property and improvements described in that certain Deed Under Power of Sale dated December 4, 2007, recorded in Deed Book 48471, beginning at Page 243 in the Office of the Clerk of the Superior Court of Gwinnett County, Georgia, and located at 3659 Peachtree Corners Circle in Norcross, Georgia (the "Property").

2.    That each of Respondents, The Landings Florida, LLC, Commercial Ventures, Inc. and Richard J. Nathan, were served with notice (the Order Vacating January 22, 2008 Order and Regarding Hearing on Application for Confirmation and Approval of Foreclosure Under Power of Sale dated January 24, 2008, the Order Confirming Foreclosure Sale dated January 22, 2008, the Order Regarding Hearing on Application for Confirmation and Approval of Foreclosure Under Power of Sale dated December 12, 2007 and the Report of

US2000 10621739.1

Foreclosure Under Power of Sale and Application for Confirmation and Approval of Such

Foreclosure Sale dated December 12, 2007) at least ten days prior to the hearing.

     3.     That the foreclosure sale was advertised and noticed in accordance with the

statutory requirements under O.C.G.A. §§ 44-14-161, 44-14-162 and 9-13-140:

     (a)     That the foreclosure sale was advertised in the <u>Gwinnett Daily Post</u>,

Gwinnett County's legal organ, once a week for four consecutive weeks immediately prior to

the foreclosure sale; and

     (b)     That the advertisement contained a full and complete legal description

of the Property.

     4.     That Petitioner complied with the statutory requirements regarding regularity

of the sale under O.C.G.A. §§ 9-13-161 and 44-14-162:

     (a)     That the sale occurred on December 4, 2007, which was the first

Tuesday in the month of December, 2007;

     (b)     That the sale occurred between the hours of 10:00 a.m. and 4:00 p.m.;

     (c)     That the sale was conducted before the courthouse door at the Gwinnett

County Courthouse, which is the place where sheriff's sales are conducted; and

     (d)     That the sale was conducted in the usual manner of sheriff's sales in

Gwinnett County.

     5.     That the price paid for the Property at the sale was equal to or greater than the

true market value, i.e., fair market value, of the property on December 4, 2007.

     Based on these findings, it is hereby ORDERED as follows:

     1.     That the foreclosure sale is CONFIRMED.

2

2.    That Petitioner may pursue Respondents (The Landings Florida, LLC, Commercial Ventures, Inc. and Richard J. Nathan) for any deficiency between the sales price and the outstanding debt, which the Property secured.

SO ORDERED, this 19th day of February, 2008.

_____
Judge Tom Davis
Superior Court of Gwinnett County

Submitted by:

Jill Warner
Georgia Bar No. 378472
Peter B. Glass
Georgia Bar No. 296500
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 815-6500

Attorneys for Petitioner
ORIX Capital Markets, LLC

3

US2000 10621739.1

**08 C 1492**



KILPATRICK
STOCKTON LLP

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

**JUDGE BUCKLO**
**MAGISTRATE JUDGE VALDEZ**

direct dial 404 815 6109
direct fax 404 541 3216
PGlass@KilpatrickStockton.com

February 26, 2008

**VIA OVERNIGHT COURIER SERVICE**
**FOR NEXT BUSINESS DAY DELIVERY**
Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn:  Richard Nathan and Greg Beach

**VIA OVERNIGHT COURIER SERVICE**
**FOR NEXT BUSINESS DAY DELIVERY**
Steckbauer Weinhart Jaffee, LLP
333 S. Hope Street, 36th Floor
Los Angeles, California 90071
Attn:  Brian Weinhart

> Re:    Guaranty (Payment), dated as of February 28, 2006 (the *"Payment Guaranty"*), made by Commercial Ventures, Inc. (*"Guarantor"*), to and for the benefit of ORIX Real Estate Capital, Inc. and its successors and assigns (collectively, *"Lender"*)

Mssrs. Nathan, Beach and Weinhart:

    This firm represents ORIX Capital Markets, LLC ("*Holder*"), which is an affiliate of Lender and successor-in-interest to Lender's interest in, to and under the Loan (hereinafter defined), and this letter is written as attorneys for Holder.  Holder is the current owner and holder of all of Lender's right, title and interest in, to and under the Loan Documents.

    Reference is hereby made to: (i) that certain Loan (the *"Loan"*) in the original principal amount of $26,500,000, made by Lender to The Landings Florida, LLC  (*"Borrower"*), and secured, in part, by the Property, all of Lender's right, title and interest therein being previously assigned, transferred and conveyed to Holder; (ii) our letter to Borrower, Guarantor, Richard J. Nathan (*"Nathan"*) and your firm dated November 5, 2007 (the *"November 5 Acceleration Letter"*), a copy of which is attached hereto as Exhibit A and by this reference incorporated herein for your easy reference; (iii) our letter dated November 8, 2007 to Guarantor and you concerning the Loan and the Payment Guaranty; and (iv) our letter dated November 15, 2007 to you, as attorneys for Guarantor (as well as Borrower and Nathan) concerning the Loan.  As used herein, the term *"Modification Agreement"* means that certain First Amendment to Loan and Security Agreement and Guaranty (Payment) and Reaffirmation Agreement dated as of May, 2007, by and among Borrower, Lender, Guarantor and Nathan.  Initially capitalized terms used in this letter, but not otherwise defined in this letter, shall have the meanings ascribed thereto in the November 5 Acceleration Letter (which incorporates by reference terms defined in the Borrower Default Notice and in the Loan Agreement).

US2000 10644465.1

Commercial Ventures, Inc.
Steckbauer Weinhart Jaffee, LLP
February 26, 2008
Page 2

Section 1 of the Payment Guaranty provides as follows:

"1.    **Liabilities.**  Notwithstanding any exculpation or other provisions in any Loan Document to the contrary, Guarantor agrees to be personally liable for the payment and satisfaction of all of the following (collectively, "Guaranteed Liabilities"):

(a)    Subject to the limitation(s) set forth in Paragraph 9 below, the full and prompt payment when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter, all of the Indebtedness [as defined in the Loan Agreement], including Expenses; and

(b)    Subject to the limitation(s) set forth in Paragraph 9 below, the full performance when due of all Obligations [as defined in the Loan Agreement].

The term "Expenses" means all reasonable attorneys' fees, court costs and other legal expenses and all other costs and expenses of any kind which Lender or any subsequent holder of the Note may pay or incur in attempting to collect, compromise or enforce, in any respect, any of Guarantor's Liabilities, whether or not suit is ever filed, and whether or not in connection with any insolvency, bankruptcy, reorganization, arrangement or other similar proceeding involving Borrower, Guarantor or any other guarantor.  If Lender pays any such cost or expense, "Expenses" shall also include interest at the Default Rate [as defined in the Loan Agreement] on any such payment from the date such cost or expenses is incurred until repayment to Lender in full."

Section 9 (a) of the Payment Guaranty provides as follows.

"(a)    Notwithstanding anything to the contrary herein, (i) Guarantor shall have no liability under this Guaranty until (A) an Event of Default under the Loan Agreement has occurred and (B) Lender has commenced the exercise of remedies under one or more of the Loan Documents and (ii) Guarantor's liability under this Guaranty shall be limited to an amount equal to the Deficiency (if any) plus Expenses."

As you know, Events of Default under the Loan Agreement have occurred, specifically including, without limitation, Borrower's failure to pay within five (5) days of the date due amounts due and owing under the Note and the other Loan Documents.  Lender commenced the exercise of remedies under one or more of the Loan Documents by, among other actions, the following:  (a) exercising its option to accelerate and declare due and immediately payable the

Commercial Ventures, Inc.
Steckbauer Weinhart Jaffee, LLP
February 26, 2008
Page 3

unpaid principal sum of the Note, together with accrued interest thereon, and all other fees and charges payable under the Loan Documents and the whole of the Secured Obligations, as set forth in the November 5 Acceleration Letter; (b) demanding payment of interest on the unpaid principal balance of the Loan at the Default Rate; and (c) commencing non-judicial foreclosure proceedings against the Property by publishing a Notice of Sale Under Power in the *Gwinnett Daily Post* on November 8, 15, 22 and 29, 2007, in accordance with applicable law. Additionally, Holder (i) conducted a public auction of the Property on December 4, 2007 in accordance with applicable law, (ii) sold the Property, pursuant to the power of sale contained in the Deed to Secure Debt, to the highest bidder for $22,500,000.00 on December 4, 2007, in accordance with applicable law, (iii) reported the sale and filed an application for confirmation of the foreclosure sale on December 12, 2007, in accordance with applicable law, and (iv) following the confirmation hearing in the Superior Court of Gwinnett County, Georgia, obtained the order of such court confirming the foreclosure sale on February 19, 2008. A copy of the Deed Under Power of Sale conveying the Property upon completion of the foreclosure sale which sets forth the sale price of the Property is attached hereto as <u>Exhibit B</u> and by this reference incorporated herein, and a copy of the Order Confirming Foreclosure Sale of the Superior Court of Gwinnett County, Georgia, dated February 19, 2008 is attached hereto as <u>Exhibit C</u> and by this reference incorporated herein. Accordingly, all conditions precedent to Guarantor's liability under Paragraph 9(a) of the Payment Guaranty have been fully met and satisfied.

Section 9(b) of the Payment Guaranty provides as follows:

"(b)      "Deficiency" shall mean the positive difference, if any, obtained by subtracting from the Indebtedness either, at Lender's sole option, (i) the "as is" "where is" and "with all faults" value of the Property set forth in an appraisal performed in accordance with Lender's requirement and prepared by an MAI certified appraiser selected by Lender in its sole discretion after an Event of Default under the Loan Agreement, which appraisal shall determine the value of the Property as of the date of such appraisal or (ii) the amount received by Lender upon exercise of some or all, at Lender's discretion, of its remedies under the Mortgage and the other Loan Documents; provided that in no event shall the Deficiency exceed One Million Five Hundred Thousand Dollars ($1,500,000). Guarantor acknowledges and agrees that Lender may calculate the Deficiency under clause (i) above without any obligation to: (A) proceed against Borrower or any other guarantor or any other party primarily or secondarily obligated with respect to any of the Guarantor's Liabilities; (B) resort to or exhaust any other remedy or any other security or collateral; or (C) foreclose on, take possession of or sell any of the collateral or security for Guarantor's Liabilities or enforce any other rights under any other Loan Document. In connection with any appraisal obtained under clause (i) above, (x) all

Commercial Ventures, Inc.
Steckbauer Weinhart Jaffee, LLP
February 26, 2008
Page 4

related costs and expenses shall be deemed Expenses, (y) there shall be no assumption of restoration or refurbishment of any improvements and (z) the value shall be reduced by deducting the reasonable estimated closing costs relating to the sale of the Property including, without limitation, brokerage commissions, title policy expenses, tax prorations, escrow fees and other common charges incurred by a seller of real property."

Under Section 4 of the Modification Agreement (which amended Section 9(b) of the Payment Guaranty), the limitation on the amount of the Deficiency determined under the Payment Guaranty was increased from $1,500,000 to $1,700,000 (the **"Deficiency Limitation"**).

As permitted by the terms of the Payment Guaranty, Holder elected to determine the amount of the Deficiency under and pursuant to Section 9(b)(ii) of the Payment Guaranty.

Pursuant to Section 9(b)(ii) of the Payment Guaranty, the total amount of the Deficiency as of the date of this letter (excluding Expenses) is $5,478,002.14, which has been calculated as follows:

| | |
|---|---|
| Unpaid principal balance of the Loan immediately prior to the foreclosure sale on December 4, 2007 (including principal, interest (including default interest), late fees, loan advances and the Exit Fee, excluding Expenses, and net of any funded reserves held by Lender) | $27,978,002.14 |
| Less: | |
| Amount received by Holder upon foreclosure and sale of the Property on December 4, 2007 (includes proceeds for real estate and personal property) | $22,500,000.00 |
| **Deficiency as of February 25, 2008[1]:** | **$5,478,002.14** |

Accordingly, pursuant to the terms and provisions of the Payment Guaranty, and taking into consideration that the Deficiency as of February 25, 2008 exceeds the $1,700,000 Deficiency Limitation, Holder hereby requests that Guarantor, within ten (10) days after the date of this letter, pay to Holder the amount of $1,700,000. Guarantor is hereby notified that any

---

[1] Default interest has been accruing and will continue to accrue with respect to the Deficiency amount as it relates to any liabilities and obligations of Nathan under and/or pursuant to the Loan Documents (including any guaranties provided by Nathan in connection with the Loan).

Commercial Ventures, Inc.
Steckbauer Weinhart Jaffee, LLP
February 26, 2008
Page 5

portion of the foregoing $1,700,000 not paid to Holder with such ten (10) day period shall bear interest at the Default Rate until paid, as provided in Paragraph 9(c) of the Payment Guaranty. Payment of the $1,700,000 should be sent to Holder pursuant to the following:  (a) if by check, send by overnight courier service to ORIX Capital Markets, LLC, Attn:  Chuck Crouch, Special Servicing, 1717 Main Street, Suite 900, Dallas, Texas 75201; and (b) if by wire transfer to Key Bank, ABA# 041001039, Acct. #359954503454, Attn:  Chuck Crouch – OCM, Acct. Name: Key Client Clearing, Ref: Loan #307000007.  Holder, for itself and all prior Lenders, hereby reserves any and rights and remedies under the Guaranty, at law and in equity with respect to the Deficiency.

Finally, Holder is not making, pursuant to this letter, any demand or request of Guarantor to pay for any Expenses.  Holder, for itself and all prior Lenders, hereby reserves any and all rights under the Payment Guaranty, at law and in equity, to make, from time to time and at any time, demand and request for Guarantor's payment of any and all Expenses.  Nothing contained in this letter is intended to or shall limit, restrict or waive (a) any rights and remedies afforded or granted to Holder (as Lender) under and pursuant to the Payment Guaranty, at law or in equity, to make demand or request for, or be paid or reimbursed for, any and all Expenses, or (b) Guarantor's obligation to pay for any and all Expenses as provided in the Payment Guaranty or as may be provided at law or in equity.

Sincerely,

Peter B. Glass

cc:    Mr. Chuck Crouch (via e-mail)
       Mr. Mark Pakes (via e-mail)
       Michael J. Moran, Esq. (via e-mail)
       David Audley, Esq. (via e-mail)
       Tom Biafore, Esq.
       Bill McMillan, Esq.

US2000 10644465.1

## EXHIBIT A

## Guaranty

See Attached



**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

November 5, 2007

direct dial 404 815 6109
PGlass@KilpatrickStockton.com

**VIA OVERNIGHT COURIER SERVICE
FOR NEXT BUSINESS DAY DELIVERY
AND FASCIMILE (310) 207-8497**
The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, California 90025
Attention: Richard Nathan and Greg Beach

**VIA OVERNIGHT COURIER SERVICE
FOR NEXT BUSINESS DAY DELIVERY
AND FASCIMILE (310) 207-8497**
Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, California 90025
Attention: Richard Nathan and Greg Beach

**VIA OVERNIGHT COURIER SERVICE
FOR NEXT BUSINESS DAY DELIVERY
AND FASCIMILE (213) 229-2870**
Shumaker Steckbauer Weinhart,
333 S. Hope Street, 36th Floor
Los Angeles, California 90071
Attn: Brian Weinhart

**VIA OVERNIGHT COURIER SERVICE
FOR NEXT BUSINESS DAY DELIVERY
AND FASCIMILE (310) 207-8497**
Mr. Richard J. Nathan
314 Cliffwood Drive
Los Angeles, California 90049

Re:     Loan (the "*Loan*") in the original stated principal amount of $26,500,000.00, from ORIX REAL ESTATE CAPITAL, INC., a Delaware corporation ("*Lender*") to THE LANDINGS FLORIDA, LLC, a Florida limited liability company ("*Borrower*"), closed as of February 28, 2006

Ladies and Gentlemen:

This firm, together with the firm of Drinker Bidddle Garnder Carton ("*DBGC*"), represents Lender with respect to the Loan and the transactions relating to the Loan.

Terms used herein, but which are not otherwise defined shall have the meanings ascribed thereto as set forth in that certain letter dated October 9, 2007 (the "*Borrower Default Notice*"), from DBGC to Borrower.  For your easy reference, a copy of the Borrower Default Notice is attached hereto as <u>Exhibit A</u> and is incorporated herein by this reference.

Lender is the owner and holder of the Loan and the Loan Documents.

In the Borrower Default Notice and in letters each dated October 9, 2007 and each from DBGC (collectively, the "*Other Default Notices*") to Borrower, to Commercial Ventures, Inc. ("*CVI*"), to Richard J. Nathan ("*Nathan*," and together with CVI, "*Guarantors*") and to

US2000 10419193.3

The Landings Florida, LLC
November 5, 2007
Page 2

Borrower and Brentwood Asset Management and Advisory Group, LLC ("*BAM*"), each of Borrower, CVI, Nathan and BAM were given notice that Events of Default under the Loan Documents had occurred and were continuing. For your easy reference, copies of each of the Other Default Notices are attached hereto as Exhibit B, Exhibit C and Exhibit D, respectively, and are by this reference incorporated herein..

   The Events of Default described in the Borrower Default Notice are continuing, and other Defaults and/or Events of Default have occurred and are continuing, specifically including,(without limitation or prejudice to Lender's rights to assert any other Defaults and/or Events of Default not enumerated herein, the following: (a) Borrower failed to pay within five (5) days of the date due the amounts due and owing on October 1, 2007 under the Note and the other Loan Documents; (b) Borrower failed to pay the amounts due and owing on November 1, 2007 under the Note and the other Loan Documents; (c) Borrower suffered and permitted Transfers of portions of the Property and the Collateral as evidenced by the existence of the liens filed against and encumbering portions of the Property and the Collateral, specifically including, without limitation, those liens (collectively, the "*Specified Liens*") described on Exhibit E attached hereto and incorporated herein by this reference; (d) Borrower suffered and permitted mechanic's liens and other liens and claims to be filed and asserted against portions of the Property, specifically including, without limitation, the Specified Liens, and did not promptly discharge same after claims for liens and proceedings for the enforcement thereof were filed and commenced; (e) Borrower failed to pay all Impositions before the same became delinquent, specifically including, without limitation, 2007 ad valorem property taxes assessed by Gwinnett County, Georgia against portions of the Property which were due and payable no later than September 15, 2007; (f) Borrower suffered and permitted Transfers of portions of the Property and the Collateral as evidenced by the existence of the tax lien encumbering portions of the Property and the Collateral because Borrower failed to pay 2007 ad valorem property taxes assessed by Gwinnett County, Georgia against portions of the Property which were due and payable no later than September 15, 2007; (g) representations and warranties made and given pursuant to the First Amendment by Borrower were untrue in material respects at the time which such representations and warranties were made and affirmed and when such First Amendment was delivered because of the existence of those Specified Liens which were filed prior to the First Amendment.

   Section 2.1 of the Note states:

   "If (a) an Event of Default occurs or (b) the right to enforce the Mortgage shall accrue to the holder thereof, whether or not foreclosure proceedings have been commenced, then, at the election of the holder of this Note and without notice, the unpaid principal sum of this Note, together with accrued interest thereon, Additional Interest, if any, and all other fees and charges payable under the Loan Documents shall at once become immediately due and payable."

The Landings Florida, LLC
November 5, 2007
Page 3

Similarly, Section 6 of the Deed to Secure Debt states:

> "Upon the occurrence of any Event of Default, then and in every such case the whole of the Secured Obligations shall, at once, at the option of Lender, become immediately due and payable without any presentment, demand, protest or notice of any kind. Without limiting the foregoing Grantor expressly acknowledges and affirms that any Transfer that is not permitted under the Loan Documents constitutes an Event of Default which would give rise to Lender's right to accelerate the Secured Obligations."

Events of Default having occurred and continuing, we, for and on behalf of Lender, hereby notify you that Lender has exercised its option to accelerate and declare due and immediately payable the unpaid principal sum of the Note, together with accrued interest thereon, Additional Interest, if any, and all other fees and charges payable under the Loan Documents and the whole of the Secured Obligations.

> Section 2.3.4 of the Loan Agreement provides:

> "If any payment due on any Schedule Payment Date or any other amount due hereunder (other than the principal amount due on the Maturity Date) is not made within ten (10) days of the Scheduled Payment Date, or, as applicable, ten (10) days (or such earlier time as may be specified herein) after request for payment by Lender, Lender, at its option and in addition to any other remedy available to Lender, may impose a late payment fee, which Borrower covenants to pay upon demand calculated at the rate of five percent (5%) of the amount of such delinquent payment or deposit [hereinafter referred to as *"Late Payment Fee"*]. Without limiting the foregoing, any late payment fee shall be paid without prejudice to the right of Lender to collect any other amounts provided to be paid upon an Event of Default, including without limitation any other amounts due at the Default Rate, or to declare a default hereunder under any of the other Loan Documents."

Demand is hereby made for payment of each Late Payment Fee due under Section 2.3.4 of the Loan Agreement.

> Section 2.2 of the Note states as follows: "Following the occurrence of an Event of Default, the unpaid principal balance of the Loan shall bear interest at the Default Rate." Additionally, Section 2.3.1(c) of the Loan Agreement provides in relevant part:

> "Following the occurrence of an Event of Default, interest shall be computed at,

US2000 10419193.3

The Landings Florida, LLC
November 5, 2007
Page 4

and Borrower shall pay interest on the unpaid principal balance of the Loan at, the Default Rate until such Event of Default has been cured to Lender's satisfaction. All other payments, reimbursements and other amounts due from Borrower to Lender under the Loan Documents not paid when due shall bear interest at the Default Rate from the date when due until the date when received by the Lender."

You are hereby notified that interest calculated at the Default Rate on the unpaid principal balance of the Loan began to accrue upon the occurrence of the first Event of Default and began to accrue on all other payments, reimbursements and other amounts due from Borrower to Lender under the Loan Documents when such amounts were not paid when due. In each case, interest shall continue to accrue at the Default Rate on such amounts until payment in full of the Loan and all Secured Obligations is received by Lender. Demand is hereby made for the payment of all amounts of accrued but unpaid interest calculated at the Default Rate due and payable in accordance with the terms of the Loan Documents.

Section 1.1.3(e) of the Loan Agreement provides that if the Loan is paid in full after the Lockout Period whether by prepayment or upon maturity, the "Exit Fee" is equal to "one percent (1%) of the Loan Amount less any portion thereof paid in connection with any previous prepayments." The maturity of the Loan having been accelerated as hereinabove provided, demand is hereby made for the payment of all Indebtedness due under the Loan Documents, specifically including, without limitation, the Exit Fee.

All of Lender's claims, demands and accruals regarding the Secured Obligations, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

Lender reserves the right to exercise, in such order as Lender elects, any one or more of the remedies available to Lender under the Loan Documents or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and remedies. Without limiting the generality of the foregoing, you are hereby notified that Lender shall commence non-judicial foreclosure proceedings against the Property. Please be further advised that no past or future delay or omission in the exercise of any right or remedy accruing to Lender as a result of any Default or any Event of Default is intended to constitute a waiver of any right or remedy accruing to Lender as a result of that Default or any other Default or that Event of Default or any other Event of Default.

Payment to Lender in an amount less than all amounts due under the Loan Documents, together with all interest accrued thereon at the Default Rate as aforesaid, should not be construed as an accord and satisfaction or as Lender's agreement to accept a lesser amount as payment in full of all amounts due under the Loan Documents. Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment

The Landings Florida, LLC
November 5, 2007
Page 5

may not be deemed to be an accord and satisfaction, and is not and shall not be deemed to be binding upon Lender.  Lender may accept any such payment or check without prejudice to its rights to receive the balance of all amounts due under the Loan Documents or to pursue its remedies.

Please note that we have no obligation or duty to inform Borrower or Guarantors, or any other obligor under any of the other Loan Documents, of Lender's intention to exercise its rights and remedies.  We are, however, doing so in this letter as an accommodation to Borrower and Guarantors.  Borrower and Guarantors shall not be entitled to expect notice in the future of Lender's elections or specifications of Borrower's and Guarantors' obligations under any of the Loan Documents by reason of Lender's election to provide the notices and specifications set forth in this letter.

Neither this letter nor any statement by or on behalf of Lender as to the amounts due and owing under any of the Loan Documents: (i) shall constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity; or (ii) shall constitute an offer to settle or waive any rights of Lender under any of the Loan Documents.

Please accept this letter as notice to the addressees hereof that copies of all Notices to Lender under any of the Loan Documents should be sent to this firm, to the attention of the undersigned, as Lender's Counsel in addition to, and not in substitution for, DBGC.  The address and facsimile number for this firm are set forth on the first page of this letter.

You are hereby notified that Lender shall strictly enforce the Loan Documents in accordance with their respective terms.

Sincerely,

Peter B. Glass

cc:    Mr. Chuck Crouch (via e-mail)
       Mr. Mark Pakes
       Michael E. Mermall, Esq.
       Tom Biafore, Esq.
       Bill McMillan, Esq.
       Lindsey M. Kesler, Esq.

US2000 10419193.3

## **EXHIBIT A**

Borrower Default Notice

*[See attached]*

# DrinkerBiddleGardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbc.com

*Law Offices*

191 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

***Via Facsimile and Overnight Courier***

The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn:  Richard Nathan and Greg Beach

Re:      $26,500,000 Loan ("Loan") to The Landings Florida, LLC ("Borrower") made by
          ORIX Real Estate Capital, Inc.

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for itself and on behalf of the holder of the Loan Documents (as hereinafter defined) ("Lender") with respect to the above-captioned Loan. The Loan is evidenced and secured by, *inter alia*, (i) a Note ("Note") in the amount of $26,500,000 dated as of February 28, 2006, (ii) a Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement ("Deed to Secure Debt") dated as of February 28, 2006, (iii) a Loan and Security Agreement ("Loan Agreement") dated as of February 28, 2006, (iv) a Guaranty (Payment) ("Payment Guaranty") dated as of February 28, 2006, (v) a Guaranty (Carveout) ("Carveout Guaranty") dated as of February 28, 2006, (vi) an Environmental Indemnity Agreement ("Environmental Indemnity") dated as of February 28, 2006, (vii) a Subordination of Management Agreement and Waiver of Management Liens ("Subordination of Management Agreement") dated as of February 28, 2006, (viii) an Agreement Re: Blocked Accounts ("Blocked Account Agreement") dated as of February 28, 2006, (ix) an Assignment of Rents, Leases and Other Income ("Assignment of Rents") dated as of February 28, 2006, and (x) a Negative Pledge Agreement ("Negative Pledge") dated as of February 28, 2006. The loan is further evidenced by a First Amendment to Loan and Security Agreement and Guaranty (Payment) and Reaffirmation of Guaranties ("First Amendment") dated as of May, 2007. The Note, Deed to Secure Debt, Loan Agreement, Payment Guaranty, Carveout Guaranty, Environmental Indemnity, Subordination of Management Agreement, Blocked Account Agreement, Assignment of Rents, Negative Pledge, First Amendment and all other documents, agreements, certificates or instruments evidencing or securing or which guaranty the Loan or executed in connection with the Loan whether on or about the closing date of the Loan or thereafter, and any modifications, renewals or extensions thereof shall hereinafter be referred to as the "Loan Documents." All capitalized terms used herein and not otherwise defined shall have the meanings given them in the Loan Agreement.

This letter constitutes Lender's notice to Borrower (and, via a copy of this letter to Richard J. Nathan, the guarantor under the Carveout Guaranty, and, via a copy of this letter to Commercial Ventures, Inc., the guarantor under the Payment Guaranty) of the occurrence and existence of certain Events of Default under the terms of the Loan Documents. Among and without prejudice to any other Defaults and/or Events of Default not enumerated herein, Borrower has failed to pay monies due and owing under the Loan Documents and has failed

e & Reath LLP
established 1849

The Landings Florida, LLC
October 9, 2007
Page 2

to cause all Revenues to be deposited to the Blocked Account. Other events may have occurred which constitute Events of Default under the Loan Documents, and Lender reserves the right to assert the existence of other and additional Events of Default, regardless of Lender's current knowledge of any such additional Events of Default.

Since the occurrence of the above-referenced Events of Default, interest on the entire unpaid balance of the Loan has been accruing at the Default Rate and will continue to do so as provided in the Loan Agreement. Furthermore, Lender reserves the right, in its sole and absolute discretion, at any time and from time to time and without limitation of any reservations and limitations, to take any and all other actions, and to exercise any and all other rights and remedies, in respect of the aforedescribed Events of Default and any other Event of Default (whether presently known or unknown to Lender) as Lender may consider necessary, appropriate or useful. Lender's rights and remedies include, without limitation, acceleration of the Loan and the Note and all Indebtedness thereunder, foreclosure under the Deed to Secure Debt, the charging of late fees, and other actions against the assets and properties of Borrower. Further, Lender will look to Borrower and the Guarantors for payment of any and all losses, damages, costs, fees and expenses, including attorneys' fees, incurred by Lender and payment of all other amounts that are or become due and payable under the Loan Documents, all of which are hereby reserved by Lender. Nothing contained herein is intended to or shall limit or restrict any rights or remedies available to Lender on account of the aforementioned Events of Default under the Loan Documents, at law or in equity.

Additionally, please be advised that Borrower remains obligated to cause all Revenues to be deposited into the Blocked Account.

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438).

Sincerely,

Michael E. Mermall, Esq.

cc:    Commercial Ventures, Inc.
       Richard J. Nathan
       Brian Weinhart, Esq.
       Michael J. Moran, Esq.
       Daniel Palmer

CH02/22500745.1

The Landings Florida, LLC
November 5, 2007
Page 2

**<u>EXHIBIT B</u>**

Letter dated October 9, 2007, from DBGC to CVI

[*See attached*]

# DrinkerBiddleGardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

91 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

## *Via Facsimile and Overnight Courier*

Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn:  Richard Nathan and Greg Beach

Re:   $26,500,000 Loan ("Loan") to The Landings Florida, LLC ("Borrower") made by
        ORIX Real Estate Capital, Inc.

Gentlemen:

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for itself and on behalf of the holder of the Loan Documents (as hereinafter defined) ("Lender") with respect to the above-captioned Loan.  In connection with the Loan, Commercial Ventures, Inc. ("CVI") entered into that certain Guaranty (Payment) ("Payment Guaranty") dated as of February 28, 2006 for the benefit of Lender.

This letter is written to notify CVI that there are one or more Events of Default under the Loan (a copy of Lender's notice to Borrower is enclosed for your reference).  As Guarantor under the Payment Guaranty, CVI may currently have liability to Lender and may become additionally liable to Lender in the future.

Lender reserves the right, in its sole and absolute discretion, at any time and from time to time and without limitation of any reservations and limitations, to take any and all actions, and to exercise any and all rights and remedies, in respect of the Payment Guaranty for any matters described therein (whether presently known or unknown to Lender) as Lender may consider necessary, appropriate or useful.  Lender's rights and remedies include, without limitation, taking one or more actions against the assets of CVI.  Further, Lender will look to CVI for payment of any and all losses, damages, costs, fees and expenses, including attorneys' fees, incurred by Lender and payment of all other amounts that are or become due and payable under the Payment Guaranty (including repayment of certain Indebtedness under the Loan), all of which are hereby reserved by Lender.  Nothing contained herein is intended to or shall limit or restrict any rights or remedies available to Lender on account of the aforementioned Events of Default under the Loan Documents (including, without limitation the Payment Guaranty), at law or in equity.

le & Reath LLP
Established 1849

Commercial Ventures, Inc.
October 9, 2007
Page 2

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438).

Sincerely,

Michael E. Mermall, Esq.

cc:    Richard J. Nathan
       Brian Weinhart, Esq.
       Michael J. Moran, Esq.
       Daniel Palmer

CH02/22500747.1

The Landings Florida, LLC
November 5, 2007
Page 3

## <u>EXHIBIT C</u>

Letter dated October 9, 2007, from DBGC to Nathan

*[See attached]*

# DrinkerBiddleGardnerCarton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

11 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
ew.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

*__Via Facsimile and Overnight Courier__*

Mr. Richard J. Nathan
314 Cliffwood Drive
Los Angeles, CA  90049

Re:   $26,500,000 Loan ("Loan") to The Landings Florida, LLC ("Borrower") made by
      ORIX Real Estate Capital, Inc.

Dear Mr. Nathan:

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for itself and on behalf of the holder of the Loan Documents (as hereinafter defined) ("Lender") with respect to the above-captioned Loan.  In connection with the Loan, you entered into that certain Guaranty (Carveout) ("Carveout Guaranty") dated as of February 28, 2006 for the benefit of Lender.

This letter is written to notify you that there are one or more Events of Default under the Loan (a copy of Lender's notice to Borrower is enclosed for your reference).  As Guarantor under the Carveout Guaranty, you may currently have liability to Lender and may become additionally liable to Lender in the future.

Lender reserves the right, in its sole and absolute discretion, at any time and from time to time and without limitation of any reservations and limitations, to take any and all actions, and to exercise any and all rights and remedies, in respect of the Carveout Guaranty for any matters described therein (whether presently known or unknown to Lender) as Lender may consider necessary, appropriate or useful.  Lender's rights and remedies include, without limitation, taking one or more actions against you and/or your assets.  Further, Lender will look to you for payment of any and all losses, damages, costs, fees and expenses, including attorneys' fees, incurred by Lender and payment of all other amounts that are or become due and payable under the Carveout Guaranty (including, if applicable, repayment of all Indebtedness under the Loan), all of which are hereby reserved by Lender.  Nothing contained herein is intended to or shall limit or restrict any rights or remedies available to Lender on account of the aforementioned Events of Default under the Loan Documents (including, without limitation the Carveout Guaranty), at law or in equity.

& Reath LLP
Established 1849

Mr. Richard J. Nathan
October 9, 2007
Page 2

In the event you have any questions concerning this letter, you may either contact the undersigned or Daniel Palmer at Lender (312-669-6438).

Sincerely,

Michael E. Mermall, Esq.

cc:    Brian Weinhart, Esq.
       Michael J. Moran, Esq.
       Daniel Palmer

CH02/22500748.1

The Landings Florida, LLC
November 5, 2007
Page 4

## **EXHIBIT D**

Letter dated October 9, 2007, from DBGC to Borrower and BAM

*[See attached]*

# Drinker Biddle Gardner Carton

Michael E. Mermall
Partner
(312) 569-1448 Direct
(312) 569-3448 Fax
Michael.Mermall@dbr.com

*Law Offices*

91 North Wacker Drive
Suite 3700
Chicago, IL
60606-1698

312-569-1000 phone
312-569-3000 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

October 9, 2007

***Via Facsimile and Overnight Courier***

The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn: Richard Nathan and Greg Beach

Brentwood Asset Management and
  Advisory Group LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025

Re:   Asset Management Agreement ("Agreement") between The Landings Florida, LLC
      ("Borrower") and Brentwood Asset Management and Advisory Group LLC ("BAM")
      dated February 28, 2006 regarding The Bristol Court Apartments, Norcross, Georgia
      ("Property")

Please be advised that this law firm has been engaged by ORIX Real Estate Capital, Inc., for
itself and on behalf of the holder of the Loan (as hereinafter defined) ("Lender") with respect
to that certain $26,500,000 loan ("Loan") made by Lender to Borrower.

You are hereby notified that there currently exist one or more Events of Default under the
Loan (a copy of Lender's notice to Borrower is enclosed for your reference). This letter is
written to notify Borrower and BAM that Lender is hereby immediately terminating the
Agreement pursuant to the terms of the Agreement. A copy of the executed Agreement is
enclosed for your reference.

Borrower shall immediately cease making any payments to BAM under the Agreement, and
BAM shall accept no such payments. Failure to comply with these instructions may permit
Lender to take additional action and to exercise any and all available rights and remedies as
Lender may consider necessary, appropriate or useful, including looking to Borrower and
BAM for payment of any and all losses, damages, costs, fees and expenses, including
attorneys' fees, incurred by Lender in connection with your failure to comply with these
instructions and the enforcement of Lender's rights under the Agreement, all of which are
hereby reserved by Lender. Nothing contained herein is intended to or shall limit or restrict
any rights or remedies available to Lender on account of the aforementioned Events of
Default under the Loan Documents, at law or in equity.

In the event you have any questions concerning this letter, you may either contact the
undersigned or Daniel Palmer at Lender (312-669-6438). Thank you for your cooperation
and immediate attention to this matter.

Sincerely,

Michael E. Mermall, Esq.

cc:    Michael J. Moran, Esq.
       Daniel Palmer

*[e & Reath LLP
established 1849*

The Landings Florida, LLC
November 5, 2007
Page 5

## EXHIBIT "E"

### Liens

1.  Materialman's and Mechanic's Claim of Lien by Century Turn Key, LLC vs. The Landings Florida, LLC, et al., filed March 7, 2007, recorded in GED Book 2063, page 183, Gwinnett County, Georgia Records.

2.  Materialman's and Mechanic's Claim of Lien by Eisner's Superior Flooring, Inc., vs. The Landings Florida, LLC, filed March 23, 2007, recorded in GED Book 2069, page 122, Gwinnett County, Georgia Records.

3.  Materialman's and Mechanic's Claim of Lien by Athens-Atlanta Asphalt Company, Inc., vs. The Landings Florida, LLC, et a., filed July 18, 2007, and recorded in GED Book 2124, page 268, Gwinnett County, Georgia Records.

4.  Materialman's and Mechanic's Claim of Lien by HGA Landscape Services, LLC vs. The Landings Florida, LLC, et al., filed September 24, 2007, and recorded in GED Book 2162, page 99, Gwinnett County, Georgia Records.

5.  Materialman's and Mechanic's Claim of Lien by Carpet South, Inc. vs. The Landings Florida, LLC, filed February 27, 2007, and recorded at GED Book 2057, page 44, Gwinnett County, Georgia Records, as affected by Notice of Suit Filed styled Carpet South, Inc. v. The Landings Florida, LLC, d/b/a Bristol Court Apartments, Civil Action No. 07C-09322-2, filed July 10, 2007, and recorded in GED Book 2120, page 155, aforesaid records.

6.  Materialman's and Mechanic's Claim of Lien by Southeastern Appliance & Lighting Company vs. The Landings Florida, LLC, filed March 28, 2007, and recorded at GED Book 2071, page 242, Gwinnett County, Georgia Records, as affected by Notice of Suit File styled The Climatic Corporation as assignee of Southeastern Appliance and Lighting Co., v. The Landings Florida, LLC, et al., Civil Action No. 07C-13229-6, filed September 18, 2007, and recorded in GED Book 2159, page 130, aforesaid records.

7.  Claim of Lien by Allsouth Renovations, Inc., vs. The Landings Florida, LLC, filed March 5, 2007, and recorded at GED Book 2061, page 242, Gwinnett County, Georgia Records, as affected by Notice of Filing of Action for Claim on Mechanic's and Materialman's Lien, styled Allsouth Renovations, Inc., vs. The Landings Florida, LLC, Civil Action File No. 07-C-06427-S6, filed May 14, 2007, and recorded at GED Book 2092, page 2, aforesaid records.

# EXHIBIT B

## Deed Under Power of Sale

See Attached

BK4.8471PG0243

309906

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2007 DEC -4  AM II: 34

TOM LAWLER, CLERK

PT-61 # _D67-2007-D37476_
GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$_____-0-_____
TOM LAWLER CLERK OF
SUPERIOR COURT

---

Space Above For Recorder's Use

---

**AFTER RECORDING RETURN TO:**

Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Attention: Peter B. Glass, Esq.

**CROSS REFERENCE TO:**

Deed to Secure Debt, Assignment of
Leases and Rents and Security
Agreement, dated as of February 28,
2006, filed and recorded in **Deed Book
46210, Page 0009**, Gwinnett County,
Georgia Records and **Assignment of
Rents, Leases and Other Income** dated
February 28, 2006, recorded **in Deed
Book 46210, Page 0030**, Gwinnett
County Records.

**STATE OF GEORGIA**

**COUNTY OF GWINNETT**

## DEED UNDER POWER OF SALE

THIS INDENTURE is made effective as of this 4th day of December, 2007, by

**THE LANDINGS FLORIDA, LLC**, a Florida limited liability company (hereinafter called
"*Grantor*"), acting by and through its agent and attorney-in-fact, **ORIX CAPITAL MARKETS,
LLC**, a Delaware limited liability company (hereinafter called "*Holder*"), and **ORIX BRISTOL
COURT, LLC**, a Georgia limited liability company (hereinafter called "*Grantee*").

## W I T N E S S E T H:

WHEREAS, Grantor did execute and deliver to ORIX Real Estate Capital, Inc., a
Delaware corporation ("hereinafter called "*Lender*") that certain Deed to Secure Debt,
Assignment of Leases and Rents and Security Agreement dated as of February 28, 2006
(hereinafter called the "*Security Deed*"), which was filed and recorded on March 2, 2006 in Deed
Book 46210, Page 0009, in the records of the Clerk of the Superior Court of Gwinnett County,

BK 4 8 4 7 1 PG 0 2 4 4

Georgia ("*Gwinnett County Records*") to secure, among other things, a loan (the "*Loan*") made as of February 28, 2006, by Lender to Grantor in the original stated principal amount of Twenty-Six Million Five Hundred Thousand and NO/100ths Dollars ($26,500,000.00), evidenced by, among other things, the Note (as defined below); and

**WHEREAS**, in consideration of the Loan made to Grantor by Lender, and to further secure the Indebtedness and the Obligations (as those terms are defined below), Grantor granted, transferred and assigned to Lender the "Leases" and the "Rents" and all proceeds from the sale or other disposition of the foregoing by that certain Assignment of Leases, Rents and Other Income dated as of February 28, 2006 ("*Assignment of Leases*"), which was filed and recorded on March 2, 2006, in Deed Book 46210, Page 0030, in the Gwinnett County Records;

**WHEREAS**, Grantor and Lender made and entered into that certain Loan and Security Agreement dated as of February 28, 2006, and that certain First Amendment to Loan and Security Agreement and Guaranty (Payment) and Reaffirmation of Guaranties, to which Commercial Ventures, Inc. and Richard J. Nathan also were parties (which Loan and Security Agreement and such First Amendment to Loan and Security Agreement and Guaranty (Payment) and Reaffirmation of Guaranties are together called the "*Loan Agreement*");

**WHEREAS**, under and pursuant to the Security Deed, Grantor granted, bargained, sold, conveyed, assigned and transferred to Lender, a security interest in and security title in the following described property, rights, and interests, together with all of Grantor's thereafter acquired estate, right, title or interest in or to, such property, rights and interests (collectively referred to as the "*Property*"), all of which property, rights and interests are pledged primarily and on a parity with the Land (defined below) and not secondarily:

(a)    The real property legally described below (hereinafter called the "*Land*") located in the State of Georgia (the "*State*"):

TRACT 1

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

BEGINNING at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30°23'54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34°32'12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point; thence S 67°10'12" E, a distance of 119.25 feet to a point; thence N 23°38'00" E a distance of 190.00 feet to a point; thence N 44°43'00" E a distance of 116.00 feet to a point; thence S 46°08'05" E a distance of 263.52 feet to a point; thence N 79°55'00" E a distance of 208.00 feet to a point; thence N 14°48'00" E a distance of 164.00 feet

2

BK 4 8 4 7 1 PG 0 2 4 5

to a point; thence N 44°00'00" E a distance of 59.00 feet to a point; thence N 84°04'00" E a distance of 57.00 feet to a point; thence S 57°02'00" E a distance of 53.00 feet to a point; thence S 75°16'39" E a distance of 134.70 feet to a point; thence N 61°30'00" E a distance of 54.00 feet to a point; thence N 83°06'00" E a distance of 36.00 feet to a point; thence S 62°48'16" E a distance of 149.00 feet to a point; thence S 51°58'09" W a distance of 47.88 feet to a point; thence S 02°42'00" E a distance of 50.00 feet to a point; thence S 38°48'00" E a distance of 160.00 feet to a point; thence S 73°47'00" E a distance of 90.00 feet to a point; thence N 76°28'00" E a distance of 189.00 feet to a point; thence N 46°14'00" E a distance of 38.00 feet to a point; thence N 20°31'00" E a distance of 21.00 feet to a point; thence N 49°37'40" E a distance of 288.98 feet to a point; thence N 17°57'00" E a distance of 332.00 feet to a point; thence N 65°39'00" E a distance of 121.00 feet to a point; thence S 16°11'00" W a distance of 148.00 feet to a point; thence S 73°49'00" E a distance of 198.00 feet to a point; thence N 16°11'00" E a distance of 155.00 feet to a point; thence N 78°39'00" E a distance of 42.00 feet to a point; thence S 07°00'00" E a distance of 127.00 feet to a point; thence S 72°57'17" E a distance of 131.25 feet to a point on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence S 16°27'41" W, along said northwestern right-of-way line of Peachtree Corners West, a distance of 608.00 feet, more or less, to the point of intersection of said right-of-way line with the centerline of Crooked Creek; thence in a generally northwesterly direction, along said centerline of Crooked Creek, and following the meanderings thereof, a distance of 592.00 feet, more or less, to the point of intersection of the centerline of said creek with the line common to said Land Lots 282 and 305; thence S 58°50'02" W, along said line common to Land Lots 282 and 305, a distance of 1,462.00 feet, more or less, to the iron pin found at the POINT OF BEGINNING;

AND

TRACT 2

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30°23'54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34°32'12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point; said point marking the TRUE POINT OF BEGINNING; FROM SAID TRUE POINT OF BEGINNING AS THUS ESTABLISHED, running thence N 34°32'12" W, along said line common to Land Lots 305 and

3

BK 4 8 4 7 1 PG 0 2 4 6

306, a distance of 491.78 feet to an iron pin found; thence N 59°22'15" E a distance of 1,683.24 feet to an iron pin found; thence S 31°09'38" E a distance of 350.58 feet to an iron pin found; thence S 31°00'33"E a distance of 586.68 feet to an iron pin found; thence N 58°11'41" E a distance of 385.16 feet to an iron pin found; thence N 17°02'50" E a distance of 305.00 feet to an iron pin set; thence N 00°20'57" E a distance of 45.12 feet to an iron pin found; thence S 71°48'28" E a distance of 511.13 feet to an iron pin set on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence in a southwesterly direction, along said northwestern right-of-way line of Peachtree Corners West, the following courses and distances:  along the arc of a 2,200.00 foot radius curve, an arc distance of 461.36 feet to a point (said arc being subtended by a chord lying to the southeast of said arc and bearing S 22°28'09" W a distance of 460.51 feet); and S 16°27'41" W a distance of 37.00 feet to a point; thence N 72°57'17" W a distance of 131.25 feet to a point; thence N 07°00'00" W a distance of 127.00 feet to a point; thence S 78°39'00" W a distance of 42.00 feet to a point; thence S 16°11'00" W a distance of 155.00 feet to a point; thence N 73°49'00" W a distance of 198.00 feet to a point; thence N 16°11'00" E a distance of 148.00 feet to a point; thence S 65°39'00" W a distance of 121.00 feet to a point; thence S 17°57'00" W a distance of 332.00 feet to a point; thence S 49°37'40" W a distance of 288.98 feet to a point; thence S 20°31'00" W a distance of 21.00 feet to a point; thence S 46°14'00" W a distance of 38.00 feet to a point; thence S 76°28'00" W a distance of 189.00 feet to a point; thence N 73°47'00" W a distance of 90.00 feet to a point; thence N 38°48'00" W a distance of 160.00 feet to a point; thence N 02°42'00" W a distance of 50.00 feet to a point; thence N 51°58'09" E a distance of 47.88 feet to a point; thence N 62°48'16" W a distance of 149.00 feet to a point; thence S 83°06'00" W a distance of 36.00 feet to a point; thence S 61°30'00" W a distance of 54.00 feet to a point; thence N 75°16'39" W a distance of 134.70 feet to a point; thence N 57°02'00 W a distance of 53.00 to a point; thence S 84°04'00" W a distance of 57.00 feet to a point; thence S 44°00'00" W a distance of 59.00 feet to a point; thence S 14°48'00" W a distance of 164.00 feet to a point; thence S 79°55'00" W a distance of 208.00 feet to a point; thence N 46° 08'05" W a distance of 263.52 feet to a point; thence S 44°43'00" W a distance of 116.00 feet to a point; thence S 23°38'00" W a distance of 190.00 feet to a point; thence N 67°10'12" W a distance of 119.25 feet to the TRUE POINT OF BEGINNING.  Said Tract containing 39.434 acres;

AND

With respect to TRACT 1 and TRACT 2

TOGETHER WITH rights created in that certain Cross-Easement Agreement between Peachtree Associates, an Illinois limited partnership, and Peachtree Investors, an Illinois limited partnership, dated June 12, 1986, recorded

4

BK 4 8 4 7 1 PG 0 2 4 7

at Deed Book 3600, page 218, Gwinnett County, Georgia Records (it being intended that said Cross-Easement Agreement not be terminated by merger by reason of the conveyance of all property encumbered thereby to the same entity);

(b)    All buildings, structures and improvements of every nature whatsoever then or thereafter erected or situated on the Land, and all fixtures then owned or thereafter acquired by Grantor, on or used in connection with the Land or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all right, title and interest of Grantor in and to any such fixtures together with the benefit of any deposits or payments then or thereafter made on such fixtures by or on behalf of Grantor;

(c)    All easements, rights-of-way, licenses, permits, rights of use or occupancy, privileges, tenements, appendages, hereditaments and appurtenances and other rights and privileges thereunto belonging or in any wise appertaining to the Land, whether now or in the future, and all the rents, issues, profits, reversions and remainders therefrom;

(d)    All right, title and interest, if any, of Grantor, in and to the land lying within any street, alley, avenue, roadway or right-of-way open or proposed or thereafter vacated in front of or adjoining the Land; and all right, title and interest, if any, of Grantor in and to any strips and gores adjoining the Land;

(e)    All rents, revenues, issues, profits, proceeds, income, royalties, security deposits, impounds, reserves, tax refunds, termination payments, cancellation payments, option payments, service reimbursements, prepaid rents, royalties, damages payable upon a default under any Lease, concession fees, lease termination payments, and other rights to revenues from the Property and/or the businesses and operations conducted by Grantor on the Property (collectively, the "*Rents*");

(f)    All right, title and interest of Grantor in all leases, subleases, license agreements, concession agreements, and other occupancy agreements of any nature then or thereafter on the Property whether written or oral (collectively, "*Leases*"), together with all guaranties thereof and security therefor and all monies payable thereunder;

(g)    All proceeds of the foregoing, together with any and all judgments, awards, payments or insurance proceeds, including interest thereon, and the right to receive the same, which may be paid or payable with respect to the Property as a result of the exercise of the right of eminent domain, the alternation of the grade of any street, or any fire, casualty, accident, damage or other injury to or decrease in the value of the Property, to the extent of all amounts which may be secured by the Security Deed at the date of receipt of any such award or payment by Lender, and of the reasonable counsel fees, costs and disbursements incurred by Lender in connection with the collection of such award or payment, and the proceeds of any sale, option or contract to sell the Property or any portion thereof.

5

BK4 8 4 7 1 PG 0 2 4 8

**WHEREAS**, the Security Deed was given to secure payment of all obligations of Grantor to Lender from time to time for the payment of money under the Loan Documents (as defined in the Loan Agreement), specifically including, without limitation, the Loan (hereinafter called the "*Indebtedness*") and the performance of the payment or performance of any and all obligations of Grantor or any guarantors to Lender under the Loan Documents (the "*Obligations*"), including the covenants and agreements contained in the Security Deed and contained in the other Loan Documents (the Indebtedness and the Obligations being collectively called the "*Secured Obligations*");

**WHEREAS**, without limitation of the foregoing, the Security Deed secures the prompt payment and performance of all of the Secured Obligations, which include, without limitation, the following:

(i)     payment of all principal, Minimum Interest, Exit Fee (as defined in the Loan Agreement), and all other indebtedness, any other interest and prepayment fees, if any, evidenced by, and in accordance with the terms of that certain Note dated February 28, 2006, made by Grantor payable to the order of Lender in the principal amount of Twenty-Six Million Five Hundred Thousand and No/100 Dollars ($26,500,000.00) (hereinafter the "*Note*") and the Loan Agreement, and any and all Charges (as defined in the Loan Agreement), additional indebtedness accruing to Lender on account of any future payments, advances or expenditures made by Lender pursuant to the Loan Agreement, the Note or the Security Deed and any additional sums with interest thereon which may or have been loaned to Grantor by Lender or advanced under the Loan Documents;

(ii)     payment of such additional sums with interest thereon which may thereafter have been loaned to Grantor by Lender or advanced under the Loan Documents, even though the aggregate amount outstanding at any time may exceed the original principal balance stated in the Security Deed and in the Note;

(iii)     the due, prompt and complete performance of each and every covenant, condition, agreement, representation, warranties and other liabilities and obligations of Grantor or any other obligor contained in the Loan Agreement, the Security Deed, the Note and every other Loan Document;

**WHEREAS**, the Security Deed provides: (a) that in the Event of Default, Lender may sell and dispose of the Property at public auction, at the usual place for conducting sales at the courthouse in the county where the Property or any part thereof may be located, to the highest bidder for cash, after first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four (4) consecutive weeks immediately preceding the date of such sale (without regard to the actual number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice having been waived by the Grantor; (b) that Lender may, thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Property in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale granted in the Security Deed, depends, and said recitals shall be presumptive evidence that all preliminary acts

6

BK4847 PG0249

prerequisite to said sale and deed were in all things duly complied with; (c) that Lender may bid and purchase at such sale; (d) that Grantor constituted and appointed Lender the agent and attorney-in fact to make such recitals, sale, and conveyance, and that all of the acts of such attorney-in-fact are thereby ratified; (e) that Grantor agreed that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Lender (and in the event of a deed in lie of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors-in-interest, in and to the Property; (f) that Lender shall collect the proceeds, applying the proceeds as provided in Section 10 of the Security Deed (and that in the event of deficiency, Grantor shall immediately on demand from Lender pay over to Lender, or its nominee, such deficiency); and (g) that the power and agency thereby granted in the Security Deed are coupled with an interest and are irrevocable by death or otherwise and are in addition to any and all other remedies which Grantor may have at law or in equity;

**WHEREAS**, the Security Deed further provides that following the occurrence of an Event of Default, Grantor covenants and agrees to pay to Lender all reasonable expenditures and expenses which may be paid or incurred by or on behalf of Lender for attorneys' fees and other costs and expenses, including without limitation the cost of procuring all such abstracts of title, title searches and examinations, title insurance policies, certificates of title, and similar data and assurances with respect to title as Lender may deem reasonably necessary either to exercise the power of sale granted therein or prosecute such suit or to evidence to bidders at any sale which may be had pursuant to the Security Deed the true condition of the title to or the value of the Property;

**WHEREAS**, the Security Deed provides that all expenditures and expenses of the nature mentioned in the previous paragraph, and such expenses and fees as may be incurred in the protection of the Property, and the maintenance of the lien, security interest and security title of the Security Deed, including the reasonable fees of any attorneys employed by Lender in any litigation or proceeding affecting the Security Deed, or the Property, including probate and bankruptcy proceedings, or in preparations for the commencement or defense of any proceeding or threatened suit or proceeding, shall be immediately due and payable by Grantor, with interest thereon at the Default Rate (as defined in the Loan Agreement) and shall be secured by the Security Deed;

**WHEREAS**, Events of Default (as defined in the Loan Agreement) and Defaults (as defined in the Loan Agreement) have occurred under the Note, Security Deed, Loan Agreement and Loan Documents and are continuing, specifically including, without limitation, Grantor's failure to pay installments of principal and interest due under the Note, in accordance with the terms thereof;

**WHEREAS**, Events of Default (as defined in the Security Deed) have occurred under the Note, Security Deed and other Loan Documents and continue by reason of the non-payment, when due, of the Secured Obligations evidenced by the Note and the Loan Documents, in

US2000 10463923.2

BK4847 PG0250

accordance with the terms thereof, and by reason of the failure to pay other Obligations and to punctually perform other terms, covenants and conditions contained in the Security Deed and the other Loan Documents;

WHEREAS, by reason of the occurrence and continuation of such Events of Default and other Events of Default, by letter dated November 5, 2007, the Lender, being the then present owner and holder of the Note, the Loan Agreement, Security Deed and the other Loan Documents exercised its option to accelerate the Loan and to declare the whole of the Secured Obligations immediately due and payable, but such amounts were not and have not been paid by the Grantor;

WHEREAS, in accordance with terms of the Security Deed and the power of sale contained in the Security Deed, the Property was advertised for sale once a week for four (4) consecutive weeks immediately preceding the week of the sale, the advertisements being contained in the *Gwinnett Daily Post*, a newspaper published in Gwinnett County, Georgia, in which advertisements of sheriff's sales are published, and the advertisement so published on November 8, 2007, November 15, 2007, November 22, 2007 and November 29, 2007, recited notice of the time, place and terms of such sale;

WHEREAS, on November 30, 2007, Lender made and executed that certain Transfer and Assignment of Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement and of Assignment of Rents, Leases and Other Income to and in favor of Holder, which was filed and recorded on December 3, 2007, in the Gwinnett County Records, whereby Lender granted, bargained, sold, conveyed, assigned and transferred to Holder all of Lender's rights, titles and interests in and to the Security Deed, the Assignment of Leases, the Loan Agreement and all other Loan Documents, and Holder is the present owner and holder of the Note, the Security Deed, the Assignment of Leases, the Loan Agreement and all other Loan Documents;

WHEREAS, Holder (as successor in interest to Lender), acting as agent and attorney-in-fact for Grantor, sold the Property in two parts as follows: (a) one part being all of the Property which is real property under the laws of the State of Georgia (collectively, the "*Real Property*") at public sale before the courthouse door in Gwinnett County, Georgia (the same being the usual place for conducting such sales at said courthouse), on Tuesday, December 4, 2007, at *11:03* o'clock *A*.m., during the legal hours for sales; and (b) one part being all of the Property which is personal property under the laws of the State of Georgia, less and except any and all cash, funds and other amounts held by Holder immediately prior to such sale (collectively, the "*Personal Property*") at public sale before the courthouse door in Gwinnett County, Georgia (the same being the usual place for conducting such sales at said courthouse), on Tuesday, December 4, 2007, at *11:05* o'clock *A*.m., during the legal hours for sales;

WHEREAS, at such time and place and on such day Grantee was the highest bidder for the Real Property, having bid for the Real Property the sum of *Twenty - Two Million + No/100* ———————————————— Dollars ($ *22,000,000.00* ), and the Real Property was thereupon knocked down and sold to Grantee for such amount; and

8

BK4847IPG0251

WHEREAS, following the aforesaid sale of the Real Property at such place and on such day, Grantee was the highest bidder for the Personal Property, having bid for the Personal Property the sum of *Five Hundred Thousand + No/100* Dollars ($ *500,000.⁰⁰* ), and the Personal Property was thereupon knocked down and sold to Grantee for such amount.

NOW THEREFORE, for and in consideration of the sums bid at public auction, in hand paid at and before the sealing and delivery of this indenture, the receipt of which is hereby acknowledged by Grantor, Grantor, acting by and through Holder as Grantor's agent and attorney-in-fact, does grant, bargain, sell, convey, assign, transfer, pledge, set over, alien and confirm with full warranties of title, all of Grantor's right, title, interest and equity in and to the Real Property and the Personal Property unto Grantee.

TO HAVE AND TO HOLD the Property, together with all and singular rights, members and appurtenances thereof to the Property being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of Grantee, and Grantee's successors and assigns, forever, in fee simple, subject to:

1.    All ad valorem real property taxes affecting the Property.

2.    The right of Georgia Power Company to operate, maintain, rebuild and renew its currently existing facilities upon subject property pursuant to the terms and conditions of Easements in favor of Georgia Power Company, as follows:

      a.    From John H. Sutter, dated July 5, 1945, recorded in Deed Book 77, page 75, Gwinnett County Records;

      b.    From C. E. Renfroe, dated June 19, 1947, recorded at Deed Book 87, page 85, Gwinnett County Records;

      c.    From J. D. Kelley, dated May 28, 1952, recorded at Deed Book 106, page 310, Gwinnett County Records;

      d.    From Duke Enterprises, Inc., dated October 7, 1971, recorded at Deed Book 455, page 195, Gwinnett County Records; and

      e.    From Peachtree Assoc., dba Elmside Village Apartments and Georgia Power Company dated June 23, 1986, recorded at Deed Book 3690, page 167, Gwinnett County Records, affecting only Tract 1 of subject property.

3.    Sewer Easement in favor of Gwinnett County, as follow, having the location shown on the survey hereinafter identified:

9

BK4847lPG0252

a.      From Charles D. Paris, dated September 11, 1970, recorded at Deed Book 598, page 274, aforesaid records, affecting only Tract 2 of subject property;

b.      From Esther Renfroe Marchman, dated May 20, 1970, recorded at Deed Book 598, page 294, Gwinnett County Records, affecting only Tract 1 of subject property;

c.      From Elizabeth Renfroe Henry, dated July 27, 1970, recorded at Deed Book 598, page 296, Gwinnett County Records, affecting only Tract 1 of subject property;

d.      From right-of-way, Bogan Renfroe, dated May 4, 1970, recorded at Deed Book 598, page 298, Gwinnett County Records, affecting only Tract 1 of subject property;

e.      From Joel D. Kelley, Sr., dated May 12, 1970, recorded at Deed Book 599, page 1, Gwinnett County Records; and

f.      From Mrs. Mary C. Dempsey, dated June 12, 1970, recorded at Deed Book 599, page 3, Gwinnett County Records, affecting only Tract 2 of subject property.

4.      Rights of upper and lower riparian owners in and to the waters of creeks and branches shown on the plats of survey of Real Property hereinafter identified, crossing or adjoining the Real Property and the natural flow thereof, free from diminution or pollution.

5.      Cross-Easement Agreement between Peachtree Associates, an Illinois limited partnership, and Peachtree Investors, an Illinois limited partnership, dated June 12, 1986, recorded at Deed Book 3600, page 218, Gwinnett County Records.

6.      Any and all matters affecting the Property as shown on the Plat of as-built survey of Tract 1 of subject property prepared for The Court Apartments Limited Partnership, Amresco Capital Corporation, Federal National Mortgage Association and Chicago Title Insurance Company by W. Dennis Boutwell, Georgia Registered Land Surveyor No. 1873, Benchmark Engineering Corporation, dated May 31, 1984, last revised February 21, 2006.

7.      Any and all matters affecting the Property as shown on the Plat of as-built survey of Tract 2, of subject property prepared for Lend Lease Mortgage Capital, L.P., Fannie Mae and Chicago Title Insurance Company by W. Dennis Boutwell, Georgia Registered Land Surveyor No. 1873, Benchmark Engineering Corporation, dated December 6, 1983, last revised February 21, 2006.

8.      Permanent Drainage Easement from Southeast Properties, Inc. to Gwinnett County, Georgia, dated March 17, 1992, recorded at Deed Book 7282, page 121, Gwinnett County Records, affecting only Tract 1 of subject property, having the location shown on the survey hereabove identified.

US2000 10463923.2

BK 4 8 4 7 | PG 0 2 5 3

9.    Rights of tenants, as tenants only, without right of purchase.

10.    Unrecorded Laundry Room Lease Agreement from The Courts Apartments Limited Partnership to Mac-Gray Services, Inc., dated August 17, 2004.

11.    Unrecorded Cable Television Service Agreement by and between The Courts Apartments Limited Partnership and MediaOne of Colorado, Inc., dated December 14, 1998.

12.    All valid zoning ordinances affecting the Property.

13.    All other, if any, easements, limitations, reservations, covenants, restrictions, deeds to secure debt, liens and other encumbrances and matters of public records to which the Security Deed is junior and subordinate in terms of priority under the laws of the State of Georgia.

The recitals set forth above in this Deed Under Power of Sale are hereby incorporated by reference and made a part of this Deed Under Power of Sale.

This Deed Under Power of Sale shall be binding upon and shall inure to the benefit of Grantor and Grantee and their respective successors, successors-in-title and assigns.

**IN WITNESS WHEREOF,** this Deed Under Power of Sale has been duly signed under seal by Grantor, acting by and through Holder as Grantor's agent and attorney-in-fact, all as of the day, month and year first set forth above.

Signed, sealed and delivered
in the presence of:

_____

Unofficial Witness

_____

Notary Public

My Commission Expires:

_____

2/24/08

**GRANTOR:**

**THE LANDINGS FLORIDA, LLC,** a Florida limited liability company, acting by and through its agent and attorney-in-fact, **ORIX CAPITAL MARKETS, LLC,** a Delaware limited liability company

By: _____

Name: ___Mark S. Pakes___

Title: ___Director___

[SEAL]

(NOTARIAL SEAL)

ANGELA WEAVER
NOTARY PUBLIC
State of Texas
Comm. Exp. 02-24-2008

11

US2000 10463923.2

# EXHIBIT C

## Order Confirming Foreclosure Sale

See Attached

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2008 FEB 19  AM 9: 17

TOM LAWLER, CLERK

| | | |
|---|---|---|
| ORIX CAPITAL MARKETS, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action File No. 07A-11010-9 |
| | ) | |
| THE LANDINGS FLORIDA, LLC, | ) | |
| COMMERCIAL VENTURES, INC. and | ) | |
| RICHARD J. NATHAN, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER CONFIRMING FORECLOSURE SALE

Upon consideration of the arguments of counsel, pleadings, testimony and documentary evidence, and after conducting a full evidentiary hearing, the Court hereby FINDS as follows:

1.     That this is a proceeding to confirm the foreclosure sale of real property and improvements described in that certain Deed Under Power of Sale dated December 4, 2007, recorded in Deed Book 48471, beginning at Page 243 in the Office of the Clerk of the Superior Court of Gwinnett County, Georgia, and located at 3659 Peachtree Corners Circle in Norcross, Georgia (the "Property").

2.     That each of Respondents, The Landings Florida, LLC, Commercial Ventures, Inc. and Richard J. Nathan, were served with notice (the Order Vacating January 22, 2008 Order and Regarding Hearing on Application for Confirmation and Approval of Foreclosure Under Power of Sale dated January 24, 2008, the Order Confirming Foreclosure Sale dated January 22, 2008, the Order Regarding Hearing on Application for Confirmation and Approval of Foreclosure Under Power of Sale dated December 12, 2007 and the Report of

Foreclosure Under Power of Sale and Application for Confirmation and Approval of Such Foreclosure Sale dated December 12, 2007) at least ten days prior to the hearing.

3.      That the foreclosure sale was advertised and noticed in accordance with the statutory requirements under O.C.G.A. §§ 44-14-161, 44-14-162 and 9-13-140:

(a)      That the foreclosure sale was advertised in the Gwinnett Daily Post, Gwinnett County's legal organ, once a week for four consecutive weeks immediately prior to the foreclosure sale; and

(b)      That the advertisement contained a full and complete legal description of the Property.

4.      That Petitioner complied with the statutory requirements regarding regularity of the sale under O.C.G.A. §§ 9-13-161 and 44-14-162:

(a)      That the sale occurred on December 4, 2007, which was the first Tuesday in the month of December, 2007;

(b)      That the sale occurred between the hours of 10:00 a.m. and 4:00 p.m.;

(c)      That the sale was conducted before the courthouse door at the Gwinnett County Courthouse, which is the place where sheriff's sales are conducted; and

(d)      That the sale was conducted in the usual manner of sheriff's sales in Gwinnett County.

5.      That the price paid for the Property at the sale was equal to or greater than the true market value, i.e., fair market value, of the property on December 4, 2007.

Based on these findings, it is hereby ORDERED as follows:

1.      That the foreclosure sale is CONFIRMED.

2

US2000 10621739.1

2.      That Petitioner may pursue Respondents (The Landings Florida, LLC, Commercial Ventures, Inc. and Richard J. Nathan) for any deficiency between the sales price and the outstanding debt, which the Property secured.

SO ORDERED, this _19th_ day of February, 2008.

_____
Judge Tom Davis
Superior Court of Gwinnett County

Submitted by:

Jill Warner
Georgia Bar No. 378472
Peter B. Glass
Georgia Bar No. 296500
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street, NE
Atlanta, Georgia 30309
(404) 815-6500

Attorneys for Petitioner
ORIX Capital Markets, LLC

3